UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

REPUBLICAN NATIONAL COMMITTEE,
DONALD J. TRUMP FOR PRESIDENT 2024, INC.,
MICHIGAN REPUBLICAN PARTY, and RYAN
KIDD,

        Plaintiffs,

v

GRETCHEN WHITMER, in her official capacity as
Governor of Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of State; and
JONATHAN BRATER, in his official capacity as
Director of the Michigan Bureau of Elections, U.S.
SMALL BUSINESS ADMINISTRATION, ISABEL
GUZMAN, in her official capacity as Administrator
of the Small Business Administration,
DEPARTMENT OF VETERANS AFFAIRS, and,
DENIS McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

        Defendants.

CASE NO. 24 - _____-CV

HON. _____

Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503-2802
616-774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

David A. Warrington (*Admission Pending*)
Gary Lawkowski (*Admission Pending*)
DHILLON LAW GROUP
Co-Counsel for Plaintiffs
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## COMPLAINT

Plaintiffs, the Republican National Committee ("The RNC"), Donald J. Trump for President 2024, Inc. ("Trump Campaign"), the Michigan Republican Party ("MRP"), and Ryan Kidd ("Plaintiffs"), by and through their attorneys, Smith Haughey Rice & Roegge, bring this action under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20506, as well as various Michigan laws (including Const. 1963, art. 2, § 4(2), M.C.L. § 168.509u, and M.C.L. § 168.509n), against Defendants for declaratory and injunctive relief. Plaintiffs allege as follows:

## INTRODUCTION

1.      Section 7 of the NVRA authorizes "[e]ach State" to designate "agencies for the registration of voters in elections for Federal office." 52 U.S.C. §20506(a)(1). Although the statute requires that certain State offices be so designated, it also gives "each State" the discretion to "designate other offices" as "voter registration agencies" ("VRAs"). 52 U.S.C. § 20506(a)(2)-(3).

2.      Under Michigan law, the authority to make such designations is held solely by the Legislature. See Const. 1963, art. 2, § 4(2) ("The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.").

3.      The Michigan Legislature exercised this authority when it enacted M.C.L. § 168.509u, which designated "a recruitment office of the armed forces of the United States [as] a designated voter registration agency." It also authorized the Governor to "provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state." M.C.L. § 168.509u(1). However, that authority had to be exercised "[n]ot later than the thirtieth day after the effective date of [M.C.L. § 168.509u]."

SHRR\6192282.v9

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

4.      M.C.L. § 168.509u became effective January 10, 1995. Under its plain language, the Michigan Legislature did not authorize the Governor to unilaterally designate any VRAs after February 9, 1995.

5.      Despite the absence of such authority, Michigan Governor Gretchen Whitmer issued Executive Directive 2023-6 ("ED 2023-6") on December 18, 2023, purporting to designate several State and Federal agencies as VRAs, including the Defendant Department of Veterans Affairs ("VA").[1]

6.      The Michigan Legislature also has not granted the Secretary of State the authority to designate VRAs. See M.C.L. § 168.509n (Secretary of State is responsible for (a) developing a mail registration form and making it available for distribution, (b) instructing "designated voter registration agencies and county, city, township, and village clerks about the voter registration procedures and requirements imposed by law," and (c) by June 15 "of each odd numbered year," submitting a "a report on the qualified voter file" to member of the relevant state senate and house committees).

7.      Despite lacking such authority, Michigan's Secretary of State entered into a Memorandum of Understanding ("MOU")[2] and Memorandum of Agreement ("MOA")[3] on March 18, 2024, with the U.S. Small Business Administration ("SBA"), purporting to designate SBA offices throughout the State of Michigan as VRAs.

8.      Because the Governor and Secretary of State lack authority to make unilateral designations of new VRAs, their designations of VA and SBA offices as VRAs are *ultra vires* and unlawful under Michigan law.

---

[1]  Available at https://www.michigan.gov/whitmer/-/media/Project/Websites/Whitmer/Documents/Exec-Directives/ED-20236-signed.pdf?rev=a2278328062d4fb7823a8713eca6575c&hash=7A1E593F41B2E960FCE3B81A0404CDEC.

