## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; MICHIGAN REPUBLICAN PARTY; and RYAN KIDD, in his official capacity as Clerk of Georgetown Township,<br><br>     Plaintiffs,<br><br>  v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor of Michigan; JOCELYN BENSON, in her official capacity as Michigan Secretary of State; JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections; U.S. SMALL BUSINESS ADMINISTRATION; ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration; DEPARTMENT OF VETERANS AFFAIRS; and DENIS McDONOUGH, in his official capacity as Secretary of Veterans Affairs<br><br>     Defendants. | CIVIL ACTION<br><br>Case No. 1:24-cv-720-PLM-SJB<br><br>Hon. Paul L. Maloney<br>Hon. Sally J. Berens<br><br>**VET VOICE FOUNDATION'S MOTION TO INTERVENE**<br><br>ORAL ARGUMENT REQUESTED |

Proposed Intervenor-Defendant Vet Voice Foundation ("Vet Voice") seeks to intervene as defendant in the above-captioned lawsuit to safeguard its and its subscribers and constituents' substantial and distinct legal interests, which will otherwise be inadequately represented. For the reasons discussed in the memorandum in support, filed herewith, Vet Voice is entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Vet Voice requests permissive intervention under Rule 24(b). In compliance with Rule 24(c), Vet Voice has filed a proposed Motion to Dismiss as Exhibit A to this motion.

Vet Voice respectfully requests that the Court set a schedule regarding this motion to intervene that allows for Vet Voice's participation in any future briefing or hearings. Otherwise,

Vet Voice's and its subscribers and constituents' fundamental rights are at risk of irreparable harm, as described more fully in the memorandum in support of this motion. At bottom, this lawsuit directly threatens the voter registration of veterans. Vet Voice is an organization that is dedicated to serving and enfranchising veterans. It is entitled to intervene in this action to represent their interests. In the alternative, permissive intervention is appropriate to ensure that these proceedings are not decided with their critical perspective.

Pursuant to Local Rule 7.1(d) and Section III(B) of this Court's Information and Guidelines for Civil Practice, counsel for Vet Voice conferred with counsel for Plaintiffs and Defendants about their positions on this motion on July 24, 2024. Plaintiffs oppose intervention. State Defendants neither concur with nor object to intervention. Federal Defendants indicated that they would determine their position on intervention after reviewing Vet Voice's as-filed intervention papers.

WHEREFORE, Vet Voice requests that the Court grant it leave to intervene in the above-captioned matter and to file its proposed motion to dismiss.

Dated: July 24, 2024.

Respectfully submitted,

/s/ *Sarah S. Prescott*
Sarah S. Prescott (P70510)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
sprescott@spplawyers.com

Aria C. Branch
Justin Baxenberg*
Mindy Johnson
Samuel T. Ward-Packard
ELIAS LAW GROUP LLP
250 Massachusetts Ave, NW, Suite 400
Washington, DC 20001
(202) 968-4490
abranch@elias.law
jbaxenberg@elias.law
mjohnson@elias.law
swardpackard@elias.law

*Counsel for Proposed Intervenor-Defendant*
*Vet Voice Foundation*

*Admission pending

## CERTIFICATE OF SERVICE

I certify that on this 24th day of July, 2024, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

/s/ *Sarah S. Prescott*
Sarah S. Prescott

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

REPUBLICAN NATIONAL COMMITTEE; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; MICHIGAN REPUBLICAN PARTY; and RYAN KIDD, in his official capacity as Clerk of Georgetown Township,

                    Plaintiffs,

    v.

GRETCHEN WHITMER, in her official capacity as Governor of Michigan; JOCELYN BENSON, in her official capacity as Michigan Secretary of State; JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections; U.S. SMALL BUSINESS ADMINISTRATION; ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration; DEPARTMENT OF VETERANS AFFAIRS; and DENIS McDONOUGH, in his official capacity as Secretary of Veterans Affairs,

                    Defendants.

