# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; MICHIGAN REPUBLICAN PARTY; and RYAN KIDD, in his official capacity as Clerk of Georgetown Township, <br><br> Plaintiffs, <br><br> v. <br><br> GRETCHEN WHITMER, in her official capacity as Governor of Michigan; JOCELYN BENSON, in her official capacity as Michigan Secretary of State; JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections; U.S. SMALL BUSINESS ADMINISTRATION; ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration; DEPARTMENT OF VETERANS AFFAIRS; and DENIS McDONOUGH, in his official capacity as Secretary of Veterans Affairs, <br><br> Defendants. | CIVIL ACTION <br><br> Case No. 1:24-cv-720-PLM-SJB <br><br> Hon. Paul L. Maloney <br> Hon. Sally J. Berens <br><br> **VET VOICE FOUNDATION'S [PROPOSED] MOTION TO DISMISS** <br><br> ORAL ARGUMENT REQUESTED |

Proposed Intervenor-Defendant Vet Voice Foundation moves to dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 19(b). Plaintiffs lack Article III standing to bring their claims, the Court lacks subject matter jurisdiction to enforce state law against state officials, the State Defendants are necessary parties absent which Rule 19 requires dismissal, and all three counts fail as a matter of law. The reasons to grant the motion to dismiss are set forth in more detail in the accompanying brief.

WHEREFORE, Vet Voice respectfully requests that the Court dismiss this action in its entirety with prejudice and award any other relief that the Court deems appropriate in the circumstances.

Dated: July 24, 2024.                    Respectfully submitted,

/s/ *Sarah S. Prescott*
Sarah S. Prescott (P70510)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
sprescott@spplawyers.com

Aria C. Branch
Justin Baxenberg*
Mindy Johnson
Samuel T. Ward-Packard
ELIAS LAW GROUP LLP
250 Massachusetts Ave, NW, Suite 400
Washington, DC 20001
(202) 968-4490
abranch@elias.law
jbaxenberg@elias.law
mjohnson@elias.law
swardpackard@elias.law

*Counsel for Proposed Intervenor-Defendant
Vet Voice Foundation*

*Admission pending

**CERTIFICATE OF SERVICE**

I certify that on this 24th day of July, 2024, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

/s/ *Sarah S. Prescott*
Sarah S. Prescott

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; MICHIGAN REPUBLICAN PARTY; and RYAN KIDD, in his official capacity as Clerk of Georgetown Township,<br><br>     Plaintiffs,<br><br> v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor of Michigan; JOCELYN BENSON, in her official capacity as Michigan Secretary of State; JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections; U.S. SMALL BUSINESS ADMINISTRATION; ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration; DEPARTMENT OF VETERANS AFFAIRS; and DENIS McDONOUGH, in his official capacity as Secretary of Veterans Affairs,<br><br>     Defendants. | CIVIL ACTION<br><br>Case No. 1:24-cv-720-PLM-SJB<br><br>Hon. Paul L. Maloney<br>Hon. Sally J. Berens |

## VET VOICE FOUNDATION'S
## MEMORANDUM IN SUPPORT OF [PROPOSED] MOTION TO DISMISS

### ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

LEGAL STANDARDS ......................................................................................... 4

ARGUMENT ....................................................................................................... 5

   I.    Plaintiffs lack Article III standing ..................................................................... 5

        A.    The RNC, Donald J. Trump for President 2024, Inc., and the Michigan Republican Party have not alleged any cognizable injury in fact. ........................... 6

        B.    Plaintiff Ryan Kidd lacks a cognizable injury in fact. ............................... 8

   II.    The Eleventh Amendment bars this Court from exercising jurisdiction over the State Defendants, and Rule 19(b) consequently requires dismissal of the entire action. .......... 10

        A.    This Court lacks jurisdiction over the State Defendants. ......................... 10

        B.    Because State Defendants are required parties who cannot be joined, the entire action must be dismissed. ....................................................... 11

