**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

REPUBLICAN NATIONAL
COMMITTEE, et al.,

        *Plaintiffs*,

  v.

GRETCHEN WHITMER, et al.,

        *Defendants*.

Case No. 1:24-cv-720-PLM-SJB

**FEDERAL DEFENDANTS' RESPONSE TO**
**VET VOICE FOUNDATION'S MOTION TO INTERVENE**

## INTRODUCTION

This litigation involves a challenge to the Michigan offices of two Federal agencies—the Department of Veterans Affairs ("VA") and the U.S. Small Business Administration ("SBA")—serving as "voter registration agencies" under the National Voter Registration Act of 1993 ("NVRA").  Designation as a voter registration agency enhances the opportunity for eligible Michiganders to vote by increasing the number of locations that offer voter registration services. The VA and SBA accepted the conditions the NVRA imposes on voter registration agencies, which by law must not, among other things, seek to influence a prospective registrant's political preference or party registration.

Plaintiffs here are two political party organizations, a presidential campaign, and the clerk of Georgetown Township.  Plaintiffs challenge the VA and SBA's designation as inconsistent with Michigan law, the NVRA, and the Administrative Procedure Act ("APA").  These claims are meritless, and the Federal Defendants intend to vigorously defend against them.  A nonprofit group, Vet Voice Foundation, proposes to intervene to defend the suit alongside the existing parties.  The Federal Defendants would welcome Vet Voice's active participation in this case as amicus curiae, but respectfully oppose the request to intervene as a defendant.  Because Vet Voice's interest in promoting veterans' exercise of the franchise is one shared by the Federal Defendants, the existing defendants are adequate representatives of the eligible Michigan veterans (and other eligible prospective voters) who have an interest in easily registering to vote.

## RELEVANT BACKGROUND

### I.     The NVRA

In passing the NVRA, Congress found that "it is the duty of the Federal, State, and local governments to promote the exercise" of the fundamental right to vote.  52 U.S.C. § 20501(a)(2). Congress thus directed all Federal, State, and local governments to implement the NVRA "in a

manner that enhances the participation of eligible citizens as voters in elections for Federal office," *id.* § 20501(b)(2), and directed federal agencies to cooperate, "to the greatest extent practicable, . . . with the States" to serve as "voter registration agencies." *Id.* § 20506(b).

The NVRA requires Michigan and most other States to designate certain State offices as voter registration agencies and provides that "recruitment office[s] of the Armed Forces of the United States shall be considered to be a voter registration agency designated" by the State. *Id.* § 20506(c)(2); *see id.* § 20506(a)(2). The NVRA also provides that "each State shall designate other offices within the State as voter registration agencies," which "may include . . . Federal and nongovernmental offices, with the agreement of such offices." *Id.* § 20506(a)(3)(A)–(B).

Designation as a voter registration agency generally requires the office designated to provide certain voter registration services at that location. *Id.* § 20506(a)(4), (6). The NVRA also prohibits voter registration agencies from influencing an applicant's political preference or party registration, or otherwise suggesting "that a decision to register or not to register has any bearing on the availability of services or benefits." *Id.* § 20506(a)(5)(A), (D).

## II.    This Litigation

As alleged in Plaintiffs' Complaint, in May 2022 Michigan Governor Gretchen Whitmer issued Executive Directive 2022-4, which explained that Michigan's list of designated voter registration agencies had not been updated since 1995 and sought recommendations for additional offices to be so designated. Compl. ¶¶ 62–65, PageID.13. In December 2023, Governor Whitmer acted on those recommendations by issuing Executive Directive 2023-6, which among other offices designated "the U.S. Department of Veterans Affairs" as a voter registration agency. *Id.* ¶ 69, PageID.15. Similarly, in June 2024, Governor Whitmer issued Executive Directive 2024-3,

2

which designated the SBA as a voter registration agency.[1]  Both federal agencies were designated "subject to the agreement" they had "signed with the State of Michigan."  *Id.* ¶ 69, PageID.15.

Plaintiffs are a national and State political party committee, the principal campaign committee of former President Donald J. Trump, and the elected clerk of a locality responsible for processing voter registration applications.  *See Id.* ¶¶ 14–22, PageID.4–6.  Plaintiffs assert that Governor Whitmer, Secretary of State Jocelyn Benson, and Director of the Michigan Bureau of Elections Jonathan Brater (collectively, the "State Defendants") exceeded their authority under State law in designating the VA and the SBA as voter registration agencies.  *Id.* ¶¶ 79–88, PageID.16–17.  Plaintiffs also assert that the VA and the SBA violated the NVRA and the APA by agreeing to serve as voter registration agencies.  *Id.* ¶¶ 89–108, PageID.18–21.  As relief, Plaintiffs seek to have the Court enjoin the VA and the SBA from operating as voter registration agencies without further express authorization from the Michigan legislature.  *Id.* at PageID.20–21

