UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, DONALD J. TRUMP FOR PRESIDENT 2024, INC., MICHIGAN REPUBLICAN PARTY, and RYAN KIDD,<br><br>　　Plaintiffs,<br><br>v<br><br>GRETCHEN WHITMER, in her official capacity as Governor of Michigan, JOCELYN BENSON, in her official capacity as Michigan Secretary of State; and JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections, U.S. SMALL BUSINESS ADMINISTRATION, ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration, DEPARTMENT OF VETERANS AFFAIRS, and, DENIS McDONOUGH, in his official capacity as Secretary of Veterans Affairs,<br><br>　　Defendants. | CASE NO. 1:24−cv−00720−PLM−SJB<br><br>HON. PAUL L. MALONEY<br><br>HON. SALLY J. BERENS |

## **Plaintiffs' Response to Vet Voice's Motion to Intervene**

**\* Oral Argument Requested \***

_____

DATED: August 19, 2024

　　　　　　　　　　　　　　　　　　Jonathan B. Koch (P80408)
　　　　　　　　　　　　　　　　　　Drew W. Broaddus (P64658)
　　　　　　　　　　　　　　　　　　SMITH HAUGHEY RICE & ROEGGE
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

　　　　　　　　　　　　　　　　　　David A. Warrington (*Admission Pending*)
　　　　　　　　　　　　　　　　　　Gary Lawkowski
　　　　　　　　　　　　　　　　　　DHILLON LAW GROUP
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff Donald J. Trump for President 2024, Inc.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## **Table of Contents**

**Index of Authorities** ................................................................................................................ii-iii

**Statement Regarding Oral Argument** .................................................................................... iv

**Introduction** ................................................................................................................................1

**Standards of Intervention** .........................................................................................................2

**Argument** ....................................................................................................................................4

    I.       Vet Voice does not have a right to intervene ........................................................4

            A.       Vet Voice does not have a legally protectable interest and even if it did, restoring the pre-December 18, 2023 status quo would not impair that interest .......4

            B.       There is no evidence - let alone a "very compelling showing" – that the State or Federal governments' representation will be inadequate. Indeed, Vet Voice's proposed Motion to Dismiss suggests that its involvement would be superfluous....6

    II.      Permissive intervention would serve no benefit to the parties or the Court and would delay proceedings ........................................................................................................8

**Conclusion** .................................................................................................................................11

# Index of Authorities

**CASES**

*Am. Ass'n of People with Disabilities v. Herrera,* 257 F.R.D. 236, 252 (D.N.M. 2008)..........................6, 10

*Arakaki v. Cayetano,* 324 F.3d 1078 (9th Cir. 2003) ...................................................................................7

*Arizonans for Fair Elections v. Hobbs,* 335 F.R.D. 269 (D. Ariz. 2020) ................................................. 8-10

*Bay Mills Indian Cmty. v. Snyder,* 2017 WL 7736934 (W.D. Mich. Mar. 8, 2017),
    aff'd, 720 F. App'x 754 (6th Cir. 2018)..........................................................................................9, 11

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019)........................................................................................7

*Blount-Hill v. Zelman*, 636 F.3d 278 (6th Cir. 2011).................................................................................4-5

*Bradley v. Milliken,* 828 F.2d 1186 (6th Cir.1987)......................................................................................7

*Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007) ..............................................3

*Cahoo v. SAS Inst., Inc.*, 71 F.4th 401 (6th Cir. 2023).............................................................................. 2-3

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893 (9th Cir. 2011) ..................................7

*Daggett v. Comm'n on Governmental Ethics & Election Practices,* 172 F.3d 104 (1st Cir. 1999) ..............9

*Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970 (3d Cir. 1982) .......................7

*Grainger v. Ottawa Cnty., Michigan*, 90 F.4th 507 (6th Cir. 2024) ........................................................ 3-4

*Int'l Union of Painters & Allied Trades Dist. Council No. 6. v. Smith,* 2024 WL 1012967
    (S.D. Ohio Mar. 8, 2024) .........................................................................................................3, 9

