UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REPUBLICAN NATIONAL COMMITTEE, *et al.*,    )
            Plaintiffs,    )
              )    No. 1:24-cv-720
v.    )
              )    Hon. Paul L. Maloney
GRETCHEN WHITMER, *et al.*,    )
            Defendants.    )
_____)

## ORDER RESOLVING MOTION TO INTERVENE

This matter comes before the court on proposed intervenor-defendant Vet Voice Foundation's motion to intervene. (ECF No. 9). Defendants Department of Veterans Affairs, Isabel Guzman, Denis McDonough, and the U.S. Small Business Administration filed a response in opposition. (ECF No. 14). Vet Voice filed a reply. (ECF No. 17). Plaintiffs filed a response in opposition. (ECF No. 18). The court will deny the motion to intervene but permit Vet Voice to file briefs as *amicus curiae*.

## I. Background

Plaintiffs—the Republican National Committee, Donald J. Trump for President 2024, Inc., the Michigan Republican Party, and Ryan Kidd ("Plaintiffs")—brought this action under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20506, and various Michigan laws. Defendants include (1) Gretchen Whitmer, sued in her official capacity as the Governor of Michigan; (2) Jocelyn Benson, sued in her official capacity as the Secretary of State of Michigan; (3) Johnathan Brater, sued in his official capacity as Director of the Michigan Bureau of Elections; (4) the U.S. Small Business Administration ("SBA"); (5)

Isabel Guzman, sued in her official capacity as Administrator of the Small Business Administration; (6) the Department of Veterans Affairs ("VA"); and (7) Denis McDonough, sued in his official capacity as Secretary of Veterans Affairs.

Plaintiffs' complaint alleges three counts. In Count I, Plaintiffs allege that Defendants Gretchen Whitmer, Jocelyn Benson, and Jonathan Brater failed to "comply with the Michigan Constitution and the Michigan Election Law by treating federal agencies as 'designated voter registration agenc[ies]' under MCL 168.509m even though they have not been so 'designated' in accordance with the Michigan Election Law, including MCL 168.509u." (ECF No. 1 at PID 16). Count II alleges a violation of the NVRA by the SBA and VA. (*Id.* at PID 18). Count III alleges a violation of the Administrative Procedures Act by the SBA and VA. (*Id.* at PID 20).

Proposed intervenor-defendant, the Vet Voice Foundation, moved to intervene. (ECF No. 9). Vet Voice is a "nonpartisan nonprofit organization" that's mission is "to empower veterans across the country to become civic leaders and policy advocates." (*Id.* at PID 65). Vet Voice has "over 1.5 million subscribers," and it "educates veterans on issues such as voting rights, disinformation, environmental protection, health care, and jobs." (*Id.*). Vet Voice also seeks to register more voters and increase voter turnout among its subscribers and other military voters. (*Id.*). Vet Voice seeks to intervene in this case as a matter of right or through permissive intervention.

## II. Legal Standards

"Under Federal Rule of Civil Procedure 24(a)(2), district courts must permit anyone to intervene who, (1) in a timely motion, shows that (2) they have a substantial legal interest

in the case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 771 (6th Cir. 2022). The proposed intervenor must satisfy all four elements of this standard to intervene as of right. *Grainger v. Ottawa Cnty.*, 90 F.4th 507, 513 (6th Cir. 2024).

A court may permit permissive intervention on a timely motion if a litigant is "given a conditional right to intervene by a federal statute; or has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Overall, the requirements for intervention "should be broadly construed in favor of potential intervenors." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991)).

### III. Analysis

The issue is whether Vet Voice can intervene under either avenue outlined in Rule 24. Vet Voice argues that Plaintiffs' claims threaten to impair Vet Voice's substantial interests and that the existing Defendants do not adequately represent its interests. The VA and the SBA argue that Vet Voice failed to establish that it possesses any substantial legal interest that is not adequately represented by parties already before the court.

A. Intervention as a Matter of Right

*Timing.* Whether a motion to intervene is timely "should be evaluated in the context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). Plaintiffs filed their complaint on July 15, 2024. (ECF No. 1). Vet Voice filed its motion to intervene on July 24, 2024. (ECF No. 9). Vet Voice moved within 10 days of when Plaintiffs

3

filed their complaint. Defendants do not dispute that Vet Voice's motion was timely. Given Vet Voice's prompt action, the court concludes that Vet Voice's motion was timely.

*Substantial Legal Interest.* The issue becomes whether Vet Voice has a "a substantial legal interest in the case." *Wineries of the Old Mission Peninsula Ass'n*, 41 F.4th at 771. For this analysis, courts engage in a "necessarily fact-specific" inquiry. *Id.* The proposed intervenor's interest "must be significantly protectable to rise to the level of substantial." *Id.* at 772. But not "any articulated interest will do." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007).

Vet Voice alleges it has three interests that are threatened by this lawsuit: (1) the mobilization of Michigan voters, (2) a representative interest in ensuring that its subscribers are able to register to vote, and (3) the diversion of its resources related to mobilizing voters. (ECF No. 9 at PID 67-70). Vet Voice's three argued interests can really be condensed into one—the mobilization of voters. The federal Defendants do not address whether the mobilization of voters is a substantial legal interest, but rather argue that the federal Defendants will adequately represent Vet Voice's mobilization interests. Plaintiffs argue that Vet Voice does not have a legally protectable interest, but even if it did, Plaintiffs success in this action would not impair that interest.

Plaintiffs seek a preliminary and permanent injunction barring the SBA and VA from operating as "voter registration agencies" ("VRAs") without express authorization from the Michigan Legislature. (ECF No. 1). The Michigan Secretary of State and the VA announced the signing of an interagency agreement that designated the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office as VRAs. If Plaintiffs succeed,

then these VA offices would no longer be designated as VRAs. Vet Voice argues that some of its subscribers would not be able to register to vote at the VA facilities. Vet Voice analogizes this potential difficulty as a harm sufficient to establish standing, which it argues is a higher standard than the substantial interest showing required to intervene under Rule 24(a).

Vet Voice relies on *ACLU of Ohio v. Taft*, 385 F.3d 641 (6th Cir. 2004). There, the court held that the ACLU had associational standing to challenge the then Ohio Governor's decision not to issue a writ of election when one of Ohio's seats in the United States House of Representatives became vacant. *Id.* at 644, 646. The court explained that the ACLU met the typical requisites for associational standing, including that "its members would have had standing to sue in their own right." *Id.* at 646. The ACLU had provided affidavits from its members who resided in the relevant vacant district. *Id.* The court concluded that the ACLU suffered an injury because some constituents were left without representation in the House. *Id.* In other words, the ACLU had standing because voters were unrepresented and the Ohio Governor failed to call for an election, which necessarily deprived thousands of the right to vote. *Id.* at 646.

Here, the court finds that Vet Voice's interests are unlike the ACLU's standing argument as they are far more attenuated. As to the sufficiency of the evidence asserted, Vet Voice's only affidavit is one from its Chief Executive Officer, Janessa Goldbeck. (ECF No. 9-3). While not a requirement to intervene, Vet Voice's motion lacks the kind of concrete affidavits from prospective voters that the court relied on when reviewing the ACLU's associational standing. And unlike in *ACLU of Ohio v. Taft*, none of Vet Voice's subscribers are asserting that they are "threatened with the imminent denial of their right to vote." 385

F.3d at 646. If Plaintiffs succeed, the relief sought would not extinguish the elections set to take place this November or deprive Vet Voice subscribers of a sitting representative in the House. Rather, Vet Voice's subscribers would be unable to utilize the federal Defendants as VRA locations. Vet Voice subscribers could still register to vote at several other locations throughout the state. The court finds Vet Voice's argument under *ACLU of Ohio v. Taft* unpersuasive.[1]

Vet Voice also relies on *Bellitto v. Snipes*, where a district court permitted a union to intervene when "its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs." No. 16-CV-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 21, 2016). Some of the union's members were facing the possibility that they would be purged from the voter lists by Florida election officials, which had been improperly done in violation of the NVRA in the prior election cycle. *Id.* at *1. Here, no one asserts they would be improperly purged from a voter list, and there is no prior record of Vet Voice's subscribers being denied their right to vote.[2] According to the complaint, the SBA was not designated as a VRA until March 18, 2024, and Governor Whitmer did not designate the VA as a VRA until December 18, 2023. (ECF No. 1 at PID 3). *Bellitto* is readily distinguishable from Vet Voice's position.

Next, Vet Voice cites *Judicial Watch, Inc. v. Illinois State Board of Elections*, No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024). In *Judicial Watch*, intervenors

---

[1] To be clear, the court is not holding Vet Voice to a standing standard instead of the Rule 24 intervention standard. The court is only rejecting Vet Voice's argument, which it argues under a standing case.

[2] Plaintiffs note that if they were to succeed, it would make "registering to vote no harder for veterans that it was for the 93 years between the VA's formation" and Governor Whitmer's decision to designate several VA offices as VRAs. (ECF No. 18 at PID 168).

submitted two reasons for intervention: "an organizational interest in avoiding adverse reallocation of resources to protect the voting rights of their members, and an associational interest in protecting their members from unlawful removal from the voter rolls should Plaintiffs succeed in obtaining their requested relief." 2024 WL 3454706, at *3. The district court held that intervention was proper and "both of Proposed Intervenors' interests satisfy the required 'direct, significant, and legally protectable interest' standard." *Id.* at 3.

Here, there is no suggestion that Vet Voice subscribers would be removed from the voter rolls. Vet Voice, however, does utilize *Judicial Watch* to assert that it has a "derivative interest in protecting [its] members or constituents' access to the franchise." (ECF No. 9 at PID 68). The court finds that this interest is too general to support a motion to intervene as a matter of right under Rule 24(a). *See Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d at 782 (rejecting a "general ideological interest" as sufficient to warrant intervention). Nearly any organization with a tangential interest in mobilizing voters could argue under this same interest. *See Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007) ("Without these sorts of limitations on the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process."). The court concludes that Vet Voice does not have a "a substantial legal interest" in this case. *Wineries of the Old Mission Peninsula Ass'n.*, 41 F.4th at 771.

*Adequate Representation.* If voter mobilization was a sufficient "substantial legal interest" under Rule 24, then the federal Defendants adequately represent Vet Voice's interests. The federal government has the same general goal. *See, e.g.*, 52 U.S.C. § 20501(a)(2) (declaring that the right to vote is fundamental and that the federal government

has a "duty to promote the exercise of that right"); Exec. Order No. 14,019, 86 Fed. Reg. 13,623 (Mar. 7, 2021) ("It is the policy of [President Biden's] Administration to promote and defend the right to vote for all Americans who are legally entitled to participate in elections."); *cf.* 38 C.F.R. § 17.33(a)(4)(iv) (protecting VA inpatients' "right to register and vote"). "When, as here, the proposed intervenor and party to the suit currently share the 'same ultimate objective,'" defending the VRA designations and promoting voter mobilization, "a presumption of adequate representation arises." *Wineries of the Old Mission Peninsula Ass'n*, 41 F.4th at 774. This presumption can be overcome by a showing that the party has "interests adverse to the intervener." *Id.* The record reflects the Vet Voice's interests are in lockstep with the federal Defendant's interests in defending this lawsuit. The federal Defendants adequately represent Vet Voice's interests, and denial of intervention would not impair Vet Voice's interests.

## B. Permissive Intervention

The court must consider the timeliness of a request for intervention, whether the intervenors have a claim or defense that shares a common question of fact or law with the main action, and whether considerations of undue delay or prejudice weigh against intervention. *See Buck v. Gordon*, 959 F.3d 219 (6th Cir. 2020); *Mich. State AFL-CIO v. Miller*, 103 F.3d 140 (6th Cir. 1997). Upon review of the record, the court finds that permissive intervention would be inappropriate as the federal Defendants will adequately represent Vet Voice's interests.

## IV. Conclusion

The court has reviewed Vet Voice's motion to intervene. Vet Voice has failed to establish it is entitled to intervene as a matter of right under Rule 24(a). In an exercise of discretion, the court concludes that permissive intervention would be unnecessary and burdensome under Rule 24(b). The court will permit Vet Voice to file briefs as *amicus curiae* in this case.

**IT IS HEREBY ORDERED** that proposed intervenor-defendant Vet Voice Foundation's motion to intervene (ECF No. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that proposed intervenor-defendant Vet Voice Foundation's motion for leave to file a reply brief (ECF No 17) is **GRANTED**.

**IT IS SO ORDERED.**

Date:  August 21, 2024                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge