UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REPUBLICAN NATIONAL COMMITTEE,
DONALD J. TRUMP FOR PRESIDENT
2024, INC., MICHIGAN REPUBLICAN
PARTY and RYAN KIDD

No. 1:24-cv-00720

   Plaintiffs,

HON. PAUL L. MALONEY

v

**DEFENDANTS GOVERNOR
GRETCHEN WHITMER,
SECRETARY OF STATE
JOCELYN BENSON AND
DIRECTOR OF ELECTIONS
JONATHAN BRATER'S BRIEF
IN SUPPORT OF MOTION TO
DISMISS**

GRETCHEN WHITMER, in her official
capacity as Governor of Michigan,
JOCELYN BENSON, in her official capacity
as Michigan Secretary of State, JONATHAN
BRATER, in his official capacity as Director
of the Michigan Bureau of Elections, U.S.
SMALL BUSINESS ADMINISTRATION,
ISABEL GUZMAN, in her official capacity
as Administrator of the Small Business
Administration, DEPARTMENT OF
VETERANS AFFAIRS, and DENIS
McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

   Defendants.

_____

Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
Attorneys for Plaintiffs
100 Monroe Center, NW
Grand Rapids, Michigan 49503
616.774.8000
jkoch@shrr.com
dbroaddus@shrr.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants Whitmer,
Benson and Brater
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

_____/

**DEFENDANTS GOVERNOR GRETCHEN WHITMER, SECRETARY OF STATE JOCELYN BENSON AND DIRECTOR OF ELECTIONS JONATHAN BRATER'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for State Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
(P55439)

Dated:  August 23, 2024

# TABLE OF CONTENTS

Page

Table of Contents................................................................................. i

Index of Authorities............................................................................ ii

Concise Statement of Issues Presented ...................................... v

Introduction ......................................................................................... 1

Statement of Facts.............................................................................. 2

    A.    The National Voter Registration Act.............................. 2

    B.    Implementation of the NVRA in Michigan was delayed. ...................... 4

    C.    Michigan's Designation of voter registration agencies. ......................... 5

Standard of Review............................................................................ 9

Argument .............................................................................................. 10

I.    The Eleventh Amendment prohibits this Court from entertaining Plaintiffs' state-law claim against the State Defendants.............................. 10

II.    Plaintiffs lack standing to bring their state-law claim against the State Defendants. ................................................................................. 13

    A.    The RNC, MRP, and Trump campaign's alleged injuries are speculative and generalized non-cognizable grievances that do not establish an injury in fact............... 14

    B.    Plaintiff Ryan Kidd's alleged injuries are speculative and generalized non-cognizable grievances that do not establish an injury in fact. ......................... 21

III.    Plaintiffs fail to state a claim against the State Defendants for a violation Michigan law.................................................................. 23

Conclusion and Relief Requested............................................... 27

# INDEX OF AUTHORITIES

Page

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................10

*Association of Community Organizations for Reform Now (ACORN) v. Miller*,
912 F. Supp. 976 (W.D. Mich. 1995)..........................................................4, 5, 24, 25

*Association of Community Organizations for Reform Now v. Miller*, 129 F.3d
833 (6th Cir. 1997) ......................................................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................10

*Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855 (6th Cir. 2020) ..........................18

*Cady v. Arenac Cty.*, 574 F.3d 334 (6th Cir. 2009) ....................................................11

*Castro v. New Hampshire Secretary of State*, 701 F. Supp. 3d 176 (D. New.
Hamp. 2023) ..............................................................................................................19

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................................19

*Coal Operators and Assocs., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2002) ..............14

*Coyne v. Amer. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999) ......................................14

*Diamond v. Charles*, 476 U.S. 54 (1986).....................................................................17

*Donald J. Trump for President, Inc., v. Boockvar*, 493 F. Supp. 3d 331 (W.D.
Pa. 2020) ....................................................................................................................17

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)............................................................12

*Glennborough Homeowners Ass'n v. United States Postal Serv*, 21 F.4th 410
(6th Cir. 2021) ...........................................................................................................16

*Hafer v. Melo*, 502 U.S. 21 (1991)...............................................................................11

*Hans v. Louisiana*, 134 U.S. 1 (1890) .........................................................................11

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)...............................................15

*Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587 (2007) ...........................16

*Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021) .....................................................18

ii

*Johnson v. Bredesen*, 356 F. App'x 781 (6th Cir. 2009)................................................ 18

*Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396 (6th
    Cir. 2019) ................................................................................................................. 13

*Kyle v. Oakland County*, ___ F. Supp. 3d ___, ___ (E.D. Mich. 2024); 2024 WL
    1259472 (Mar. 25, 2024) ........................................................................................ 24

*Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.,* 34 F.4th 988 (11th Cir.
    2022) ........................................................................................................................ 17

*Lance v. Coffman*, 549 U.S. 437 (2007) ............................................................... 17, 23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................ 14

*Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017)................................................................. 9

*Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343 (6th Cir. 2024) ................. 19

*McAuley v. General Motors Corp*, 457 Mich. 513; 578 N.W.2d 282 (1998) ............... 26

*Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022) ................................................. 19, 20

*Online Merchants Guild v. Cameron*, 995 F.3d 540 (6th Cir. 2021) ......................... 19

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)............................ 11

*People v. Webb*, 458 Mich. 266; 580 N.W.2d 884 (1998) ........................................... 26

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996) ......... 10

*Rogers v. Stratton Indus.*, 798 F.2d 913 (6th Cir. 1986) ........................................... 10

*Santos v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of*
    *Carpenters & Joiners of Am., AFL-CIO*, 547 F.2d 197 (2d Cir. 1977) ................. 17

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ................... 15

*Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996);.................................................... 11

*Shays v. FEC*, 414 F.3d 76 (D.C. Cir. 2005) ............................................................. 19

*Shelby Advocates for Valid Elections v. Hargett,* 947 F.3d 977 (6th Cir. 2020) ........ 18

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016).......................................................... 14

*Taylor v. KeyCorp.*, 680 F.3d 609 (6th Cir. 2012)...................................................... 14

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552
    F.3d 430 (6th Cir. 2008) .......................................................................... 10

*Turker v. Ohio Dep't Rehab. & Corr.*, 157 F.3d 453 (6th Cir. 1998) ........................ 11

*Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) .................................. 12

*Valley Forge Christian College v. Americans United for Separation of Church
    & State, Inc.*, 454 U.S. 464 (1982) ........................................................... 14

*Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816 (S.D. Tex. 2012) ................... 21

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) ........................................................ 14, 15

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ............................................. 11

**Statutes**

52 U.S.C. § 20501 .......................................................................................................... 2

52 U.S.C. § 20506(a)(2)(A) ......................................................................................... 25

52 U.S.C. § 20506(a)(3)(B)(ii) .............................................................................. *passim*

52 U.S.C. § 20506(b) ..................................................................................................... 3

Mich. Comp. Laws § 168.1 ............................................................................................ 3

Mich. Comp. Laws § 168.31(1)(a) .............................................................................. 22

Mich. Comp. Laws § 168.509n(b) ........................................................................... 6, 26

Mich. Comp. Laws § 168.509u ............................................................................. *passim*

**Constitutional Provisions**

Mich. Const. 1963, art. 2, § 4(2) ................................................................................ 12

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Whether Plaintiffs' state-law claim against the State Defendants is barred by the Eleventh Amendment?

2.   Whether Plaintiffs have failed to allege an injury in fact sufficient to support standing under Article III?

3.   Whether Plaintiffs have failed to state a claim for a violation of the Michigan Election Law?

## INTRODUCTION

There is no more venerable group in America than our veterans.  And small businesses are the lifeblood of many communities across our nation, including here in Michigan.  It is thus perplexing that Plaintiffs Republican National Committee, Michigan Republican Party, and the campaign for Republican presidential nominee Donald Trump, oppose Michigan's efforts to provide voter registration services to veterans and small business owners.

Pursuant to express authorization in the National Voter Registration Act (NVRA), 52 U.S.C. § 20506(a)(3)(B)(ii), Michigan's Governor and Secretary of State forged agreements with the U.S. Department of Veterans Affairs and the U.S. Small Business Administration to designate local offices as voter registration agencies in Michigan.  These designated agencies will provide additional voter registration services to Michigan veterans and members of the small business community.  These services are available to any eligible elector applying for services at the designated voter registration agency.

Plaintiffs insist that the Governor and Secretary violated state law in designating these agencies, among others, as voter registration agencies under the NVRA.  They ask this Court to declare these acts unlawful and to enjoin the prior, as well as any future, designations.  But Plaintiffs' claims are without merit and must be dismissed for three reasons.

First, because Plaintiffs allege only a violation of state law against the State Defendants, the Eleventh Amendment bars bringing this claim in federal court.

1

Second, Plaintiffs, including the individual Plaintiff clerk, lack standing because they have not alleged an injury in fact that is concrete and particularized under any theory.

And third, Plaintiffs fail to state a claim upon which relief may be granted. The Michigan Election Law authorizes the Governor to designate executive departments, state agencies, or other offices to perform voter registration activities. Mich. Comp. Laws § 168.509u.

For these reasons, Plaintiffs' complaint should be dismissed.

## STATEMENT OF FACTS

### A.      The National Voter Registration Act.

The NVRA, 52 U.S.C. § 20501, *et seq*., was enacted by Congress in 1993 "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," "to make it possible for Federal, State and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters for Federal office," "to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b).

Section 7 of the NVRA requires that states designate agencies to assist in voter registration, i.e., voter registration agencies (VRA):

(1) Each State shall designate agencies for the registration of voters in elections for Federal office.

(2) Each State shall designate as voter registration agencies--

(A) all offices in the State that provide public assistance; and

(B) all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities.

(3)(A) In addition to voter registration agencies designated under paragraph (2), each State shall designate other offices within the State as voter registration agencies.

52 U.S.C. § 20506(a)(1)-(3).  The NVRA further provides that states may designate "[f]ederal and nongovernmental offices" as voter registration agencies "with the agreement of such offices."  52 U.S.C. § 20506(a)(3)(B)(ii).  And under the NVRA, "[a]ll departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out subsection (a), and all nongovernmental entities are encouraged to do so."  52 U.S.C. § 20506(b).  The NVRA also specifies that armed forces recruitment centers must serve as voter registration agencies.  52 U.S.C. § 20506(c).

Designated VRAs must provide certain services, including distribution of mail voter registration applications, assistance to applicants in completing application forms unless the applicant refuses, and accepting completed applications for transmittal to the proper state election official.  52 U.S.C. § 20506(a)(4).  In offering these services, a VRA "shall not" "seek to influence an applicant's political preference or party designation," "display any such political preference or party allegiance," or "make any statement to an applicant or take any action" that has the effect of "discourage[ing]" the applicant from registering to vote. 52 U.S.C § 20506(a)(5).

**B.      Implementation of the NVRA in Michigan was delayed.**

The State of Michigan became subject to the requirements of the NVRA on

January 1, 1995.  *Association of Community Organizations for Reform Now*

*(ACORN) v. Miller*, 912 F. Supp. 976, 979 (W.D. Mich. 1995).  To come into

compliance with the voter registration requirements of the NVRA, the Michigan

Legislature enacted 1994 P.A. 441, which was signed by then Governor John Engler

on January 5, 1995.  *ACORN*, 912 F. Supp. at 980.  Public Act 441 amended the

Michigan Election Law, Mich. Comp. Laws § 168.1 *et seq*., to include § 509u, which

provides:

> (1) Not later than the thirtieth day after the effective date of this
> section, the governor shall provide a list to the secretary of state
> designating the executive departments, state agencies, or other offices
> that will perform voter registration activities in this state.

> (2) Pursuant to the national voter registration act of 1993, a
> recruitment office of the armed forces of the United States is a
> designated voter registration agency under this act.

Mich. Comp. Laws § 168.509u.  Although Public Act 441 took immediate effect,

Governor Engler issued Executive Order 1995-1[1] on January 10, 1995, declaring

that the burdens imposed by the NVRA were unfunded mandates and that "agency

registration [would] not begin until 'federal funds [were] made available to fully

fund' the program.'"  *ACORN*, 912 F. Supp. at 980.

Shortly thereafter, three federal lawsuits were filed against the Governor, the

then Secretary of State and others variously alleging that Michigan was out of

---

[1] Available at https://www.legislature.mi.gov/documents/1995-
1996/executiveorder/htm/1995-EO-01.htm.

compliance with the NVRA.  *Id.*  These cases were consolidated, and in each the defendants based their lack of compliance on grounds that the NVRA was unconstitutional.  *Id.*  Ultimately, in December 1995 the district court rejected these arguments, and ordered that Michigan comply with the NVRA within 10 days of its order.  *Id.* at 988-89.  The defendants proposed that the State be given additional time to implement the voter registration agency requirements, which request was rejected, and Michigan was ordered to come into compliance in February 1996. *Association of Community Organizations for Reform Now (ACORN) v. Miller*, 912 F. Supp. 989, 991 (W.D. Mich. 1996).

The defendants appealed to the Sixth Circuit Court of Appeals and that Court affirmed the district court in a November 3, 1997, opinion.  *Association of Community Organizations for Reform Now v. Miller*, 129 F.3d 833 (6th Cir. 1997).

### C.    Michigan's Designation of voter registration agencies.

Although Executive Order 1995-1 ordered agencies not to participate in voter registration efforts until federal funds were provided, Governor Engler ultimately designated VRAs as required by the NVRA and Mich. Comp. Laws § 168.509u. Executive Order 1995-1 provides:

2. Pursuant to Sections 7(a)(2)(A) and 7(a)(2)(B) of the NVRA, the following offices are hereby designated to accept applications for voter registration:

a. Michigan Department of Social Services local offices which accept applications and administer benefits for the Aid to Families with Dependent Children (AFDC), Medicaid, and Food Stamp programs.

b. County health department offices and other agencies which contract with the Department of Public Health which accept applications and

5

administer benefits for the Women, Infants and Children program (WIC).

c. Local Michigan rehabilitation services offices.

d. Adult inpatient psychiatric hospitals operated by the Michigan Department of Mental Health.

e. Any other public office, whether or not specified by PL 103-31, which the Governor may from time to time designate by Executive Directive.[2]

The order further directed that the agencies "make vigorous efforts to prevent fraudulent voter registration."[3]  Under the Governor's designation, and after the court decisions, Michigan's VRAs began assisting with voter registration under the instruction of the Michigan Secretary of State.  *See* Mich. Comp. Laws § 168.509n(b) ("The secretary of state shall . . . Instruct designated voter registration agencies . . . about the voter registration procedures and requirements imposed by law.")

Although the language in Executive Order 1995-1 contemplates future designations of agencies, no additional designations (or redesignations) were made until 2023.  But before then, on March 7, 2021, President Joseph R. Biden issued Executive Order 14019, which directed federal departments and agencies to partner with the states and "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation."[4] Executive Order 14019 also stated that each federal agency, "if requested by a State

---

[2] *Id.*

[3] *Id.*

[4] Available at <ins>Executive Order on Promoting Access to Voting | The White House</ins>.

to be designated as a voter registration agency . . . shall, to the greatest extent practicable and consistent with applicable law, agree to such designation."[5]

In May 2022, Governor Whitmer issued Executive Directive 2022-4, which acknowledged the passage of time since Governor Engler's 1995 designation and stated that it was "time to review and update Michigan's list of voter registration agencies."[6] She directed executive agencies to identify, among other things, which agencies could serve as VRAs, and requested that the Michigan Department of State (MDOS) examine the State's compliance with NVRA and make recommendations regarding designations of additional VRAs.[7]

The following year, Governor Whitmer issued Executive Directive 2023-6,[8] and directed the following:

> 3. Pursuant to subsections 7(a)(2) and 7(a)(3)(B)(i) of the National Voter Registration Act, 52 U.S.C. § 20506(a)(2), (a)(3)(B)(i), the following state departments, agencies, and offices are designated as voter registration agencies:
>
> a. Michigan Department of Health and Human Services;
>
> b. Michigan Department of Military and Veterans Affairs;
>
> c. Michigan Rehabilitation Services of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;
>
> d. Bureau of Services for Blind Persons of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;

---

[5] *Id.*

[6] Available at ED-20224-Voter-Registration-final.pdf (michigan.gov).

[7] *Id.*

[8] Available at ED-20236-signed.pdf (michigan.gov).

e. Wage and Hour Division of the Michigan Department of Labor and
Economic Opportunity's Bureau of Employment Relations;

f. Michigan Worker's Disability Compensation Agency;

g. Workforce Development of the Michigan Department of Labor and
Economic Opportunity's Office of Employment and Training; and

h. Michigan State Housing Development Authority.

The Governor further directed that "[p]ursuant to subsection 7(a)(3)(b)(ii) of

the NVRA, 52 U.S.C. § 20506(a)(3)(B)(ii), the U.S. Department of Veterans Affairs

(DVA) is designated as a voter registration agency subject to the agreement it has

signed with the State of Michigan."[9]  Under the agreement between the MDOS and

the DVA, (Def's Ex A, DVA agreement), the Saginaw VA Medical Center, the

Detroit VA Medical Center, and the Detroit Regional Office were designated as

voter registration sites.[10]

Following on her 2023 directive, in Executive Directive 2024-3,[11] the

Governor made one additional designation:

> Pursuant to subsection 7(a)(3)(B)(ii) of the NVRA, 52 U.S.C. §
> 20506(a)(3)(B)(ii), the U.S. Small Business Administration
> is designated as a voter registration agency subject to the agreement it
> has signed with the Michigan Department of State.

The agreement referenced by the Governor is reflected in a March 18, 2024,

memorandum of agreement between MDOS and the U.S. Small Business

Administration (SBA).  (Def's Ex B, SBA agreement.)  The SBA announced the

---

[9] *Id.*

[10] Available at Three Michigan VA locations will pilot voter registration sites.

[11] Available at ED-20243-signed.pdf (michigan.gov).

agreement on March 19, 2024,[12] and MDOS followed with an announcement on

March 20, 2024.[13]  Executive Directive 2024-3 was issued and signed by the

Governor on June 20, 2024, with immediate effect.

As noted in MDOS's announcement, MDOS agreed to "create a unique URL

for the SBA to use to drive online visitors to register to vote.  The SBA's Michigan

field office may also allow MDOS officials to conduct in-person voter registration at

the SBA's small business outreach events."[14]  The unique URL was created in April

2024, but at this time, it is unclear whether the SBA has taken any action under its

agreements.

## STANDARD OF REVIEW

Whether the Eleventh Amendment precludes Plaintiffs' claim, and whether

Plaintiffs have Article III standing, are issues pertaining to this Court's subject-

matter jurisdiction properly raised under Rule 12(b)(1).  *See Lyshe v. Levy*, 854 F.3d

855, 857 (6th Cir. 2017).  Unlike a motion to dismiss for failure to state a claim

under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule

12(b)(1)[,] ... the plaintiff has the burden of proving jurisdiction in order to survive

---

[12] Available at SBA Administrator Guzman Announces Agency's First-Ever Voter Registration Agreement with Michigan Department of State | U.S. Small Business Administration.

[13] Available at Michigan Department of State, U.S. Small Business Administration announce voter registration agreement.

[14] *Id.*  The State and the SBA executed a separate memorandum of understanding reflecting the agreement to create the URL to be used for voter registration purposes.  (Def's Ex C, SBA MOU.)

9

the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986))

(emphasis omitted).

When considering a 12(b)(6) motion to dismiss for failure to state a claim,

although the Court should presume that all well-pleaded material allegations of the

complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue*

*Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted).  Moreover, the court

need not accept as true legal conclusions or unwarranted factual inferences. *Total*

*Benefits*, 552 F.3d at 434.  To survive dismissal, the plaintiff's claim must be

plausible. *Bell Atl. Corp.*, 550 U.S. at 555.  The inquiry as to plausibility is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.... [W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I.   The Eleventh Amendment prohibits this Court from entertaining Plaintiffs' state-law claim against the State Defendants.

Plaintiffs' sole claim against the State Defendants is based entirely on an

alleged "violation of Michigan law."  (ECF No. 1, PageID.16.)  Plaintiffs argue that

Governor Whitmer violated Mich. Comp. Laws § 168.509u by designating certain agencies as VRAs under the NVRA because her authority to do so expired in 1995. But the Court cannot consider that claim because State Defendants are immune from state-law claims in federal court.

The Eleventh Amendment bars state-law claims against a state and its agencies unless the state has waived its immunity, consented to be sued, or Congress has abrogated that immunity, none of which exceptions apply here. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58, (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  This immunity extends to state and state agency officers and employees who are sued in their official capacities because "[s]uits against state officials in their official capacity [are] treated as suits against the State."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Will*, 491 U.S. at 71; *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009)); *Turker v. Ohio Dep't Rehab. & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998).

Eleventh Amendment immunity is premised on two "presupposition[s]": "first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'"  *Seminole Tribe*, 517 U.S. at 54 (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)).  Thus, for "over a century [the Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting States 'was

not contemplated by the Constitution when establishing the judicial power of the United States." *Id.* (quoting *Hans*, 134 U.S. at 15).

To be sure, state officials' Eleventh Amendment immunity in federal court is limited by the doctrine of *Ex Parte Young*, which applies "when a federal court commands a state official to do nothing more than from refrain from violating *federal* law." *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 248 (2011) (emphasis added). *Ex Parte Young*'s exception to Eleventh Amendment immunity is driven by "the need to promote the supremacy of federal law." *Pennhurst*, 465 U.S. at 105 (emphasis added). That need is "wholly absent, however, when a plaintiff alleges that a state official has violated *state* law." *Id.* at 106. Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* As a result, *Ex Parte Young* is "inapplicable in a suit against state officials on the basis of state law," *id.*, and "states' constitutional immunity from suit prohibits *all* state-law claims filed against a [s]tate in federal court, whether those claims are monetary or injunctive in nature." *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005).

Despite this century's worth of blackletter law precluding federal courts from hearing state-law claims against states and state officials, that is precisely what Plaintiffs present in their sole count against the State Defendants. Count I of Plaintiffs' complaint is labeled "VIOLATION OF MICHIGAN LAW BY STATE DEFENDANTS." (ECF No. 1, PageID.16.) In that count, Plaintiffs allege that the State Defendants "have failed to comply with the Michigan Constitution and the

12

Michigan Election law by treating federal agencies as 'designated voter registration agenc[ies]' under MCL 168.509m even though they have not been so 'designated' in accordance with the Michigan Election law, including MCL 168.509u."  (ECF No. 1, PageID.16, ¶ 80.)  They seek a "declaratory judgment that the State Defendants have violated Michigan Const. 1963, art. 2, § 4(2), as well as MCL 168.509m and MCL 168.509u," (*id*., ¶ A.), and a preliminary and permanent injunction "barring the State Defendants from designating any VRAs without express authorization from the Michigan Legislature."  (*Id*., ¶ B.)

By pursuing this quintessential state-law claim, Plaintiffs put themselves squarely in the Eleventh Amendment's crosshairs.  And since Governor Whitmer, Secretary Benson and Director Brater are arms of the State of Michigan, the claims against these individuals in their official capacities are barred by the Eleventh Amendment.  *See, e.g., Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) (holding Eleventh Amendment barred plaintiffs' claims against MDHHS and its agents to the extent they were sued in their official capacities).

For these reasons, Count I of the complaint against the State Defendants must be dismissed.

## II.    Plaintiffs lack standing to bring their state-law claim against the State Defendants.

When plaintiffs lack standing, this Court lacks jurisdiction and dismissal is warranted under Fed. R. Civ. P. 12(b)(1).  *Taylor v. KeyCorp.*, 680 F.3d 609, 612-13

(6th Cir. 2012).  "[T]he standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into a 'vehicle for the vindication of the value interests of concerned bystanders.'"  *Coal Operators and Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Coyne v. Amer. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (internal citations and quotations omitted.)).

A plaintiff can satisfy this requirement only by "clearly … alleg[ing] facts demonstrating" that: (1) they suffered an injury-in-fact; (2) such injury is "fairly traceable to the challenged conduct" of a named-defendant; and (3) such injury is "likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547-48 (2016) (internal quotations omitted).  These elements are "not mere pleading requirements," but an "indispensable part of plaintiff's case[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992).

### A.    The RNC, MRP, and Trump campaign's alleged injuries are speculative and generalized non-cognizable grievances that do not establish an injury in fact.

The complaint is void of any factual allegations supporting a finding that Plaintiffs "personally ha[ve] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]."  *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)) (internal quotations and citations omitted).  Federal courts have "emphasized repeatedly" that the "injury-in-fact" element requires allegations of an injury that is "distinct and palpable" with respect to the Plaintiffs and based on "actual or

14

imminent" alleged harm.  *Whitmore*, 495 U.S. at 155-56 (internal citations and quotations omitted).  Allegations of a "conjectural, hypothetical or speculative" harm are not sufficient.  *Id.*  Nor is it sufficient to allege an abstract injury which, if it even materialized, would be shared by all citizens.  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216-17 (1974).

The RNC, MRP and Trump campaign cannot allege injuries that merely amount to "generalized grievances about the conduct of Government," *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 217 (1974), or "setback[s] to the organization's abstract social interests," *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Plaintiff RNC alleges it has "vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Michigan elections," and that the RNC has "strong interests in ensuring that they and their candidates compete for votes in a lawfully structured competitive environment."  (ECF No. 1, PageID.5, ¶ 17.)  It brings this suit "to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates."  (*Id.*)  The RNC alleges that it and its members are concerned that the State Defendants' "failure to comply with the Michigan statutes governing VRA designation undermines the integrity of elections by increasing the opportunity" for ineligible persons to register and "by sowing confusion regarding whether the agencies purporting to offer assistance in registering voters" are doing so consistent with the law.  (*Id.*, ¶ 18.)

The Trump campaign alleges it "has the same interests in this case as the RNC with respect to the candidacy of President Trump and seeks to vindicate those interests in the same ways." (*Id.*, ¶ 20.)

MRP alleges it "works to ensure that elections in Michigan are conducted in a free, fair, and transparent manner, and works to protect the fundamental constitutional right to vote of its members and all Americans." (*Id.*, ¶ 21.)  It brings suit on behalf of itself and its members.  (*Id.*)

These Plaintiffs collectively assert that the State Defendants' alleged violation of state law injures them "by undermining confidence in the integrity of the electoral process and discouraging participation in the democratic process, which will harm the electoral prospects of Republican candidates," as well injuring their "right to vote and compete in lawfully structured elections." (*Id.*, Page ID.17, ¶ 82.)  They further allege that the State Defendants' actions "have caused economic, financial, and political injury" to Plaintiffs by "forcing them to allocate additional resources and misallocate their scarce resources in ways they otherwise would not have." (*Id.*, ¶ 85.)

But these allegations are insufficient to plead an injury-in-fact.

***First***, Plaintiffs' purported concern over ineligible voters becoming registered and voting are entirely speculative and non-concrete generalized grievances.  The "fear" of unlawful voting is the type of psychic injury that "falls well short of a concrete harm needed to establish Article III standing." *Glennborough Homeowners Ass'n v. United States Postal Serv*, 21 F.4th 410, 415 (6th Cir. 2021); cf. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 619–20 (2007) (Scalia, J.,

concurring) (recognizing that a plaintiff whose only injury is subjective mental angst "lacks a concrete and particularized injury" under Article III).  *See also Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.,* 34 F.4th 988, 993 (11th Cir. 2022) ("purely psychic injuries, like disagreeing with government action, are not concrete, so they do not give rise to standing.") (citing *Diamond v. Charles*, 476 U.S. 54, 67 (1986).); *Santos v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of Carpenters & Joiners of Am., AFL-CIO*, 547 F.2d 197, 200 (2d Cir. 1977) (explaining that "disappointment" in election results is "an emotional loss insufficient to establish standing" (internal quotation marks and citation omitted)).

Plaintiffs allege that they now must "deploy their time and resources to monitor Michigan elections for fraud and abuse."  (ECF No. 1, PageID.6, ¶ 25.)  But they provide no factual support for such concerns—they identify no incidents of any fraud or abuse related to registration activities conducted by VRAs.  Merely invoking "the possibility and potential for voter fraud" based only on "hypotheticals, rather than actual events," is insufficient to support an injury.  *Donald J. Trump for President, Inc., v. Boockvar*, 493 F. Supp. 3d 331, 406 (W.D. Pa. 2020).

Likewise, their subjective fear or concern regarding the integrity of Michigan elections is the type of generalized grievance that inures to all Michigan residents and thus fails to demonstrate a particularized injury for purposes of standing.  *See*, *e.g*, *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (a plaintiff who is "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly

benefits him than it does the public at large ... does not state an Article III case or controversy."); *Johnson v. Bredesen*, 356 F. App'x 781, 784 (6th Cir. 2009) ("The Supreme Court has long held that a plaintiff does not have standing 'to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens.'"); *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (holding that a plaintiff's claim "that drive-thru voting hurt the 'integrity' of the election process" was "far too generalized to warrant standing").

   ***Second***, to the extent Plaintiffs attempt to ground standing under a "diversion-of-resources" theory, that effort fails as well.  "[A]n organization can sometimes establish its standing if the organization shows both that the defendant's challenged conduct has caused 'a drain' on its 'resources' and that the organization would have used those resources in another way."  *Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, 105 F.4th 888, 903 (6th Cir. 2024) (discussing limitations of that theory) (citations omitted).  But Plaintiffs can "no more spend [their] way into standing based on speculative fears of future harm than an individual can."  *Shelby Advocates for Valid Elections v. Hargett,* 947 F.3d 977, 982 (6th Cir. 2020) (citation omitted).  That is, however, what Plaintiffs are alleging in complaining that they have had to, or will have to, spend time, money, or resources to investigate or counteract State Defendants alleged "ultra vires" acts in designating VRAs.  But a "plaintiff cannot create an injury by taking precautionary measures against a speculative fear."  *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020).  Plaintiffs cannot create their own

18

injury based on their decisions to spend time and money investigating voter registration activities based on their speculative concerns of fraud, abuse, or other harm. *See also Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021) (concluding courts have "rejected assertions of direct organizational standing where an overly speculative fear triggered the shift in organizational resources"); *accord Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (noting a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

***Third***, Plaintiffs' attempt to invoke "competitor standing" similarly fails. *Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343, 351 (6th Cir. 2024) ("the doctrine of competitor standing 'recognizes that plaintiffs suffer an economic injury "when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them." ' ") (citations omitted). "[C]ourts have found a competitive injury in the political context where the plaintiff is subjected to 'the burden of being forced to compete under the weight of a state imposed disadvantage.' " *Castro v. New Hampshire Secretary of State*, 701 F. Supp. 3d 176, 183 (D. New. Hamp. 2023) (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022).) "Candidates and political parties may possess 'competitive standing' stemming from "their shared interest in 'fair competition.' " *Republican Nat'l Comm. v. Burgess*, 2024 WL 3445254 at *2 (July 17, 2024, D. Nev. 2024) (quoting *Mecinas*, 30 F.4th at 898 n.3). *See also Shays v. FEC*, 414 F.3d 76 (D.C. Cir. 2005).

Plaintiffs suggest they have or will suffer an injury to the electoral prospects of Republican candidates (i.e., the "potential loss of an election"), or are injured by being forced to compete on an uneven playing field (i.e., "a state-imposed disadvantage"). *Republican Nat'l Comm.*, 2024 WL 3445254 at *2 (quoting *Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011) and *Mecinas*, 30 F.4th at 899.) But Plaintiffs cannot show an actionable injury under either theory.

Nowhere in their complaint do Plaintiffs explain how voter registration activities conducted by Michigan VRAs, more specifically at DVA and SBA sites, will change the electoral outcome of Republican candidates in Michigan, *Mecinas*, 30 F.4th at 899, or disadvantage the Republican Party to the advantage of some other party, presumably the Democratic Party, in Michigan elections. The agreements entered between the State and the DVA and SBA provide that voter registration services must be provided to any eligible person applying for services at the agency, and the agencies are prohibited from seeking to "influence an applicant's political preference," from "[d]isplaying any political preference or party allegiance," and from discouraging an applicant to register to vote. (Def's Ex A, SBA MOA, sections VI, VII, X; Def's Ex B, DVA IAA, sections VI, VII, X.) *See also* 52 U.S.C. § 20506(a)(5)(A)-(C). In other words, voter registration services at the VRA sites are available to any eligible elector regardless of whatever party preference they may have, if any.

The voter-registration activities that Plaintiffs challenge in this case are open to all. There is no unfair advantage under this process accorded to the Democratic

Party or disadvantage to the Republican Party.  Plaintiffs fail entirely to allege otherwise.  As a result, they have not pled a competitive injury.  *Republican Nat'l Comm.*, 2024 WL 3445254 at *2-4.

Because the organizational Plaintiffs cannot establish standing under any theory, their claims must be dismissed.

### B.    Plaintiff Ryan Kidd's alleged injuries are speculative and generalized non-cognizable grievances that do not establish an injury in fact.

Plaintiff Georgetown Township Clerk Ryan Kidd alleges that he is responsible for processing voter registration applications for individuals in his jurisdiction, including those received from VRAs.  (ECF No. 1, PageID.6, ¶ 22.)  He alleges that the State Defendants' "ultra vires acts" have created "confusion" about which state and federal agencies have been properly designated as VRAs, and that he needs "a declaration from the courts to guide his future conduct and the performance of his duties" as they relate to processing voter registration applications from purported VRAs.  (*Id.*, ¶ 24; *see also* ¶ 84.)  He asserts that "[w]hen a local official has 'a designated role to play in the interpretation and enforcement of' state election law, they are 'proper parties to any suit seeking to challenge its validity and enjoin its enforcement.' "  *Id.* at ¶ 22 (quoting *Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012), rev'd on other grounds, 732 F.3d 382 (5th Cir. 2013).)

The State Defendants do not disagree that Plaintiff Kidd has a role to play as a clerk in processing voter registration applications.  But to have standing, Kidd's

"confusion"-based injury must be actual, not speculative or hypothetical, and it must also be plausible.  He does not meet either requirement.

Nowhere in the complaint does Kidd allege that he has received any voter registration applications from a VRA designated by the Governor in Executive Order 2023-6, Executive Order 2024-3, or from any other pre-existing VRA, like armed service recruitment centers, that caused "confusion" on his part.  Nor does he allege that he will imminently receive any such applications.  Plaintiff Kidd does not explain why he would be "confused" as to how to process an application from a VRA, which process is largely the same for other voter registration applications. Indeed, all clerks who are responsible for conducting elections must undergo comprehensive training.  Mich. Comp. Laws § 168.31(1)(j)-(l).  Further, Secretary Benson has supervisory control over clerks, Mich. Comp. Laws § 168.21, and authority to advise and direct clerks in the performance of their duties, Mich. Comp. Laws § 168.31(1)(a)-(b).  In addition to providing training, the Secretary's Bureau of Elections has published specific instructions for clerks in processing voter registration applications, which discusses applications received from VRAs.[15]  If Plaintiff Kidd has questions as to how to process an application received from a VRA he can contact the Bureau of Elections for assistance.

It seems the true source of Kidd's purported injury is his belief the Governor's designation of additional VRAs was unlawful.  But without more, his allegation is

---

[15] *See* Election Officials' Manual, Chapter 2: Voter Registration, February 2024, available at [Election Officials' Manual, Chapter 2: Voter Registration (michigan.gov)](michigan.gov).

simply an "undifferentiated, generalized grievance about the conduct of government" that fails to show he has suffered a particular harm for purposes of standing. *Lance,* 549 U.S. at 442.

Because Plaintiff Kidd fails to set forth a concrete, particularized injury sufficient to support standing, his claim must also be dismissed.

### III.   Plaintiffs fail to state a claim against the State Defendants for a violation Michigan law.

Even if Plaintiffs claims against the State Defendants were not barred by immunity and lack of standing, they nevertheless fail as Defendants did not violate any law—state or federal—in designating certain state agencies and the DVA and SBA as voter registration agencies.

Plaintiffs argue that § 509u became effective January 10, 1995, and that "[u]nder its plain language, the Michigan Legislature did not authorize the Governor to unilaterally designate any VRAs after February 9, 1995." (ECF No. 1, PageID.3, ¶ 4.)

Again, § 509u provides, in relevant part:

(1) *Not later than the thirtieth day after the effective date of this section*, the governor shall provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state.

Mich. Comp. Laws § 168.509u(1) (emphasis added).  Michigan courts have not interpreted this statute, "so this Court must apply Michigan principles of statutory interpretation to predict how they would do so in the first instance."  *Kyle v.*

*Oakland County*, ___ F. Supp. 3d ___, ___ (E.D. Mich. 2024); 2024 WL 1259472 *16

(Mar. 25, 2024).  In Michigan,

> [t]he primary goal is "to give effect to the [Michigan] Legislature's intent." *Ricks* [*v. State*], [507 Mich. 387], 968 N.W.2d [428], 432 [(Mich. 2021).] In Michigan, the focus of the analysis is on "the statute's express language," which Michigan courts consider to be "the most reliable evidence of the Legislature's intent." *Sanford v. State*, 506 Mich. 10, 954 N.W.2d 82, 84 (2020) (quotations omitted). A statutory phrase should not be viewed in isolation but in the context of the statute as a whole. *Badeen v. PAR, Inc.* 496 Mich. 75, 853 N.W.2d 303, 306 (2014).

*Kyle*, ___ F. Supp. 3d at ___, 2024 WL 1259472 at *16.  Here, the pertinent

language—"[n]ot later than the thirtieth day after the effective date of this

section"—plainly imposed a date by which then Governor Engler was to make an

initial designation of VRAs.  It neither plainly nor expressly precludes subsequent

gubernatorial designations.  This interpretation is supported by the circumstances

surrounding the enactment of § 509u and Public Act 441.

"For states, like Michigan, whose state constitutions did not require

alteration to permit compliance with the Act, the Act became effective on January 1,

1995." *ACORN*, 129 F.3d at 835 (citing H.R. Rep. No. 9, 103d Cong., 1st Sess. 21

(1993).)  The NVRA also provides for a cause of action against recalcitrant states—

"If a state refuses to fulfill its obligations under the NVRA, the 'Attorney General

may bring a civil action in an appropriate district court for such declaratory or

injunctive relief as is necessary,' " or a "private person aggrieved by a state's

violation of the NVRA" may bring suit.  *ACORN*, 912 F. Supp. at 979 (citations

omitted).  See also 52 U.S.C. § 20510.

While the Michigan Legislature enacted legislation to implement the NVRA in December 1994 with immediate effect, the bill was not signed by Governor Engler until January 5, 1994—meaning the State was already late in complying with the NVRA at the time the legislation became effective.  *Id.* at 980.  The Michigan Legislature's requirement that the Governor designate agencies as VRAs not later than thirty days after the effective date of § 509u was simply a mechanism to ensure the Governor's timely compliance with the law.  It was not intended to hamstring Governor Engler's or future Governors' ability to add or subtract from the list of designated VRAs.  This construction is consistent with Governor Engler's contemporaneous interpretation of the law as expressed in Executive Order 1995-1, which provides for the designation of "[a]ny other public office, whether or not specified by [the NVRA], which the Governor may from time to time designate by Executive Directive."[16]  As Plaintiffs concede, Executive Order 1995-1 "complied with [§ 509u's] statutory directive."  (ECF No. 1, PageID.11, ¶ 53.)

Further, the construction Plaintiffs urge, if adopted, would create a conflict between Michigan law and the NVRA, and render Michigan noncompliant with the NVRA.  "The Supremacy Clause, U.S. Const., Art. VI, Cl. 2, renders the NVRA binding on state officials even in the absence of any state legislative action."  *ACORN*, 912 F. Supp. at 984.  The NVRA mandates that states "shall" designate as VRAs "*all* offices in the State that provide public assistance," "*all* offices in the State that provide State-funded programs primarily engaged in providing services to

---

[16] *Id.*

25

persons with disabilities," and "other offices within the State."  52 U.S.C. §

20506(a)(2)(A)-(B), (3)(A) (emphasis added).  This statutory mandate has not

expired and thus imposes a continuing obligation upon states to identify and

designate VRAs, especially agencies that fall into the mandatory categories under §

7(a)(2).

But under Plaintiffs' interpretation of § 509u, if the State expanded the scope

of agencies offering public assistance or services to persons with disabilities,

Michigan Governors would be prohibited from designating those agencies.  This

would expose the State to potential enforcement actions under the NVRA for

noncompliance.  This cannot be what the Legislature intended, and to read the

language of § 509u to require such a result—where the plain language does not—is

contrary to basic statutory construction principles of avoiding conflict and

preventing prejudice to the public's interest.  *See, e.g., Maple Manor Rehab Center,*

*LLC v. Dep't of Treasury*, 333 Mich. App. 154, 166; 958 N.W.2d 894, 900 (Mich. Ct.

App. 2011) (If " 'two statutes lend themselves to a construction that avoids conflict,

that construction should control.' ") (quoting *People v. Webb*, 458 Mich. 266, 274; 580

N.W.2d 884, __ (1998); *McAuley v. General Motors Corp*, 457 Mich. 513, 518; 578

N.W.2d 282, __ (1998) ("[s]tatutes should be construed so as to prevent absurd

results, injustice, or prejudice to the public interest").

Here, consistent with § 509u and Executive Order 1995-1, Governor

Whitmer, through Executive Directives 2023-6 and 2024-3, designated additional

voter registration agencies, including the DVA and the SBA.  Those designations of

26

the DVA and SBA were appropriately made after MDOS entered into agreements with those offices, as expressly directed by 52 U.S.C. § 20506(a)(3)(B)(ii).  The Secretary's negotiation of such agreements was consistent with her responsibility to coordinate the requirements of the NVRA, and to instruct VRAs about registration procedures and requirements.  Mich. Comp. Laws § 168.509n(b).

Because the State Defendants' designation of the DVA and SBA as VRAs was consistent with Michigan law and the NVRA, Count I of Plaintiffs' complaint fails to state a claim, and must be dismissed.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson and Director of Elections Jonathan Brater respectfully request that this Honorable Court grant their motion to dismiss and enter an order dismissing the complaint in its entirety, together with any other relief that the Court determines to be appropriate under the circumstances.

Respectfully submitted,

_s/Heather S. Meingast_
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for State Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
(P55439)

Dated:  August 23, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
P55439
