# EXHIBIT A

**INTERAGENCY AGREEMENT
between the
MICHIGAN DEPARTMENT OF STATE
and
THE DEPARTMENT OF VETERANS AFFAIRS**

### I. Introduction

The National Voter Registration Act (NVRA), 52 U.S.C. § 20501 *et seq.*, requires states to designate all offices in the state that either "provide public assistance" or "that provide state-funded programs primarily engaged in providing services for persons with disabilities" as voter registration agencies (VRA). States must also designate additional, undefined state agencies as VRAs, and states may request that Federal agencies or non-governmental agencies accept the designation.

### II. Purpose

Michigan implemented the NVRA's VRA-designation requirements through a 1994 statute that directed the Governor to designate VRAs. In 1995, then-Governor Engler signed an Executive Order (EO) designating several state agencies as VRAs. The 1995 EO also allows the Governor to designate additional VRAs through an executive directive.

NVRA also mandates that each state designate "a [s]tate officer or employee as the chief [s]tate election official to be responsible for the coordination of [s]tate responsibilities" imposed by NVRA. Michigan law makes the Secretary of State "responsible for the coordination of the requirements imposed under ... the national voter registration act of 1993." These responsibilities include "[i]nstruct[ing] designated voter registration agencies and [local] clerks about the voter registration procedures and requirements imposed by law."

The purpose of this Interagency Agreement (IAA) is to set forth the roles and responsibilities between the Michigan Department of State (MDOS) and the Department of Veterans Affairs (VA, the "Federal Agency" or the "Agency") to provide voter registration services in the State of Michigan as a designated VRA.

This IAA establishes the requirements the Federal Agency and MDOS (collectively the "parties") agree that the Agency will meet in accepting a designation as a VRA in the state of Michigan.

### III. VRA Coordinator

The Agency shall appoint a Michigan NVRA coordinator to oversee and manage voter registration services for Michigan voters arising from the Agency's designation as a voter registration agency.

## IV. Training

MDOS shall provide the Agency access to training resources related to voter registration. The Agency shall provide voter registration training to all personnel conducting activities under this IAA. This training shall include information on who is eligible to register to vote; the interactions during which Agency staff must make voter registration forms available; instructions to staff on how to help clients complete voter registration forms; and how to handle completed voter registration forms.

## V. Transactions Requiring Voter-Registration Services

The Agency must provide the voter registration services defined in Part VI of this IAA when the applicant requests such services (unless the applicant specifically refuses such assistance) and is:

   a. Applying for the Agency's assistance or services for which the individual is eligible, in categories of Agency transactions agreed to by MDOS and the Agency and detailed in Appendix A to this IAA;
   b. Seeking recertification or renewal of those services; and
   c. Updating an address with the Agency, whether as part of a request for assistance or services for which the individual is eligible, or as an update to contact information on file with the Agency with regard to services for which the individual is eligible.

## VI. Required Voter Registration Services

When acting in its VRA capacity, the Agency is required to take the following actions:

   a. Distribute paper or electronic voter registration application forms;
   b. Provide a document that contains information on the voter-registration process (MDOS shall provide the Agency with the information to be included in this document);
   c. Provide the same level of assistance to all applicants in completing voter-registration application forms as is provided with respect to other services provided by the Agency (unless the applicant specifically refuses such assistance);
   d. Accept completed voter registration forms from applicants; and
   e. Transmit each completed voter registration application to the appropriate election official within a prescribed time frame.

## VII. Online Voter Registration

With the Agency's agreement, MDOS shall provide the Agency a unique uniform resource locator (URL) which MDOS is responsible to maintain, and the Agency may use to direct persons served by the Agency to MDOS's online voter registration platform. Directing persons to the URL or otherwise directing persons to Michigan's

online voter registration portal shall fulfill the Agency's requirements to distribute, provide assistance with, accept and transmit voter registration forms. MDOS and the Agency will agree to develop a procedure by which paper registration forms will be available for persons who request or require paper registration forms [without a Michigan driver's license or state identification card]. MDOS agrees to provide the Agency with metrics regarding the use of that unique URL.

## VIII. Transmittal of Voter Registration Applications to MDOS

The Agency must submit the completed voter registration application to MDOS within the time period described in this section. The Agency is excused from returning a completed voter registration form to MDOS for applicants who desire to submit the completed application themselves.

When an applicant submits a completed voter registration application to the Agency, the Agency must transmit the form to MDOS within 10 calendar days. However, if the Agency receives a completed voter-registration application on or between the 25th and 20th calendar days before the date of the election, the application must be transmitted to MDOS within 5 days of receipt of the completed application. If the Agency receives a completed voter registration during the time period beginning on the 19th day and ending at the close of business on the 15th calendar day before the date of an election, the Agency must transmit that application to MDOS by the close of business on the 15th calendar day prior to the election.

If the Agency receives a completed voter registration application 14 or fewer calendar days before the election, the Agency shall provide a document to the person submitting that voter registration application explaining that, if the person submitting the voter registration application wishes to participate in the upcoming election, the person must appear in person and submit another voter registration application at the office of their city or township clerk. MDOS shall provide the Agency with the information to be included in the document described in this paragraph.

## IX. Prohibited Agency Conduct

The Agency is prohibited from:

a. Seeking to influence an applicant's political preference;
b. Displaying any political preference or party allegiance;
c. Taking any action or making any statement to an applicant to discourage the applicant from registering to vote; or
d. Taking any action or making any statement that may lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits.

## X. Data and Privacy

MDOS considers all non-publicly available data to be a minimal classification of confidential, referred to as VA sensitive information, with a potential moderate data impact level. MDOS accepts no responsibility and disclaims any and all liability that may occur from the transaction between the Agency and its clients.

The Agency acknowledges that it will receive personal identifying information deemed confidential by MDOS, which is also categorized by the Agency as VA Sensitive Information, as a VRA and agrees to secure that data and its integrity in alignment with National Institute of Standards and Technology 800-53 revision 5 (or latest revision) moderate security standards. The Agency further acknowledges that MDOS bears no responsibility for the Agency's possession of the Agency's client data.

The Agency must:

a. **Protect the data.** The Agency must establish and use appropriate administrative, technical and physical safeguards to protect the data from being accessed, used, disclosed or stored in a manner other than as provided in this IAA. Protocols must be in writing and provided to MDOS upon request.

   i. **Administrative safeguards** can include policies, procedures, training or other measures designed to carry out security requirements. For example, appointing a security officer or implementing an incident response plan.

   ii. **Physical safeguards** include limitation of access to physical areas of information systems. For example, implementing a clean-desk policy, requiring locked file cabinets or use of identification cards to access certain areas.

   iii. **Technical safeguards** include automated processes used to protect and control access to data on information systems. Examples include encryption, use of passwords and data loss prevention tools.

b. **Create security procedure guidance pertaining to the data.** A Security procedure guidance is a written document describing the system in terms of categories of data processed; users allowed access; and access rules between the users and the data. It describes procedures to prevent unauthorized access by deleting all protected data on storage objects before they are allocated or reallocated out of or into each system. Further security protocols using password protection and authentication must be provided where the computer system contains information for more than one program, project, office or agency so that personnel do not have unauthorized or unlimited access. The receiving agency

must provide MDOS with a copy of its current information security management procedure guidance, currently found in Handbook 6500, Risk Management Framework for VA Information Systems VA Information Security Program, upon request.

c. **Use the data only for the stated purpose.** The receiving agency will use the data received under this IAA solely for the purposes identified in this IAA.

d. **Not disclose the data except as expressly permitted in this IAA or as required by law.** Except as otherwise provided in this IAA, the receiving agency will not disclose the data to others.

## XI. Required Reporting

If the Agency discovers any violation of this agreement, the Agency must report it to MDOS within 1 business day of the violation being identified. The parties will cooperate with one another to investigate, mitigate and remedy the incident.

## XII. Access to Systems

This IAA does not provide for access by the Agency to any State of Michigan or MDOS systems.

## XIII. Issue Resolution

Upon the request of either party, the parties will convene as reasonably necessary for the purpose of resolving problems that may arise in the administration or enforcement of this IAA. The parties will exchange documentation as reasonably necessary to identify and explain issues and positions. Any portion of this IAA that may be subject to interpretation will be addressed at these meetings.

## XIV. Notices

Notices and other written communications must be addressed to the individuals below or their successors. The parties may amend contact information by providing written notice of the change to the other party. Notices or other written communications required or related to this IAA must be in writing and delivered in person or by email.

| For MDOS: | For the Department of Veterans Affairs: |
|---|---|
| Jonathan Brater, Director of Elections<br>430 W. Allegan<br>Lansing, MI 48933<br><br>BraterJ@michigan.gov | Zaneta Adams, Deputy Assistant Secretary<br>810 Vermont Avenue<br>Washington, DC 20420<br>202-461-7400<br>Zaneta.Adams@va.gov |

| | |
|---|---|
| With a copy to:<br>Megan Schaar, Associate of Legal Director<br>430 W. Allegan<br>Lansing, MI 48933<br><br>SchaarM1@michigan.gov | With a copy to:<br>Christopher W. Cauley, Interim Medical Center Director<br>VA Detroit Medical Center<br>4646 John R Street<br>Detroit, MI 48201<br>313-576-1000, Extension 61212<br>Christopher.Cauley@va.gov<br><br>Carol Dopp, Acting Medical Center Director<br>VA Saginaw Medical Center<br>1500 Weiss Court<br>Saginaw, MI 48602<br>989-497-2500<br>Carol.Dopp@va.gov |

## XV. Compliance Monitoring

At least once per calendar year, the Agency and MDOS will review the practices and procedures outlined in this IAA to ensure compliance with the terms of the IAA and the law. The parties will provide the results of such reviews to the other party upon written request. The parties will also ensure that they take appropriate measures to ensure that information about the IAA is kept up-to-date. The parties have designated the individuals listed below as responsible for this section.

Main point of contact for **Michigan Department of State: Jonathan Brater, Director of Election,** BraterJ@michigan.gov

Main Point of Contact for **The Department of Veterans Affairs: Zaneta Adams, Deputy Assistant Secretary for Office of Intergovernmental Affairs, Zaneta.Adams@va.gov**

The parties also recognize that this IAA is subject to compliance audits, investigations and reviews as provided by law.

## XVI. Amendments

This IAA may be amended by written agreement of the parties. If amendment to this IAA is required to comply with Federal or state laws, rules or regulations, the parties will promptly enter into negotiations to meet those legal requirements.

## XVII. Effective Date and Term

This IAA is effective when signed by both parties. Unless terminated under §XVIII, this IAA will expire on November 4, 2036. The IAA may be renewed for an additional 4 years, by amending the IAA. Parties will meet no less than 90 days prior to the end of this term to begin renewal process.

## XVIII. Termination

This IAA may be terminated for any reason by either party upon 30 days prior written notice to the other party.

## XIX. Survival

The rights, obligations and conditions set forth in this IAA, and any right, obligation or condition that, by its express terms or nature and context is intended to survive the termination or expiration of this IAA, survives any such termination or expiration.

## XX. Entire Agreement

This IAA replaces and supersedes all prior agreements between the parties relating to the subject matter of this IAA.

## XXI. Execution

This IAA may be executed in counterparts, each of which is deemed to be an original, and all of which taken together constitutes one and the same instrument. The signature of any party transmitted by email is binding.

## XXII. Successors; Assignment

This IAA inures to the benefit of and is binding upon the parties, their respective successors-in-interest by way of reorganization, operation of law or otherwise, and their permitted assigns. Neither party may assign this IAA to any other party without the prior approval of the other party.

## XXIII. No Third-Party Beneficiaries
This IAA does not confer any rights or remedies upon any person or entity other than the parties and their respective successors-in-interest by way of reorganization, operation of law or otherwise and their permitted assigns.

## XXIV. Authority to Bind

Each person signing this IAA represents that he or she is duly authorized to execute this IAA on behalf of the Agency.

For MDOS:

_____  
Jonathan Brater, Director of Elections  
Michigan Department of State

09/14/2023  
Date

For The Department of Veterans Affairs:

_____  
Guy T Kiyokawa, Acting Deputy Secretary  
Department of Veterans Affairs

14 SEP 2023  
Date

Enclosures:  
Appendix A