UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

REPUBLICAN NATIONAL COMMITTEE,
DONALD J. TRUMP FOR PRESIDENT 2024, INC.,
MICHIGAN REPUBLICAN PARTY, and RYAN
KIDD,

        Plaintiffs,

v

GRETCHEN WHITMER, in her official capacity as
Governor of Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of State; and
JONATHAN BRATER, in his official capacity as
Director of the Michigan Bureau of Elections, U.S.
SMALL BUSINESS ADMINISTRATION, ISABEL
GUZMAN, in her official capacity as Administrator
of the Small Business Administration,
DEPARTMENT OF VETERANS AFFAIRS, and,
DENIS McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

        Defendants.

CASE NO. 1:24−cv−00720−PLM−SJB

HON. PAUL L. MALONEY

**<u>Brief in Support of Plaintiffs' Motion
for Summary Judgment</u>**

**<u>***Oral Argument Requested***</u>**

Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
Smith Haughey Rice & Roegge
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503-2802
616-774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

David A. Warrington (*Admission Pending*)
Gary Lawkowski
Dhillon Law Group
Attorneys for Plaintiff Donald J. Trump for
President 2024, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

# **Table of Contents**

**Index of Authorities** ................................................................................................ ii-v

**Introduction** ....................................................................................................................1

**Statement of Facts** .........................................................................................................2

**Summary Judgment Standard** ......................................................................................6

**Law and Argument** .......................................................................................................7

     A.    Legal architecture for designating VRAs under the NVRA ................................7

     B.    Only the Legislature may designate VRAs in Michigan........................................9

     C.    Michigan's Governor acted ultra vires when she attempted to designate the SBA and VA as VRAs ...............................................................................................13

     D.    The Secretary of State acted ultra vires when she attempted to designate the SBA and VA as VRAs........................................................................................16

     E.    The ultra vires designation of VRAs represents an ongoing violation of federal law .........18

     F.    Plaintiffs have standing .......................................................................................21

     G.    The Eleventh Amendment does not bar Plaintiffs' claim for prospective, non-monetary relief against the State Defendants ...........................................................22

**Conclusion**........................................................................................................................24

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

i

# <u>Index of Authorities</u>

<u>CASES</u>

*46th Circuit Trial Court v. Crawford Co,* 476 Mich. 131; 719 N.W.2d 553 (2006) ...................................15

*Ass'n. of Cmty. Organizations for Reform Now v. Miller,* 129 F.3d 833 (6th Cir. 1997).......................9, 20

*Diamond v. Charles,* 476 U.S. 54; 106 S.Ct. 1697 (1986) ..................................................................22

*Ex parte Young,* 209 U.S. 123; 28 S.Ct. 441 (1908) ...................................................................4, 23

*Gifford v. Small Bus. Admin.,* 626 F.2d 85 (9th Cir. 1980).................................................................20

*Hansen v. Williamson,* 440 F. Supp. 2d 663 (E.D. Mich. 2006).........................................................18

*Harsha v. City of Detroit,* 261 Mich. 586; 246 N.W. 849 (1933) .......................................................15

*In re Complaint of Rovas against SBC Michigan,* 482 Mich. 90; 754 N.W.2d 259 (2008) .......................15

*In re Manufacturer's Freight Forwarding Co.,* 294 Mich. 57; 292 N.W.2d 678 (1940) ...........................15

*In re San Juan Dupont Plaza Hotel Fire Litig.,* 888 F.2d 940 (1st Cir. 1989) ............................................24

*Jennison v. Providence St. Vincent Med. Ctr.,* 174 Or. App. 219; 25 P.3d 358 (2001) ..............................19

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573; 130 S. Ct. 1605 (2010)...........19

*Jud. Watch, Inc. v. Griswold,* 554 F. Supp. 3d 1091 (D. Colo. 2021) .........................................................23

*Kim v. Hanlon,* 99 F.4th 140 (3d Cir. 2024) ...........................................................................................7

*Mich Ambulatory Surgical Ctr. v. Farm Bureau Gen. Ins. Co.,* 334 Mich. App. 622; 965 N.W.2d 650 (2020) ..............................................................................................................................18

*Moore v. Harper,* 600 U.S. 1; 143 S. Ct. 20654 (2023)...........................................................................9, 20

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.,* 981 F.3d 1360 (Fed. Cir. 2020)..............20

*People v. Carruthers,* 301 Mich. App. 590; 837 N.W.2d 16 (2013) ....................................................10, 17

*People v. Dettenhaler,* 118 Mich. 595; 77 N.W. 450 (1898) .........................................................................9

*People ex rel Sutherland v. Governor,* 29 Mich. 320 (1874)...................................................................9

*Promote the Vote v. Sec'y of State,* 333 Mich. App. 93; 958 N.W.2d 861 (2020)...................................9, 17

*Pub. Int. Legal Found. v. Benson,* No. 1:21-CV-929, 2024 WL 1128565 (W.D. Mich. Mar. 1, 2024) ........7

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

ii

*Priorities USA v. Nessel*, 860 F. App'x 419 (6th Cir. 2021).........................................................22

*Purcell v. Gonzalez*, 549 U.S. 1; 127 S. Ct. 5 (2006)...........................................................7, 24

*Owen v. I.C. Sys., Inc.*, 629 F.3d 1263 (11th Cir. 2011) ..............................................................19

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.*, 35 F.4th 1225 (10th Cir. 2022)............................................................................................19

*Republican National Committee, et al. v. Benson, et al.*, unpublished opinion of the Michigan Court of Claims, issued June 12, 2024 (Docket No. 24-000041-MZ) ...............................................21

*Richardson v. Jackson Cnty.*, 432 Mich. 377; 443 N.W.2d 105 (1989) ......................................13

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015)..............................................21-22

*Salzer v. City of E. Lansing*, 263 Mich. 626; 249 N.W. 16 (1933) .............................................13

*Simon Prop. Grp., Inc. v. Taubman Centers, Inc.*, 240 F. Supp. 2d 642 (E.D. Mich. 2003) .......18

*Smith v. Spizzirri*, 601 U.S. 472; 144 S. Ct. 1173 (2024)............................................................19

*Swoger v. Rare Coin Wholesalers*, 803 F. 3d 1045 (9th Cir. 2015).............................................7

*Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F. Supp. 2d 1246 (E.D. Wash. 2010)..7

*Toms v. Taft*, 338 F.3d 519 (6th Cir. 2003) ....................................................................................7

*Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622 (6th Cir. 2010) .....10

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635; 122 S.Ct. 1753 (2002)..............................23

*Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816 (S.D. Tex. 2012) ....................................21

## **STATUTES**

M.C.L. §§ 168.16 ...............................................................................................................................5

M.C.L. § 168.493b .....................................................................................................................13, 18

M.C.L. § 168.493b(1) ......................................................................................................................11

M.C.L. § 168.509m ....................................................................................................................10, 24

M.C.L. § 168.509m(2)(a) .................................................................................................................10

M.C.L. § 168.509m-509gg..................................................................................................................9

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

M.C.L. § 168.509n ................................................................................................ *passim*

MCL § 168.509u .................................................................................................. *passim*

M.C.L. § 168.509u(1) .............................................................................................. 1, 10

M.C.L. § 168.509w ................................................................................................... 6, 22

M.C.L. § 168.509w(1) .................................................................................................... 11

M.C.L. § 168.509w(2) .................................................................................................... 11

M.C.L. § 168.509w(3) .................................................................................................... 11

M.C.L. § 168.509w(4) .................................................................................................... 12

5 U.S.C. § 551(13) ......................................................................................................... 20

5 U.S.C. § 701(b)(2) ...................................................................................................... 20

5 U.S.C. § 702 ............................................................................................................... 20

5 U.S.C. § 704 ................................................................................................................. 2

5 U.S.C. § 706(2)(A), (C) .............................................................................................. 4

15 U.S.C. 637(b) ........................................................................................................... 16

52 U.S.C. § 20501(b)(3) ................................................................................................. 8

52 U.S.C. §20502(4) ....................................................................................................... 8

52 U.S.C. § 20503(a) ................................................................................................. 18-19

52 U.S.C. §20506 ........................................................................................................... 8

52 U.S.C. §20506(a)(2) ............................................................................................... 8, 16

52 U.S.C. § 20506(a)(3)(A)-(B) ..................................................................................... 8

52 U.S.C. § 20506(c)(2) ................................................................................................. 8

52 U.S.C. § 20508 ......................................................................................................... 8

52 U.S.C. § 20509 ......................................................................................................... 8

52 U.S.C. §20510(b) ..................................................................................................... 21

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

iv

52 U.S.C. § 20510(b)(1)-(2) ........................................................................................................4

52 U.S.C. § 30101(14) ................................................................................................................4

## **<u>RULES</u>**

Fed. R. Civ. P 56..........................................................................................................................1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## Brief in Support of Plaintiffs' Motion for Summary Judgment

### Introduction

The National Voter Registration Act of 1993 ("NVRA") requires States to designate certain offices as "voter registration agencies" ("VRAs") and gives States the discretion to "designate other offices." But the NVRA does not tell states *how* to make those designations.[1]  That is left up to state law. So whether an office has been properly designated as a VRA under the NVRA is a mixed question of state and federal law. And, under Michigan law, the authority to designate VRAs is held solely by the Legislature.[2] Despite this, Michigan's Governor and Secretary of State have taken it upon themselves to go beyond the statutory framework provided by the Legislature and designate new VRAs. That's something no prior Michigan executive-branch official has attempted since 1995,[3] when then-Governor Engler was acting under a specific grant of authority from the Legislature that has long since expired.[4]  The designation of these new VRAs coincided with an Executive Order from President Biden that directed federal agencies to partner with state officials to promote voter registration and voter participation, and to agree to state requests to designate voter registration agencies.[5] This explains why the Federal Defendants[6] went along with it.  But when the Michigan Governor and Secretary of State designated these new VRAs, they were acting beyond their authority. For this reason, the State Defendants' actions directly violate Michigan law. Moreover, the Federal Defendants are acting as VRAs without proper authorization pursuant to the NVRA and in violation

---

[1] See **Exhibit 1,** Fed. Election Comm'n, Guide to Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples, at 1-5 (1994).

[2] See Const. 1963, art. 2, § 4(2) ("The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.").

[3] See ECF No. 9-2, PageID.85, Vet Voice's proposed Motion to Dismiss.

[4] See M.C.L. § 168.509u(1); ECF No. 1, PageID.2, Complaint, ¶ 3.

[5] See ECF No. 9-2, PageID.85.

[6] The Department of Veterans Affairs ("VA") and its Secretary, and the U.S. Small Business Administration ("SBA") and its Administrator.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

of the Administrative Procedures Act ("APA"), 5 U.S.C. § 704. Summary judgment in favor of Plaintiffs is therefore appropriate.

### Statement of Facts

In 1994, Congress enacted the NVRA, including the provisions allowing a "State" to designate VRAs. Shortly afterwards, the Michigan legislature enacted MCL § 168.509u, which designated United States military recruiting offices as VRAs and gave the governor 30 days to prepare a list of additional "executive departments, state agencies, or other offices that will perform voter registration activities in this state."[7] And, less than 30 days later, then-Governor Engler issued Executive Order 1995-1 ("EO 1995-1"), designating various public-assistance offices as voter registration agencies and purporting to reserve the right to subsequently designate "[a]ny other public office … by Executive Directive."[8] For the next quarter century, no Michigan governor attempted to designate any additional offices as VRAs.

Then, in May 2022, Michigan Governor Gretchen Whitmer issued Executive Directive 2022-4 ("ED 2022-4"[9]), which noted that Michigan's list of designated voter registration agencies had not been updated since 1995 and sought recommendations for additional offices to be so designated.[10] In September 2023, the Michigan Secretary of State acted on those recommendations by entering into "an interagency agreement with the Department of Veterans Affairs to designate the Department, the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office as voter registration sites."[11]  Then, in December 2023, Governor Whitmer issued Executive Directive 2023-6 ("ED 2023-6"), which among other offices, designated "the U.S. Department of Veterans Affairs" as a voter registration agency.[12]  Finally,

---

[7] See ECF No. 9, PageID.64, Vet Voice's Motion to Intervene.
[8] See *Id*., PageID.64-65.  See also **Exhibit 2**, EO 1995-1.
[9] **Exhibit 3**.
[10] See ECF No. 9, PageID.65.
[11] **Exhibit 4**, VA News Press Release.
[12] **Exhibit 5**.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

in June 2024, Governor Whitmer issued Executive Directive 2024-3 ("ED 2024-3"), which designated the SBA as a voter registration agency.[13]

Both federal agencies were designated "subject to the agreement" they had "signed with the State of Michigan."[14]  With respect to the Department of Veterans affairs, this was a reference to the interagency agreement. With respect to the SBA, this was in reference to a Memorandum of Understanding ("MOU"[15]) and Memorandum of Agreement ("MOA") that the Michigan's Secretary of State entered into on March 18, 2024, with the U.S. Small Business Administration ("SBA"), purporting to designate SBA offices throughout the State of Michigan as VRAs.[16]

But these actions ignored the plain language of M.C.L. § 168.509u. As noted above, that statute only authorized the Governor to designate VRAs "[n]ot later than the thirtieth day after the effective date of [M.C.L. § 168.509u]."  The Michigan Legislature did not authorize the Governor to unilaterally designate any VRAs after February 9, 1995.[17]  The Michigan Legislature also has not granted the Secretary of State the authority to designate VRAs. Rather, M.C.L. § 168.509n makes the Michigan Secretary of State responsible only for (a) developing a mail registration form and making it available for distribution, (b) instructing "designated voter registration agencies and county, city, township, and village clerks about the voter registration procedures and requirements imposed by law," and (c) by June 15 "of each odd numbered

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[13] **Exhibit 6**.

[14] **Ex. 5**, p 3, ¶ 5; **Ex. 6**, p 2.

[15] The MOU is essentially an "agreement to agree" or statement of common cause, but lacks the binding power of a contract. See ECF No. 1, PageID.15, ¶ 74. The apparent purpose of the MOU is to acknowledge a formal, ongoing, and strategic relationship between the Michigan Secretary of State and the SBA. See *Id*. The MOA, on the other hand, is a contractual document that formally establishes specific legal obligations running between the two.  See *Id*.  For this reason, Plaintiff's substantive arguments, with regard to the designation of the SBA as a VRA, will focus on the MOA.

[16] See ECF No. 1, PageID.3, Complaint, ¶ 7.  Plaintiffs are unaware of any such agreement with the VA. The designation of the VA appears to rest solely on ED 2023-6.

[17] See ECF No. 1, PageID.3, Complaint, ¶ 4.

year," submitting a "a report on the qualified voter file" to member of the relevant state senate and house committees.[18]

Plaintiffs therefore filed this suit citing, among other authorities, 52 U.S.C. § 20510(b)(1)-(2), 5 U.S.C. § 706(2)(A), (C), and *Ex parte Young*, 209 U.S. 123; 28 S.Ct. 441 (1908).[19] Plaintiff, the Republican National Committee, is the national committee of the Republican Party, as defined by 52 U.S.C. §30101(14).[20] The RNC represents over 30 million registered Republicans in all 50 states, the District Columbia, and the U.S. territories.[21] It is comprised of 168 voting members representing state Republican Party organizations, including three members who are registered voters in Michigan.[22] The RNC works to elect Republican candidates to state and federal office.[23] In November 2024, its candidates will appear on the ballot in Michigan for numerous federal and state offices.[24]

The RNC has vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Michigan elections and elsewhere.[25] The RNC and Michigan GOP have strong interests in ensuring that they and their candidates compete for votes in a lawfully structured competitive environment.[26] The RNC brings this suit to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates.[27] The RNC and its members are concerned that Defendants' failure to comply with Michigan statutes governing VRA designation undermines the integrity of elections by increasing the opportunity for individuals to register to

---

[18] See *Id*., ¶ 7.
[19] *Id*., PageID.3, 4, 20-21, ¶¶ 10-11, 106.
[20] *Id*., PageID.4, ¶ 14.
[21] *Id*., PageID.4, ¶ 15.
[22] *Id*.
[23] *Id*., PageID.4, ¶ 16.
[24] *Id*.
[25] ECF No. 1, PageID.5, ¶ 17.
[26] *Id*.
[27] *Id*.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

vote even though they are ineligible to do so, and by sowing confusion regarding whether the agencies purporting to offer assistance in registering voters are doing so in accordance with applicable law.[28]

Plaintiff, Donald J. Trump for President 2024, Inc. ("Trump Campaign") is the principal committee for President Donald J. Trump's campaign.[29] The Trump Campaign has the same interests in this case as the RNC with respect to the candidacy of President Trump and seeks to vindicate those interests in the same ways.[30]

Plaintiff, the Michigan Republican Party ("MRP"), is a "major political party" as that term is defined by the Michigan Election Law, M.C.L. §§ 168.16.[31] It was formed for the general purposes of, among other things, promoting Republican values and assisting candidates who share those values with election or appointment to partisan federal, state, and local office.[32] Further, MRP works to ensure that elections in Michigan are conducted in a free, fair, and transparent manner, and works to protect the fundamental constitutional right to vote of its members and all Americans, and to promote their participation in the political process.[33] MRP brings this action on behalf of itself and its members.[34] As a result, Plaintiff MRP has a direct, personal, and substantial interest in this litigation to protect not only its own rights, but those of its candidates and members.[35]

Plaintiff Ryan Kidd is the elected clerk of Georgetown Township, and is responsible for administering elections, as well as processing voter registration applications for individuals who reside within his jurisdiction and ultimately registering those individuals to vote.[36] By statute, Mr. Kidd is responsible for processing voter registration applications received from government offices properly

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[28] ECF No. 1, PageID.5, ¶ 18.
[29] *Id.*, ¶ 19.
[30] *Id.*, ¶ 20.
[31] *Id.*, ¶ 21.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] ECF No. 1, PageID.5, ¶ 21.
[36] *Id.*, PageID.6, ¶ 22.

designated as VRAs under the NVRA and Michigan law. [37] Mr. Kidd's interest arises out of the fact that Defendants' ongoing ultra vires acts have created confusion about which state and federal offices are properly designated as "designated voter registration agencies" in accordance with the NVRA and Michigan law.[38] As a result, Mr. Kidd seeks a declaration from this Court to guide his future conduct and the performance of his duties, especially as it relates to processing voter registration applications submitted by government offices purporting to be designated VRAs.[39]

All Plaintiffs have alleged that, because Defendants have not complied with applicable Michigan law or the NVRA, they must deploy their time and resources to monitor Michigan elections for fraud and abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to follow the law.[40]

### <u>Summary Judgment Standard</u>

In the NVRA context, this Court has described the standard for competing Rule 56 motions as follows:

> A party may move for summary judgment under Federal Rule of Civil Procedure 56, identifying each claim on which summary judgment is sought. Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
>
> In resolving a motion for summary judgment, a court must consider the evidence and all reasonable inferences in favor of the nonmoving party. When evaluating cross-motions for summary judgment, the Court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party….
>
> The moving party has the initial burden of showing the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party, who must present some specific facts showing that there is a genuine issue for trial. There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party….

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[37] *Id.*, citing M.C.L. § 168.509w.
[38] ECF No. 6, PageID.5, ¶ 22.
[39] *Id.*
[40] ECF No. 6-7, PageID.5, ¶ 25.

\*\*\*

> …[A] party opposing a motion for summary judgment ... possesses no absolute right to additional time for discovery under Rule 56. Even when a party properly presents a Rule 56(d) affidavit and a motion to extend discovery, the decision to extend the discovery deadline lies within the discretion of the trial court. …[A] district court does not abuse its discretion in denying further discovery when the discovery requested would be irrelevant to the underlying issue to be decided….[41]

Moreover, Rule 56(d) does not apply when the motions "turn[] on a pure question of law."[42] This Court may issue summary judgment on purely legal questions, even before discovery is complete.[43]

Plaintiffs also seek injunctive relief. In *Purcell v. Gonzalez*, the Supreme Court identified certain "considerations specific to election cases," relative to injunctions.[44] For one, "[f]ederal courts should ordinarily not alter the election rules on the eve of an election."[45] "But *Purcell* is a consideration, not a prohibition."[46] "The focus of the *Purcell* principle … is on avoiding election issues that could lead to voter confusion shortly before an election."[47] Here, there is no risk an injunction would cause voter confusion. An injunction would simply prohibit a handful of federal agency offices from acting as VRAs, consistent with the longtime status quo in Michigan.

## Law and Argument

**A.    Legal architecture for designating VRAs under the NVRA.**

---

[41] *Pub. Int. Legal Found. v. Benson*, No. 1:21-CV-929, 2024 WL 1128565, at \*8–9 (W.D. Mich. Mar. 1, 2024) (cleaned up).

[42] *Swoger v. Rare Coin Wholesalers*, 803 F. 3d 1045, 1048 (9th Cir. 2015). See also *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F. Supp. 2d 1246, 1256 (E.D. Wash. 2010).

[43] *Toms v. Taft*, 338 F.3d 519, 523 (6th Cir. 2003) ("[T]he district court did not abuse its discretion by granting summary judgment before discovery had commenced. The basis for the district court's decision was ... a purely legal question.").

[44] *Purcell v. Gonzalez*, 549 U.S. 1, 4; 127 S. Ct. 5 (2006).

[45] *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024), citing, inter alia, *Purcell*, 549 U.S. at 4.

[46] *Kim*, 99 F.4th at 160 (cleaned up).

[47] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

In 1993, Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). Section 7 of the NVRA, 52 U.S.C. § 20506(a)(2) requires that certain State agencies be designated as VRAs. Additionally, 52 U.S.C. § 20506(a)(3)(A)-(B) states that "each State" has authority to "designate other offices within the State as voter registration agencies," which "may include" various "State or local government offices" or "Federal and nongovernmental offices, with the agreement of such offices." The designation of a federal office as a VRA is entirely within a state's discretion, with one exception. "A recruitment office of the Armed Forces of the United States shall be considered to be a voter registration agency designated under subsection (a)(2) for all purposes of this chapter." 52 U.S.C. § 20506(c)(2). Thus, a particular office can only operate as a VRA under the NVRA if it has been so designated by the "State."

The NVRA defines the term "State" as "a State of the United States and the District of Columbia." 52 U.S.C. §20502(4). Throughout the statute, the NVRA distinguishes between a "State" and its "official[s] or "officer[s]." See 52 U.S.C. § 20506 (using both the term "State" and the phrase "State election official"); 52 U.S.C. §20507(a)(2) (using the phrase "State election official"); 52 U.S.C. §20508 (using the phrase "chief election officers of the States"). See also 52 U.S.C. § 20509 ("Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter.").  How "each State" designates VRAs under the NVRA is a question of state law.[48]  "The Act requires each State to designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities," but "it does not … specify how or even when this designation is to be made."[49] "Most States are likely to designate a responsible State official in their conforming legislation."[50] These provisions, when read together, plainly indicate that a designation is only proper under the NVRA is it is done in accordance with the law of "each State." An office that purports

---

[48] See **Exhibit 1**, p 1-5.
[49] *Id*. (cleaned up).
[50] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

to operate as a VRA in the absence of such a designation thus operates without authorization under federal law.

### B.    Only the Legislature may designate VRAs in Michigan.

Under Michigan's Constitution, "the legislative power of the State of Michigan is vested in a senate and a house of representatives."[51] Consistent with Michigan's state constitutional arrangement, "the Legislature has the constitutional authority under Const. 1963, art. 2, § 4(2) to enact laws to preserve the purity of elections, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting."[52]  This is consistent with federal law; under the Elections Clause, state legislatures are the entities "assigned particular authority by the Federal Constitution."[53]

Under Michigan's Constitution, "[t]he executive power is vested in the governor."[54] But "[t]he governor has no power to make laws."[55] And the governor only has the authority to it given by the Michigan Constitution or the Legislature.[56] "The apportionment of power, authority and duty to the governor, is either made by the people in the constitution, or by the Legislature in making laws under it."[57]

After Congress enacted the NVRA in 1993, the Michigan Legislature adopted laws to conform with the voter registration requirements of the NVRA.[58] "On January 5, 1995, Michigan enacted Public Act 441 of 1994 in order to conform its voter registration procedure to the requirements of the National Voter Registration Act."[59] Public Act 441 was codified as M.C.L. § 168.509m-509gg. The stated purpose of these statutes was to "increase the integrity of the voting process" and to apply technology and information gathered by state and local governments "in a matter that ensures that accurate and current records of

---

[51] Michigan Const. 1963, art. 4, § 1.
[52] *Promote the Vote v. Sec'y of State,* 333 Mich. App. 93, 123; 958 N.W.2d 861 (2020).
[53] *Moore v. Harper,* 600 U.S. 1, 27; 143 S. Ct. 20654 (2023).
[54] Michigan Const. 1963, art. 5, § 1.
[55] *People v. Dettenhaler,* 118 Mich. 595, 602; 77 N.W. 450 (1898).
[56] *People ex rel Sutherland v. Governor*, 29 Mich. 320, 328-329 (1874).
[57] *Id.*
[58] See *Ass'n. of Cmty. Organizations for Reform Now v. Miller,* 129 F.3d 833, 835 (6th Cir. 1997).
[59] *Miller,* 129 F.3d at 835.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

qualified voters are maintained."[60] The Legislature specifically defined "[d]esignated voter registration agency" as "an office designated under [M.C.L. § 168.509u] to perform voter registration activities in this state."[61] M.C.L. § 168.509u provides the only avenue by which a government office can be a "designated voter registration agency" under Michigan law and, by extension, properly designated to conduct voter registration activities in Michigan under the NVRA.

M.C.L. § 168.509u expressly designated "a recruitment office of the armed forces of the United States [as] a designated voter registration agency." It also authorized the Governor to "provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state."[62] However, that authority had to be exercised "[n]ot later than the thirtieth day after the effective date of [M.C.L. § 168.509u]." M.C.L. § 168.509u became effective January 10, 1995. Therefore, under the plain language of § 168.509u, the Michigan Legislature did not grant the Governor authority to designate any VRAs after February 9, 1995. It follows that the Governor of Michigan has lacked any statutory authority to designate additional VRAs since that date.

This conclusion is buttressed by the canon of statutory construction known as "*expressio unius est exclusio alterius,*" the "express mention of one thing in a statutory provision implies the exclusion of similar things."[63] So, M.C.L. § 168.509u's express mention of the Governor's authority to designate VRAs *through February 9, 1995* implies that no such authority existed *after* that date.  Michigan's Legislature knows how

---

[60] M.C.L. § 168.509m.

[61] M.C.L. § 168.509m(2)(a).

[62] M.C.L. § 168.509u(1).

[63] *People v. Carruthers,* 301 Mich. App. 590, 604; 837 N.W.2d 16 (2013). See also *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.,* 615 F.3d 622, 630 (6th Cir. 2010), discussing "the long-established canon of statutory construction, *expressio unius est exclusio alterius*" and noting that "when a statute limits a thing to be done in a particular mode, it includes the negative of any other mode") (cleaned up).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

to give open-ended authority to designate VRAs – in 2023 PA 263, it granted authority to designate *state* agencies as VRAs to the Secretary of State *effective June 30, 2025* (more on that below).[64]

Public Act 441 also included M.C.L. § 168.509n, which gives the Michigan Secretary of State specific responsibilities "for the coordination of the requirements imposed under this chapter, the National Voter Registration Act of 1993…."  It authorizes the Michigan Secretary of State to do three things: (a) develop and disseminate a mail registration form, (b) give instruction to designated VRAs and clerks, and (c) report to the relevant "committees of the senate and house of representatives…."[65]  It does not authorize the *designation* of additional VRAs.  Rather, it only authorizes the Secretary to coordinate with *existing* VRAs.

When a voter registration application is "submitted in person at … a designated voter registration agency," the person processing the application shall "[v]alidate the application in the manner prescribed by the secretary of state" and "[i]ssue a receipt to the applicant verifying the acceptance of the application."[66]  Then, within 7 days of receiving the application, "the designated voter registration agency … shall transmit the application … to the clerk of the county, city, or township where the applicant resides."[67] However, if the application is made 2-3 weeks before an election, the designated voter registration agency "shall transmit the application not later than 1 business day to the clerk of the county, city, or township where the applicant resides."[68] If the designated voter registration agency transmits "a completed application…to a county clerk," the Secretary of State "shall compensate the county clerk for the cost of forwarding the application to the proper city or township clerk of the applicant's residence from funds appropriated to the

_____

[64] M.C.L. § 168.493b(1).  But the Secretary's authority under that subpart will be limited to designating "state agencies." In other words, even if that statute were in effect, it wouldn't authority the actions at issue here.
[65] M.C.L. § 168.509n.
[66] M.C.L. § 168.509w(1).
[67] M.C.L. § 168.509w(2).
[68] M.C.L. § 168.509w(3).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

secretary of state for that purpose."[69] Thus, when an individual applies to register to vote at a designated voter registration agency, even if the application is initially sent to the applicable county clerk, it is the clerk of the city or township where that individual resides that will ultimately be responsible for processing the application and registering that individual to vote.

As noted above, in January 1995, M.C.L. § 168.509u authorized the then-Governor of Michigan to designate VRAs but required him to do so "not later than" February 6, 1995. In January 1995, Governor John Engler complied with that statutory directive by issuing EO 1995-1.[70] EO 1995-1 recognized that "the NVRA requires that additional state offices be designated as voter registration agencies for applicants and recipients of public assistance, to wit: Aid to Families with Dependent Children (AFDC), Medicaid, Food Stamps, and Women, Infant, Children (WIC)."[71] It also recognized that "NVRA further requires that state offices be designated as voter registration agencies that provide state-funded programs primarily engaged in providing services to persons with disabilities, to wit: Michigan rehabilitation services and psychiatric hospitals."[72]

Thus, "[p]ursuant to Sections 7 (a) (2) (A) and 7 (a) (2) (B) of the NVRA," Governor Engler specifically designated the following four offices "to accept applications for voter registration": (1) Michigan Department of Social Services local offices which accept applications and administer benefits for the Aid to Families with Dependent Children (AFDC), Medicaid, and Food Stamp programs; (2) County health department offices and other agencies which contract with the Department of Public Health which accept applications and administer benefits for the Women, Infants and Children program (WIC); (3) local Michigan rehabilitation services offices; and (4) adult inpatient psychiatric hospitals operated by the

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[69] M.C.L. § 168.509w(4).
[70] ECF No. 1, PageID.11, ¶ 53 n.7.
[71] See *Id.*, ¶ 54.
[72] See *Id.*

Michigan Department of Mental Health.[73] Additionally, Governor Engler purported to designate "[a]ny other public office…which the Governor may from time to time designate by Executive Directive."[74]

Since January 1995, the Legislature has not granted any further authority to the Michigan Governor to designate VRAs. Although Governor Engler claimed the ability to designate additional VRAs via Executive Directives, that purported authority has no basis in Michigan's Election Law. Further, Michigan law does not give executive directives the force and effect of law, as they are not subject to Legislative review.[75] Moreover, the ongoing authority that Governor Engler purported to reserve in 1995 had no basis in the statute. Again, the statute only gave the governor a narrow window to designate VRAs, which expired almost thirty years ago. So, under Michigan's constitutional and statutory scheme, designating new VRAs would require a legislative act.[76]

### C.   Michigan's Governor acted ultra vires when she attempted to designate the SBA and VA as VRAs.

"[U]ltra vires activity [is] defined as activity *not* expressly or impliedly mandated or authorized by law."[77]  Actions taken ultra vires are void.[78] Here, Governor Whitmer's attempts to designate the VA and the SBA were ultra vires and, thus, legal nullities.

For almost three decades after EO 1995-1, there were no attempts to further designate any other agencies – state, federal, or local – as VRAs in Michigan.[79] But on May 1, 2022, Governor Whitmer issued Executive Directive 2022-4. In it, she recognized that "EO 1995-1 designated specific state offices as voter registration agencies pursuant to sections 7(a)(2)(A) and (B) of the NVRA" but that, "[s]ince 1995, there have been myriad changes to public assistance programs and programs that provide services to persons with

---

[73] See *Id*., PageID.12, ¶ 55.

[74] See *Id*., ¶ 56.

[75] **Exhibit 7**, unpublished opinion of the Michigan Attorney General (No. 7224, February 20, 2009).

[76] See, for example, M.C.L. § 168.493b.

[77] *Richardson v. Jackson Cnty.,* 432 Mich. 377, 381; 443 N.W.2d 105 (1989) (emphasis in original).

[78] *Salzer v. City of E. Lansing,* 263 Mich. 626, 632; 249 N.W. 16 (1933).

[79] See ECF No. 9, PageID.65.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

disabilities, as well as to the offices that accept applications for and administer these programs."[80] "In light of these changes," Governor Whitmer concluded that "it is time to review and update Michigan's list of voter registration agencies."[81] Claiming authority "under sections 1 and 8 of Article 5 of the Michigan Constitution of 1963," Governor Whitmer directed, among other things, the Department of State to "review Michigan's compliance with the requirements of the NVRA, in particular, the requirement in section 7 that all state offices that provide either public assistance or state-funded programs primarily engaged in providing services to persons with disabilities are offering voter registration services."[82] Governor Whitmer stated that "[t]o the extent that the Department of State recommends additional offices be designated as voter registration agencies to comply with the NVRA, [she] expect[ed] to take appropriate action expeditiously."[83] She also indicated a desire to take additional action "including but not limited to designating additional offices as voter registration agencies pursuant to section 7(a)(3) of the NVRA."[84]

This appears to have been inspired by Executive Order 14019, issued on March 7, 2021 by President Biden, which directed federal departments and agencies to "partner with State, local, Tribal, and territorial officials" and "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation."[85] Executive Order 14019 also stated that each federal agency, "if requested by a State to be designated as a voter registration agency pursuant to section 7(a)(3)(B)(ii) of the National Voter Registration Act, shall, to the greatest extent practicable and consistent with applicable law, agree to such designation."[86]

---

[80] See ECF No. 1, PageID.13, ¶ 62.
[81] *Id*., ¶ 63.
[82] *Id*., ¶ 64.
[83] *Id*., ¶ 65.
[84] *Id*.
[85] **Exhibit 8**.
[86] See ECF No. 1, PageID.12, ¶ 61.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

On December 18, 2023, Governor Whitmer issued Executive Directive 2023-6 which, among other things, designated several "state departments, agencies, and offices" as VRAs.[87] ED 2023-6 also purported to designate "the U.S. Department of Veterans Affairs" as a VRA "subject to the agreement it has signed with the State of Michigan."[88] For her alleged authority to make these designations, Governor Whitmer relied on "Section 1 of Article 5 of the Michigan Constitution of 1963" and "Section 8 of Article 5 of the Michigan Constitution of 1963."[89] Then, in June 2024, Governor Whitmer issued Executive Directive 2024-3 ("ED 2024-3"),which designated the SBA as a voter registration agency.[90]

Governor Whitmer's attempts to designate the SBA and VA as VRAs were improper exercises of legislative authority. Michigan Const. 1963, art. 3, § 2 states that "[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." The legislative power has been described as "the power 'to regulate public concerns, and to make law for the benefit and welfare of the state."[91] Or, put simply, "legislative power is the power to make laws."[92] In turn, the executive power is the power to enforce or effectuate the laws enacted by the Legislature or, in other words, the power to faithfully execute laws.[93] Thus, the governor lacks the authority to make laws or

---

[87] ECF No. 1, PageID.14, ¶ 68.

[88] ECF No. 1, PageID.15, ¶ 69.

[89] See *Id.*, ¶ 70.  Section 1, Art. 5 of the Michigan Constitution states that "the executive power is vested in the governor." Section 8, Art. 5 of the Michigan Constitution states that the governor has supervisory authority over "[e]ach principal department" and "shall take care that the laws be faithfully executed."

[90] **Exhibit 6**.

[91] *46th Circuit Trial Court v. Crawford Co,* 476 Mich. 131, 141; 719 N.W.2d 553 (2006), quoting Cooley, Constitutional Limitations (1886), p. 92.

[92] *In re Complaint of Rovas against SBC Michigan,* 482 Mich. 90, 98; 754 N.W.2d 259 (2008); *In re Manufacturer's Freight Forwarding Co.,* 294 Mich. 57, 63; 292 N.W.2d 678 (1940) (citations omitted) ("The Legislature makes the law."); *Harsha v. City of Detroit,* 261 Mich. 586, 590; 246 N.W. 849 (1933) ("The legislative power is the authority to make, alter, amend, and repeal laws.").

[93] Michigan Const. 1963, art. 5, § 8.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

to assume powers conferred on the Legislature.[94] The law-making function of state government is vested in the Michigan Legislature. While the Governor of Michigan has the power to enforce the laws enacted by the Legislature, she lacks the authority to change or extend them. But designating new VRAs though Executive Directives attempts to do just that. So Governor Whitmer's purported designations of SBA and the VA as VRAs is ultra vires and void.

### D.    The Secretary of State acted ultra vires when she attempted to designate the SBA and VA as VRAs.

In September 2023, the Michigan Secretary of State and the U.S. Department of Veterans Affairs announced the signing of an interagency agreement that purported to designate the Department, the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office as voter registration agencies and offices.[95] The Michigan Department of State's press release stated that "[t]he official designation of VA as a voter registration site will come through an executive order by Governor Whitmer in the coming weeks."[96]  Then, on March 18, 2024, the Michigan Secretary of State entered into the aforementioned MOU and MOA with the SBA, purporting to designate the SBA's offices throughout Michigan as VRAs.

The MOA states in Part III that the "SBA enters into this MOA under the legal authority of section 8(b) of the Small Business Act, 15 U.S.C. 637(b), and pursuant to section 20506 of the NVRA [National Voter Registration Act] as referenced above in Part I."  Part I cites See 52 USC § 20506(a)(2). But the Michigan Secretary of State's authority is not specifically mentioned.  In Part II, entitled "Purpose," the MOA references "a 1994 state statute that directed the Governor to designate VRAs," and a 1995 Executive

---

[94] 16A Am. Jur. 2d Constitutional Law § 246 ("The executive power is the power to execute the laws, that is, to carry them into effect, as distinguished from the authority to make the laws and the power to judge them."); 16 C.J.S., Constitutional Law, § 216, p. 686 ("[T]he executive branch may only apply the policy so fixed and determined [by the legislative branch], and may not itself determine matters of public policy or change the policy laid down by the legislature.").

[95] See ECF No. 1, PageID.14, ¶ 66.

[96] See Id., ¶ 67 n. 11.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Order from Governor Engler that "allows the Governor to designate additional VRAs through an executive directive." The "Purpose" section of the MOA further claims that "Michigan law makes the Secretary of State 'responsible for the coordination of the requirements imposed under … the National Voter Registration Act of 1993.' These responsibilities include '[i]nstruct[ing] designated voter registration agencies and [local] clerks about the voter registration procedures and requirements imposed by law.'" But as explained above, neither ED 2023-6, the MOU, nor the MOA were authorized by the Michigan Legislature. Moreover, under Michigan law, Executive *Directives* do not have the force and effect of law and are not subject to Legislative review.

Consistent with Michigan's state constitutional arrangement, "the Legislature has the constitutional authority under Const. 1963, art. 2, § 4(2) to enact laws to preserve the purity of elections, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting."[97] Michigan's Legislature gave certain responsibilities over elections to the Secretary of State.  Specifically, M.C.L. § 168.509n makes the Secretary of State is responsible for (a) developing a mail registration form and making it available for distribution, (b) instructing "designated voter registration agencies and county, city, township, and village clerks about the voter registration procedures and requirements imposed by law," and (c) by June 15 "of each odd numbered year," submitting a "a report on the qualified voter file" to member of the relevant state senate and house committees.  That's it – nothing about designating VRAs.

Here, the doctrine of "*expressio unius est exclusio alterius*" is again relevant – "the expression of one thing suggests the exclusion of all others…."[98] As noted above, "the express mention of one thing in a statutory provision implies the exclusion of similar things."[99] So, M.C.L. § 168.509n's expression of three specific responsibilities for the Michigan Secretary of State, that fall within the umbrella of "coordinat[ing]"

---

[97] *Promote the Vote v. Sec'y of State,* 333 Mich. App. 93, 123; 958 N.W.2d 861 (2020).
[98] *Carruthers,* 301 Mich. App. at 604.
[99] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

the "requirements imposed under" Public Act 441, implies that any other responsibilities (such as designating VRAs) are excluded.

This is especially true because, while MCL § 168.509n authorizes the Secretary of State to instruct previously designated VRAs, the statute says nothing about the power to designate VRAs in the first place. This conclusion is also supported by the "canon of construction" known as "*casus omissus pro omisso habendus est*" – nothing can be added to what the text of a statute states or reasonably implies.[100] Put another way, courts are prohibited "from supplying provisions omitted by the Legislature."[101]

The fact that Michigan's Legislature *has not* granted the Secretary of State the authority to designate VRAs is underscored by 2023 PA 263, which grants the Secretary of State this authority (but only as to a "state agency") *effective June 30, 2025,* see M.C.L. § 168.493b – reflecting the fact that such authority *does not currently exist.* In construing a statute, District Courts must "presume that every word has some meaning and should avoid any construction that would render any part of the statute surplusage or nugatory."[102] "[E]ffect should be given to every phrase, clause and word."[103] Reading § 168.509n to give Michigan's Secretary of State the authority *now* to designate *federal* agencies as VRAs would fail to give meaning to § 168.493b, rendering it nugatory and redundant.

**E.    The ultra vires designation of VRAs represents an ongoing violation of federal law.**

The NVRA presupposes that States act in accordance with their own laws.[104] If States don't "establish procedures"[105] to designate VRAs, they are not in compliance with the Act.  The word "establish" has been defined as "[t]o set up on a secure or permanent basis; to found (a government, an institution; in

---

[100] *Mich Ambulatory Surgical Ctr. v. Farm Bureau Gen. Ins. Co.,* 334 Mich. App. 622, 632; 965 N.W.2d 650 (2020).
[101] *Id.*
[102] *Hansen v. Williamson*, 440 F. Supp. 2d 663, 671 (E.D. Mich. 2006). See also *Simon Prop. Grp., Inc. v. Taubman Centers, Inc.,* 240 F. Supp. 2d 642, 647 (E.D. Mich. 2003).
[103] *Simon Prop. Grp.,* 240 F. Supp. 2d at 647 (citation omitted).
[104] See 52 U.S.C. § 20503(a) ("each State shall establish procedures to register to vote … at a Federal, State, or nongovernmental office designated under [§ 20506]."
[105] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

modern use often, a house of business),” or “[t]o set up or bring about permanently (a state of things).[106] And “the dictionary defines ‘procedure’ as a series of steps followed in a regular orderly definite way.”[107] Other dictionary definitions of “procedure” include “a particular way of doing or of going about the accomplishment of something,” a “particular course of action, a “particular step adopted for doing or accomplishing something,” or a “traditional, customary, or otherwise established or accepted way of doing things.”[108] So, a VRA not designated pursuant to “established” State “procedures” also violates the NVRA.

There is nothing “established” about the Michigan Governor dusting off a 28-year-old Executive Order that none of her predecessors had ever invoked and relying upon it to designate federal agencies as VRAs via Executive Directives.  Designating VRAs in this matter – particularly where all prior VRAs had been designated pursuant to specific statutory authority - is not part of any “series of steps followed in a regular orderly definite way.” It is completely ad hoc. Even more so is the Secretary of State’s contract with the SBA, something which wasn’t contemplated or authorized by either ED 1995-1 or M.C.L. § 168.509n. This appears to have been a practice that was invented out of whole cloth in response to President Biden’s 2021 Executive Order, not an act taken as part of any “established procedure.”

And under the NVRA, “each State *shall* establish procedures….”[109]  When used in a statute, the word “shall” creates “an obligation impervious to judicial discretion.”[110] “Unlike the word ‘may,’ which implies discretion, the word ‘shall’ usually connotes a *requirement*.”[111] Indeed, the U.S. Supreme Court has noted that the use of “shall” leaves “no place for the exercise of discretion….”[112] This only leaves two

---

[106] *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep’t of Agric.,* 35 F.4th 1225, 1242-1243 (10th Cir. 2022) (citation omitted).  “A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.” *Id*. (citation omitted).

[107] *Owen v. I.C. Sys., Inc.,* 629 F.3d 1263, 1272 (11th Cir. 2011) (cleaned up). See also *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 587; 130 S. Ct. 1605 (2010).

[108] *Jennison v. Providence St. Vincent Med. Ctr.,* 174 Or. App. 219, 225 n.9; 25 P.3d 358 (2001).

[109] 52 U.S.C. § 20503(a) (emphasis added).

[110] *Smith v. Spizzirri,* 601 U.S. 472, 476; 144 S. Ct. 1173 (2024) (cleaned up).

[111] *Id*. (citation omitted, emphasis added).

[112] *Id*. (citation omitted).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

possibilities. Either the designations of the SBA and VA violated the NVRA because they were not made pursuant to the procedures established by the Michigan Legislature. Or, if the ultra vires actions of the Governor and Secretary of State are allowed to stand, it would mean that Michigan has no "established procedures" for designating VRAs, which is still a violation § 20503(a).

These designations also violate the NVRA because § 20503(a) and § 20506 require "each *State*" to make the designations. The word "State" must read in light of the fact that when it enacted the NVRA, Congress was exercising its power under the Elections Clause.[113] The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State *by the Legislature thereof*…."[114] Thus, the Clause "imposes" on "state *legislatures* the 'duty' to prescribe rules governing federal elections."[115] It follows that, for purposes of the NVRA, "each *State*" means the legislature of each state, and not executive officers or officials. So, unless designated by the Legislature – or pursuant to a grant of authority from the Legislature – the designation has not been made by the "State" as required by the NVRA.

Thus, by acting pursuant to these ultra vires designations, the Federal Defendants are violating both the NVRA and the Administrative Procedures Act ("APA").[116] 5 U.S.C. § 702 states that a "person suffering legal wrong because of agency action … is entitled to judicial review," which may result in a "mandatory or injunctive decree…." The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[117] The SBA is an "agency" within the meaning of the APA.[118] So is the VA.[119] These agencies have "acted" through their agreements

---

[113] *Miller,* 129 F.3d at 836.
[114] *Moore,* 600 U.S. at 10 (emphasis added).
[115] *Id.* (emphasis added).
[116] See ECF No. 1, PageID.20-21, ¶¶ 106-108.
[117] 5 U.S.C. § 551(13). See also 5 U.S.C. § 701(b)(2) (noting that "agency action" means as defined by § 551).
[118] *Gifford v. Small Bus. Admin.,* 626 F.2d 85, 86 (9th Cir. 1980).
[119] *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.,* 981 F.3d 1360, 1376 (Fed. Cir. 2020).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

with the Michigan Secretary of State to acts as VRAs. Yet, by purporting to act as VRAs – despite not being designated by the "State" – the SBA and VA's conduct is "not in accordance with law" and "in excess of statutory … authority."[120]

### F.        Plaintiffs have standing.

Defendants will likely claim that Plaintiffs lack standing to challenge their violations of the NVRA and Michigan law. But that is simply not true.

"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution...."[121] "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[122]

To help address voter fraud and ensure compliance with federal election law, the NVRA includes a private right of action.[123] When a local official has "a designated role to play in the interpretation and enforcement of" state election law, they are "proper parties to any suit seeking to challenge its validity and enjoin its enforcement."[124] Mr. Kidd plays such a role as a local clerk. As Michigan's Court of Claims recently noted, it is difficult to "imagine anyone more in need of a ruling" on election-related matters "than a local clerk…."[125] "Indeed, if [he] does not have standing … then nobody has standing…."[126]

As explained in the Complaint, Mr. Kidd has a "particularized" injury in that he the elected clerk of Georgetown Township.[127] He is responsible for administering elections, as well as processing voter registration applications for individuals who reside within their respective jurisdictions and ultimately

---

[120] See ECF No. 1, PageID.21, ¶ 107.
[121] U.S. Const. art. III, § 2, cl. 1. See also *Russell v. Lundergan-Grimes,* 784 F.3d 1037, 1049 (6th Cir. 2015).
[122] *Russell,* 784 F.3d at 1049 (citation omitted).
[123] 52 U.S.C. §20510(b).
[124] *Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012), rev'd on other grounds, 732 F.3d 382 (5th Cir. 2013).
[125] *Republican National Committee, et al. v. Benson, et al.,* unpublished opinion of the Michigan Court of Claims, issued June 12, 2024 (Docket No. 24-000041-MZ), p 5. See ECF No. 1, PageID.6, ¶ 23 n.4.
[126] *Id.*
[127] ECF No. 1, PageID.6, ¶ 22.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

registering those individuals to vote.[128] And, by statute, Mr. Kidd is responsible for processing voter registration applications received from government offices properly designated as VRAs under the NVRA and Michigan law.[129] Defendants' ongoing ultra vires acts have created confusion about which state and federal offices are properly designated as "designated voter registration agencies" in accordance with the NVRA and Michigan law.[130] For that reason, Mr. Kidd needs a declaration from this Court to guide his future conduct and the performance of his duties, especially as it relates to processing voter registration applications submitted by government offices purporting to be designated VRAs in advance of the 2024 election.[131]

Only one of these Plaintiffs needs to have standing.[132] But the other Plaintiffs also have particularized injuries as set forth in the Complaint.[133] So they have standing, too.

**G.    The Eleventh Amendment does not bar Plaintiffs' claim for prospective, non-monetary relief against the State Defendants.**

The State Defendants may also claim immunity under the Eleventh Amendment. The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[134] "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."[135] Such a suit is "against the State itself" and the "Eleventh Amendment bars many such suits."[136] "However, there is an exception to

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[128] *Id.*
[129] *Id.*, citing M.C.L. § 168.509w.
[130] *Id.*, ¶ 24.
[131] *Id.*
[132] See *Diamond v. Charles,* 476 U.S. 54, 64; 106 S.Ct. 1697 (1986) (recognizing that a party can ride "piggyback" on another party's standing). See also *Priorities USA v. Nessel,* 860 F. App'x 419, 421 (6th Cir. 2021).
[133] See ECF No. 1, PageID.4-5, ¶¶ 14-21.
[134] U.S. Const. amend. XI. See also *Russell,* 784 F.3d at 1046.
[135] *Russell,* 784 F.3d at 1046 (cleaned up).
[136] *Id.* (cleaned up).

States' sovereign immunity under the doctrine announced in *Ex parte Young*...."[137]  A suit falls within this exception when it seeks "prospective relief to end a continuing violation of federal law."[138]

To determine whether a suit falls within the *Ex parte Young* doctrine, the Court conducts a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[139] This inquiry focuses on plaintiffs' allegations and "does not include an analysis of the merits of the claim[s]."[140]  The only relevant inquiry under *Ex parte Young* is whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.[141]

So, for the *Ex parte Young* exception to apply, "plaintiffs must show that they are: (1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief."[142] The theory behind the exception is that, "even if the officials claim to be acting under valid state law because, if the officials' conduct constitutes an ongoing violation of federal law, the state cannot cloak their actions with state authority or state immunity."[143] "That is, when state officials are arguably violating federal law, the state is not the real party in interest because the state cannot 'authorize' the officials to violate federal law."[144] "Thus, in allegedly violating federal law, the officials are stripped of their state authority and the Eleventh Amendment will not protect them from suit."[145]

That is precisely what the Plaintiffs have pled here.  Plaintiffs have sued three state officials in their official capacities, citing *Ex parte Young*,[146] and alleging that their designations of VRAs violates the NVRA

---

[137] *Id.* at 1047 (citation omitted).
[138] *Id.* (citation omitted).
[139] *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645; 122 S.Ct. 1753 (2002) (citation omitted).
[140] *Id.* at 646.
[141] *Id.*
[142] *Jud. Watch, Inc. v. Griswold,* 554 F. Supp. 3d 1091, 1100 (D. Colo. 2021) (citations omitted).
[143] *Id.* (cleaned up).
[144] *Id.* (cleaned up).
[145] *Id.* (citation omitted).
[146] ECF No. 1, PageID.4, ¶ 10.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

and Administrative Procedures Act. And Plaintiffs request prospective relief to end these continuing violations:  "[a] declaratory judgment that the State Defendants have violated Michigan Const. 1963, art. 2, § 4(2), as well as MCL 168.509m and MCL 168.509u," a "permanent injunction barring the State Defendants from designating any VRAs without express authorization from the Michigan Legislature," and an "order declaring the designation of any VRAs under ED 2023-6, the 2022 Interagency Agreement, the 2023 MOU and MOA, and any future executive directives issued without legislative authorization are invalid…."[147]  The Eleventh Amendment is chiefly concerned with whether "a judgment … will be satisfied out of the state treasury,"[148] something that is not sought in this case.

<u>Conclusion</u>

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."[149] The ultra vires actions of the Michigan Governor and Secretary of State – and the Federal Defendants' cooperation with them – undermine that confidence. The State Defendants had no authority to designate the VA or SBA as VRAs. So the State and Federal Defendants are in continuing violation of the NVRA and APA (and Michigan law).  These are pure legal questions.  Plaintiffs therefore ask this Court for summary judgment regarding the relief requested in their Complaint.

Date: August 23, 2024

By:  */s/ Jonathan B. Koch*
Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503
(616) 774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[147] ECF No. 1, PageID.17-18.
[148] *In re San Juan Dupont Plaza Hotel Fire Litig.,* 888 F.2d 940, 942 (1st Cir. 1989).
[149] *Purcell,* 549 U.S. at 4.

By:  */s/ Gary Lawkowski*
David A. Warrington (*Admission Pending*)
Gary Lawkowski
DHILLON LAW GROUP
Attorneys for Plaintiff Donald J. Trump for
President 2024, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation