

# Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples

Prepared by:
The National Clearinghouse on Election Administration
Federal Election Commission
Washington, D.C.
January 1, 1994

Contents

# CONTENTS

**PREFACE**
    PURPOSES OF THIS DOCUMENT ............................................................. P-1
    OTHER SOURCES OF INFORMATION ....................................................... P-2

**INTRODUCTION**
    OVERALL PURPOSES OF THE NATIONAL
        VOTER REGISTRATION ACT ................................................................ I-1
    HISTORY OF THE NATIONAL VOTER REGISTRATION ACT ..................... I-3
    KEY DEFINITIONS .................................................................................. I-4

**CHAPTER 1 - GENERAL PROVISIONS**
    THE NONAPPLICABILITY OF THIS LAW TO CERTAIN STATES .............. 1-2
    THE EFFECTIVE DATES OF THE NVRA ..................................................... 1-2
    THE RELATIONSHIP OF THE NVRA TO THE
    VOTING RIGHTS ACT ............................................................................. 1-2
    THE ROLE OF FEDERAL AGENCIES ........................................................ 1-3
    THE DESIGNATION AND ROLE OF A STATE OFFICER TO
        COORDINATE RESPONSIBILITIES UNDER THE LAW ....................... 1-5
    THE ROLE OF THE LOCAL REGISTRATION OFFICIAL ............................ 1-6
    THE COMPUTERIZATION OF VOTER REGISTRATION FILES ................... 1-7
    THE DESIGN OF ALL REQUISITE FORMS IN LIGHT
        OF THE NEEDS OF CERTAIN SPECIAL POPULATIONS ..................... 1-8

**CHAPTER 2 - MOTOR VOTER REGISTRATION PROVISIONS**
    IMPORTANT ISSUES IN MOTOR VOTER REGISTRATION ........................ 2-1
        ■ The Form to Be Used In the Motor Voter Registration Process ------------- 2-2
            - Format of the Form ------------------------------------------------------------- 2-2
            - Data Elements Required ------------------------------------------------------ 2-3
            - Information and Attestation Items ----------------------------------------- 2-3
        ■ A Declination to Apply For Voter Registration
            in a Motor Vehicle Office ----------------------------------------------------- 2-4
        ■ The Form to Be Used In the Driver's License
            Change of Address Process --------------------------------------------------- 2-4

# PREFACE

This document was prepared by the Federal Election Commission (FEC) pursuant to 2 U.S.C. 438(a)(10) which requires the Commission to "serve as a national clearinghouse for the compilation of information and review of procedures with respect to the administration of Federal elections." In addition, the National Voter Registration Act of 1993 (NVRA) mandates that the FEC "provide information to the States with respect to the responsibilities of the States under this Act" [Section 9(a)(4)] while Section 9 of the Joint Conference Committee Report on the NVRA states that "the conferees expect the Commission to play an advisory role to the States and to facilitate the exchange of information among the States."

The purposes of this document are:

- to describe the requirements of the National Voter Registration Act (NVRA) of 1993 [Public Law 103-31, 42 U.S.C 1973gg et seq.]

- to identify the important issues relating to State implementation strategies and conforming State legislation, and

- to offer examples, where appropriate and available, of forms and procedures that have proved successful in jurisdictions around the nation.

It is very important to note, however, that the Federal Election Commission does *not* have legal authority either to interpret the Act or to determine whether this or that procedure meets the requirements of the Act. Indeed, the civil enforcement of the Act is specifically assigned to the Department of Justice.

**THIS DOCUMENT, THEN, IS INTENDED ONLY AS A GENERAL REFERENCE TOOL. ANY SUGGESTIONS CONTAINED IN THIS DOCUMENT ARE PURELY HEURISTIC AND ARE OFFERED WITHOUT FORCE OF LAW, REGULATION, OR ADVISORY OPINION. NO DECISION REGARDING THE IMPLEMENTATION OF ANY FORMS, PROCEDURES, OR CONFORMING STATE LEGISLATION SHOULD BE MADE ON THE BASIS OF THIS DOCUMENT ALONE. SUCH DECISIONS SHOULD BE MADE ONLY AFTER CONSULTATION WITH YOUR STATE LEGAL AUTHORITY.**

# INTRODUCTION

The overall objectives of the National Voter Registration Act of 1993 (NVRA) are:

- to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office

- to protect the integrity of the electoral process by ensuring that accurate and current voter registration rolls are maintained, and

- to enhance the participation of eligible citizens as voters in elections for Federal office [Section 2(b)].

The Act pursues these objectives by:

- expanding the number of locations and opportunities whereby eligible citizens may apply to register to vote

- requiring voter registration file maintenance procedures that, in a uniform and nondiscriminatory manner, identify and remove the names of only those individuals who are no longer eligible to vote, and

- providing certain "fail-safe" voting procedures to ensure that an individual's right to vote prevails over current bureaucratic or legal technicalities.

**Expanding the Number of Locations and Opportunities Whereby Eligible Citizens May Apply to Register to Vote**

The locations and opportunities for eligible citizens to apply for voter registration have heretofore varied widely throughout the States. Based on two decades of State experimentation, however, evidence suggests that expanding the number of locations and opportunities for voter registration results in increased registration.

Accordingly, the Act requires that individuals be given an opportunity to apply for voter registration in elections for federal offices when they are applying for or renewing a driver's license, when they are applying at certain other public offices, and by mail. The reasoning behind these provisions can be found in the legislative history of the Act.

Driver's license offices were selected on the basis of statistics from the Department of Transportation indicating that approximately 87% of persons eighteen years and older have driver's licenses while an additional three or four percent have, in lieu of

**Providing Certain "Fail-Safe" Voting Procedures in Order to Ensure That an Individual's Right to Vote Prevails over Current Bureaucratic or Legal Technicalities**

Heretofore, registrants were sometimes denied the right to vote on election day either because of some oversight on their part or even because of some clerical error by the election office. Registrants who changed residence within the registrar's jurisdiction, for example, often mistakenly assumed they were still entitled to vote — only to discover on election day that their failure to re-register from their new address disenfranchised them. Similarly, registrants who may have failed to receive or return certain election office mailings were often purged from the lists. Even clerical errors, such an erroneous change of address in the registration files, often resulted either in the loss of the right to vote or else in an elaborate and daunting bureaucratic ordeal.

In order to solve such problems, the Act permits certain classes of registrants to vote despite bureaucratic or legal technicalities. The Congress incorporated these "fail-safe" provisions based on the principle that "once registered, a voter should remain on the list of voters so long as the individual remains eligible to vote in that jurisdiction" [Hse. Rpt., Section 8, page 18].

# THE HISTORY OF THE NATIONAL VOTER REGISTRATION ACT

The history of the National Voter Registration Act began in the 1970's when some of its key provisions — motor voter registration, agency registration, and mail registration — were first separately introduced in Congress. Its current comprehensive form, however, dates back to 1989 when Representative Al Swift of Washington introduced H.R.2190 in the House of Representatives and Senator Wendell Ford of Kentucky introduced a companion bill S.874 in the Senate. Although H.R.2190 passed the House in 1990, the Senate took no action on either H.R.2190 or S.874.

In 1991, Senators Ford and Hatfield introduced S.250 which closely resembled the previous S.874. Although S.250 passed both the Senate and the House a year after its introduction, President Bush vetoed the legislation. Lacking a veto-overriding majority in both the Senate and the House, the legislation died.

S.250 was resurrected, however, on January 5, 1993 as H.R.2, introduced by Representative Al Swift and others. In virtually every respect, H.R.2 and its Senate companion, S.460, introduced by Senator Wendell Ford were identical to S.250.

The House of Representatives passed H.R.2 on February 4, 1993 by a vote of 259 to 160. The Senate passed H.R.2 with some amendments on March 17, 1993 by a vote of 62 to 37. The Joint Conference Committee version of H.R.2, retaining some but

not all of the Senate amendments, passed the House on May 5, 1993 by a vote of 259 to 164 and the Senate on May 11, 1993 by a vote of 62 to 36. On May 20, 1993, President Bill Clinton signed the National Voter Registration Act of 1993 into law [Public Law 103-31, 42 U.S.C. 1973gg et seq.].

A copy of the law is provided in Appendix A and is frequently referenced throughout this document.

In trying to understand the requirements of the law, it is immensely helpful to understand the Congressional intent behind each provision. We have therefore appended to this document copies of the House Committee Report (Appendix B, cited in our text as "Hse Rpt"), the Senate Committee Report (Appendix C, cited as "Sen Rpt"), and the Joint Conference Committee Statement (Appendix D, cited as "Conf Stat").

These documents may be useful in determining the Congressional intent behind specific sections of the law. It should be noted, however, that the language in the House and Senate reports is not controlling if the provisions discussed were amended prior to final passage. It is wisest to first consult the Conference Statement which discusses amendments proposed subsequent to the reports.

In determining the intent of the Congress, readers may also want to consult the floor debates in the Congressional Record which, for reasons of space, this report does not provide.

## KEY DEFINITIONS

Different usages in different States suggest the need to define the terms used in this document. Accordingly:

**Terms Defined in the Act**

**election** - Section 3(1) of the Act gives the term the same meaning as that stated in section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)). "Election", therefore, means:

- a general, special, primary, or run-off election;

- a conventions or caucus of a political party which has authority to nominate a candidate;

- a primary election held for the selection of delegates to a national nominating convention of a political party; and

- a primary election held for the expression of a preference for the nomination of individuals for election to the office of President.

**Federal office** - Section 3(2) of the NVRA gives the term the same meaning as that stated in Section 301(3) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(3)). "Federal office", therefore means "the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress".

**motor vehicle driver's license** - Section 3(3) of the Act defines this term to include "any personal identification document issued by a State motor vehicle authority".

**registrar's jurisdiction** - Section 8(j) of the Act defines this term to mean "(1) an incorporated city, town, borough, or other form of municipality; (2) if voter registration is maintained by a county, parish, or other unit of government that governs a larger geographic area than a municipality, the geographic area governed by that unit of government; or (3) if voter registration is maintained on a consolidated basis for more than one municipality or other unit of government by an office that performs all of the functions of a voting registrar, the geographic area of the consolidated municipalities or other geographic units."

**State** - Section 3(4) of the Act defines this term to mean "a State of the United States and the District of Columbia".

**voter registration agency** - Section 3(5) of the Act defines this term to mean "an office designated under [the provisions of the Act] to perform voter registration activities".

## Terms Defined in the Congressional Reports

**nondiscriminatory** - procedures complying with the Voting Rights Act of 1965. [Hse. Rpt., page 15 and Sen. Rpt., page 31].

**r quest of the registrant** - Section 8(a)(3) of the NVRA provides that, among other reasons, the name of a registrant can be removed from the official list of eligible voters upon the "request of the registrant". The term "request of the registrant" is defined in the House and Senate Reports to include "actions that result in the registrant being registered at a new address, such as registering in another jurisdiction or providing a change-of-address notice through the driver's license process that updates the voter registration." [Hse. Rpt., pages 14-15 and Sen. Rpt., page 33].

**State election officials & appropriate State election official** - these terms refer to "whatever election official under State law has the appropriate responsibility for the administration of voter registrations and elections. In some cases, this may be a local election official." [Hse. Rpt., page 8 and Sen. Rpt., page 24].

**uniform** - the term "uniform" is "intended to mean that any purge program or activity must be applied to an entire jurisdiction" [Hse. Rpt., page 15 and Sen. Rpt., page 31].

## Terms Defin d Sol ly by the Federal El ction Commission for the Purpose of This Publication

**acknowledgment notice** - this term describes the product of Section 8(a)(2) of the NVRA, which requires the registration official "to send notice to each applicant of the disposition of the [voter registration] application."

**affirmation** - an assertion or formal declaration not under oath and not requiring corroboration or verification.

**confirmation** - an attestation, possibly under oath, that requires some form of corroboration or verification.

**confirmation mailing** - this term describes the outgoing mailing, sent by forwardable mail in accordance with the provisions of Sections 8(c)(1)(B) and 8(d)(1) & (2) of the Act, to registrants who may have changed their address, and which includes a postage pre-paid and pre-addressed return card by which the registrant may verify or correct the address, or confirm that he or she has moved outside of the jurisdiction.

**precinct** - for the purposes of this document, this term refers to the area covered by a polling place. (It is understood that a single physical facility — such as a school, a courthouse, a stadium, or the like — may serve more than one precinct. In such cases, however, the same facility also typically contains separate polling places — eg. separate rooms or tables — at which people from the different precincts vote. By this definition, such separate rooms or tables constitute different polling places even though they are within the same facility. Thus, it is the area served by the *polling place* that counts, not the area served by the physical facility. It is therefore possible that the new polling place for registrants who have moved from one precinct to another might simply be a different room in the same physical facility as their old polling place.)

**verification mailing** - this term refers to mailings, neither specifically prohibited nor specifically required by the NVRA, sent out in some jurisdictions to confirm the eligibility of a voter registration applicant *before* the applicants name is added to the list of registered voters.

# CHAPTER 1
# GENERAL PROVISIONS OF THE NVRA

The National Voter Registration Act of 1993 requires that individuals be given an opportunity to apply for voter registration (or to update their voter registration data) in elections for federal office

- when applying for or renewing a driver's license

- when applying for (or receiving) certain types of public assistance and other services

- by mail, using either an appropriate State form or else a national form, and

- at military recruiting offices.

It also eliminates purging voters' names from the voter registration list solely for failure to vote and requires a program for positively confirming the accuracy and currency of the registration list.

Finally, it provides certain fail-safe mechanisms to ensure that the right to vote prevails over current bureaucratic or legal technicalities.

Although the following chapters below examine these specific requirements of the law in some detail, there are five general provisions of the law that warrant brief mention at the outset:

- the nonapplicability of this law to certain States

- the effective dates of the law

- the relationship of this law to the Voting Rights Act of 1965, as amended

- the role of federal agencies, and

- the designation and role of a State officer or employee as the chief election official to be responsible for coordination of State responsibilities under the law.

In addition, the provisions of the NVRA have certain implications regarding:

- the role of local registration officials

- the computerization of voter registration files

- the design of all requisite forms in light of the needs of certain special populations.

## THE NONAPPLICABILITY OF THIS LAW TO CERTAIN STATES

The NVRA specifically exempts any State in which voter registration for federal elections is not required — provided that such a law was in effect on and after March 11, 1993 [Section 4(b)(1)]. It further exempts any State that permits, in federal elections, election day registration at the polls — provided that such a law was continuously in effect after March 11, 1993 or else came into effect upon the enactment of the NVRA [Section 4(b)(2)].

Although the Federal Election Commission does not have the legal authority to determine whether or not any State is exempt from the provisions of the NVRA, it is our current understanding that: North Dakota considers itself exempt inasmuch as they do not require voter registration; Minnesota and Wisconsin consider themselves exempt inasmuch as they have election day registration at the polls predating March 11, 1993; Wyoming considers itself exempt because they enacted legislation prior to March 11, 1993 authorizing election day registration at the polls upon the enactment of the NVRA; and Maine does not consider itself exempt inasmuch as election day registration at the polls is not universal throughout the State.

## THE EFFECTIVE DATES OF THE NVRA

In most States, the effective date of the NVRA will be January 1, 1995 [Section 13(2)]. But some States may have to amend their State constitutions in order to pass conforming State legislation. In these States, the effective date is extended to either January 1, 1996 or else to 120 days after the date by which a constitutional amendment would have been legally possible without having to hold a special election (whichever of these two dates is the later) [Section 13(1)]. The reason for the complex language in the law is that in some States a constitutional amendment requires passage in two successive legislative sessions separated by a general election.

Again, the Federal Election Commission has no legal authority to determine which States require constitutional amendments. States must decide that for themselves based on the particular nature of their conforming legislation.

## THE RELATIONSHIP OF THE NVRA TO THE VOTING RIGHTS ACT

The National Voter Registration Act of 1993 is specifically intended to complement rather than contradict the Voting Rights Act of 1965. Section 11(d)(1) reads in part "neither the rights and remedies established by this section nor any other provision of this Act shall supersede, restrict, or limit the application of the Voting Rights Act

of 1965 (42 U.S.C. 1973 et seq.)." Section 11(d)(2) reads "Nothing in this Act authorizes or requires conduct that is prohibited by the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.)."

A spokesperson from of the Civil Rights Division of the Department of Justice emphasized three important consequences of these provisions at the Federal Election Commission's conference on the National Voter Registration Act in June of 1993.

First, Section 2 of the Voting Rights Act prohibits any State or political subdivision from imposing or applying election laws or procedures which discriminate against individuals on account of race, color, or language minority status [42 U.S.C. 1973]. It follows, then, that any laws or procedures that States may adopt pursuant to the requirements of the NVRA must be nondiscriminatory in both intent and effect.

Second, the Voting Rights Act requires certain covered jurisdictions to provide registration and voting materials and oral assistance in the language of qualified language minority groups as well as in English [42 U.S.C. 1973aa-1a and 1973b(f)(4)]. It follows, then, that jurisdictions covered by this provision must extend such services through appropriate motor vehicle offices and public assistance agencies that will be providing voter registration under the terms of the NVRA. These language minority requirements also extend to the voter registration forms and, indeed, to all other requisite forms and voter registration activities in the covered jurisdictions.

Third, the Voting Rights Act prohibits certain States and political subdivisions from using new election laws and procedures without preclearance from the U.S. Attorney General or from the U.S. District Court for the District of Columbia [42 U.S.C 1973c]. The purpose of this requirement, commonly referred to as Section 5, is to prevent the implementation of voting changes that have the purpose or will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. Jurisdictions covered by this provision will therefore have to preclear any changes in their election laws and procedures even though those changes are made in order to comply with the NVRA.

## THE ROLE OF FEDERAL AGENCIES

The Act directly involves four federal agencies and indirectly involves at least two others (the appropriate offices within these agencies are listed in Appendix E).

The *Department of Justice* (DOJ) is involved with the Act in that:

- It is responsible for the civil enforcement of the Act in that "The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this Act" [Section 10(a)]. It is likely

that this responsibility will be undertaken by the Voting Section of the DOJ's Civil Rights Division.

- the Act prescribes certain criminal penalties whose enforcement, we understand, falls within the domain of the Election Crimes Branch of the DOJ's Criminal Division [Section 12].

- the Act requires U.S. Attorneys to provide certain information regarding felony convictions to the chief election officials of the States.

The *Federal Election Commission* (FEC) is required by the Act to:

- "provide information to the States with regard to the responsibilities of the States under this Act" [Section 9(a)(4)]

- develop, in consultation with the chief election officers of the States, "a mail voter registration application form for elections for Federal office" [Section 9(a)(2)]

- submit biennial reports to the Congress "assessing the impact of this Act on the administration of elections for Federal office during the preceding 2-year period and including recommendations for improvements in Federal and State procedures, forms, and other matters affected by this Act" [Section 9(a)(3)]

- "prescribe, in consultation with the chief election officers of the States, such regulations as are necessary to carry out [the development of the form and the reporting to the Congress described immediately above]" [Section 9(a)(1)].

But again, it is very important to note that although the FEC can provide information through its National Clearinghouse on Election Administration, it does *not* have legal authority either to interpret the Act or to determine whether this or that form or procedure meets the requirements of the Act. Such determinations must be made by the States in consultation with the State Attorney General.

The *U.S. Postal Service* is involved with the Act in two respects:

- the Act specifically encourages States to use the National Change of Address (NCOA) files (made available through licensees by the Postal Service) for the purpose of identifying registrants who have changed address [Section 8(c)(1)(A)]. The NCOA program manager and the licensees are identified in Appendix E.

- the Act also provides for special postal rates for certain required mailings. Local election officials might also want to anticipate the need to coordinate mailings through their local postmasters.

The Act specifically requires that each State and the *Secretary of Defense* jointly develop voter registration application procedures at Armed Forces recruitment offices. It is our understanding that this responsibility will be undertaken by the Federal Voting Assistance Program in the Department of Defense whose address and telephone number are provided in Appendix E.

In addition to the four federal agencies directly involved, the Act tangentially involves the *Department of Health and Human Services* as well as the *Department of Agriculture* inasmuch as these departments administer many of the public assistance agencies that must provide voter registration services in accordance with Section 7 of the Act (see Chapter 4). The appropriate national offices are identified in Appendix E.

Finally, it should be noted that the Act specifically requires "all departments, agencies, and other entities of the executive branch of the Federal Government" to cooperate with the States in carrying out the agency registration provisions contained in Section 7(a).

## THE DESIGNATION AND ROLE OF A STATE OFFICER TO COORDINATE STATE RESPONSIBILITIES UNDER THE LAW

The Act requires each State to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this Act" [Section 10]. It does not, however, specify how or even when this designation is to be made. Most States are likely to designate a responsible State official in their conforming legislation. (In the interim, the Federal Election Commission will continue working with the chief election officials or chief registration officials of the States unless some other State officer is designated).

The Act further assigns the chief State election official the duty of making national and State mail registration forms "available for distribution through governmental and private entities, with particular emphasis on making them available for organized voter registration programs" [Section 6(b)].

Finally, the Act designates the chief State election official as the recipient of notices from the United States attorneys regarding felony convictions in federal courts of any persons who claim residence in the State [Section 8(g)(1)]. And should such a conviction have a bearing on the person's eligibility to be a registered voter in that State, the Act requires the chief State election official to notify the voter registration official of the local jurisdiction in which the offender resides [Section 8(g)(5)].

As a practical matter, although not addressed in the Act, States might also want to consider assigning the chief State election official related responsibilities including but not limited to:

- receiving and forwarding notices from State courts regarding felony convictions (if appropriate) as well as declarations of disqualifying mental incapacity

- receiving and forwarding notices from State bureaus of vital statistics regarding deaths

- receiving and forwarding some or all voter registration applications from motor vehicle offices, public assistance agencies, and by mail (especially national mail registration applications)

- receiving and forwarding notices from local jurisdictions regarding the cancellation of a new registrant's prior registration

- designing all forms and procedures requisite under the NVRA

- training all local election officials regarding the forms and procedures,

- receiving and compiling reports from the local election officials pursuant to the FEC's reporting regulations and, in turn, forwarding the compilations to the FEC.

## THE ROLE OF THE LOCAL REGISTRATION OFFICIAL

A principal objective of the National Voter Registration Act is to expand the number and range of locations where citizens may obtain and complete a voter registration application. The House Report makes it quite clear, however, that although completing a voter registration application may be *simultaneous* with other transactions, such an application does not constitute *automatic* registration. Indeed, "[o]nly the election officials designated and authorized under State law are charged with the responsibility to enroll eligible voters on the list of voters. This bill should not be interpreted in any way to supplant that authority. The Committee is particularly interested in ensuring that election officials continue to make determinations as to applicant's eligibility, such as citizenship, as are made under current law and practice" [Hse Rpt Section 5, page 8].

In other words, an application received by the local voter registration official is *only* an application and may be subject to whatever verification procedures are currently applied to all applications. By the same token, any subsequent challenge to the eligibility of a registrant would appear to fall within the domain of the local registration official in accordance with current State laws and practices.