**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

REPUBLICAN NATIONAL
COMMITTEE, et al.,

        *Plaintiffs*,

v.

GRETCHEN WHITMER, et al.,

        *Defendants*.

Case No. 1:24-cv-720-PLM-SJB

**FEDERAL DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS AND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

I.      The NVRA ............................................................................................................. 2

II.     Michigan's Designation of Voter Registration Agencies ..................................... 3

III.    This Litigation...................................................................................................... 4

ARGUMENT ..................................................................................................................... 5

I.      Legal Standards...................................................................................................... 5

II.     Plaintiffs Lack Article III Standing....................................................................... 6

        A.     Plaintiffs Fail to Allege Any Legally Cognizable Injury in Fact............... 7

        B.     Plaintiffs Do Not Establish That Mr. Kidd Has Article III Standing.................. 13

        C.     Plaintiffs Do Not Meet Their Summary Judgment Burden to Establish
               Article III Injury with Evidence.............................................................. 15

III.    Plaintiffs' Claims Against the Federal Defendants Fail on the Merits and Should
        be Dismissed for Failure to State a Claim under Rule 12(b)(6) and Plaintiffs'
        Motion for Summary Judgment Should be Denied. .............................................. 16

        A.     Count II Fails to State a Claim under the NVRA ................................... 16

        B.     Count III Fails to State a Claim under the APA ..................................... 20

IV.     Because the State Defendants Enjoy Sovereign Immunity under the Eleventh
        Amendment and Must be Dismissed, the Entire Action Should be Dismissed
        under Rule 12(b)(7)................................................................................................ 22

V.      Plaintiffs' Summary Judgment Motion Fails to Establish Their Entitlement to
        Injunctive Relief.................................................................................................... 24

CONCLUSION.................................................................................................................. 27

# TABLE OF AUTHORITIES

## CASES

*AB Pac v. FEC*,
  No. 22-2139, 2023 WL 4560803 (D.D.C. July 17, 2023) ................................................ 10

*Allen v. Wright*,
  468 U.S. 737 (1984) .................................................................................... 7, 13, 14

*Am. Civil Liberties Union of Ky. v. Mcreary Cty., Ky.*,
  607 F.3d 439 (6th Cir. 2010) ........................................................................... 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 5

*Ass'n of Am. Physicians & Surgeons v. FDA*,
  13 F.4th 531 (6th Cir. 2021) ......................................................................... 5, 12

*Ass'n of Cmty. Orgs. For Reform Now v. Miller*,
  129 F.3d 833 (6th Cir. 1997) ............................................................. 1, 3, 20, 26

*Bassett v. NCAA*,
  528 F.3d 426 (6th Cir. 2008) ........................................................................... 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 5

*Benisek v. Lamone*,
  585 U.S. 155 (2018) ......................................................................................... 25

*Bognet v. Sec'y Commonwealth of Pa.*,
  980 F.3d 336 (3d Cir. 2020), *vacated as moot*, 141 S. Ct. 2508 (2021) ....................... 8

*Bruni v. Hughs*,
  468 F. Supp. 3d 817 (S.D. Tex. 2020) ................................................................. 8

*Buchholz v. Meyer Njus Tanick, PA*,
  946 F.3d 855 (6th Cir. 2020) ........................................................................... 11

*Camp v. Pitts*,
  411 U.S. 138 (1973) ......................................................................................... 21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................................... 7, 11

*Craig v. Ezpawn Tenn., Inc.*,
  2010 WL 2521367 (W.D. Tenn. June 16, 2010) ................................................ 25

*Donald J. Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020) ................................................................ 8

*Donald J. Trump for President, Inc. v. Cegavske*,
    488 F. Supp. 3d 993 (D. Nev. 2020) ................................................................ 8

*Farmers and Mechanics Sav. Bank of Minneapolis v. Minnesota*,
    232 U.S. 516 (1914) ................................................................................... 18

*FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*,
    97 F.4th 444 (6th Cir. 2024) ..................................................................... 22

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ...................................................................... 6, 7, 13, 14

*Friends of Tims Ford v. TVA*,
    585 F.3d 955 (6th Cir. 2009) ..................................................................... 12

*G.Y.J.P. ex rel. M.R.P.S. v. Wolf*,
    No. 1:20-cv-1511, 2020 WL 4192490 (D.D.C. July 21, 2020) ................................. 21

*Glancy v. Taubman Ctrs., Inc.*,
    373 F.3d 656 (6th Cir. 2004) ..................................................................... 23

*Hotze v. Hudspeth*,
    16 F.4th 1121 (5th Cir. 2021) .............................................................. 7, 8, 10

*James B. Oswald Co. v. Neate*,
    98 F.4th 666 (6th Cir. 2024) ..................................................................... 25

*Keefer v. Biden*,
    --- F. Supp. 3d ----, 2024 WL 1285538 (M.D. Pa. Mar. 26, 2024) ........................... 8, 9, 10

*Keweenaw Bay Indian Cmty. v. Michigan*,
    11 F.3d 1341 (6th Cir. 1993) .................................................................. 22, 23

*Lance v. Coffman*,
    549 U.S. 437 (2007) ................................................................................... 7

*Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*,
    792 N.W.2d 686 (Mich. 2010) ..................................................................... 14

*Lee v. Anthony Lawrence Collection, LLC*,
    47 F.4th 262 (5th Cir. 2022) ..................................................................... 24

*Liss v. Lewiston-Richards, Inc.*,
    732 N.W.2d 514 (Mich. 2007) ................................................................. 18, 19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................. 6, 15

*Mackinac Ctr. for Pub. Pol'y v. Cardona*,
    102 F.4th 343 (6th Cir. 2024) .................................................................... 9

*McCulloch v. Maryland*,
    17 U.S. 316 (1819) .................................................................................... 18

*McKay v. Federspiel*,
    823 F.3d 862 (6th Cir. 2016) .................................................................... 16

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) ..................................................................... 10

*Memphis A. Philip Randolph Inst. v. Hargett*,
    978 F.3d 378 (6th Cir. 2020) ............................................................ 10, 11, 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................... 22

*NRDC v. Train*,
    519 F.2d 287 (D.C. Cir. 1975) .................................................................. 21

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .................................................................................... 24

*Purcell v. Gonzales*,
    549 U.S. 1 (2006) ...................................................................................... 26

*Restrepo v. DHS*,
    No. 6:20-cv-728, 2020 WL 13389326 (M.D. Fla. Sept. 1, 2020) .............. 21

*Republic of Philippines v. Pimentel*,
    553 U.S. 851, 861 (2008) .................................................................... 23, 24

*Republican Nat'l Comm. v. Burgess*,
    No. 3:24-cv-198, 2024 WL 3445254 (D. Nev. July 17, 2024) .............. 9, 10

*Rote v. Zel Custom Mfg. LLC*,
    816 F.3d 386 (6th Cir. 2016) .................................................................... 5

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) .................................................................................. 15

*Shelby Advocs. for Valid Elections v. Hargett*,
    947 F.3d 977 (6th Cir. 2020) .................................................................... 11

iv

*Steffel v. Thompson,*
    415 U.S. 452 (1974) .......................................................................................... 26

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007) ............................................................................................ 5

*Tenn. Conf. of the NAACP v. Lee,*
    105 F.4th 888 (6th Cir. 2024) ...................................................................... 15, 16

*Toth v. Chapman,*
    No. 1:22-cv-208, 2022 WL 821175 (M.D. Penn. Mar. 16, 2022) ......................... 8

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ............................................................................................ 6

*Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC,*
    --- F.4th ----, 2024 WL 3823812 (6th Cir. Aug. 15, 2024) .............................. 6, 15

*United States v. Texas,*
    599 U.S. 670 (2023) ............................................................................................ 6

*Voting for Am., Inc. v. Andrade,*
    888 F. Supp. 2d 816 (S.D. Tex. 2012) .............................................................. 14

*Wilson v. Williams,*
    961 F.3d 829 (6th Cir. 2020) ........................................................................... 26

## STATUTES

5 U.S.C. § 704 ....................................................................................................... 21

5 U.S.C. § 706 ................................................................................................. 21, 22

52 U.S.C. § 20501(a)(2) ........................................................................................ 2

52 U.S.C. § 20503(a) ........................................................................................... 19

52 U.S.C. § 20506 ........................................................................................ *passim*

52 U.S.C. § 20508(a)(2) ...................................................................................... 12

## EXECUTIVE MATERIALS

Exec. Order No. 14,019,
    86 Fed. Reg. 13,623, 13,625 (Mar. 7, 2021) .............................. 12, 17, 18

## LEGISLATIVE MATERIALS

Mich. Comp. Laws § 168.492 ................................................................................ 7

Mich. Comp. Laws § 168.495 ........................................................................................ 7

Mich. Comp. Laws § 168.509u .............................................................................. 3, 18

Mich. Comp. Laws § 168.523 ........................................................................................ 7

National Voter Registration Act,
    Pub. L. No. 103-31, 107 Stat. 77 (1993) (codified at 52 U.S.C. § 20501(a)-(b)) ...................... 1

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 5

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 5

Federal Rule of Civil Procedure 12(b)(7) ................................................................... 23

Fed. R. Civ. P. 19(a)(1)(B)(i) ...................................................................................... 23

Fed. R. Civ. P. 56(a) ...................................................................................................... 5

**OTHER AUTHORITIES**

Executive Directive 2024-3, Gretchen Whitmer, Governor of Michigan,
    Updating Michigan's List of Voter Registration Agencies (June 20, 2024),
    https://perma.cc/VE8N-9YGB ................................................................................ 4

National Voter Registration Form,
    https://perma.cc/BWY6-2ZWM ........................................................................... 12

## INTRODUCTION

In passing the National Voter Registration Act ("NVRA") over thirty years ago, Congress charged "the Federal, State, and local governments" with "the duty . . . to promote the exercise of" the right to vote and established a goal to "increase the number of eligible citizens who register to vote in elections for Federal office."  Pub. L. No. 103-31, 107 Stat. 77 (1993) (codified at 52 U.S.C. § 20501(a)-(b)).  One way Congress sought to accomplish that goal was by requiring States to designate "voter registration agencies," which are required to provide certain nonpartisan voter registration services in connection with whatever other services those locations offer.  *See* 52 U.S.C. § 20506.  States must designate certain kinds of offices in the State as voter registration agencies and may designate other offices at their discretion.  Those optional offices eligible for State designation include, with their agreement, the offices of Federal agencies, which Congress also directed to cooperate with the States to the greatest extent practicable in carrying out the States' designation responsibilities.  Designating additional voter registration agencies advances the "laudable goals" of the NVRA by increasing the number of locations at which eligible voters may register to vote and reducing "inconvenient voter registration requirements that discourage or even prevent qualified voters from registering and participating in elections."  *Ass'n of Cmty. Orgs. For Reform Now v. Miller*, 129 F.3d 833, 834–35 (6th Cir. 1997).

This litigation involves a challenge to the Governor of Michigan's designation of two Federal agencies—the U.S. Small Business Administration ("SBA") and the Department of Veterans Affairs ("VA")—as voter registration agencies under the NVRA.  But this Court lacks jurisdiction over Plaintiffs' claims because they have failed to identify any concrete or particularized injury that flows from two Federal agencies providing nonpartisan voter registration services that many Federal, State, and local offices also provide.  Because Plaintiffs are unable to establish constitutional standing, this Court lacks jurisdiction over their claims.

Even if the Court were to consider them, those claims are meritless as a matter of law. State law claims cannot lie against the Federal Defendants, and Federal law specifically authorizes the agency defendants' conduct at issue here.

Plaintiffs' claims against the Federal Defendants should be dismissed for lack of jurisdiction and failure to state a claim. And because Plaintiffs cannot establish that they are entitled to any relief, their motion for summary judgment should be denied as well.

## STATEMENT OF FACTS

### I.    The NVRA

In passing the NVRA, Congress found that "it is the duty of the Federal, State, and local governments to promote the exercise" of the fundamental right to vote. 52 U.S.C. § 20501(a)(2). Congress thus directed all Federal, State, and local governments to implement the NVRA "in a manner that enhances the participation of eligible citizens as voters in elections for Federal office," *id.* § 20501(b)(2). Among other things, the NVRA requires States, including Michigan, to "designate agencies for the registration of voters in elections for Federal office," which the statute calls "voter registration agencies" *Id.* § 20506(a)(1)–(2). Section 7(a) of the NVRA governs the designation of these agencies. *Id.* § 20506(a). States must designate "all offices in the State that provide public assistance" and "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." *Id.* § 20506(a)(2)(A)–(B). States must also designate other offices, which "may include" among others "Federal and nongovernmental offices, with the agreement of such offices." *Id.* § 20506(a)(3)(B)(ii).

Section 7 of the NVRA imposed two relevant requirements on Federal agencies. First, the NVRA provided that "recruitment office[s] of the Armed Forces of the United States shall be considered to be a voter registration agency designated" by the State. *Id.* § 20506(c)(2). Second, it provided that all "departments, agencies, and other entities of the executive branch of the Federal

2

Government shall, to the greatest extent practicable, cooperate with the States in carrying out" Section 7(a), "and all nongovernmental entities are encouraged to do so."  *Id.* § 20506(b).

Designation as a voter registration agency generally requires the office designated to provide certain nonpartisan voter registration services.  *Id.* § 20506(a)(4), (6).  The NVRA also prohibits voter registration agencies from influencing an applicant's political preference or party registration, or otherwise suggesting "that a decision to register or not to register has any bearing on the availability of services or benefits."  *Id.* § 20506(a)(5)(A), (D).

## II.   Michigan's Designation of Voter Registration Agencies

"On  January 5, 1995, Michigan enacted Public Act 441 . . . to conform its voter registration procedure to the requirements of the [NVRA]."  *Ass'n of Cmty. Orgs. For Reform Now*, 129 F.3d at 835.  One section of that Act provides that, "[n]ot later than the thirtieth day after the effective date of this section, the governor shall provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state."  Mich. Comp. Laws § 168.509u(1).  Shortly after that enactment, then-Governor John Engler issued Executive Order 1995-1, which designated certain State agency offices and "[a]ny other public office . . . which the Governor may from time to time designate by Executive Directive" as voter registration agencies.  *See* Compl. ¶ 56, PageID.11–12.

In May 2022, Michigan Governor Gretchen Whitmer issued Executive Directive 2022-4, which explained that Michigan's list of designated voter registration agencies had not been updated since 1995 and sought recommendations for additional offices to be so designated.  Compl. ¶¶ 62– 65, PageID.13.  In December 2023, Governor Whitmer acted on those recommendations by issuing Executive Directive 2023-6, which among other offices designated "the U.S. Department of Veterans Affairs" as a voter registration agency.  *Id.* ¶ 69, PageID.15.  Similarly, in June 2024, Governor Whitmer issued Executive Directive 2024-3, which designated the SBA as a voter

3

registration agency.[1]   Both Federal agencies were designated "subject to the agreement" each agency had "signed with the State of Michigan."  *Id.* ¶ 69, PageID.15.

## III.   This Litigation

Plaintiffs are a national and State political party committee, the principal campaign committee of former President Donald J. Trump, and the elected clerk of a locality responsible for processing voter registration applications.  *See id.* ¶¶ 14–22, PageID.4–6.  Count I of Plaintiffs' Complaint asserts that Governor Whitmer, Secretary of State Jocelyn Benson, and Director of the Michigan Bureau of Elections Jonathan Brater (collectively, the "State Defendants") exceeded their authority under State law in designating the VA and the SBA as voter registration agencies. *Id.* ¶¶ 79–88, PageID.16–17.  Count II asserts that the SBA and the VA violated the NVRA through their "continued operation as" voter registration agencies.  *Id.* ¶ 97, PageID.19.  Count III asserts that the "SBA's and VA's agreements to act as" voter registration agencies "were 'not in accordance with law' and 'in excess of statutory . . . authority" under the APA "because they were not properly designated . . . under Michigan law."  *Id.* ¶ 107, PageID.21.  Count III also asserts that those agreements were "arbitrary and capricious because the agencies did not adequately explain how their purported designations . . . satisfied the requirements of Section 7 of the NVRA." *Id.* ¶ 108, PageID.21.

On August 23, 2024, Plaintiffs filed a pre-answer motion for summary judgment on each of their claims.  *See generally* ECF No. 25 at PageID.254.  As relief, Plaintiffs ask the Court to permanently enjoin the SBA and the VA "from operating as voter registration agencies without express authorization from the Michigan legislature," as well as declaratory relief.  *Id.*

---

[1]    Executive Directive 2024-3, Gretchen Whitmer, Governor of Michigan, Updating Michigan's List of Voter Registration Agencies (June 20, 2024), https://perma.cc/VE8N-9YGB.

## ARGUMENT

### I.    Legal Standards

*Motion to Dismiss*:  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court considers "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The court accepts the factual allegations as true, but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681.  The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.  This requires factual allegations "plausibly suggesting," and "not merely consistent with," a valid claim for relief. *Id.* at 557.  These standards govern both the court's analysis of whether the complaint alleges facts sufficient to establish subject-matter jurisdiction under Rule 12(b)(1) and its analysis of whether the complaint states a valid claim for relief under Rule 12(b)(6). *See, e.g.*, *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 386, 387 (6th Cir. 2016) (explaining that, when the defendant presents a "facial attack" on subject-matter jurisdiction, the court accepts the allegations of the complaint as true and considers whether those allegations are sufficient to establish jurisdiction); *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021) (applying the pleading standards elucidated in *Iqbal* when considering whether the complaint was sufficient to establish subject-matter jurisdiction).

*Summary Judgment*:  To obtain summary judgment, Plaintiffs must show "that there is no genuine dispute as to any material fact and" they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Application of this standard depends on which party bears the burden of

proof.  *Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, ---F.4th ----, 2024 WL 3823812, at *4 (6th Cir. Aug. 15, 2024).  Plaintiffs bear the burden on each of their claims, including that this court has subject-matter jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  They must, therefore, "produce evidence that would conclusively support [their] right to a judgment." *Iron Workers*, 2024 WL 3823812, at *4 (citation omitted).  This includes evidence supporting their claim of standing.  At the summary judgment stage, plaintiffs "can no longer rest on . . . mere allegations" of injury, "but must set forth by affidavit or other evidence specific facts" supporting their claims.  *Lujan*, 504 U.S. at 561.

## II.  Plaintiffs Lack Article III Standing.

Federal courts do not "operate as an open forum for citizens to press general complaints about the way in which government goes about its business."  *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (citations omitted).  Rather, Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted).  And "a case or controversy can exist only if a plaintiff has standing to sue."  *United States v. Texas*, 599 U.S. 670, 675 (2023).

The "irreducible constitutional minimum of standing" requires a plaintiff to establish that (1) it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized[,] . . . and (b) actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560–561 (1992) (citations omitted).  As the Supreme Court recently emphasized, a plaintiff "does not have standing to challenge a government regulation simply because the plaintiff believes that

the government is acting illegally." *All. for Hippocratic Med.*, 602 U.S. at 381.  Nor may a plaintiff "sue based only an 'asserted right to have the Government act in accordance with law.'"  *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)).

Here, all the injuries Plaintiffs allege are nothing more than "speculative fear[s]" that rest on a "highly attenuated chain of possibilities," and thus fall far short of Article III's bar.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 410 (2013).  Because Plaintiffs cannot establish that this Court has jurisdiction over their claims, their Complaint should be dismissed and their summary judgment motion should be denied.

### A.   Plaintiffs Fail to Allege Any Legally Cognizable Injury in Fact.

Plaintiffs' theory of this case is that the State Defendants did not comply with Michigan law in designating the SBA and VA as voter registration agencies.  The mere assertion that "the law . . . has not been followed," however, "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that [courts] have refused to countenance."  *Lance v. Coffman*, 549 U.S. 437, 442 (2007).  Plaintiffs must instead demonstrate how they are "specifically harmed" by the Defendants' alleged failure to follow the law.  *Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021).  "Just challenging the 'integrity' of the voting process is too general to suffice."  *Id.*

Plaintiffs identify no concrete and particularized injury caused by the SBA and the VA serving as voter registration agencies in Michigan.  Indeed, the only effect of the challenged designations is that those eligible to register to vote under state law have additional options where they may do so.  Nothing about those designations changes who is eligible to register to vote in Michigan elections.  *See generally* Mich. Comp. Laws §§ 168.492, 168.495, 168.523.  And those who register through the SBA and the VA are processed by State officials in the same way as those who register through any other voter registration agency that Plaintiffs do not challenge.

7

As such, Plaintiffs' claim of injury boils down to the idea that they are injured when additional *eligible* voters register to vote at these locations.  But Plaintiffs fail to identify any concrete or particularized injury that the registration of additional eligible voters inflicts upon them.  The inclusion of more eligible voters in the political process presents no harm at all.  *See, e.g.*, *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 351 (3d Cir. 2020) (plaintiff "does not explain how counting *more* timely cast votes would lead to a *less* competitive race"), *vacated as moot*, 141 S. Ct. 2508 (2021).  Plaintiffs "face no harms that are unique from their electoral opponents" based on the broad registration of more voters on a nonpartisan basis.  *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1003 (D. Nev. 2020); *see Keefer v. Biden*, --- F. Supp. 3d ----, 2024 WL 1285535, at \*10 (M.D. Pa. Mar. 26, 2024).  Indeed, parties, candidates, and voters do not have a right to any specific electorate, *see Toth v. Chapman*, No. 1:22-cv-208, 2022 WL 821175, at \*10 (M.D. Penn. Mar. 16, 2022) (three-judge court), and so it is no injury to them if additional otherwise eligible voters are given equal opportunity to register, *see Hotze*, 16 F.4th at 1125.

Plaintiffs do not come close to establishing that they are somehow disadvantaged by an increase in locations offering voter registration services on a nonpartisan basis.  Courts regularly refuse to credit speculation that facially neutral rules—such as those allowing mail-in voting or ballot drop boxes—favor one party over another.  *See, e.g.*, *Bruni v. Hughes*, 468 F. Supp. 3d 817, 823 (S.D. Tex. 2020) (Plaintiffs lacked standing to challenge prohibition on "straight ticket voting" because their alleged injuries hinged on speculation that such a change would "reduce[] Democratic-party turnout at polling places" resulting in "fewer votes at polling-places for Democratic-party candidates"); *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 376, 380 (W.D. Pa. 2020) (rejecting as "too speculative" plaintiffs' claim that use of mail-in

voting drop boxes presents "heightened risk of fraud" that would "impact Republicans more than Democrats"); *Republican Nat'l Comm. v. Burgess*, No. 3:24-cv-198, 2024 WL 3445254, at *2 (D. Nev. July 17, 2024) (rejecting speculation "that Democrats are more likely to . . . cast mail ballots that are received after Election Day" and concluding that "effect of the Nevada mail ballot receipt deadline on electoral outcomes is 'not sufficiently predictable' to meet Article III's" requirements), *appeal filed* (9th Cir. Aug. 19, 2024).

Plaintiffs' attempts to reframe their grievance does not establish the requisite injury-in-fact under Article III.  Plaintiffs first assert that the allegedly unlawful designations "undermin[e] confidence in the integrity of the electoral process," which, they suggest without any factual support, "will harm the electoral prospects of Republican candidates" as well as injuring their "right to vote and compete in lawfully structured elections that comply with . . . the NVRA and Michigan Election law."  Compl. ¶¶ 97–98, PageID.20.  Those allegations are plainly insufficient. Any citizen could claim that a government official's mere failure to follow the law undermines the integrity of government.  Those are precisely the kind of generalized grievances that courts routinely reject.  "A vague, generalized allegation that elections, generally, will be undermined is not the type of case or controversy that this court may rule on under Article III."  *Keefer*, 2024 WL 1285538, at *10.

That the organizational Plaintiffs include a presidential campaign committee and political party organizations does not absolve them of establishing a concrete injury.  "The doctrine of competitor standing recognizes that plaintiffs suffer an economic injury when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them."  *Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343, 351 (6th Cir. 2024) (cleaned up). Some courts have extended competitor standing to actors in the political marketplace in "discrete

contexts." *AB Pac v. FEC*, No. 22-2139, 2023 WL 4560803, at *4 (D.D.C. July 17, 2023). That doctrine, however, does not open the courthouse to "*any* participant in the political arena." *Id.* Rather, the political participant must still demonstrate a concrete injury by alleging that it faced an unfair disadvantage resulting from the illegally structured environment. *See, e.g.*, *Hotze*, 16 F.4th at 1125; *Burgess*, 2024 WL 3445254, at *; *Keefer*, 2024 WL 1285538, at *10 (rejecting argument that candidates had standing because they had "not alleged any particular harm to their candidacies" from the allegedly unlawful conduct); *cf. Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (explaining that "the injury" in a competitor standing case "is the burden of being forced to compete under the weight of a state-imposed disadvantage"). Plaintiffs do not allege that they face an unfair disadvantage from the SBA and the VA being designated as voter registration agencies. Nor could they, because the NVRA requires any voter registration services offered by such an agency to be provided on a nonpartisan basis. 52 U.S.C. § 20506(a)(5).

Plaintiffs cannot avoid the requirement to plead a concrete injury by alleging they are "concerned" that the SBA and VA's voter registration activities "increase[ ] the opportunity for individuals to register to vote even though they are ineligible to do so." *Id.* at Page ID.5. Such concerns are entirely speculative. Plaintiffs nowhere allege that any ineligible voter has, in fact, registered to vote in Michigan through voter registration services provided at an SBA or VA office. *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 387 (6th Cir. 2020) (concluding Plaintiffs' fears that absentee ballot would be erroneously rejected did not establish Article III injury where they did not "cite with certainty or specification any past *erroneous* rejection of an absentee ballot").

Nor do Plaintiffs satisfy their requirement to establish that they face any "certainly impending" harm from the supposed risk that adding to the list of voter registration agencies might

lead to increased ineligible voters registering.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  Their argument that they will be harmed rests on the "highly speculative fear" that (1) an individual not eligible to vote in Michigan will attempt to register to vote through voter registration services offered by the VA or the SBA; (2) despite that person's ineligibility, that person's registration would for some reason be accepted and processed but would not have been accepted and processed had they attempted to register to vote elsewhere; (3) the person will actually vote in an election; (4) against the candidate supported by the Plaintiffs; (5) there will be a sufficient number of those votes to affect the outcome of any relevant election; and (6) all of that will occur without the ineligible voter having been discovered.  Plaintiffs offer no allegation supporting a single step of this "highly attenuated chain of possibilities."  *Id.*

Plaintiffs' invocation of a diversion-of-resources theory also misses the mark.  *See* Compl. ¶ 100, PageID.20 (alleging that the Federal Defendants' operation as a voter registration agency "forc[es]" the organizational Plaintiffs to "allocate additional resources and misallocate their scarce resources in ways they otherwise would not have").  "[A]n organization can no more spend its way into standing based on speculative fears of future harm than an individual can."  *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020) (citing *Clapper*, 568 U.S. at 416).  "In other words, [Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Clapper*, 568 U.S. at 416.  Plaintiffs' "anxiety" that ineligible voters may register "falls far short of the injury-in-fact requirement because it amounts to an allegation of fear of something that may or may not occur in the future."  *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866-67 (6th Cir. 2020); *see also Memphis A. Philip Randolph Inst.*, 978 F.3d at 389.

Any claim to associational standing by the organizational Plaintiffs also fails.  *See* Compl. ¶¶ 17, 21, PageID.5.  While the associational standing "doctrine sometimes permits an entity to sue over injuries suffered by its members even where . . . the entity itself alleges no personal injury," an organization seeking to invoke the doctrine "must do more than identify a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base."  *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 537, 543 (6th Cir. 2021).  Rather, the organization "must instead identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct" and "show that its requested relief will redress this injury."  *Id.*  The organizational plaintiffs here fail to identify any member *at all*, let alone explain how that member could be particularly injured.  *See* Compl. ¶ 15, PageID.4 (describing membership of the Republican National Committee by reference only to the number of its members).  These allegations fall far short of what is required to establish that the organizational Plaintiffs have standing in a representative capacity.

Even if Plaintiffs had identified a cognizable injury, it is also unclear that any asserted injury would be redressed by a decision in their favor.  *See, e.g.*, *Friends of Tims Ford v. TVA*, 585 F.3d 955, 971 (6th Cir. 2009).  Even in the absence of being designated as a voter registration agency, a Federal agency could provide nonpartisan information to the public about how to register to vote, distribute voter registration applications, or include links to State online registration platforms on their websites.  *See* 86 Fed. Reg. at 13,624; National Voter Registration Form, https://perma.cc/BWY6-2ZWM; *see also* 52 U.S.C. § 20508(a)(2), (b); *id.* § 20506(a)(6). Plaintiffs do not allege otherwise.  An order preventing the SBA and the VA from serving as voter registration agencies would not, therefore, necessarily stop all people from registering to vote with the assistance of those offices.

12

**B.      Plaintiffs Do Not Establish That Mr. Kidd Has Article III Standing.**

Plaintiffs separately argue that Georgetown Township clerk Ryan Kidd is injured by the
Federal Defendants acting as voter registration agencies "by creating confusion regarding whether
the federal agencies . . . have been properly designated as such."  Compl. ¶ 99, PageID.20.  But
Plaintiffs again plead no facts identifying any such confusion or how it might arise.  Nor do they
explain how that confusion, if demonstrated, would materially affect or harm Mr. Kidd's duties as
a township clerk.  Presumably Mr. Kidd understands how to process registrations he receives from
other voter registration agencies whose designations he does not challenge.  He would have to
process a person's application whether or not it came from a voter registration agency, and
therefore it is no harm to him whether an applicant applies via the VA or by mail.  *See* ECF No.
22 at PageID.216 (explaining that the processing of applications to register to vote from voter
registration agencies "is largely the same for other voter registration applications").

Mr. Kidd's grievance is, therefore, not so much confusion as to how to process registrations
but disagreement about the process by which the SBA and VA were designated.  Not even
Plaintiffs, however, claim Mr. Kidd has a role to play in the voter registration agency *designation*
process.  *See* Compl. ¶ 22, PageID.6 (alleging only that Mr. Kidd "is responsible for processing
voter registration applications received from government offices properly designated as VRAs").
As to whether Michigan law was followed in making that designation, Mr. Kidd stands in no
different position than any other member of the public.

It cannot be the case that an individual Plaintiff—even a State or local official—can
establish standing merely by alleging that he suffers from confusion as to whether the law was
followed without any other tangible injury.  Such a holding would swallow the rule that a plaintiff
"may not sue based only on an 'asserted right to have the Government act in accordance with
law.'"  *All. for Hippocratic Med.*, 602 U.S. at 381 (quoting *Allen v. Wright*, 468 U.S. 737, 754

13

(1984)).  It would also open the courthouse doors to all manner of impermissible advisory opinions to clarify whether the government had acted in accordance with law.  *Id.* at 379 (explaining that "federal courts do not issue advisory opinions about the law—even when requested by the President").  Just as there is no "doctrine of doctor standing" to "challenge the government's loosening of general public safety requirements," *id.* at 391-92, local clerks must establish the traditional Article III requirements before they may invoke the jurisdiction of Federal courts.

None of Plaintiffs' authorities support their argument that Mr. Kidd has Article III standing pursuant to his role as a township clerk.  The only Federal case they cite addresses whether a State official was a proper *defendant* to be sued.  *See* ECF No. 26 at PageID.282 (citing *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012)).  Indeed, the defendants in that case did "not seriously dispute" the argument the Federal Defendants press here:  whether Plaintiffs have "established the existence of a judicially cognizable injury in fact."  *Voting for Am., Inc.*, 888 F. Supp. 2d at 828.  Plaintiffs also cite an unpublished decision of the Michigan Court of Claims.  *See* ECF No. 26 at PageID.282 (citing *Republican Nat'l Comm. v. Benson*, No. 24-41 (Mich Ct. Claims June 12, 2024)).  That case analyzed standing under the laxer, prudential requirements of Michigan law, not Article III.  *See Republican Nat'l Comm. v. Benson*, Slip Op. at 4 (citing *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 364–65 (Mich. 2010)).  "[N]ot only does the federal standing jurisprudence have no basis in Michigan law, it is contrary to it."  *See Lansing Schs. Educ. Ass'n*, 792 N.W.2d at 364–65.  These cases provide no authority for Mr. Kidd's claim of Article III injury in Federal court.

Plaintiffs also suggest that if Mr. Kidd does not have standing, nobody does.  ECF No. 26 at PageID.282.  Even assuming that is true, the "'assumption' that if these plaintiffs lack 'standing to sue, no one would have standing, is not a reason to find standing.'"  *All. for Hippocratic Med.*,

602 U.S. at 396 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)).

> **C.**     **Plaintiffs Do Not Meet Their Summary Judgment Burden to Establish Article III Injury with Evidence.**

Setting aside the deficient allegations of injury in their Complaint, Plaintiffs' summary judgment motion should be denied for the independent reason that they have failed to put forth any evidence to substantiate their claims of injury.  It is insufficient for purposes of summary judgment for a plaintiff to rest on mere allegations of injury in the Complaint.  *See Lujan*, 504 U.S. at 561.  Yet that is precisely what Plaintiffs do here.  *See* ECF No. 26 at PageID.282–83 (citing only factual allegations in the Complaint).  Plaintiffs submit no affidavits or other evidence that would meet their burden to prove their alleged injuries.  Indeed, Plaintiffs' summary judgment brief separately addresses only Mr. Kidd's supposed injuries, but it does not support his claim of confusion with competent evidence.  *Id.*  The organizational Plaintiffs do even less.  Those entities merely assert that they are injured "as set forth in the Complaint."  *Id.* at PageID.283.

Those statements are nowhere close to meeting Plaintiffs' burden to "produce evidence that would conclusively support [their] right to a judgment."  *Iron Workers*, 2024 WL 3823812, at *4 (citation omitted).  Plaintiffs submit no evidence *at all*, let alone any evidence substantiating their speculative "concern[s]" that two Federal agencies serving as Michigan voter registration agencies could increase the opportunity of ineligible voters to register to vote.  Compl. ¶ 18, PageID.5.  Nor do they provide evidence to support their allegation that the Federal Defendants serving as voter registration agencies have caused Plaintiffs to allocate resources differently than they otherwise would have.  *See id.* ¶¶ 100–02, PageID.20.  In "other diversion-of-resources cases, entities have identified their precise harms from the defendant's conduct down to the penny."

15

*Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 906 (6th Cir. 2024). Here, however, Plaintiffs do not provide evidentiary support that even a dollar was diverted.

As explained above, Plaintiffs' allegations do not establish any Article III injury, but in any event "mere allegations" are "insufficient to carry [Plaintiffs] past summary judgment." *McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016) (citation omitted). Plaintiffs have therefore failed to meet their burden to establish that they are entitled to summary judgment. Their motion should be denied.

**III.  Plaintiffs' Claims Against the Federal Defendants Fail on the Merits and Should be Dismissed for Failure to State a Claim under Rule 12(b)(6) and Plaintiffs' Motion for Summary Judgment Should be Denied.**

The merits of Plaintiffs' claims against the Federal Defendants are all predicated on the notion that the two relevant Federal agencies lacked authority to operate as voter registration agencies, either under the NVRA or because they were improperly designated under State law. The legal defects of those claims are manifold. The NVRA specifically authorizes—and indeed encourages—Federal agencies to agree to be designated by States as voter registration agencies, and Federal law does not impose standards on how States should carry out their designations. Governor Whitmer's designations of the SBA and the VA as voter registration agencies were authorized by State law. But even if there were some defect in the designation process, the Federal Defendants cannot be held to violate State or Federal law for conduct for which they were not responsible. Merely accepting a State's designation, when fully authorized to do so, does not violate the NVRA or the APA. Plaintiffs' claims are therefore meritless as a matter of law and should be dismissed, and their motion for summary judgment should be denied.

**A.  Count II Fails to State a Claim under the NVRA**

Count II of Plaintiffs' Complaint alleges that the SBA and the VA are violating the NVRA through their "continued operation as" voter registration agencies because their designation was

"ultra vires" under Michigan state law.  *See* Compl. ¶¶ 95, 97–102, PageID.19–20.  This claim fails as a matter of law.

The NVRA plainly authorizes Federal agencies, including the SBA and the VA, to operate as voter registration agencies.  Section 7 of the NVRA governs the designation and operation of voter registration agencies.  Subsection (b) of that provision specifies that the voter registration agencies a State designates "may include" "Federal and nongovernmental offices, with the agreement of such offices."  52 U.S.C. § 20506(a)(3)(B)(ii).  Subsection (b), in turn, directs that "[a]ll departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out subsection (a)."  *Id.* § 20506(b).  Read together, these provisions permit a Federal agency to enter an "agreement" with a State for its offices to operate as voter registration agencies and require those agencies to cooperate with the States "to the greatest extent practicable" in doing so.  *Id.*; *see also* Exec. Order No. 14,019, 86 Fed. Reg. 13,623, 13,625 (Mar. 7, 2021) (directing that Federal agencies, "if requested by a State to be designated as a voter registration agency . . . shall, to the greatest extent practical . . . agree to such designation").

Faced with this clear federal statutory authority for Federal agencies to operate as voter registration agencies, Plaintiffs challenge the agencies' supposed "ultra vires designations" under State law.  Compl. ¶ 95, PageID.19; *see also id.* (alleging that the SBA and VA "designations do not meet the NVRA-designation requirements embodied in the laws of the State of Michigan").  But the Federal Defendants did not designate themselves.  Rather, the NVRA charges States with the responsibility for designating voter registration agencies.  *See* 52 U.S.C. § 20506(a)(1)–(3) ("Each State shall designate agencies").  No provision of the NVRA requires the designee to ensure that its voter registration agency designation is lawful.  Yet Plaintiffs' NVRA claim is directed

solely at the Federal Defendants, which were not the entities responsible for the designation.[2]  *See* Compl. ¶¶ 89–103, PageID.18–20 (purporting to assert a claim under the NVRA only as to the SBA and VA and seeking relief on that claim only as to those entities).  Put another way, even assuming the NVRA is violated when a State fails to follow its own law when it designates a voter registration agency, *see* Compl. ¶ 38–42, PageID.9, the Federal Defendants cannot be held liable under that theory when they did not make the designation.[3]

In any event, as explained by the State Defendants themselves, *see* ECF No. 22 at PageID.217–21, Plaintiffs fail to establish that the State Defendants' designation of the SBA and VA as voter registration agencies was inconsistent with State law.  Plaintiffs concede that the Michigan legislature granted the Governor authority to designate voter registration agencies, but argue that authority was time limited.  *See* Compl. ¶¶ 43–46, PageID.10 (citing Mich. Comp. Laws § 168.509u); ECF No. 26 at PageID.271 (same).  The relevant statutory language provides, "[n]ot later than the thirtieth day after the effective date of this section, the governor shall provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state."  Mich. Comp. Laws § 168.509u(1).

This language simply does not place any temporal limit on the Governor's authority to designate voter registration agencies.  The statute's plain meaning merely requires the Governor

---

[2]    Although the 2021 Executive Order directed Federal agencies, "to the greatest extent practical," to agree to be designated as a voter registration agency "if requested by a State," 86 Fed. Reg. at 13,624, the State remains responsible for making any such designation.

[3]    Plaintiffs also allege "the SBA and VA have violated, and unless enjoined, will continue to violate the election laws of the State of Michigan related to the designation of VRAs."  Compl. ¶ 96, PageID.19.  The Constitution, however, guarantees "the entire independence of the General Government from any control by the respective States." *Farmers and Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516, 521 (1914); *see also McCulloch v. Maryland*, 17 U.S. 316, 436 (1819) ("[T]he states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government.").

to provide a list of designations to the Secretary of State within thirty days.  *See Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 517 (Mich. 2007) ("When interpreting a statute," Michigan courts attempt "to give effect to the Legislature's intent by looking at the statutory text, giving meaning to every word, phrase, and clause in the statute and considering both their plain meaning and their context.").  The language does not say that the Governor's designation authority *terminates* after any particular time-period, and indeed by its own terms does not say anything about gubernatorial authority at all.  Rather, the statutory text *assumes* by implication that the Governor has designation authority.  Governors of both political parties have construed the provision as permitting additional designations—with no apparent objection from the legislature—for nearly thirty years.  *See* Compl. ¶¶ 53–56, PageID.11–12 (citing then Governor Engler's Executive Order 1995-1). Contrary to Plaintiffs' argument, nothing about the statutory text purports to terminate the Governor's authority to designate after the thirty-day period elapses.

Citing 52 U.S.C. § 20503(a), Plaintiffs argue that the NVRA requires Michigan to "'establish procedures' to designate VRAs" and suggests that it has failed to do so.  ECF No. 26 at PageID.279.  That provision does not impose restrictions on States' voter registration agency designation procedures.  To the contrary, it requires States to "establish procedures to register to vote in elections for Federal office . . . by application in person . . . at a Federal, State, or nongovernmental office designated under section 20506 of this title."  52 U.S.C. § 20503(a)(3)(B). As that full text elucidates, the procedures that must be established relate to voter registration, not to the State's designation procedures.  Even if that requirement did require the State to establish permanent designation procedures, as Plaintiffs suggest, *see* ECF No. 26 at PageID.279–81, that would mean that Plaintiffs' interpretation of section 168.509u—that State law does not provide for ongoing designation authority—is in tension with the NVRA.

Plaintiffs' strained reading of this provision is also inconsistent with its statutory purpose. Section 168.509u was enacted "to conform" Michigan's "voter registration procedure to the requirements of the" NVRA. *Ass'n of Cmty. Orgs. For Reform Now*, 129 F.3d at 835. It is, therefore, reasonable to interpret the state law in the context of the Federal enactment. But construing section 168.509u as terminating the Governor's authority to designate additional voter registration agencies thirty days after enactment would risk putting the State out of compliance with the NVRA by failing to adhere to its continuing obligation to designate State agencies in the mandatory designation category. *See* 52 U.S.C. § 20506(a)(2). Interpreting Michigan law to provide ongoing authority for the Governor to designate additional voter registration agencies, as necessary, harmonizes both section 168.509u with Michigan's continuing obligation to maintain NVRA compliance.[4]

Because Count II is dependent on Plaintiffs' misinterpretation of State law, their claim fails and should be dismissed.

## B. Count III Fails to State a Claim under the APA

Similar reasons doom Count III, Plaintiffs' APA claim against the Federal Defendants. *See* Compl. ¶¶ 104–08, PageID.20–21. The APA authorizes judicial review of "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. In such an action, the reviewing

---

[4] Plaintiffs also argue that the Michigan legislature's authorization for the Michigan Secretary of State to designate State agencies as voter registration agencies beginning in June 2025 supports their State law arguments. *See* ECF No. 26 at PageID.279. That provision is fully consistent with Defendants' interpretation of section 168.509u. The relevant designations at issue in this case were made by Governor Whitmer, not the Secretary of State. No party contends that the Secretary of State had the authority to designate a Federal agency prior to the recent enactment. That the legislature granted new authority to the Secretary of State does not undermine Defendants' argument that the Governor had existing authority to make the designation. *Contra Id.* at PageID.279 (arguing that the legislature's grant of designation authority to the Michigan Secretary of State implies she lacked that authority prior to the effective date of the statute).

20

court shall "hold unlawful and set aside agency action" it finds to be "not in accordance with law" or "in excess of statutory . . . authority." *Id.* § 706(2)(A), (C).

As an initial matter, Plaintiffs' summary judgment motion is premature to the extent it invokes their APA claim. Such a claim requires the court to review "the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) (explaining that the "focal point for judicial review should be the administrative record"). Yet in this pre-answer posture, no administrative record has been compiled or produced. Courts routinely recognize that the APA's requirement that judicial review be confined to the record presented by the agency renders pre-answer motions for summary judgment premature. *Restrepo v. DHS*, No. 6:20-cv-728, 2020 WL 13389326, at *6 (M.D. Fla. Sept. 1, 2020) ("[G]iven the absence of the administrative record, it is premature to decide whether USCIS's denial of Plaintiff's Petition was arbitrary and capricious."); *G.Y.J.P. ex rel. M.R.P.S. v. Wolf*, No. 1:20-cv-1511, 2020 WL 4192490, at *2 (D.D.C. July 21, 2020) (noting "the traditional civil litigation sequence: the plaintiff files a complaint; then the defendant answers or seeks dismissal of the complaint; then—in APA cases—the Government produces an administrative record; and only then does the Court consider motions for summary judgment") (cleaned up). Thus, review "on the basis of a partial and truncated record" is improper, *NRDC v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). But this is precisely what Plaintiffs request.

What is before the Court now, however, is sufficient to grant Defendants' motions to dismiss. Plaintiffs' claim is that "the SBA's and VA's agreements to act as [voter registration agencies] under Section 7 of the NVRA were 'not in accordance with law' and 'in excess of statutory . . . authority.'" Compl., PageID.21 (citing 5 U.S.C. § 706(2)(A)). As explained above, however, the NVRA expressly authorizes Federal agencies to enter agreements to serve as voter

21

registration agencies.  *See supra* at p.17; 52 U.S.C. § 20506(b).  Plaintiffs' APA claim thus fails for the same reasons as their NVRA claim.

Plaintiffs also assert in their Complaint (but not their summary judgment brief) that the agreements were inadequately explained.  *See* Compl. ¶ 108, PageID.21.  All parties' authority to enter into those agreements is apparent from the face of those documents.[5]  Each agreement explains that Michigan's authority to designate voter registration agencies derives from "a 1994 statute that directed the Governor to designate" such agencies and a 1995 Executive Order that "allows the Governor to designate additional" agencies "through an executive directive."  ECF No. 22-2 at PageID.225; ECF No. 22-3 at PageID.234.  The signatories of each agreement similarly "represents that he or she is duly authorized to execute" the agreement.  ECF No. 22-2 at PageID.231; ECF No. 22-3 at PageID.242.  Those statements more than satisfy any requirement the Federal Defendants had to explain their authority.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (1983) (explaining that courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned") (citation omitted).

IV.   **Because the State Defendants Enjoy Sovereign Immunity under the Eleventh Amendment and Must be Dismissed, the Entire Action Should be Dismissed under Rule 12(b)(7).**

Plaintiffs' complaint should also be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(7) because the State Defendants are required parties that cannot be joined.  "[T]he resolution of the question of joinder under Rule 19, and thus of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three-step process."  *Keweenaw Bay Indian*

---

[5]     "Courts may consider 'exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.'"  *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 455 (6th Cir. 2024) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

*Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993).  "First, the court must determine whether the person or entity is a [required] party under Rule 19(a)."  *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).  "Second, if the person or entity is a [required] party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction."  *Id.*  "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case . . . ."  *Id.*[6]  "As a general matter, any party may move to dismiss an action under Rule 19(b)" and a court may also consider the issue *sua sponte*.  *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008).

The State Defendants are required parties.  A person must be joined if "that person claims an interest relating to the subject of the action" and "as a practical matter" their absence may "impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i).  Here, the factual predicate underpinning all of Plaintiffs' claims is that the State Defendants' designations of the SBA and VA as voter registration agencies "are *ultra vires* and unlawful under Michigan law."  Compl. ¶ 8, PageID.3; *see also id.* ¶¶ 99, PageID.19 (challenging the "ultra vires designations of" voter registration agencies under Michigan Executive Directive 2023-6); *id* ¶ 107, PageID.21 (asserting an APA claim based on the allegation that the Federal Defendants "were not properly designated as [voter registration agencies] under Michigan law").  Failure to join the State Defendants impairs their interest in protecting the Governor's prerogative to designate voter registration agencies.

---

[6]    Courts sometimes use the terms "necessary" and "indispensable" parties consistent with the terminology of a prior version of Rule 19.  *See Pimentel*, 553 U.S. at 855–86.  The revisions to the rule were "stylistic only."  *Id.* at 855.  The Federal Defendants here use the terminology of the current version of the rule.

The State Defendants also may not feasibly be joined.  As the State Defendants persuasively argue, *see* ECF No. 22 at PageID.204–07, Plaintiffs' sole claim against the State Defendants must be dismissed because the Eleventh Amendment provides sovereign immunity from state-law claims asserted against States in Federal court, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  Although Plaintiffs argue that their claim against the State Defendants is not precluded by the Eleventh Amendment because it is based on Federal law, the relief they seek is entirely predicated on the notion that the State Defendants violated the Michigan Constitution and State statutes.  *See* Compl. ¶¶ 79–88, PageID.16–18; ECF No. 26 at PageID.254 (requesting declaratory judgment against State Defendants only as to State law); ECF No. 26 at PageID.285.

Because joinder of the State Defendants is not feasible based on Michigan's sovereign immunity, the entire action must be dismissed.  "A case may not proceed when a required-entity sovereign is not amenable to suit." *Pimentel*, 553 U.S. at 867.  Where a State asserts a "non-frivolous claim" to sovereign immunity in a case in which it is a required party, that "is enough to require dismissal of the entire action because there is a potential for injury to the [State's] interests as the absent sovereign." *Lee v. Anthony Lawrence Collection, LLC*, 47 F.4th 262, 267 (5th Cir. 2022) (cleaned up).  That potential is present here, and so this case should be dismissed in full.

## V.      Plaintiffs' Summary Judgment Motion Fails to Establish Their Entitlement to Injunctive Relief.

As described above, Plaintiffs' claims are meritless, their motion for summary judgment should be denied, and their complaint should be dismissed in its entirety.  But even if Plaintiffs had stated a proper claim and established that they are entitled to judgment as a matter of law, they have completely failed to justify their entitlement to any form of injunctive relief.

24

To establish entitlement to a permanent injunction, the Court must consider (1) whether the movant has demonstrated actual success on the merits; (2) whether the movant will suffer irreparable injury in the absence of a permanent injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction. *See James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024) (discussing preliminary injunction standard); *Am. Civil Liberties Union of Ky. v. Mcreary Cty., Ky.*, 607 F.3d 439, 445 (6th Cir. 2010) (explaining that the same standard applies to permanent injunctions except that for a preliminary injunction "the plaintiff must show a likelihood of success on the merits rather than actual success") (citation omitted). Plaintiffs' few sporadic references to relief in their summary judgment motion and brief do not even cite this standard, let alone satisfy Plaintiffs' burden to establish entitlement to injunctive relief. *See* ECF No. 25 at PageID.254; ECF No. 26 at PageID.268; *id.* at PageID.285. At most, Plaintiffs' brief is directed at success on the merits; they present no argument at all on the other three factors. Plaintiffs' request for injunctive relief may be denied on this basis alone. *See Craig v. Ezpawn Tenn., Inc.*, 2010 WL 2521367, at *2 (W.D. Tenn. June 16, 2010) (denying preliminary injunction where the plaintiff "did not brief any case law in support of her motion").

Even if Plaintiffs had properly raised the issue of injunctive relief, the remaining factors plainly favor the Defendants. As explained above, Plaintiffs have not established any injury that they may vindicate in Federal court. It therefore follows that they have not established any irreparable injury in the absence of an injunction. Meanwhile, Plaintiffs' own litigation conduct undermines their assertions of irreparable harm. The Supreme Court has emphasized that "a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). Yet Plaintiffs have not even sought preliminary relief to avoid

their claimed harms.  That lack of urgency suggest that Plaintiffs are not suffering any relevant injury *at all*.  It also suggests that there is no need to resort "to the strong medicine of the injunction." *Steffel v. Thompson*, 415 U.S. 452, 466 (1974).

The final two injunction factors—harm to the opposing party and the public interest— "merge when the Government is the opposing party." *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) (citation omitted).  An injunction here would frustrate the public's interest in removing barriers to "voter registration" that "discourage or even prevent qualified voters from registering and participating in elections." *Ass'n of Cmty. Orgs. For Reform Now*, 129 F.3d at 834–35.  The public interest against an injunction is all the stronger here where the voter registration services at issue are at least in part directed at veterans who have served our country and are seeking medical care.

Any injunctive relief directed at the Federal Defendants' voter registration services also risks creating serious voter confusion.  As the Supreme Court has repeatedly noted, court "orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzales*, 549 U.S. 1, 4–5 (2006) (per curiam).  Plaintiffs suggest that "there is no risk an injunction would cause voter confusion," ECF No. 26 at PageID.268, but fail to so demonstrate.  In the event the Court issues an injunction prior to this year's general election, eligible voters may at a minimum be confused about whether they can register to vote with SBA or VA assistance.  If any voter that registered or received registration services through those agencies prior to the Court's injunction learns that those services were held unlawful, that voter may reasonably question whether election officials would honor their registration or simply determine voting is not worth the effort.  This Court should not accept that risk, particularly where Plaintiffs have failed to address the required elements to establish entitlement to injunctive relief.

26

## CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Dismiss should be granted and Plaintiffs' Motion for Summary Judgment should be denied.


DATED: September 20, 2024                    BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             LESLEY FARBY
                                             Assistant Branch Director
                                             Civil Division, Federal Programs Branch

                                             /s/ *Jacob S. Siler*
                                             JACOB S. SILER
                                             Trial Attorney
                                             Civil Division, Federal Programs Branch
                                             U.S. Department of Justice
                                             1100 L Street, NW
                                             Washington, DC 20005
                                             Phone: (202) 353-4556
                                             Facsimile: (202) 616-8460
                                             Email: jacob.s.siler@usdoj.gov

                                             *Counsel for Federal Defendants*

### CERTIFICATE OF COMPLIANCE

I certify that this brief complies with LCivR 7.2(b)(i) because it contains 8,744 words as measured by Microsoft Word, excluding the portions of the document that are not to be included in the word court under that rule.

/s/*Jacob S. Siler*
Jacob S. Siler