[2]  Available at https://static.foxnews.com/foxnews/content/uploads/2024/05/REDACTED-02-URL-MOU-MDOS-and-SBA-Final-Version.pdf. This version has certain personal information redacted.

[3] Available at https://static.foxnews.com/foxnews/content/uploads/2024/05/REDACTED-03-MOA-NVRA-Designated-Federal-Agency-Final-Version.pdf. This version also has certain personal information redacted.

9.      Moreover, because these unauthorized actions do not represent lawful designations by the State of Michigan for purposes of Section 7 of the NVRA, the designated VA and SBA offices are not lawfully operating as VRAs under federal law.

## PARTIES, JURISDICTION, AND VENUE

10.     The Court has subject-matter jurisdiction because this case alleges violations of the NVRA. See 28 U.S.C. §1331; *Ex parte Young*, 209 U.S. 123 (1908).

11.     The NVRA authorizes a "person who is aggrieved by a violation of this chapter" to "bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(1)-(2).

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claims per 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," and "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties").

13.     Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District and because some Defendants "reside" here. 28 U.S.C. §1391.

14.     Plaintiff, the Republican National Committee, is the national committee of the Republican Party, as defined by 52 U.S.C. §30101(14), with its principal place of business at 310 First Street S.E., Washington, DC 20003.

15.     The RNC represents over 30 million registered Republicans in all 50 states, the District Columbia, and the U.S. territories. It is comprised of 168 voting members representing state Republican Party organizations, including three members who are registered voters in Michigan.

16.     The RNC works to elect Republican candidates to state and federal office. In November 2024, its candidates will appear on the ballot in Michigan for numerous federal and state offices.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

17.     The RNC has vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Michigan elections and elsewhere. The RNC and Michigan GOP have strong interests in ensuring that they and their candidates compete for votes in a lawfully structured competitive environment. The RNC brings this suit to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates.

18.     The RNC and its members are concerned that Defendants' failure to comply with Michigan statutes governing VRA designation undermines the integrity of elections by increasing the opportunity for individuals to register to vote even though they are ineligible to do so, and by sowing confusion regarding whether the agencies purporting to offer assistance in registering voters are doing so in accordance with applicable law.

19.     Plaintiff, Donald J. Trump for President 2024, Inc. ("Trump Campaign") is the principal committee for President Donald J. Trump's campaign with its headquarters in West Palm Beach, FL.

20.     The Trump Campaign has the same interests in this case as the RNC with respect to the candidacy of President Trump and seeks to vindicate those interests in the same ways.

21.     Plaintiff, the Michigan Republican Party ("MRP"), is a "major political party" as that term is defined by the Michigan Election Law. See MCL 168.16. Formed for the general purposes of, among other things, promoting Republican values and assisting candidates who share those values with election or appointment to partisan federal, state, and local office, MRP maintains headquarters at 520 Seymour Street, Lansing, Michigan 48912. Further, MRP works to ensure that elections in Michigan are conducted in a free, fair, and transparent manner, and works to protect the fundamental constitutional right to vote of its members and all Americans, and to promote their participation in the political process. MRP brings this action on behalf of itself and its members. As a result, Plaintiff MRP has a direct, personal, and substantial interest in this litigation to protect not only its own rights, but those of its candidates and members.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

22.     Ryan Kidd is the elected clerk of Georgetown Township. Mr. Kidd is an elected local clerk who is responsible for administering elections, as well as processing voter registration applications for individuals who reside within their respective jurisdictions and ultimately registering those individuals to vote. Further by statute, Mr. Kidd is responsible for processing voter registration applications received from government offices properly designated as VRAs under the NVRA and Michigan law. See M.C.L. § 168.509w. When a local official has "a designated role to play in the interpretation and enforcement of" state election law, they are "proper parties to any suit seeking to challenge its validity and enjoin its enforcement." *Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012), rev'd on other grounds, 732 F.3d 382 (5th Cir. 2013).

23.     As Michigan's Court of Claims recently noted, it is difficult to "imagine anyone more in need of a ruling" on election-related matters "than a local clerk…."[4] "Indeed, if she does not have standing … then nobody has standing…."[5]

24.     Defendants' ongoing ultra vires acts, which are beyond the scope of the authority granted to the Defendants by M.C.L. § 168.509u, and M.C.L. §168.509n, have created confusion about which state and federal offices are properly designated as "designated voter registration agencies" in accordance with the NVRA and Michigan law. Thus, Mr. Kidd needs a declaration from the courts to guide his future conduct and the performance of his duties, especially as it relates to processing voter registration applications submitted by government offices purporting to be designated VRAs.

25.     Because Defendants have not complied with applicable Michigan law or the NVRA, all Plaintiffs must deploy their time and resources to monitor Michigan elections for fraud and abuse,

---

[4] *Republican National Committee, et al. v. Benson, et al.,* unpublished opinion of the Michigan Court of Claims, issued June 12, 2024 (Docket No. 24-000041-MZ), p 5 available at https://drive.google.com/file/d/1nKzQQVGQ0vDf4tRlrX_O5eTxdyu2hHkU/view.
[5] *Id.*

SHRR\6192282.v9

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to follow the law.

26.    Defendant Gretchen Whitmer is the Governor of Michigan. She is the chief executive officer for the State of Michigan with the duty to execute and enforce the laws as written, not as she wishes them to be. Governor Whitmer is sued in her official capacity.

27.    Defendant Jocelyn Benson is the Michigan Secretary of State. She is the chief election official for the State of Michigan. The Secretary of State is the chief election officer of the state and has supervisory control over local election officials in the performance of their election duties. Secretary Benson is sued in her official capacity.

28.    Defendant Jonathan Brater is the Director of Elections. As such, he is vested with the powers and performs the duties of the Secretary of State under her supervision, with respect to the supervision and administration of the election laws. Director Brater is sued in his official capacity.

29.    Defendant SBA is a federal agency of the United States within the meaning of U.S.C. § 552(f)(1) whose mission statement is to "help[] Americans start, grow, and build resilient businesses." About SBA; Organization, *found at* https://www.sba.gov/aboutsba/ organization (last visited May 22, 2024).

30.    Defendant SBA is, upon information and belief, acting as a VRA in the State of Michigan pursuant to the MOU and MOA that the Michigan Secretary of State entered into ultra vires.

31.    Defendant Isabella Guzman is the Administrator of the SBA and is sued in her official capacity.

32.    Defendant VA is a department of the executive branch of the U.S. government with headquarters at 810 Vermont Ave NW, Washington, DC 20421. It is an agency within the meaning of 5 U.S.C. § 552(f).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

33.     Defendant VA is, upon information and belief, acting as a VRA in the State of Michigan pursuant to the ED 2023-6 that the Michigan Governor issued ultra vires. Defendant Denis McDonough is the Secretary of the VA and is sued in his official capacity.

## BACKGROUND

34.     In 1993, Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3).

35.     Section 7 of the NVRA, 52 U.S.C. §20506(a)(2) requires that certain State agencies be designated as VRAs. Additionally, 52 U.S.C. §20506(a)(3)(A)-(B) states that "each State" has authority to "designate other offices within the State as voter registration agencies," which "may include" various "State or local government offices" or "Federal and nongovernmental offices, with the agreement of such offices."

36.     The designation of a federal office as a VRA is entirely within a state's discretion, with one exception. "A recruitment office of the Armed Forces of the United States shall be considered to be a voter registration agency designated under subsection (a)(2) for all purposes of this chapter." 52 U.S.C. §20506(c)(2).

37.     The NVRA defines the term "State" as "a State of the United States and the District of Columbia." 52 U.S.C. §20502(4). Throughout the statute, the NVRA distinguishes between a "State" and its "official[s] or "officer[s]." *See* 52 U.S.C. §20506 (using both the term "State" and the phrase "State election official"); 52 U.S.C. §20507(a)(2) (using the phrase "State election official"); 52 U.S.C. §20508 (using the phrase "chief election officers of the States"); *see also* 52 U.S.C. §20509 ("Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter.").

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

38.     How "each State" designates VRAs under the NVRA is a question of state law.[6]

39.     Under Michigan's Constitution, "the legislative power of the State of Michigan is vested in a senate and a house of representatives." Michigan Const. 1963, art. 4, § 1. Consistent with Michigan's state constitutional arrangement, "the Legislature has the constitutional authority under Const. 1963, art. 2, § 4(2) to enact laws to preserve the purity of elections, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting." *Promote the Vote v. Sec'y of State,* 333 Mich. App. 93, 123; 958 N.W.2d 861 (2020).

40.     "The executive power is vested in the governor." Michigan Const. 1963, art. 5, § 1. But "[t]he governor has no power to make laws." *People v. Dettenhaler*, 118 Mich. 595, 602; 77 N.W. 450 (1898). And the governor only has the authority to it given by the Michigan Constitution or the Legislature. *People ex rel Sutherland v. Governor*, 29 Mich. 320, 328-329 (1874) ("The apportionment of power, authority and duty to the governor, is either made by the people in the constitution, or by the Legislature in making laws under it.").

41.     After Congress enacted the NVRA in 1993, the Michigan Legislature adopted laws to conform with the voter registration requirements of the NVRA. See *Ass'n. of Cmty. Organizations for Reform Now v. Miller,* 129 F.3d 833, 835 (6th Cir. 1997) ("On January 5, 1995, Michigan enacted Public Act 441 of 1994 in order to conform its voter registration procedure to the requirements of the National Voter Registration Act."). Public Act 441 was codified as M.C.L. § 168.509m-509gg.

42.     The stated purpose of these statutes is to "increase the integrity of the voting process" and to apply technology and information gathered by state and local governments "in a matter that ensures that accurate and current records of qualified voters are maintained." M.C.L. § 168.509m.

---

[6] See Fed. Election Comm'n, Guide to Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples, at 1-5 (1994), available at https://www.eac.gov/sites/default/files/eac_assets/1/1/Implementing%20the%20NVRA%20of%201993%20Requirements%20Issues%20Approaches%20and%20Examples%20Jan%201%201994.pdf.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

43. The Legislature specifically defined "[d]esignated voter registration agency" as "an office designated under [M.C.L. § 168.509u] to perform voter registration activities in this state." M.C.L. § 168.509m(2)(a).

44. M.C.L. § 168.508u provides the only avenue by which a government office can be a "designated voter registration agency" under Michigan law and, by extension, properly designated to conduct voter registration activities in Michigan under the NVRA.

45. M.C.L. § 168.509u expressly designated "a recruitment office of the armed forces of the United States [as] a designated voter registration agency." It also authorized the Governor to "provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state." M.C.L. § 168.509u(1). However, that authority had to be exercised "Not later than the thirtieth day after the effective date of [M.C.L. § 168.509u]."

46. M.C.L. § 168.509u became effective January 10, 1995. Therefore, the Michigan Legislature did not grant the Governor authority to designate any VRAs after February 9, 1995.

47. Public Act 441 also included M.C.L. § 168.509n, which gives the Michigan Secretary of State specific responsibilities "for the coordination of the requirements imposed under this chapter, the National Voter Registration Act of 1993…." It authorizes the Michigan Secretary of State to do three things: (a) develop and disseminate a mail registration form, (b) give instruction to designated VRAs and clerks, and (c) report to the relevant "committees of the senate and house of representatives…." It does not authorize the designation of VRAs.

48. When a voter registration application is "submitted in person at … a designated voter registration agency," the person processing the application shall "[v]alidate the application in the manner prescribed by the secretary of state" and "[i]ssue a receipt to the applicant verifying the acceptance of the application." M.C.L. § 168.509w(1).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

49.     Then, within 7 days of receiving the application, "the designated voter registration agency … shall transmit the application … to the clerk of the county, city, or township where the applicant resides." M.C.L. § 168.509w(2). However, if the application is made 2-3 weeks before an election, the designated voter registration agency "shall transmit the application not later than 1 business day to the clerk of the county, city, or township where the applicant resides." M.C.L. § 168.509w(3).

50.     If the designated voter registration agency transmits "a completed application…to a county clerk," the Secretary of State "shall compensate the county clerk for the cost of forwarding the application to the proper city or township clerk of the applicant's residence from funds appropriated to the secretary of state for that purpose."

51.     Thus, when an individual applies to register to vote at a designated voter registration agency, even if the application is initially sent to the applicable county clerk, it is the clerk of the city or township where that individual resides that will ultimately be responsible for processing the application and registering that individual to vote.

52.     As noted above, in January 1995, M.C.L. § 168.509u authorized the then-Governor of Michigan to designate VRAs but required him to do so "not later than" February 6, 1995.

53.     In January 1995, Governor John Engler complied with that statutory directive by issuing Executive Order 1995-1 ("EO 1995-1").[7]

54.     EO 1995-1 recognized that "the NVRA requires that additional state offices be designated as voter registration agencies for applicants and recipients of public assistance, to wit: Aid to Families with Dependent Children (AFDC), Medicaid, Food Stamps, and Women, Infant, Children (WIC)." It also recognized that "NVRA further requires that state offices be designated as voter registration agencies that provide state-funded programs primarily engaged in providing services to persons with disabilities, to wit: Michigan rehabilitation services and psychiatric hospitals."

---

[7] Available at https://www.legislature.mi.gov/documents/1995-1996/executiveorder/htm/1995-EO-18.htm

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

55.     Thus, "[p]ursuant to Sections 7 (a) (2) (A) and 7 (a) (2) (B) of the NVRA," Governor Engler specifically designated the following offices "to accept applications for voter registration":

a.     Michigan Department of Social Services local offices which accept applications and administer benefits for the Aid to Families with Dependent Children (AFDC), Medicaid, and Food Stamp programs;

b.     County health department offices and other agencies which contract with the Department of Public Health which accept applications and administer benefits for the Women, Infants and Children program (WIC);

c.     Local Michigan rehabilitation services offices;

d.     Adult inpatient psychiatric hospitals operated by the Michigan Department of Mental Health.

56.     Additionally, Governor Engler purported to designate "[a]ny other public office…which the Governor may from time to time designate by Executive Directive."

57.     Under Michigan law, Executive *Directives* do not have the force and effect of law and are not subject to Legislative review.  See Unpublished opinion of the Michigan Attorney General (No. 7224, February 20, 2009).[8]

58.     Since January 1995, the Legislature has not granted any further authority to the Michigan Governor to designate VRAs.

59.     For almost three decades, there were no attempts to further designate any other agencies—state, federal, or local—as VRAs in Michigan.

60.     On March 7, 2021, President Joseph R. Biden Jr. issued Executive Order 14019, which directed federal departments and agencies to "partner with State, local, Tribal, and territorial officials" and "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation."[9]

---

[8] Available at https://www.ag.state.mi.us/opinion/datafiles/2000s/op10301.htm.
[9] Available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/03/07/executive-order-on-promoting-access-to-voting/.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

61.    Executive Order 14019 also stated that each federal agency, "if requested by a State to be designated as a voter registration agency pursuant to section 7(a)(3)(B)(ii) of the National Voter Registration Act, shall, to the greatest extent practicable and consistent with applicable law, agree to such designation."

62.    On May 1, 2022, Governor Whitmer issued Executive Directive 2022-4.[10] In it, she recognized that "EO 1995-1 designated specific state offices as voter registration agencies pursuant to sections 7(a)(2)(A) and (B) of the NVRA" but that, "[s]ince 1995, there have been myriad changes to public assistance programs and programs that provide services to persons with disabilities, as well as to the offices that accept applications for and administer these programs."

63.    "In light of these changes," Governor Whitmer concluded that "it is time to review and update Michigan's list of voter registration agencies."

64.    Thus, claiming authority "under sections 1 and 8 of Article 5 of the Michigan Constitution of 1963," Governor Whitmer directed, among other things, the Department of State to "review Michigan's compliance with the requirements of the NVRA, in particular, the requirement in section 7 that all state offices that provide either public assistance or state-funded programs primarily engaged in providing services to persons with disabilities are offering voter registration services."

65.    Governor Whitmer stated that "[t]o the extent that the Department of State recommends additional offices be designated as voter registration agencies to comply with the NVRA, [she] expect[ed] to take appropriate action expeditiously." She also indicated a desire to take additional action "including but not limited to designating additional offices as voter registration agencies pursuant to section 7(a)(3) of the NVRA."

---

[10] Available at https://michigan.gov/whitmer/news/state-orders-and-directives/2022/05/01/executive-directive-2022-4.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

66.     In September 2023, the Michigan Secretary of State and the U.S. Department of Veterans Affairs announced the signing of an interagency agreement that purported to designate the Department, the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office as voter registration agencies and offices.

67.     The Michigan Department of State's press release stated that "[t]he official designation of VA as a voter registration site will come through an executive order by Governor Whitmer in the coming weeks."[11]

68.     Three months later, on December 18, 2023, Governor Whitmer issued Executive Directive 2023-6 which, among other things, designated "the following state departments, agencies, and offices" as VRAs:[12]

    a.     Michigan Department of Health and Human Services;

    b.     Michigan Department of Military and Veterans Affairs;

    c.     Michigan Rehabilitation Services of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;

    d.     Bureau of Services for Blind Persons of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;

    e.     Wage and Hour Division of the Michigan Department of Labor and Economic Opportunity's Bureau of Employment Relations;

    f.     Michigan Worker's Disability Compensation Agency;

    g.     Workforce Development of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training; and

    h.     Michigan State Housing Development Authority.

---

[11] Available at https://www.michigan.gov/sos/resources/news/2023/09/19/three-michigan-va-locations-will-pilot-voter-registration-sites.
[12] Available at https://www.michigan.gov/whitmer/news/state-orders-and-directives/2023/12/18/executive-directive-2023-6-expanding-voting-opportunities-updating-list-of-registration-agencies.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6192282.v9

69.     ED 2023-6 also purported to designate "the U.S. Department of Veterans Affairs" as a VRA "subject to the agreement it has signed with the State of Michigan."

70.     For her alleged authority to make these designations, Governor Whitmer relied on "Section 1 of Article 5 of the Michigan Constitution of 1963" and "Section 8 of Article 5 of the Michigan Constitution of 1963."

71.     Section 1, Art. 5 of the Michigan Constitution states that "the executive power is vested in the governor."

72.     Section 8, Art. 5 of the Michigan Constitution states that the governor has supervisory authority over "[e]ach principal department" and "shall take care that the laws be faithfully executed."

73.     On March 18, 2024, the Michigan Secretary of State entered into the aforementioned MOU[13] and MOA[14] with the SBA, purporting to designate the SBA's offices throughout Michigan as VRAs.

74.     The MOU is essentially an "agreement to agree" or statement of common cause, but lacks the binding power of a contract. The apparent purpose of the MOU is to acknowledge a formal, ongoing, and strategic relationship between the Michigan Secretary of State and the SBA.  The MOA, on the other hand, is a contractual document that formally establishes specific legal obligations running between the two.

75.     The MOA states in Part III that the "SBA enters into this MOA under the legal authority of section 8(b) of the Small Business Act, 15 U.S.C. 637(b), and pursuant to section 20506 of the NVRA [National Voter Registration Act] as referenced above in Part I."  Part I cites See 52 USC § 20506(a)(2).

76.     But the Michigan Secretary of State's authority is not specifically mentioned.  In Part II, entitled "Purpose," the MOA references "a 1994 state statute that directed the Governor to designate

---

[13] Available at https://static.foxnews.com/foxnews/content/uploads/2024/05/REDACTED-02-URL-MOU-MDOS-and-SBA-Final-Version.pdf. This version has certain personal information redacted.

[14] Available at https://static.foxnews.com/foxnews/content/uploads/2024/05/REDACTED-03-MOA-NVRA-Designated-Federal-Agency-Final-Version.pdf. This version also has certain personal information redacted.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

VRAs," and a 1995 Executive Order from Governor Engler that "allows the Governor to designate additional VRAs through an executive directive." The "Purpose" section of the MOA further claims that "Michigan law makes the Secretary of State 'responsible for the coordination of the requirements imposed under … the National Voter Registration Act of 1993.' These responsibilities include '[i]nstruct[ing] designated voter registration agencies and [local] clerks about the voter registration procedures and requirements imposed by law.'"

77.     The MOU and MOA prompted a Congressional Investigation as well as a Freedom of Information Act suit, which is ongoing. See *Heritage Foundation v. SBA,* Case 1:24-cv-01363-CJN (D.D.C.).

78.     Neither ED 2023-6, the MOU, nor the MOA were authorized by the Michigan Legislature. Moreover, under Michigan law, Executive *Directives* do not have the force and effect of law and are not subject to Legislative review.

**COUNT I**
**VIOLATION OF MICHIGAN LAW BY STATE DEFENDANTS**

79.     Plaintiffs reallege each of the prior allegations in this complaint.

80.     Defendants Gretchen Whitmer, Jocelyn Benson, and Jonathan Brater ("State Defendants") have failed to comply with the Michigan Constitution and the Michigan Election Law by treating federal agencies as "designated voter registration agenc[ies]" under MCL 168.509m even though they have not been so "designated" in accordance with the Michigan Election Law, including MCL 168.509u.

81.     On an ongoing and systemic basis, the State Defendants have violated, and unless enjoined, will continue to violate the election laws of the State of Michigan related to the designation of VRAs.

82.     The State Defendants' failure to comply with the VRA-designation requirements embodied in the laws of the State of Michigan injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates by undermining confidence in the integrity of the electoral process and

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

discouraging participation in the democratic process, which will harm the electoral prospects of Republican candidates.

83.     The State Defendants' failure to comply with the VRA-designation requirements embodied in the laws of the State of Michigan injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates, who have a right to vote and compete in lawfully structured elections that comply with the procedures and protections required by Michigan election law.

84.     The State Defendants' failure to comply with the VRA-designation requirements embodied in the laws of the State of Michigan injures Mr. Kidd by burdening the fulfillment of his federal and state statutory duties, including by creating confusion regarding whether the federal agencies claiming to act as VRAs has been properly designated as such in accordance with the NVRA and related Michigan statutory law.

85.     The State Defendants' violations of Michigan's Election Law have caused economic, financial, and political injury to the Plaintiffs, including by forcing them to allocate additional resources and misallocate their scarce resources in ways they otherwise would not have.

86.     There is an actual case and controversy between Plaintiffs and the State Defendants.

87.     Plaintiffs will continue to suffer irreparable injuries as a direct result of the State Defendants' violation of Michigan law until Defendants are enjoined from violating the law.

88.     Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants and provide the following relief:

A.     A declaratory judgment that the State Defendants have violated Michigan Const. 1963, art. 2, § 4(2), as well as MCL 168.509m and MCL 168.509u;

B.     A preliminary and permanent injunction barring the State Defendants from designating any VRAs without express authorization from the Michigan Legislature;

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

17

C.      An order declaring the designation of any VRAs under ED 2023-6, the 2022 Interagency Agreement, the 2023 MOU and MOA, and any future executive directives issued without legislative authorization are invalid;

D.      Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and

E.      All other further relief that Plaintiffs may be entitled to.

## COUNT II
## <u>VIOLATION OF NVRA BY THE SBA & VA</u>

89.      Plaintiffs reallege each of the prior allegations in this complaint.

90.      To help address voter fraud and ensure compliance with federal election law, the NVRA includes a private right of action. 52 U.S.C. §20510(b).

91.      A plaintiff may sue without pre-suit notice when "the violation occurred within 30 days before the date of an election for Federal office…." 52 U.S.C. §20510(b)(3). Thus, a "plaintiff can satisfy the NVRA's notice provision by plausibly alleging that an ongoing, systematic violation is occurring at the time the notice is sent or, if no notice is sent, when the complaint is filed within 30 days of a federal election." See *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1044 (9th Cir. 2015); *Valdez v. Squier,* 676 F.3d 935, 939 (10th Cir.2012) (upholding the grant of summary judgment for a plaintiff who alleged that a state's policy caused "ongoing violations" of the NVRA).

92.      "Election" is defined at 52 U.S.C. §20502(1) by reference to 52 U.S.C. §30101(1), which defines "election" as:  "(A) a general, special, primary, or runoff election; (B) a convention or caucus of a political party which has authority to nominate a candidate; (C) a primary election held for the selection of delegates to a national nominating convention of a political party; and (D) a primary election held for the expression of a preference for the nomination of individuals for election to the office of President."

93.      By statute, Michigan holds its general primary election for all partisan offices "on the Tuesday after the first Monday in August before every general November election." M.C.L. § 168.534. In 2024, Michigan will be holding its partisan primary election on August 6, 2024, during which registered

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6192282.v9

voters will cast their ballots for a variety of state, local, and federal candidates, including candidates for the offices of United States Senator and United States Representative.

94.     This Complaint is being filed within 30 days of Michigan's August 6, 2024 primary election.

95.     The ultra vires designations of VRAs under ED 2023-6, the MOU, and the MOA are systematic and ongoing and will continue to occur within 30 days before Michigan's August 6, 2024 primary. See *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1044 (9th Cir. 2015); *Scott v. Schedler,* 771 F.3d 831, 834, 840 (5th Cir. 2014) (leaving "intact the district court's determination that the NAACP has complied with the notice requirement" by alleging "systematic and ongoing violations of several provisions of Section 7 of the NVRA"); *Jud. Watch, Inc. v. Griswold,* 554 F. Supp. 3d 1091, 1106 (D. Colo. 2021.

96.     On an ongoing and systemic basis, the SBA and VA have violated, and unless enjoined, will continue to violate the election laws of the State of Michigan related to the designation of VRAs.

97.     The SBA and VA's continued operation as VRAs – where their designations do not meet the VRA-designation requirements embodied in the laws of the State of Michigan - injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates by undermining confidence in the integrity of the electoral process and discouraging participation in the democratic process, which will harm the electoral prospects of Republican candidates.

98.     The SBA and VA's continued operation as VRAs – where their designations do not meet the VRA-designation requirements embodied in the laws of the State of Michigan – injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates, who have a right to vote and compete in lawfully structured elections that comply with the procedures and protections required by the NVRA and Michigan election law.

99.     The SBA and VA's continued operation as VRAs – where their designations do not meet the VRA-designation requirements embodied in the laws of the State of Michigan – injures Mr. Kidd by

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

burdening the fulfillment of his federal and state statutory duties, including by creating confusion regarding whether the federal agencies claiming to act as VRAs have been properly designated as such in accordance with the NVRA and related Michigan statutory law.

100.    The SBA and VA's continued unlawful operation as VRAs have caused economic, financial, and political injury to the Plaintiffs, including by forcing them to allocate additional resources and misallocate their scarce resources in ways they otherwise would not have.

101.    There is an actual case and controversy between Plaintiffs and the SBA and VA.

102.    Plaintiffs will continue to suffer irreparable injuries as a direct result of the SBA and VA's continued operation as VRAs.

103.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against the SBA and VA and provide the following relief:

A.    A declaratory judgment that the SBA and VA are in violation of Section 7 of the NVRA;

B.    A preliminary and permanent injunction barring the SBA and VA from operating as VRAs without express authorization from the Michigan Legislature;

C.    An order declaring the designation of the SBA and VA as VRAs under ED 2023-6, the MOA, and MOU, and any future executive directives issued without legislative authorization is invalid;

D.    Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and

E.    All other further relief that Plaintiffs may be entitled to.

## COUNT III
## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT ("APA"), 5 U.S.C. § 704 BY THE SBA AND VA

104.    Plaintiffs reallege each of the prior allegations in this complaint.

105.    There is an actual case and controversy between Plaintiffs and the SBA and VA.

106.    The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6192282.v9

or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). Agency action is arbitrary and capricious if it is not the product of reasoned decision making. This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of the problem before it.

107. Because they were not properly designated as VRAs under Michigan law, the SBA's and VA's agreements to act as VRAs under Section 7 of the NVRA were "not in accordance with law" and "in excess of statutory … authority."

108. The SBA's and VA's agreements to act as VRAs were also arbitrary and capricious because the agencies did not adequately explain how their purported designations as VRAs satisfied the requirements of Section 7 of the NVRA.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against the SBA and VA and provide the following relief:

A. A declaratory judgment that the SBA and VA are in violation of the APA;

B. A preliminary and permanent injunction barring the SBA and VA from operating as VRAs without express authorization from the Michigan Legislature;

C. An order declaring the designation of the SBA and VA as VRAs under ED 2023-6, the MOA, and MOU, and any future executive directives issued without legislative authorization is invalid;

D. Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and

E. All other further relief that Plaintiffs may be entitled to.

Date: July 15, 2024

By: */s/ Jonathan B. Koch*
Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503
(616) 774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6192282.v9

By:   */s/ David A. Warrington*
David A. Warrington (*Admission Pending*)
Gary Lawkowski (*Admission Pending*)
DHILLON LAW GROUP
Co-Counsel for Plaintiffs
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6192282.v9