CIVIL ACTION

Case No. 1:24-cv-720-PLM-SJB

Hon. Paul L. Maloney
Hon. Sally J. Berens

## VET VOICE FOUNDATION'S
## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.    Voter Registration Agencies under the NVRA and Michigan Law ................................... 2

    II.    Proposed Intervenor ................................................................................................ 3

ARGUMENT ..................................................................................................................... 4

    I.    Vet Voice is entitled to intervene as of right. .................................................... 4

        A.    The motion to intervene is timely. ..................................................... 5

        B.    Plaintiffs' claims threaten to impair the substantial interests of Vet Voice and its constituents. ..................................................................... 5

        C.    The existing parties may not adequately represent Vet Voice's interests. ............... 8

    II.    Alternatively, Vet Voice should be granted permissive intervention. ............................. 10

CONCLUSION ................................................................................................................. 11

## INTRODUCTION

This case aims to make it harder for veterans to register to vote just months before a presidential election. Accordingly, the justification for this motion to intervene is straightforward and uncontestable: veterans deserve a voice in how the case is resolved. Since 2023, Michigan has designated offices of the Department of Veterans Affairs ("VA") as "voter registration agencies" under the National Voter Registration Act ("NVRA"). In practice, that means anyone who applies for assistance at a VA office must be offered the opportunity to register to vote there. Because VA offices overwhelmingly serve veterans, so, too, does their designation as registration agencies— veterans now have an easy way to register at a location they were likely to visit for other purposes.

Plaintiffs inexplicably aim to end this arrangement. But their case is meritless: as explained in the Proposed Motion to Dismiss filed herewith, Ex. A, Plaintiffs lack a coherent theory of standing; the court lacks subject-matter jurisdiction over the state-law claim at the heart of Plaintiffs' case; and each of their three counts is subject to dismissal under Rule 12(b)(6). More importantly for present purposes, none of the Plaintiffs can claim to speak for veterans. Nor can any of the Defendants, all of whom are government officers or agencies with an array of official obligations. But Proposed Intervenor Vet Voice Foundation ("Vet Voice") can speak for veterans—that is why Vet Voice was founded, and that is what it does every single day. And this case threatens its substantial interests, including its ongoing effort to turn out as many veteran and active-duty military voters in Michigan as possible. To protect its interests, Vet Voice is entitled to intervene as of right under Rule 24(a)(2). Alternatively, Vet Voice respectfully requests that it be granted permissive intervention under Rule 24(b) to ensure that veterans are not deprived of a voice in this case.

## BACKGROUND

### I.   Voter Registration Agencies under the NVRA and Michigan Law

The NVRA is a federal law that requires states to provide simplified, voter-friendly systems for registering to vote. In enacting the NVRA, Congress aimed to increase access to the franchise by establishing "procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" and by making it "possible for Federal, State, and local governments to implement [the NVRA] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501(b)(1)–(2).

To further its pro-voter purposes, the NVRA requires states to designate state government offices that provide public assistance or disability services as voter registration agencies. *Id.* § 20506(a)(2). All designated offices in a state must offer the opportunity to register to vote with each application for service or assistance. *Id.* § 20506(a)(6). For instance, each person who applies for Medicaid at an office of the Michigan Department of Human Services must be offered the opportunity to register to vote.

The NVRA further requires that, "in addition to," the above state offices, a state must designate "other offices within the State as voter registration agencies." *Id.* § 20506(a)(3)(A). Those offices "may include" "[s]tate or local government offices" and "[f]ederal and nongovernmental offices, with the agreement of such offices." *Id.* § 20506(a)(3)(B). Federal agencies, in turn, are charged "to the greatest extent practicable" to "cooperate with the States in carrying out" the NVRA's mandate to designate voter registration agencies. *Id.* § 20506(b).

Shortly after the NVRA's 1994 enactment, the Michigan legislature enacted MCL § 168.509u, which delegates to the governor the authority to prepare a list of "the executive departments, state agencies, or other offices that will perform voter registration activities in this state." Then-Governor Engler subsequently issued Executive Order 1995-1, designating various

2

public-assistance offices as voter registration agencies and reserving the right to so designate "[a]ny other public office . . . by Executive Directive."

In May 2022, Governor Whitmer issued Executive Directive 2022-4, which noted that in the nearly three decades since Governor Engler's original designation, Michigan had witnessed "myriad changes to public assistance programs and programs that provide services to persons with disabilities, as well as to the offices that accept applications for and administer these programs." Yet no update to Michigan's NVRA designations had accompanied those changes. Accordingly, Governor Whitmer ordered a detailed examination of which Michigan offices should be designated registration agencies under the NVRA. In December 2023, Governor Whitmer acted on the results of the 2022 study by issuing Executive Directive 2023-6, which designated eight Michigan agencies voter registration agencies. In addition, and as is most relevant here, ED 2023-6 also designated the VA as a Michigan voter registration agency pursuant to an agreement between Michigan and the VA. Finally, in June 2024, Governor Whitmer issued Executive Directive 2024-3, designating the Small Business Administration as a registration agency.

## II.    Proposed Intervenor

Vet Voice Foundation is a nonpartisan nonprofit organization organized under section 501(c)(3) of the Internal Revenue Code. Ex. B, Decl. of Janessa Goldbeck ¶ 4 ("Goldbeck Decl."). Vet Voice's mission is to empower veterans across the country to become civic leaders and policy advocates. *Id.* ¶ 7. In particular, Vet Voice educates veterans on issues such as voting rights, disinformation, environmental protection, health care, and jobs. *Id.* Vet Voice has over 1.5 million subscribers across the country and nearly 127,000 in Michigan. *Id.* ¶¶ 5, 6. All its subscribers take affirmative steps to receive communications from Vet Voice. *Id.*

Increasing voter turnout among its subscribers, and among veterans and active-duty military voters more generally, is central to Vet Voice's mission: by turning out such voters, Vet

Voice builds its constituency's political power. *Id.* ¶ 9. To support its voter turnout work, Vet

Voice has built a first-of-its-kind military voter file—comprising veterans, activity-duty military,

and family—which includes over 357,000 Michigan voters. *Id.* ¶ 11. Vet Voice targets those voters

through its communications to ensure they are registered, informed about the issues, and turn out

to vote. *Id.* ¶¶ 12–13. This program is highly effective: For lower-propensity voters, engagement

by a Vet Voice volunteer makes it three times more likely that the voter will turn out to vote. *Id.*

¶ 12. Vet Voice plans to target approximately 70,000 Michigan voters as part of its 2024

mobilization effort. *Id.* ¶ 14.

Voter registration is fundamental to Vet Voice's work. It cannot effectively educate and

turn out Michiganders who are not registered because registration is a prerequisite to voting in

Michigan. *Id.* ¶ 16. And voter registration at VA offices is an invaluable tool for Vet Voice, its

subscribers, and its wider constituency of military and veteran voters. *Id.* ¶ 18. Most veterans

interact with the VA frequently, as do many active-duty servicemembers. *Id.* Michigan's decision

to offer voter registration at VA offices therefore gives veterans, their families, and many active-

duty servicemembers an easy and convenient option for registering to vote or updating a voter

registration. *Id.* And that option is particularly important for the many veterans who have service-

connected disabilities—30 percent of all veterans and 46 percent of post-September 11 veterans.

*Id.* ¶ 19. Such veterans generally visit VA facilities frequently and may face physical or other

barriers to registration. *Id.* The option to register at VA offices therefore makes the franchise much

more accessible for such veterans. *Id.*

## ARGUMENT

### I.    Vet Voice is entitled to intervene as of right.

"Under Federal Rule of Civil Procedure 24(a)(2), district courts must permit anyone to

intervene who, (1) in a timely motion, shows that (2) they have a substantial legal interest in the

case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties." *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767, 771 (6th Cir. 2022) (*"Wineries"*) (citation omitted). The Sixth Circuit instructs that "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). In election law cases, this is doubly true, "and for good reason—the right to vote 'is regarded as a fundamental political right, because [it is] preservative of all rights.'" *Serv. Emps. Int'l Union Loc. 1 v. Husted*, 515 F. App'x 539, 543 (6th Cir. 2013) (per curiam) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

###### A.   The motion to intervene is timely.

This motion is indisputably timely: It comes mere days after this suit was filed and before any substantive activity has occurred in the case. *See Priorities USA v. Benson*, 448 F. Supp. 3d 755, 763 (E.D. Mich. 2020) (suggesting that it would be "difficult to imagine a more timely intervention" than one filed within a few weeks of the complaint). Vet Voice seeks intervention to safeguard its and its subscribers and constituents' fundamental rights: a "legitimate" purpose, rendering the motion "timely in light of the stated purpose for intervening." *Kirsch v. Dean*, 733 F.App'x 268, 275 (6th Cir. 2018). And intervention will inflict no prejudice on the other parties: Vet Voice is prepared to follow any briefing schedule the Court sets and to participate in any future hearings or oral arguments, without delay.

###### B.   Plaintiffs' claims threaten to impair the substantial interests of Vet Voice and its constituents.

This case threatens Vet Voice's and its subscribers and constituents' substantial interests. The Sixth Circuit describes the requirement of an impaired interest as "rather expansive," *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and one that "is to be construed

liberally," *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). Thus, an intervenor need not have the standing necessary to initiate a lawsuit, nor must an intervenor identify a "specific legal or equitable interest." *Mich. State AFL–CIO*, 103 F.3d at 1245 (quoting *Purnell*, 925 F.2d at 948). Rather, the intervenor's burden of establishing impairment of a protectable interest is "minimal," *id.* at 1247, and the alleged impairment need only be possible, not certain, *see Purnell*, 925 F.2d at 948, with "close cases" resolved "in favor of recognizing an interest under Rule 24(a)," *Mich. State AFL-CIO*, 103 F.3d at 1247.

Vet Voice has three interests which this lawsuit threatens to impair.

*First*, Vet Voice's mission is to mobilize as many Michigan veterans and military voters as possible. Goldbeck Decl. ¶¶ 9–14. The relief Plaintiffs seek would deprive veterans of the option to register to vote in a convenient manner at VA offices they are likely to frequent for other reasons. *Id.* ¶¶ 18–19. Such relief would necessarily harm Vet Voice's ability to achieve its mission—it would decrease the number of registered veterans in Michigan and increase the barriers to registering voters going forward. *Id.* ¶ 20. Both effects would, in turn, decrease the degree to which Vet Voice is able to mobilize veterans to vote. *Id.* ¶ 21. Such an injury to mission has been held to constitute irreparable harm for purposes of a preliminary injunction, *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020)—a higher showing than is required for intervention.

*Second*, Vet Voice also has a substantial *representative* interest at stake: ensuring that its subscribers—and Michigan's veterans and military voters more generally—are able to register to vote. Goldbeck Decl. ¶ 21. A derivative interest in protecting members or constituents' access to the franchise is a well-established basis for intervention in NVRA litigation. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016) ("*Bellitto I*") (granting organization intervention of right); Op. & Order, *Judicial Watch, Inc. v. Ill. State Bd. of Elections*,

No. 24-cv-1867 (N.D. Ill. July 18, 2024), ECF No. 52 (same); *see also Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020) (granting organization permissive intervention); Order Granting Mot. to Intervene, *Daunt v. Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30 (same); Order Granting Mot. to Intervene, *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016), ECF No. 26 (granting voters permissive intervention). In *Bellitto I*, for example, the district court permitted a union with many members in Florida to intervene because "the interests of its members would be threatened by [any] court-ordered 'voter list maintenance' sought by Plaintiffs," a "potential harm" the court found "particularly great in light of the upcoming 2016 General Election." *Bellitto I*, 2016 WL 5118568, at *2. And just last week, in *Judicial Watch*, the district court granted two unions intervention as of right to oppose the purging of Illinois's voter rolls, explaining that all "Rule 24 requires is that Proposed Intervenors identify an interest that a favorable result for Plaintiffs would damage." *Judicial Watch*, No. 1:24-cv-1867, slip op. at *8.

Similarly, here, Vet Voice seeks to intervene because its subscribers and constituents will be harmed by elimination of a valuable avenue for voter registration just months before a general election. The Sixth Circuit has held that an organization's interest in preserving its members' access to the franchise creates Article III standing—again, a higher burden than that required to intervene as of right. *See Am. C.L. Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004) (holding that organization had standing where its members were "threatened with the imminent denial of their right to vote" and where preserving that right was "germane to the organization's purpose").

*Third*, Vet Voice will be forced to divert its scarce resources if Plaintiffs obtain the relief they seek. Goldbeck Decl. ¶ 21. Veterans who do not register at VA offices will have to register

somewhere else for Vet Voice to effectively mobilize them. And Vet Voice will need to devote additional resources to ensuring that they do—resources that could otherwise be directed toward Vet Voice's turnout efforts and issue advocacy. *Id.* As with the above interests, an organization's interest in avoiding impairment of its mission due to a need to divert resources satisfies the higher burden required for standing. *See, e.g.*, *Mia. Valley Fair Hous. Ctr. v. Metro Dev. LLC*, No. 2:16-cv-607, 2018 WL 1229841, at *3 (S.D. Ohio Mar. 7, 2018); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) ("[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."). That interest therefore more than suffices to make the minimal showing required here.

### C. The existing parties may not adequately represent Vet Voice's interests.

Vet Voice will not be assured adequate representation in this matter if it is denied intervention. "Rule 24(a) is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making that showing should be treated as minimal." *Wineries*, 41 F.4th at 774 (alteration accepted) (emphasis added by Sixth Circuit) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). "One is not required to show that the representation will in fact be inadequate." *Mich. State AFL-CIO*, 103 F.3d at 1247. Accordingly, courts are "liberal in finding" this requirement to be met because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1909 (3d ed. 2024).

Here, neither Plaintiffs nor Defendants are assured to adequately represent Vet Voice's interests. Just months before a federal election, Plaintiffs seek to eliminate veterans' option to register to vote at VA facilities. Vet Voice strongly opposes that result, which is directly contrary

to its interests. As to Defendants, although they are likely to oppose relief, it does not follow that they adequately represent Vet Voice's interests. To the contrary, in another NVRA case, "[t]he Sixth Circuit has recognized that the interests of election officials" are "sufficiently distinct from those of . . . their constituents to warrant intervention by those who could be impacted" by the relief sought. *Winfrey*, 463 F. Supp. 3d at 799 (citing *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018)). As the state officials who administer Michigan's elections, Secretary Benson and Director Brater are charged with "protecting electoral integrity." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019) ("*Bellitto II*"). In contrast, Vet Voice has "[t]he mission and interest . . . explicitly to pursue the second of the expressly recognized interests that motivated Congress to enact [the NVRA]," *Winfrey*, 463 F. Supp. 3d at 801, *i.e.*, to eliminate "barriers to registration and voting," *Bellitto II*, 935 F.3d at 1198. Because this goal "naturally create[s] some tension" with Defendants' administrative obligations, *id.*, Defendants' representation of Vet Voice cannot be presumed to be adequate. *See also Judicial Watch*, No. 1:24-cv-01867, slip op. at *9 ("The State Board's execution of its duties may be in tension with Proposed Intervenors' interests.").

Just two terms ago, the Supreme Court made clear that state executive officers will not often be adequate representatives for partisan or private actors who seek to intervene under Rule 24. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 194–97 (2022). In *Berger*, the Supreme Court reiterated its longstanding instruction that even when state agents pursue "related" interests to political actors, those interests are not properly considered "identical." *Id.* at 2204 (quoting *Trbovich*, 404 U.S. at 538–39). The Court then explained that "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Id.* (quoting Wright & Miller, *supra*, § 1909).

None of the named Defendants' interests are "identical" to Vet Voice, because none is a nonprofit veterans advocacy organization.

Nor can the VA's representation of Vet Voice be assumed to be adequate just because its overarching mandate is to provide services to veterans. Part of Vet Voice's work is to lobby the VA, hold it to account, and shape its policy. Goldbeck Decl. ¶ 8. Vet Voice represents the veterans who seek services from the VA; the VA provides those services. As the Supreme Court recognized over 50 years ago, providing services and representing those seeking services are distinct roles. *Trbovich*, 404 U.S. at 538–39 ("Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, the union member may have a valid complaint about the performance of 'his lawyer.'"). Just as the Secretary of Labor cannot be assumed always to represent the interests of each individual union member, the VA cannot be assumed to represent the interests of each individual veteran. *Id.*

## II.    Alternatively, Vet Voice should be granted permissive intervention.

Permissive intervention is warranted under Rule 24(b). "Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA*, 448 F. Supp. 3d at 759–60 (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The interest of an intervenor, for the purposes of permissive intervention, needs only to be "different" from the defendants, regardless of whether it is "substantial." *League of Women Voters of Mich.*, 902 F.3d at 579.

Vet Voice easily meets these requirements. First, the motion is timely, and intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See supra* Section I.B. Second, its interests plainly are different from those of existing litigants. No existing Plaintiff or Defendant is a nonprofit veterans' advocacy organization, nor do the existing parties share any of Vet Voice's substantive voter education goals or resource-diversion concerns. *See supra* Section I.C. And Vet Voice will raise common questions of law in opposing Plaintiffs' suit—in particular, whether the relief Plaintiffs seek is available in federal court at all.

The Court also has good reason to exercise its discretion to grant the motion. Plaintiffs seek sweeping judicial intervention in Michigan's voter registration regime in an election year. In adjudicating Plaintiffs' claims, the Court will benefit from hearing from the voters, particularly veterans—the ones who will be most directly affected by the case's resolution. Each time this nation goes to the polls, it exercises rights that veterans have sacrificed to uphold. Goldbeck Decl. ¶ 22. Michigan has made the wise choice to make it easier for those who have rendered honorable service to vote. This Court should exercise its discretion to give them a voice in this litigation.

## CONCLUSION

For the foregoing reasons, Vet Voice respectfully requests that this Court grant its motion to intervene.

Dated: July 24, 2024.                    Respectfully submitted,

                                          /s/ *Sarah S. Prescott*
Sarah S. Prescott (P70510)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
sprescott@spplawyers.com

Aria C. Branch
Justin Baxenberg*
Mindy Johnson
Samuel T. Ward-Packard
ELIAS LAW GROUP LLP
250 Massachusetts Ave, NW, Suite 400
Washington, DC 20001
(202) 968-4490
abranch@elias.law
jbaxenberg@elias.law
mjohnson@elias.law
swardpackard@elias.law

*Counsel for Proposed Intervenor-Defendant Vet Voice Foundation*

*Admission pending

12

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with LCivR 7.3(b)(i)'s word limit. From Introduction through Conclusion, this brief contains 3,521 words as measured by Microsoft Word.

/s/ *Sarah S. Prescott*　　　　　　
Sarah S. Prescott

## CERTIFICATE OF SERVICE

I certify that on this 24th day of July, 2024, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

/s/ *Sarah S. Prescott*　　　　　　
Sarah S. Prescott