   III.    Each count of the Complaint fails to state a claim upon which relief can be granted. ..... 12

        A.    Count I fails to state a claim under Michigan law. .................................. 12

        B.    Count II fails to state a claim under the National Voter Registration Act. .............. 13

        C.    Count III fails to state a claim under the Administrative Procedures Act. .............. 17

CONCLUSION .................................................................................................. 18

# INTRODUCTION

Through this lawsuit, the Republican National Committee, Donald J. Trump for President 2024, Inc., the Michigan Republican Party, and Ryan Kidd ("Plaintiffs"), seek to make it more difficult for veterans and small business owners to register to vote. Section 7 of the National Voter Registration Act directs states to designate various offices, including (with their agreement) Federal offices, as voter registration agencies at which voters can obtain voter registration forms, receive assistance with registration paperwork, and submit completed forms. 52 U.S.C. § 20506. Consistent with this directive, Michigan's Secretary of State entered into agreements with the U.S. Small Business Administration ("SBA") and the Department of Veterans Affairs ("VA") to make it easier for Michiganders visiting VA and SBA offices to participate in the democratic process. These agreements do not in any way change the substantive requirements for registering to vote; they make the registration process simpler and more convenient for veterans who have served their country and entrepreneurs who are the engine of its economy.

Rather than celebrating Michigan's effort to encourage voter registration, Plaintiffs have sued to stop it. But their meritless Complaint should be dismissed. First, this Court lacks subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Plaintiffs lack standing to challenge the agreements between Michigan and the VA and SBA because the designation of voter registration agencies at those offices in no way injures them. Moreover, this Court lacks jurisdiction over Plaintiffs' Count I because the Eleventh Amendment bars it from considering Plaintiffs' state-law claim against the State Defendants. But if the State Defendants are dismissed from the case—and they must be under the Eleventh Amendment—then they cannot protect the Michigan's interest in the designations of the SBA and the VA as voter registration agencies, and the entire action must therefore be dismissed. Fed. R. Civ. P. 19; *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) (because "[a] case may not proceed when a required-entity sovereign is not

1

amenable to suit," the entire action must be dismissed). Alternatively, even if this Court has jurisdiction, each of Plaintiffs' three claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

In 1993, Congress passed the National Voter Registration Act "to establish procedures that will increase the number of eligible citizens who register to vote." 52 U.S.C. § 20501. In enacting the NVRA, Congress recognized that "the right of citizens of the United States to vote is a fundamental right" and that "[i]t is the duty of the Federal, State, and local governments to promote the exercise of that right." *Id.* Section 7 of the NVRA, codified at 52 U.S.C. § 20506, expands opportunities for citizens to register to vote by directing states to designate "all offices in the State that provide public assistance" and "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities" as voter registration agencies. 52 U.S.C. § 20506. States also are directed to designate other offices, including "Federal and nongovernmental offices, with the agreement of such offices." *Id.* Federal entities in turn must, "to the greatest extent practicable, cooperate with the States in carrying out" these responsibilities. *Id.*

Voter registration agencies are required to offer certain services, including distribution of mail voter registration application forms; assistance in completing voter registration application forms; and acceptance (and subsequent transmittal to the appropriate official) of completed forms. *Id.* The individuals providing these services are strictly prohibited from partisan activities and from conditioning other services or benefits on either registering or not registering to vote. *Id.*

In early January 1995, shortly after Congress enacted the NVRA, the Michigan Legislature enacted a law providing that "[n]ot later than the thirtieth day after the effective date of this section, the governor shall provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state." MCL

§ 168.509u. The then-governor complied with this mandate, issuing an Executive Order designating several categories of offices, including "[a]ny other public office . . . which the Governor may from time-to-time designate by Executive Directive." Mich. E.O. No. 1995-1 ("EO 1995-1")[1].

Consistent with Section 7 of the NVRA, President Biden in 2021 directed federal agencies to partner with state officials to promote voter registration and voter participation, and specifically to agree to state requests to designate voter registration agencies. Compl. ¶¶ 60–61, PageID.12–13. In May 2022, Governor Whitmer determined that because Michigan had not updated its list of voter registration agencies since 1995 despite "myriad changes to public assistance programs and programs that provide services to persons with disabilities, as well as to the offices that accept applications for and administer these programs," the state would undertake a comprehensive review of which offices should be so designated. Executive Directive 2022-4.[2] That review ultimately led to voter registration agency agreements between the Michigan Department of State and the VA and SBA and their designation via Executive Directives 2023-6[3] and 2024-3.[4]

Plaintiffs now seek to invalidate those agreements and so deprive veterans and small business owners of a convenient option for registering to vote. But their vehicle is fatally flawed: they have brought a *federal* lawsuit premised on the claims that *Michigan* officials violated

---

[1] *Available at* https://www.legislature.mi.gov/documents/1995-1996/executiveorder/archive/1995-EO-01.htm.

[2] *Available at* https://www.michigan.gov/whitmer/news/state-orders-and-directives/2022/05/01/executive-directive-2022-4.

[3] *Available at* https://www.michigan.gov/whitmer/-/media/Project/Websites/Whitmer/Documents/Exec-Directives/ED-20236-signed.pdf?rev=a2278328062d4fb7823a8713eca6575c&hash=7A1E593F41B2E960FCE3B81A0404CDEC.

[4] *Available at* https://www.michigan.gov/whitmer/-/media/Project/Websites/Whitmer/Documents/Exec-Directives/ED-20243-signed.pdf?rev=1600c3de9ee74cc493c70467e5f4395b&hash=6CD97BD63A77223D008E1A30CC5CBE56.

*Michigan* law when they designated the VA and SBA as voter registration agencies. For the reasons set forth herein, this suit must be dismissed.

## LEGAL STANDARDS

Three primary legal standards are relevant to the Court's adjudication of this motion. First, under Federal Rule of Civil Procedure 12(b)(1), when a motion challenges "the sufficiency of the pleading itself" with respect to subject-matter jurisdiction, a court assesses whether, taking "the allegations of the complaint as true," the complaint validly states "a basis for subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

Second, under Federal Rule of Civil Procedure 19(b), if a required party cannot be sued in federal court, the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," considering factors including "the extent to which a judgment rendered in [the party's] absence might prejudice" that party or other parties and "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

Finally, under Federal Rule of Civil Procedure 12(b)(6), a count must be dismissed for failure to state a claim unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). While a court presumes that all well-pleaded material allegations in the complaint are true, *see Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).

**ARGUMENT**

Plaintiffs' Complaint is defective from beginning to end. First, Plaintiffs lack standing because they have not alleged any cognizable injury. Plaintiffs are not injured by Defendants' efforts to make it easier for eligible citizens to register to vote. Second, Plaintiffs' Count I alleges a claim against state officials for violations of state law, but under the U.S. Constitution and settled Supreme Court precedent such claims cannot be adjudicated in federal court—and, under Rule 19, neither can the dependent claims against the Federal Defendants. Third, Plaintiffs' Count II alleges a claim under the NVRA against the VA, the SBA, and those agencies' heads, but there is no private right of action under the NVRA to sue federal agencies or officials, and nothing in the NVRA prohibits those agencies from acquiescing to Michigan's designations. Finally, Plaintiffs' Count III alleges that the agencies violated the Administrative Procedures Act by failing to explain how the designations satisfied the requirements of the NVRA, but the agencies in fact *did* provide such an explanation.

**I.      Plaintiffs lack Article III standing.**

Federal court jurisdiction is limited to actual "cases" and "controversies," U.S. Const. Art. III, § 2, cl. 1, and Plaintiffs fail to clear that bar because they do not allege a cognizable injury in fact. To establish Article III standing, a plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Absent this "irreducible constitutional minimum," a plaintiff has no right to invoke federal jurisdiction. *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

An "'injury in fact'" is "an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S.

at 560 (cleaned up). Plaintiffs' purported injuries, as alleged in their Complaint, do not satisfy any of these standards: they are abstract, generalized, remote, and entirely conjectural. The Complaint should therefore be dismissed in its entirety.

### A. The RNC, Donald J. Trump for President 2024, Inc., and the Michigan Republican Party have not alleged any cognizable injury in fact.

Plaintiffs lack any right to enlist this Court in their anti-democratic effort to make it more difficult for veterans and others to register to vote. The organizational Plaintiffs are not injured in any way by Defendants' designation of VA and SBA offices as voter registration agencies. And their generalized interest in enforcing compliance with the law is not cognizable under Article III.

In *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*Alliance*"), decided just over a month ago, the Supreme Court confirmed that a plaintiff organization may not invoke federal jurisdiction when, as here, its only purpose in doing so is to make it more difficult for others to obtain some benefit. In *Alliance*, "pro-life doctors and associations" sued the FDA under the Administrative Procedures Act but did not allege that the FDA was "requiring them to do or refrain from doing anything." *Id.* at 372–74. Rather, the plaintiffs wanted the FDA to make the drug mifepristone "more difficult for other doctors to prescribe and for pregnant women to obtain." *Id.* at 374. The Court explained that "a plaintiff's desire to make a drug less available *for others* does not establish standing to sue." *Id.* The same principle applies here. *Alliance* confirms that the organizational Plaintiffs lack standing: they do not allege that any Defendant is "requiring them to do or refrain from doing anything," and their desire to make voter registration "less available *for others*"—particularly veterans—"does not establish standing to sue." *Id.* at 372–74.

The organizational Plaintiffs attempt to cast their purported injuries in more favorable terms, but those attempts fail. For example, the RNC and MRP claim shared "interests in ensuring

that they and their candidates compete for votes in a lawfully structured competitive environment." Compl. ¶ 17, PageID.5. But they do not allege a true competitive injury—they never claim (nor could they) that registration at VA or SBA offices somehow unfairly tilts the electoral playing field against them. *See, e.g.*, *Republican Nat'l Comm. v. Burgess*, No. 3:24-CV-00198-MMD-CLB, 2024 WL 3445254, at *3 (D. Nev. July 17, 2024) ("[It] was not the mere illegality of the competitive environment but instead the resultant unfair disadvantage from that illegality which constituted an injury in fact."). At bottom, their interest is entirely abstract, and therefore not cognizable in this Court. The federal courts are not a "vehicle for the vindication of the value interests of concerned bystanders." *Allen v. Wright*, 468 U.S. 737, 756 (1984) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

The RNC and MRP also allege that Defendants' designation of voter registration agencies "undermines the integrity of elections by increasing the opportunity for individuals to register to vote even though they are ineligible to do so." Compl. ¶ 18, PageID.5. Yet Plaintiffs do not allege that *substantively ineligible* voters are registering at VA and SBA offices, nor do they allege that ineligible voters are more likely to register at VA and SBA offices than elsewhere. Their theory appears to be that any action that encourages voter registration undermines the integrity of elections, but that theory is both untenable and unsupported. This unsubstantiated "fear" of unlawful voting is precisely the sort of "psychic injury [that] falls well short of a concrete harm needed to establish Article III standing." *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 415 (6th Cir. 2021); *cf. Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 619–20 (2007) (Scalia, J., concurring) (recognizing that a plaintiff whose only injury is subjective mental angst "lacks a concrete and particularized injury" under Article III). And to the extent that Plaintiffs' objection to the use of VA offices for voter registration is purely *procedural*, based on

their theory that such offices have not properly been authorized to process registrations, that cannot constitute an injury in fact. *Alliance*, 602 U.S. at 381 ("[A] citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally.").

Finally, the RNC and MRP claim that Defendants' designations are "sowing confusion." Compl. ¶ 18, PageID.5. But that allegation is hypothetical and conclusory. Plaintiffs do not identify any specific person who is allegedly confused. Nor is the status quo in fact confusing: VA and SBA offices are simply processing voter registrations just like other registration agencies in Michigan.[5] In sum, the RNC and MRP plainly lack an injury in fact. As for the Trump Campaign, Plaintiffs assert that it "has the same interests in this case as the RNC" without providing further specifics. *Id.* ¶ 20, PageID.5. Those interests fail to give rise to an injury in fact for all the same reasons.

### B.    Plaintiff Ryan Kidd has not alleged a cognizable injury in fact.

The individual Plaintiff, the elected clerk of Georgetown Township, also lacks standing to sue in federal court. Like the organizational Plaintiffs, the clerk lacks a cognizable injury in fact. While Michigan law requires the clerk to receive completed, processed voter registrations made at VA and SBA offices, the clerk substantially overstates his role in that process. *See id.* ¶ 22, PageID.6 Although he implies that he is responsible for substantively assessing whether such

---

[5] The RNC and MRP purport to have standing on behalf of their members as well as in their own right. Compl. ¶¶ 17, 21, PageID.5. Although "it is common ground" that "organizations can assert the standing of their members," *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009), neither party committee makes the requisite allegations to do so here. In particular, to plead membership-based standing under *Summers*, an organization must allege that that it has members and specifically articulate how they are injured by the challenged provision. Neither party committee satisfies that standard. *See* Compl. ¶¶ 15–24, PageID.4–6. The RNC alleges that it has only three members in Michigan, all of whom are already registered to vote. *Id.* ¶ 15, PageID.4. And the MRP does not even squarely allege that it has members—let alone provide any information about who these members are or what injury they might suffer.

registrations are valid, *see id.*, he plainly lacks any such authority under the statute's unambiguous text. Rather, under Section 168.509w, the substantive validation of each voter registration application occurs at the "designated voter registration agency" itself. MCL § 168.509w(1). A city or township clerk's only role under the statute is to receive the already-validated application when it is transmitted by the processing agency. *Id.* § 168.509w(2). The clerk is therefore wrong to claim that under Section 168.509w he has "'a designated role to play in the interpretation and enforcement of' state election law." Compl. ¶ 22, PageID.6 (quoting *Voting for Am. Inc. v. Andrade*, 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012)). Section 168.509w leaves him nothing to interpret or enforce. His only duty of any sort is a purely clerical and automatic one: to *receive* an already-validated application. Accordingly, he does not need "a declaration" to "guide his future conduct." The clerk's interest in this case amounts to a request for an advisory opinion. As the Supreme Court "explained to President George Washington in 1793 . . . federal courts do not issue advisory opinions about the law—even when requested by the President." *Alliance*, 602 U.S. at 378–79.

Plaintiffs' citation to *Republican National Committee v. Benson*, No. 24-41 (Mich. Ct. Claims June 12, 2024), does not save the clerk's standing. *See* Compl. ¶ 23, PageID.6. That case analyzed standing under Michigan state law, which, as of 2010, is a "limited, prudential doctrine" that is far less demanding than its federal counterpart. *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 487 Mich. 349, 372, 792 N.W.2d 686 (2010). In particular, under Michigan standing doctrine post–*Lansing Schools*, "a litigant has standing whenever there is a legal cause of action," and any litigant who meets the requirements of the declaratory judgments rule in MCR 2.605 also has standing "to seek a declaratory judgment." *Id. Republican National Committee* concerned a

request for a declaratory judgment, slip op. at *5, so its application of Michigan's relaxed standing requirements does not, without more, support invoking this Court's jurisdiction.

**II.** **The Eleventh Amendment bars this Court from exercising jurisdiction over the State Defendants, and Rule 19(b) consequently requires dismissal of the entire action.**

    **A.** **This Court lacks jurisdiction over the State Defendants.**

Even if Plaintiffs had standing, the Eleventh Amendment bars this Court's exercise of judicial power to issue Plaintiffs' requested relief on Count I. Under the *Pennhurst* doctrine, a federal court cannot order state officials to conform their conduct to state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The Supreme Court's *Pennhurst* line of cases explains that "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–41 (2002) (citing *Pennhurst*, 465 U.S. at 120). As state officials sued in their official capacities, the Governor, Secretary of State, and Elections Director are indisputably shielded by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 117 ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself."). Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106.

When analyzing Eleventh Amendment immunity, a "federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121. Here, Count I is expressly pleaded as a state law claim, *see* Compl. at 16, PageID.16 ("Violation of Michigan Law by State Defendants"), and is squarely foreclosed by the Eleventh Amendment. That Plaintiffs' other claims include federal causes of action does not change the analysis. *Pennhurst* itself expressly rejected the "erroneous view" that "once

10

jurisdiction is established on the basis of a federal question, no further Eleventh Amendment inquiry is necessary with respect to other claims raised in the case." 465 U.S. at 119. As a result, dismissal of Count I is appropriate even if the other claims proceed because "federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520–21 (6th Cir. 2007).

Because the Eleventh Amendment bars this Court from awarding the relief Plaintiffs seek under Count I, and because there are no other claims against the State Defendants, Governor Whitmer, Secretary Benson, and Director Brater should be promptly dismissed from this lawsuit.

**B.      Because State Defendants are required parties who cannot be joined, the entire action must be dismissed.**

Where a party has been dismissed for lack of subject matter jurisdiction but nonetheless "claims an interest relating to the subject of the action and is so situated that disposing of the action" in their absence may "impair or impede" their "ability to protect the interest," the Court must determine whether the action can proceed in that party's absence. Fed. R. Civ. P. 19. Although Rule 19 does not always require dismissal, the Supreme Court has recognized that "where sovereign immunity is asserted . . . dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Republic of Philippines*, 553 U.S. at 867.

Here, the sole substantive claim is that Michigan officials failed to comply with Michigan law, but this court is barred by the Eleventh Amendment from maintaining jurisdiction over State Defendants on that claim. *See supra* II.A. The relief sought against the federal officials and agencies would have the effect of invalidating the state's designation of the SBA and the VA as voter registration agencies. Because Michigan cannot protect its interest in that designation without

11

participating in the case, the State Defendants are required parties that cannot feasibly be joined. Fed. R. Civ. P. 19(b). And because "[a] case may not proceed when a required-entity sovereign is not amenable to suit," *Republic of Philippines*, 553 U.S. at 867, the entire action must be dismissed. Although full dismissal "when the plaintiff has no alternative remedy may be a harsh result, courts do so when a necessary party cannot be joined because of sovereign immunity." *Webb v. City of Tempe*, No. CV-16-03136-PHX-DGC, 2017 WL 1233827, at *5 (D. Ariz. Apr. 4, 2017), *aff'd*, 703 F. App'x 539 (9th Cir. 2017).[6]

**III.     Each count of the Complaint fails to state a claim upon which relief can be granted.**

    **A.     Count I fails to state a claim under Michigan law.**

Governor Whitmer's designation of VA and SBA offices as voter registration agencies is entirely consistent with her authority under Michigan law. By statute, Michigan expressly delegates the authority to designate specific agencies as voter registration agencies to the governor. MCL § 168.509u(1) ("Not later than the thirtieth day after the effective date of this section, the governor shall provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state."). Nothing in Section 509u prohibits designations of voter registration offices made after the 30-day deadline; it requires that the Governor provide "a list" by that deadline, but does not by its terms restrict the Governor from modifying or even replacing that list at a later date.

But even if Plaintiffs' interpretation of Section 509(u) is correct, Governor Whitmer still possessed the authority to designate VA and SBA offices as voter registration agencies. As Plaintiffs acknowledge, "[i]n January 1995, Governor Engler complied with that statutory directive by issuing Executive Order 1995-1." Compl. ¶ 53, PageID.11. EO 1995-1 reserves to the governor

---

[6] Plaintiffs may attempt to overcome sovereign immunity in state court.

the right to designate future public offices. It states: "[T]he following offices are hereby designated to accept applications for voter registration" and lists "[a]ny other public office, whether or not specified by PL 103-31, which the Governor may from time to time designate by Executive Directive." EO 1995-1. Plaintiffs assert that "Executive *Directives* do not have the force and effect of law and are not subject to Legislative review." Compl. ¶ 57, PageID.12. But EO 1995-1 was not an Executive Directive; it was an Executive Order. And Executive Orders related to State functions have the force of law unless expressly disavowed by the Legislature. Mich. Const. art. V, § 2; *see In re Certified Questions from U.S. Dist. Ct., W. Dist. of Mich., S. Div.*, 506 Mich. 332, 343 n.6, 958 N.W.2d 1 (2020); *Whitmer v. Bd. of State Canvassers*, 508 Mich. 980, 966 N.W.2d 21, 22 (2021) (Welch, J., concurring). As a matter of Michigan law, therefore, EO 1995-1 allows governors to "designate by Executive Directive" "any other public office" "to accept applications for voter registration" as a Section 509(u) voter registration agency. That is exactly what Governor Whitmer did when she issued Executive Directives 2023-6 and 2024-3, rendering the voter registration agency designations made in those Directives valid as a matter of state law.

Because Plaintiffs have failed to allege a cognizable violation of Michigan law, this Court should dismiss Count I under Rule 12(b)(6).

### B. Count II fails to state a claim under the National Voter Registration Act.

Plaintiffs fail to state a claim under the NVRA for two independently sufficient reasons: the NVRA's private cause of action does not reach the Federal Defendants, and Plaintiffs have failed to allege any actionable violation of the NVRA by either agency.

*First*, the NVRA's private right of action does not extend to federal officials or agencies at all. *See* 52 U.S.C. § 20510(b). It therefore does not extend to the only Defendants that Plaintiffs have pleaded their NVRA claim against: the VA and its secretary and the SBA and its administrator. *See* Compl. ¶¶ 89–103, PageID.18–20.

13

That the NVRA's right of action does not reach such officials is clear from its plain text. *See* 52 U.S.C. § 20510(b)(1)–(3). For actions brought more than 30 days before an election for federal office, the person aggrieved must make "written notice of the violation *to the chief election official of the State involved.*" *Id.* (emphasis added). For actions brought within 30 days of an election for federal office, the aggrieved person is excused from providing notice "*to the chief election official of the State.*" *Id.* (emphasis added). In either case, the statute plainly contemplates only actions against states or state officials. The NVRA only mentions federal officials in the context of enforcement—subsection (a) authorizes the Attorney General to bring actions under the NVRA. 52 U.S.C. § 20510(a). "The preeminent canon of statutory interpretation requires [courts] to 'presume that the legislature says in a statute what it means and means in a statute what it says.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). If Congress had meant to make the federal government a defendant in NVRA actions, not just its enforcer, the private right of action statute would say so. It plainly does not. Because Plaintiffs lack a valid cause of action for Count II, it should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).[7]

*Second*, Plaintiffs have not alleged an actionable violation of the NVRA by the Federal Defendants, a defect which provides a separate basis to dismiss Count II. No provision of the NVRA imposes any relevant substantive duties on the VA or its secretary, or on the SBA or its administrator. Those Defendants therefore cannot have violated the NVRA.

---

[7] Vet Voice has not been able to identify a single case in the three decades since the NVRA's enactment in which a federal court enforced the NVRA's substantive provisions against a federal agency. This further confirms that the NVRA's private right of action does not reach the VA or SBA.

Instead of alleging that the Federal Defendants have violated any specific provision of the NVRA, the pivotal allegation in Count II is that "the SBA and VA have violated, and unless enjoined, will continue to violate *the election laws of the State of Michigan* related to the designation of VRAs." Compl. ¶ 96, PageID.19 (emphasis added). Of course, as federal agencies, the SBA and VA are not subject to the laws of the State of Michigan. *McCulloch v. Maryland*, 17 U.S. 316, 431 (1819). Nor is there any indication that a violation of state law can give rise to a claim under the NVRA, a federal law. Count II thus fails to plead a claim.

And in any case, nothing in the NVRA imposes any relevant substantive obligation on the Federal Defendants, so Plaintiffs could not have pleaded an NVRA claim even had they tried. The provision most directly implicated here, Section 7, imposes obligations on *states* to designate voter registration agencies. 52 U.S.C. § 20506. It mentions federal agencies only twice. First, subsection (a)(3)(B)(ii) indicates that states may designate "federal and nongovernmental offices" as voter registration agencies "with the agreement of such offices." Second, subsection (b) indicates that all "departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out subsection (a)."

Neither of these provisions could anchor Plaintiffs' NVRA claim. The first imposes no substantive obligation on federal agencies at all—it merely indicates that a *state* must obtain a federal agency's agreement to designate its offices as voter registration agencies. The second provision, at most, imposes an obligation on a federal agency to "cooperate" in good faith and to the extent "practicable" with a state's desire to designate that agency as a voter registration agency. But Plaintiffs do not allege that either agency has failed to cooperate with the state in carrying out subsection (a). Instead, they argue that the agencies cannot operate as designated voter registration agencies because they were not properly designated under state law. But nothing in the NVRA

*prohibits* agencies from operating as voter registration agencies unless a state has followed a particular state-law designation procedure. There is therefore no plausible claim that either agency has violated the NVRA.

Other provisions of the NVRA confirm that its substantive requirements generally apply to the states and not to the federal government. For example, NVRA Section 11 requires each "State" to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. The NVRA imposes no such requirement on the federal government or any federal agency. And NVRA Section 4 provides a carveout for states that satisfy certain criteria from the NVRA's coverage, exempting them from suit. *Id.* § 20503. Again, these provisions do not mention the federal government, federal agencies, or any federal official. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Here, the particular language of the NVRA's private right of action, the surrounding language in other sections of the statute, and design of the statute as a whole are all in accord: the NVRA imposes duties on states and state officials and authorizes suits against them—not against federal agencies or their officials.[8]

In sum, Count II should be dismissed for failure to state a claim. Plaintiffs lack a valid private right of action under the NVRA to sue federal agencies and officers. And Plaintiffs have not pleaded a plausible claim for relief against the federal officials under the NVRA—both because they fail to allege any specific substantive violation of the NVRA on the part of the Federal

---

[8] Other than the command that federal agencies cooperate with States with respect to VRA designations, the only exception is § 20508, which requires the Election Assistance Commission to develop a mail registration form and to provide information to Congress and to the States.

Defendants and because the NVRA imposes no remotely relevant substantive duty on those Defendants.

### C. Count III fails to state a claim under the Administrative Procedures Act.

Plaintiffs' argument that the SBA and VA's agreements to act as voter registration agencies were "not in accordance with law" and "in excess of statutory authority" fails. To the contrary, both agencies are authorized to enter into agreements with state governments to facilitate voter registration—and indeed are strongly encouraged to do so. 52 U.S.C. § 20506(b). The NVRA does not provide any substantive criteria for deciding whether to cooperate with a state's designation beyond whether doing so is "practicable." In particular, the NVRA does not in any way suggest that an agency, before agreeing to cooperate with a designation, must independently assess whether a state is complying with its own laws related to such designation.

Instead, the NVRA directs states to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. Plaintiffs acknowledge that Secretary Benson is Michigan's "chief election official," Compl. ¶ 27, PageID.7. They also identify Secretary Benson as the official who entered into the agreements with both the VA, *id.* ¶ 66, PageID.14, and the SBA, *id.* ¶ 73, PageID.15. According to the Complaint itself, therefore, the SBA and VA entered into agreements with the election official responsible for coordinating Michigan's responsibilities under the NVRA pursuant to Section 20506(a). That is neither in excess of their statutory authority nor in violation of law; it fully complies with the NVRA.

Plaintiffs also claim that the agencies' agreements were arbitrary and capricious solely "because the agencies did not adequately explain how their purported designations as VRAs satisfied the requirements of Section 7 of the NVRA." Compl. ¶ 108, PageID.21. But the agreements incorporated into the Complaint provide such an explanation. For example, the

17

Memorandum of Agreement between the Michigan Department of State and the SBA ("SBA MOA")[9] explains that "[i]n 1995, then-Governor Engler signed an Executive Order (EO) designating several State agencies as VRAs," and that the order "also allows the Governor to designate additional VRAs through an executive directive." SBA MOA at 1. The MOA also explains that the NVRA requires each state to designate a chief election official, and that "Michigan law makes the Secretary of State responsible for the coordination of the requirements imposed under [the NVRA]." *Id.* (cleaned up). The VA furthermore explained that it was implementing Executive Order 14019, which requires agencies to agree to voter registration agency designations requested by states.[10] Plaintiffs may not *agree* with these explanations, but they cannot plausibly argue that the agencies did not adequately explain their designations.

**CONCLUSION**

For the foregoing reasons, Vet Voice respectfully requests that the Court dismiss the entire Complaint with prejudice.

---

[9] *Available at* https://static.foxnews.com/foxnews.com/content/uploads/2024/05/REDACTED-03-MOA-NVRA-Designated-Federal-Agency-Final-Version.pdf.
[10] *See Three Michigan VA locations will pilot voter registration sites*, Mich. Dep't of State (Sept. 19, 2023) https://www.michigan.gov/sos/resources/news/2023/09/19/three-michigan-va-locations-will-pilot-voter-registration-sites.

Dated: July 24, 2024.                          Respectfully submitted,

                                               /s/ *Sarah S. Prescott*
                                               Sarah S. Prescott (P70510)
                                               SALVATORE PRESCOTT
                                               PORTER & PORTER, PLLC
                                               105 East Main Street
                                               Northville, Michigan 48167
                                               (248) 679-8711
                                               sprescott@spplawyers.com

                                               Aria C. Branch
                                               Justin Baxenberg*
                                               Mindy Johnson
                                               Samuel T. Ward-Packard
                                               ELIAS LAW GROUP LLP
                                               250 Massachusetts Ave, NW, Suite 400
                                               Washington, DC 20001
                                               (202) 968-4490
                                               abranch@elias.law
                                               jbaxenberg@elias.law
                                               mjohnson@elias.law
                                               swardpackard@elias.law

                                               *Counsel for Proposed Intervenor-Defendant*
                                               *Vet Voice Foundation*

                                               *Admission pending

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with LCivR 7.2(b)(i)'s word limit. From Introduction

through Conclusion, this brief contains 5,830 words as measured by Microsoft Word.

/s/ *Sarah S. Prescott*
Sarah S. Prescott

## CERTIFICATE OF SERVICE

I certify that on this 24th day of July, 2024, I caused to be served a copy of the above

document on all counsel of record and parties via the ECF system.

/s/ *Sarah S. Prescott*
Sarah S. Prescott