## III.    Proposed Intervenor

Proposed intervenor Vet Voice Foundation is a nonprofit organization whose mission includes educating "veterans on issues such as voting rights, disinformation, environmental protection, health care, and jobs."  Vet Voice Found. Mot. to Intervene, ECF No. 9 at PageID.65.  Vet Voice argues that it is entitled to intervention as of right, or alternatively, should be granted permissive intervention.  As an exhibit to its intervention motion, Vet Voice proposes to file a motion to dismiss arguing: (1) that Plaintiffs lack Article III standing to sue because no plaintiff has alleged any cognizable injury in fact; (2) that the Eleventh Amendment bars this Court from exercising jurisdiction over State law claims asserted against the State Defendants, requiring

---

[1]      Executive Directive 2024-3, Gretchen Whitmer, Governor of Michigan, Updating Michigan's List of Voter Registration Agencies (June 20, 2024), https://perma.cc/VE8N-9YGB.

dismissal of the entire action; and (3) that each count of Plaintiffs' Complaint fails to state a claim upon which relief can be granted.  *See generally* Vet Voice Found. Mem. in Supp. of Proposed Mot. to Dismiss, ECF No. 9-2, PageID.81–101.

## ARGUMENT

I.    **Vet Voice fails to meet its burden to establish a right to intervene because it has not demonstrated that it possesses any substantial legal interest inadequately represented by parties already before the Court.**

Federal Rule of Civil Procedure 24(a)(2) allows for intervention as of right where a potential intervenor submits a timely motion and, among other things, has an interest in the matter which may be impaired by its resolution, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  In the Sixth Circuit, that means "district courts must permit anyone to intervene who, (1) in a timely motion, shows that (2) they have a substantial legal interest in the case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 771 (6th Cir. 2022) (citing *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005)).  "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).  Here, Vet Voice fails to identify any substantial legal interest that is inadequately represented by the existing governmental defendants in this case.

Vet Voice primarily relies on its interest in seeing "as many Michigan veterans and military voters as possible." ECF No. 9 at PageID.68.  But the Federal Government in general, and the VA in particular, shares that goal.  *See, e.g.*, 52 U.S.C. § 20501(a)(2); Exec. Order No. 14,019, 86 Fed. Reg. 13,623 (Mar. 7, 2021); *cf.* 38 C.F.R. § 17.33(a)(4)(iv) (protecting VA inpatients' "right to register and vote").  Vet Voice has not, therefore, shown that the existing Defendants'

4

representation of its interests is inadequate.  When "the proposed intervenor and party to the suit currently share the 'same ultimate objective' . . . a presumption of adequate representation arises." *Wineries*, 41 F.4th at 774 (quoting *United States v. Michigan*, 424 F.3d 438, 443–44 (6th Cir. 2005)).  In all respects, the Federal Defendants and Vet Voice have the same ultimate objective here:  dismissal of this lawsuit so that the Federal Defendants may continue to serve as voter registration agencies in Michigan.  The presumption of adequate representation therefore plainly applies.

While that "presumption may be overcome" by a "minimal" showing that the existing parties' representation of the proposed intervenor's interest "*may be*" inadequate," *Wineries*, 41 F.4th at 774 (citation omitted), Vet Voice has not made the requisite showing.  The Sixth Circuit has held that a proposed intervenor "fails to meet [its] burden of demonstrating inadequate representation when 1) no collusion is shown between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervener; and 3) the existing party has not failed in the fulfillment of its duty."  *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000); *see also Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). The first and third of those factors do not appear to be contested, as Vet Voice does not argue that any defendant is colluding with Plaintiffs and, at this early stage of the litigation, no defendant has even plausibly failed in any legal duty.  For the avoidance of doubt, the Federal Defendants intend to appear and vigorously defend the claims asserted against them in this case.

As to the second factor, Vet Voice fails to make any showing that its interests are adverse to existing defendants.  Vet Voice argues that its interests are not "'identical'" to any named defendant "because none is a nonprofit veterans advocacy organization."  ECF No. 9 at PageID.72. But there is no daylight between the Federal Defendants' interest in promoting easy access to the

franchise for eligible voters and Vet Voice's voting related advocacy related to the nation's veterans. *See* Exec. Order No. 14,019, 86 Fed. Reg. 13,623 (Mar. 7, 2021) ("It is the responsibility of the Federal Government to expand access to, and education about, voter registration and election information . . . in order to enable all eligible Americans to participate in our democracy."). Vet Voice's argument on this front largely relies on the fact that the NVRA charges the State Defendants both with protecting the integrity of the electoral process and eliminating unnecessary barriers to registration and voting. *See* ECF No. 9 at PageID.71; *see also* 52 U.S.C. § 20501(b)(1), (2). Perceived tension between those two statutory interests has caused some courts to conclude that State elections officials are inadequate representatives of voters who fear they may be erroneously removed from voter rolls when a plaintiff claims the State has been insufficiently aggressive in maintaining its list, as in the cases Vet Voice cites. *See* ECF No. 9 at PageID.71 (citing *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 801 (E.D. Mich. 2020) and *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-01867, slip op. at *9 (N.D. Ill. Mar. 5, 2024)). Any such tension has no effect here, however, where Plaintiffs seek to challenge Defendants' actions to reduce barriers to eligible voters seeking to register. As to this case, Defendants' interests are perfectly aligned with Vet Voice's.

Vet Voice's argument that the Supreme Court's decision in *Berger v. North Carolina State Conference of the NAACP* precludes a presumption of adequate representation, ECF No. 9 at PageID.71 (citing 597 U.S. 179, 194–97 (2022)), is also misplaced. That Court found it unnecessary to "decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Berger*, 597 U.S. at 197. *Berger* involved two proposed intervenors, the leaders of a State's legislative houses, that the State's legislature had authorized "to defend its practical

interests" based on the presumption that the State's executive branch "may be expected to vindicate different points of view on the State's behalf." *Id.* Nothing remotely like that situation is present here. As the Sixth Circuit has held, a presumption of adequate representation exists where the parties "share the same ultimate goal" as the proposed intervenor. *Albright v. Ascension Mich.*, No. 23-1595, 2024 WL 1114606, at *2 (6th Cir. Mar. 14, 2024) (concluding that proposed intervenor was adequately represented where the allegations and requested relief were identical with respect to both).

Even if Vet Voice can identify some divergent interest between the State Defendants and itself, it offers no similar separation with respect to the Federal Defendants. *See Wineries*, 41 F.4th at 777. There is none, as the Federal Defendants intend to vigorously defend against Plaintiffs' claims. Vet Voice's only argument to the contrary is that part of its work is to lobby the VA and shape its policy. *See* ECF No. 9 at PageID.72. Whatever the force of that argument in other contexts, it does not apply here, where Vet Voice and the VA seek the same ends in this litigation.

At bottom, Vet Voice does not explain how the Federal Defendants' interests are in any way adverse to its own. Even if "the positions of the Proposed Intervenors and [Defendants] may not identically align, their interests are sufficiently overlapping such that there is no substantial doubt that their concerns . . . are being adequately represented." *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 WL 21295936, at *11 (W.D. Mich. Aug. 25, 2022).

## II.   The Court should exercise its discretion to deny permissive intervention because the existing Defendants adequately represent any interest Vet Voice seeks to assert.

Vet Voice alternatively seeks permissive intervention under Rule 24(b). That rule provides that, upon timely motion, the Court "may" permit intervention by movants who have a "claim or defense" that shares a "common question of law or fact" with the main action. Fed. R. Civ. P. 24(b)(1). "Once these two requirements are established, the district court must then balance undue

delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Michigan*, 424 F.3d at 445. The court may consider the requirements as of intervention of right when evaluating whether permissive intervention is appropriate under the circumstances. *See Bay Mills Indian Cmty. v. Snyder*, 720 Fed. App'x 754, 759 (6th Cir. 2018).

"Adequate representation 'counsels against granting permissive intervention.'" *Benson*, 2022 WL 21295936, at *12 (quoting *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018)).  For the reasons explained above, the existing defendants in this case are adequate representatives of any interest Vet Voice seeks to assert.  Because the Federal Defendants intend to vigorously defend this case, the Court should exercise its discretion not to grant permissive intervention.

Nevertheless, the Federal Defendants acknowledge that the Court would benefit from hearing directly from voters—including the veterans whose interests Vet Voice seeks to represent. As an alternative to intervention, the Court may consider, and the Federal Defendants would welcome, Vet Voice's active participation in this case as amicus curiae. *See Bay Cnty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 438 (E.D. Mich. 2004) (accepting filings by proposed intervenors as amici curiae after denying motions to intervene because "the present defendants are able to adequately protect the rights they purport to assert").  That approach would give Vet Voice "a voice in this litigation," ECF No. 9 at PageID.73, without the additional burdens on the court and parties that attend full intervention.

## CONCLUSION

For the foregoing reasons, the Federal Defendants respectfully oppose Vet Voice's motion to intervene.

DATED: August 7, 2024                    BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         LESLEY FARBY
                                         Assistant Branch Director
                                         Civil Division, Federal Programs Branch

                                         /s/ *Jacob S. Siler*
                                         JACOB S. SILER
                                         Trial Attorney
                                         Civil Division, Federal Programs Branch
                                         U.S. Department of Justice
                                         1100 L Street, NW
                                         Washington, DC 20005
                                         Phone: (202) 353-4556
                                         Facsimile: (202) 616-8460
                                         Email: jacob.s.siler@usdoj.gov

                                         *Counsel for Federal Defendants*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with LCivR 7.3(b)(i) because it contains 2,546 words as measured by Microsoft Word, excluding the portions of the document that are not to be included in the word court under that rule.

/s/*Jacob S. Siler*___
Jacob S. Siler