*Miracle v. Hobbs,* 333 F.R.D. 151 (D. Ariz. 2019).......................................................................................9

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007) ............................................7

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) .............................................. passim

*Public Interest Legal Foundation v. Benson*, 2024 WL 1128565 (W.D. Mich., Mar. 1, 2024) .......... passim

*Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369 (6th Cir. 2014) ......................................................3

*Resol. Tr. Corp. v. City of Bos.,* 150 F.R.D. 449 (D. Mass. 1993)..............................................................10

*S. Cal. Edison Co. v. Lynch,* 307 F.3d 794 (9th Cir. 2002)......................................................................4, 6

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

*Sierra Club v. EPA,* 995 F.2d 1478 (9th Cir. 1993) ........................................................................6

*Tex. Democratic Party v. Abbott,* 961 F.3d 389 (5th Cir. 2020) ....................................................6

*United States v. Alisal Water Corp.,* 370 F.3d 915 (9th Cir. 2004) ............................................4, 6

*United States v. Michigan,* 424 F.3d 438 (6th Cir. 2005) ..........................................................7-8

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula,* 41 F.4th 767 (6th Cir. 2022) ...............5

## **FEDERAL RULES**

Fed. R. Civ. P. 2 ..............................................................................................................................2

Fed. R. Civ. P. 24(a) ........................................................................................................................2

Fed. R. Civ. P. 24(a)(2) ...................................................................................................................4

Fed. R. Civ. P. 24(b) ........................................................................................................................3

Fed. R. Civ. P. 24(b)(1) ...................................................................................................................3

Fed. R. Civ. P. 24(b)(3) ................................................................................................................3, 9

## **MISCELLANEOUS**

National Voter Registration Act of 1993 ..................................................................................... 1-2

## **Statement Regarding Oral Argument**

Plaintiffs do not believe that oral argument is necessary for this Court to dispose of Vet Voice's Motion to Intervene. However, Vet Voice has requested oral argument. Accordingly, if this Court is going to hear oral arguments on Vet Voice's motion, Plaintiffs reserve the right to present oral argument at the hearing.

## **Plaintiffs' Response to Vet Voice's Motion to Intervene**

Plaintiffs, the Republican National Committee ("The RNC"), Donald J. Trump for President 2024, Inc. ("Trump Campaign"), the Michigan Republican Party ("MRP"), and Ryan Kidd ("Plaintiffs"), by and through their attorneys, and for their Response to Vet Voice's Motion to Intervene, state as follows:

### **Introduction**

Vet Voice claims that it must be allowed to intervene because "[t]his case aims to make it harder for veterans to register to vote just months before a presidential election."[1] The central issue in this case – as it relates to Vet Voice – is whether Michigan's Governor had the authority to designate the Department of Veterans Affairs ("VA") as a Voter Registration Agency ("VRA") within the meaning of the National Voter Registration Act of 1993 ("NVRA").[2] Michigan's Governor purported to make that designation about eight months ago.[3] So, if Plaintiffs prevailed in this action, it would simply return things to the status quo prior to December 18, 2023. Put another way, a Judgement in Plaintiffs' favor would make registering to vote *no harder for veterans than it was for the 93 years* between the VA's formation and the Governor's ultra vires Executive Directive.[4] Vet Voice and its subscribers therefore do not have valid interests that will be impaired by this case – requiring that VRAs be designated in accordance with the law neither burdens nor disenfranchises anyone.

Moreover, adding more parties serves no purpose other than to complicate the litigation, delay proceedings, inflate expenses, and encumber the parties and the Court with more filings. And the State and Federal Defendants are well equipped to handle this case. Indeed, the Federal Defendants have opposed Vet Voice's intervention on that basis.[5] Moreover, one of Vet Voice's arguments is that the suit is ripe for

---

[1] ECF No. 9, PageID.63.
[2] ECF No. 1, PageID.3, ¶ 5.
[3] Id.
[4] See ECF No. 1, PageID.3-4, ¶¶ 8-9.
[5] ECF No. 14, PageID.132.

1

dismissal on multiple legal grounds.[6]  If true, adding Vet Voice as a party would contribute nothing to the judicial process – the other Defendants could simply adopt Vet Voice's proposed Motion to Dismiss.[7]

Indeed, three years ago, this Court denied a very similar intervention motion filed in a similar NVRA case.[8] The State defended that case through summary judgment, where it won without the intervenors' help.[9] The State has shown its willingness and ability to litigate NVRA lawsuits without additional help and to adequately represent the interests of the proposed intervenors. And the Federal Defendants have stated in this case that they are able to represent those interests.[10] For many of the same reasons it denied intervention in *Public Interest Legal Foundation*, the Court should deny this motion. At a minimum, if the Court grants the motion, it should impose reasonable conditions on the intervenors' participation, in order to keep the case on schedule and minimize duplicative briefing.

## **Standards for Intervention**

Fed. R. Civ. P. 24 governs motions to intervene. That rule allows for two types of intervention: intervention as of right and permissive intervention.[11] Rule 24(a) governs intervention as of right. Under that rule, a court "must permit" intervention if the movant (1) has an "unconditional right to intervene" under a federal statute or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[12] Rule 24(b), on the other hand, governs permissive intervention. Under that rule, a court may grant intervenor

---

[6] ECF No. 9, PageID.63.
[7] ECF No. 9-2, PageID.82.
[8] *Public Interest Legal Foundation v. Benson*, No. 1:21-cv-929, 2022 WL 21295936, at *10-13 (W.D. Mich. Aug. 25, 2022).
[9] *Public Interest Legal Foundation v. Benson*, No. 1:21-cv-929, 2024 WL 1128565 (W.D. Mich. Mar. 1, 2024).
[10] ECF No. 14, PageID.135-136: "Vet Voice primarily relies on its interest in seeing 'as many Michigan veterans and military voters as possible.' But the Federal Government in general, and the VA in particular, shares that goal. … Vet Voice has not, therefore, shown that the existing Defendants' representation of its interests is inadequate."
[11] See *Cahoo v. SAS Inst., Inc.*, 71 F.4th 401, 412, 414 (6th Cir. 2023).
[12] Fed. R. Civ. P. 24(a).

2

status to a movant who either (1) has a "conditional right to intervene" under a federal statute or (2) "has a claim or defense that shares with the main action a common question of law or fact."[13]

Courts in this Circuit measure requests for intervention as of right under Rule 24(a) against four criteria: "(1) timeliness, (2) the movant's legal interest in the case, (3) impairment of that interest absent intervention, and (4) if the [already existing] parties adequately represent it."[14] "The proposed intervenor must satisfy all four elements of this standard to prevail on a motion to intervene as of right."[15] Whether the applicant has a substantial legal interest in the case – the second factor for intervention as of right – "is necessarily fact-specific."[16] But "the applicant for intervention must have a direct and substantial interest in the litigation, such that it is a real party in interest in the transaction which is the subject of the proceeding."[17]

As for permissive intervention, a court may allow any party to intervene who "has a claim or defense that shares with the main action a common question of law or fact."[18] "District courts in this circuit have analyzed this requirement in one of two ways."[19] "The first focuses on whether the intervenor's proposed claims and the parties' claims require interpretation of the same documents, statutes, or constitutional provisions."[20] "The second involves looking at whether allowing intervention will force the court to resolve issues collateral to the underlying lawsuit."[21] "[G]ranting a motion for permissive intervention is discretionary, not compulsory."[22] And "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[23]

---

[13] Fed. R. Civ. P. 24(b)(1).
[14] *Cahoo*, 71 F.4th at 412.
[15] *Grainger v. Ottawa Cnty., Michigan*, 90 F.4th 507, 513 (6th Cir. 2024).
[16] *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (citation omitted).
[17] *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 372 (6th Cir. 2014) (cleaned up).
[18] Fed. R. Civ. P. 24(b).
[19] *Int'l Union of Painters & Allied Trades Dist. Council No. 6. v. Smith,* No. 1:23-CV-502, 2024 WL 1012967, at *7 (S.D. Ohio Mar. 8, 2024).
[20] *Id.* (citations omitted).
[21] *Id.* (citations omitted).
[22] *Id.* (citations omitted).
[23] *Id.,* citing Fed. R. Civ. P. 24(b)(3).

**Argument**

I. **Vet Voice does not have a right to intervene.**

To intervene as of right under Rule 24(a)(2), Vet Voice must file a timely show: (1) they have a significantly protectable interest in this case; (2) disposition of this case may impair their ability to protect that interest; and (3) their interest is not adequately represented by existing parties to the litigation.[24] Vet Voice bears "the burden of showing that all the requirements for intervention have been met."[25] "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied."[26] Put another way, "[e]ach of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule."[27]

   A. **Vet Voice does not have a legally protectable interest and even if it did, restoring the pre-December 18, 2023 status quo would not impair that interest.**

To satisfy the interest requirement of Rule 24, Vet Voice must show that it has an interest relating to this case. An interest is related to the case if "the resolution of the plaintiff's claims actually will affect" the intervenors.[28] The interest must be "legally protected" and "significant," and it cannot be "undifferentiated" or "generalized."[29] Vet Voice has not satisfied this requirement.

In *Public Interest Legal Foundation,* the Michigan Alliance for Retired Americans and other intervenors claimed very similar interests to what Vet Voice is asserting here: mitigating the risk that their "members or constituents may be improperly purged from Michigan's voter rolls," and in avoiding the need "to divert resources to minimize the risk that their members and constituents will be disenfranchised while the relief is implemented."[30] This Court rejected those "interests" as speculative.

---

[24] *Grainger v. Ottawa Cnty., Michigan,* 90 F.4th 507, 513 (6th Cir. 2024). See also *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).
[25] *United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004). See also *Grainger,* 90 F.4th at 513.
[26] *Perry,* 587 F.3d at 950.
[27] *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011).
[28] *S. Cal. Edison Co. v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002) (citation omitted).
[29] *Alisal Water,* 370 F.3d at 920.
[30] 2022 WL 21295936, at *10.

The "interests" Vet Voice now raise are even more speculative. Again, Vet Voice claims that it must be allowed to intervene because "[t]his case aims to make it harder for veterans to register to vote just months before a presidential election."[31] But the VA was never a VRA prior to December 18, 2023, when Michigan's Governor issued the Executive Directive now at issue. So, the idea a significant number of Vet Voice's subscribers or members are relying on the VA to register is unsupported and illogical. If Plaintiffs prevailed in this action, it would make registering to vote *no harder for veterans than it was for the 93 years* between the VA's formation and the Governor's ultra vires Executive Directive.[32]

Vet Voice must show "a substantial legal interest in the case."[33] The proposed intervenors describe the interest requirement as "expansive,"[34] but that "does not mean that any articulated interest will do."[35] Rather, "the interest must be significantly protectable to rise to the level of substantial."[36] Interests that are "speculative" are not "substantial."[37] It is entirely speculative that an Order declaring Executive Directive 2023-6 void was have any impact on Vet Voice's operations. Vet Voice was founded in 2009; since that time, it has amassed 1.5 million subscribers, including 127,000 in Michigan.[38] It has also developed an extensive "military voter file" that includes 357,000 Michigan voters.[39] It was, according to Ms. Goldbeck's Affidavit, responsible for "driving a significant increase in voter participation" among veterans in the 2020 election.[40] In other words, Vet Voice apparently did just fine for over 14 years *without the VA being designated a VRA in Michigan* – something that just came about in the last few months. Interests which merely "turn on some amount of increased risk of future disenfranchisement," do not "constitute a

---

[31] ECF No. 9, PageID.63.
[32] See ECF No. 1, PageID.3-4, ¶¶ 8-9.
[33] *Blount-Hill*, 636 F.3d at 283.
[34] ECF No. 9, PageID.67.
[35] *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula,* 41 F.4th 767, 772 (6th Cir. 2022) (citation omitted).
[36] *Id.* (cleaned up).
[37] *Public Interest Legal Foundation,* 2022 WL 21295936, at *11.
[38] ECF No. 9-3, PageID.105, Goldbeck Affidavit, ¶¶ 4, 5, 6.
[39] ECF No. 9-3, PageID.106, ¶ 11.
[40] Id., ¶ 12.

substantial legal interest."[41] And, because Vet Voice acknowledges that its subscribers can register elsewhere (as they always had prior to December 18, 2023),[42] "the right to vote is not at stake."[43]

As for the organization's economic interests, Vet Voice doesn't explain how invaliding Executive Directive 2023-6 "actually will affect" anything they do.[44] An "economic interest" must be "non-speculative," "concrete," and "related to the underlying subject matter of the action."[45] Its plans to mobilize voters will apparently occur regardless of how this lawsuit turns out (since that appears to be Vet Voice's core function). They don't elaborate on how requiring veterans *in the same manner they always have since the inception of the VA* will drain Vet Voice's "scarce resources."[46] Conclusory assertions about "impairment of its mission"[47] fall "far short of the direct, non-contingent, substantial and legally protectable interest required for intervention as a matter of right."[48] And because the underlying interests are speculative at best, whatever money Vet Voice spends in pursuit of those interests is likewise insufficient to support intervention.[49] And "[w]here no protectable interest is present, there can be no impairment of the ability to protect it."[50]

> **B.** **There is no evidence - let alone a "very compelling showing" – that the State or Federal governments' representation will be inadequate. Indeed, Vet Voice's proposed Motion to Dismiss suggests that its involvement would be superfluous.**

---

[41] *Public Interest Legal Foundation,* 2022 WL 21295936, at *11.
[42] ECF No. 9, PageID.69-70.
[43] *Tex. Democratic Party v. Abbott,* 961 F.3d 389, 404 (5th Cir. 2020) (cleaned up).
[44] *S. Cal. Edison,* 307 F.3d at 803.
[45] *Alisal Water,* 370 F.3d at 919.
[46] ECF No. 9, PageID.69.
[47] Id., PageId.70.
[48] *S. Cal. Edison,* 307 F.3d at 803 (cleaned up).
[49] See *Public Interest Legal Foundation,* 2022 WL 21295936, at *10 (holding that an organization's resource diversion failed to satisfy even the Sixth Circuit's "expansive notion of the interest sufficient to invoke intervention of right").
[50] *Am. Ass'n of People with Disabilities v. Herrera,* 257 F.R.D. 236, 252 (D.N.M. 2008); see also *Sierra Club v. EPA,* 995 F.2d 1478, 1486 (9th Cir. 1993) (holding that the "third element of intervention as of right, impairment," generally "follows from" the second element).

On the final element for intervention as of right, Vet Voice misstates the applicable standard when it says that courts are "liberal in finding" this requirement to be met.[51] *Generally,* this is true.[52] But "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary."[53] There is also a separate "assumption of adequacy when the government is acting on behalf of a constituency that it represents," which must be rebutted with a "very compelling showing."[54] Vet Voice has not made a "very compelling showing" that the State's representation will be inadequate.

To the contrary, one of Vet Voice's arguments is that the suit is ripe for dismissal on multiple legal grounds.[55] If true, adding Vet Voice as a party would contribute nothing to the judicial process – the other Defendants could simply adopt Vet Voice's proposed Motion to Dismiss.[56]

Relatedly, Vet Voice has not shown that it has a different "ultimate objective" from the State and Federal Defendants.[57] The Secretary of State is the State of Michigan's chief election officer,[58] and the Director of Elections must "perform the duties of the secretary of state under his or her supervision, with respect to the supervision and administration of the election laws…."[59] The NVRA charges them with "protecting electoral integrity and the maintenance of accurate voter rolls."[60] "A party charged by law with representing the interests of the absent party will usually be deemed adequate."[61] "While the positions of

---

[51] ECF No. 9, PageID.70.
[52] *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 898 (9th Cir. 2011).
[53] *Perry,* 587 F.3d at 951 (citations omitted). See also *United States v. Michigan,* 424 F.3d 438, 443–44 (6th Cir. 2005) ("applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit").
[54] *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003).
[55] ECF No. 9, PageID.63.
[56] ECF No. 9-2, PageID.82.
[57] *United States v. Michigan,* 424 F.3d at 444, citing *Bradley v. Milliken,* 828 F.2d 1186, 1192 (6th Cir.1987).
[58] M.C.L. § 168.21.
[59] M.C.L. § 168.32.
[60] *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019).
[61] *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982). See also *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007) ("[A public interest

the Proposed Intervenors and Secretary Benson may not identically align, their interests are sufficiently overlapping such that there is no substantial doubt that their concerns about disenfranchisement are already being adequately represented by Michigan's Secretary of State."[62]

And the Federal Defendants have stated in this case that they are able to represent Vet Voice's interests: "Vet Voice primarily relies on its interest in seeing 'as many Michigan veterans and military voters as possible.' But the Federal Government in general, and the VA in particular, shares that goal. … Vet Voice has not, therefore, shown that the existing Defendants' representation of its interests is inadequate."[63]

Vet Voice plans, upon intervention, to immediately move to "dismiss the entire Complaint with prejudice."[64] In its unclear what other objective the Defendants could possibly have.[65] The Federal Defendants have asserted that they "intend to vigorously defend against[these claims]."[66] Although the State Defendants have not yet answered, but there is no reason to doubt that they will not seek dismissal of the case. Indeed, they sought an extension of their responsive pleading deadline to give them more time to prepare a dispositive motion. This triggers the presumption of adequate representation under Sixth Circuit precedent. [67]

## II. **Permissive intervention would serve no benefit to the parties or the Court and would delay proceedings.**

Adding more parties would unnecessarily prolong litigation, burden the parties, duplicate arguments, and add expense, with no benefit to the parties or the Court. Again, for permissive intervention,

---

group's] interest [in intervention] is greatly diminished due to the state's responsibilities in enforcing and defending it as it is written.").
[62] *Public Interest Legal Foundation,* 2022 WL 21295936, at *11.
[63] ECF No. 14, PageID.135-136.
[64] ECF No. 9-2, PageID.100.
[65] See *Arizonans for Fair Elections v. Hobbs,* 335 F.R.D. 269, 275 (D. Ariz. 2020) (intervenors shared the same "ultimate objective" as the State when both were "defending the constitutionality" of state laws); *Perry,* 587 F.3d at 951 (same).
[66] ECF No. 14, PageID.132.
[67] *United States v. Michigan,* 424 F.3d at 444, citing *Bradley,* 828 F.2d at 1192.

8

Vet Voice must have "a claim or defense that shares with the main action a common question of law or fact."[68] "[G]ranting a motion for permissive intervention is discretionary, not compulsory."[69] This Court "enjoys very broad discretion" in denying permissive intervention and "can consider almost any factor rationally relevant."[70] And "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[71] Like intervention by right, the "undue delay" component requires consideration of "whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention."[72] "Where the existing parties will adequately represent the interests of the potential intervenors, the case for permissive intervention disappears."[73]

As explained above, the State and Federal Defendants adequately represent Vet Voice's interests. As the Federal Defendants have pointed out, "[e]ven if Vet Voice can identify some divergent interest between the State Defendants and itself, it offers no similar separation with respect to the Federal Defendants. … There is none, as the Federal Defendants intend to vigorously defend against Plaintiffs' claims."[74] This is an independent reason to deny permissive intervention. The "[i]ntervenors' interests are aligned with those of Defendant[s]," who are "well-suited to defend" the claims in this case.[75] The existing parties are "capable of developing a complete factual record,"[76] and the proposed intervenors' "participation is unnecessary to the full development of this case."[77] As in other election cases, the "[i]ntervenors' interests

---

[68] Fed. R. Civ. P. 24(b).
[69] *Int'l Union of Painters*, 2024 WL 1012967, at *7.
[70] *Daggett v. Comm'n on Governmental Ethics & Election Practices,* 172 F.3d 104, 113 (1st Cir. 1999).
[71] *Int'l Union of Painters*, 2024 WL 1012967, at *7, citing Fed. R. Civ. P. 24(b)(3).
[72] *Miracle v. Hobbs,* 333 F.R.D. 151, 156 (D. Ariz. 2019). See also *Bay Mills Indian Cmty. v. Snyder,* No. 1:11-CV-729, 2017 WL 7736934, at *3 (W.D. Mich. Mar. 8, 2017), aff'd, 720 F. App'x 754 (6th Cir. 2018).
[73] *Bay Mills Indian Cmty.,* 2017 WL 7736934, at *3 (cleaned up).
[74] ECF No. 14, PageID.138.
[75] *Miracle,* 333 F.R.D. at 156 (denying permissive intervention based on adequate representation); see also United States ex rel. Richards v. De Leon Guerrero, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention to taxpayers where the governor adequately represented their interests).
[76] *Perry,* 587 F.3d at 955-956.
[77] *Arizonans for Fair Elections,* 335 F.R.D. at 276.

9

align with the State's," and they have not shown that they "can more adequately defend state laws than the State itself."[78]

Second, Vet Voice's participation will delay proceedings and prejudice the parties. Because "[i]ntervening parties are entitled to all the rights and responsibilities of original parties to litigation," adding the intervenors will increase the costs of litigation, make scheduling more cumbersome, and inevitably slow down proceedings.[79] Even minor delays are especially problematic in "time-sensitive" election cases such as this one, where "the general election is fast approaching."[80] Because "timely resolution is critical to the integrity of the election process, both its perceived and actual integrity," the Court should deny permissive intervention.[81]

Third, Vet Voice has not pointed to any unique arguments or positions it would take up that the State and Federal Defendants will not. Rather, Vet Voice plans to file a Motion to Dismiss that appears to be redundant of the pure legal questions that the existing Defendants will eventually make. Either the existing Defendants can end the case using the same arguments, or Vet Voice's arguments are unavailing. Either way, their involvement would add nothing except another party. Moreover, Vet Voice has not committed to reduce duplicative briefing, or even identified different arguments they intend to raise. And they have "presented no creditable argument that [their] status as an intervenor-defendant would in any way reshape the issues in this case or contribute to its just resolution."[82]

## Conclusion

Vet Voice's arguments for intervention are all premised on the idea that its subscribers have a substantial legal interest in the VA being a VRA. But that has only been the case for eight months.

---

[78] *Arizonans for Fair Elections,* 335 F.R.D. at 276.
[79] *Am. Ass'n of People with Disabilities,* 257 F.R.D. at 259; see also *Perry,* 587 F.3d at 955-56 (upholding the district court's determination that intervention "might very well delay the proceedings, as each group would need to conduct discovery on substantially similar issues," which "in all probability would consume additional time and resources of both the Court and the parties").
[80] *Am. Ass'n of People with Disabilities,* 257 F.R.D. at 259.
[81] *Public Interest Legal Foundation,* 2022 WL 21295936, at *12.
[82] *Resol. Tr. Corp. v. City of Bos.,* 150 F.R.D. 449, 455 (D. Mass. 1993).

10

Plaintiffs' argument would merely restore the status quo as it existed for the first 93 years of the VA's existence and the first 14 years of Vet Voice's existence. For this reason, Vet Voice can't satisfy the second and third requirements for intervention by right. And even if it could, its interests are adequately protected by the existing Defendants – as the Federal Defendants have argued. The adequacy of representation is also fatal to Vet Voice's request for permissive intervention. As noted above, "[w]here the existing parties will adequately represent the interests of the potential intervenors, the case for permissive intervention disappears."[83] And again, adding a party would needlessly increase the costs of litigation and slow down the proceedings. For these reasons, Plaintiffs ask this Court to deny Vet Voice's motion.

Date: August 19, 2024

By: /s/ Jonathan B. Koch
Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503
(616) 774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

By: /s/ David A. Warrington
David A. Warrington (*Admission Pending*)
Gary Lawkowski
DHILLON LAW GROUP
Attorneys for Plaintiff Donald J. Trump for President 2024, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

---

[83] *Bay Mills Indian Cmty.,* 2017 WL 7736934, at *3 (cleaned up).

11

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation