## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; MICHIGAN REPUBLICAN PARTY; and RYAN KIDD, in his official capacity as Clerk of Georgetown Township,<br><br>      Plaintiffs,<br><br> v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor of Michigan; JOCELYN BENSON, in her official capacity as Michigan Secretary of State; JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections; U.S. SMALL BUSINESS ADMINISTRATION; ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration; DEPARTMENT OF VETERANS AFFAIRS; and DENIS McDONOUGH, in his official capacity as Secretary of Veterans Affairs,<br><br>      Defendants. | CIVIL ACTION<br><br>Case No. 1:24-cv-720-PLM-SJB<br><br>Hon. Paul L. Maloney<br>Hon. Sally J. Berens<br><br>**VET VOICE FOUNDATION'S AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Pursuant to the Court's order denying Vet Voice Foundation's motion to intervene, but stating that it will "permit Vet Voice to file briefs as amicus curiae," ECF No. 20, PageID.185, Vet Voice Foundation respectfully submits this brief in support of Defendants' motions to dismiss (ECF Nos. 22, 32), and in opposition to Plaintiffs' motion for summary judgment. ECF No. 26.

## TABLE OF CONTENTS

STATEMENT OF INTEREST OF AMICUS CURIAE .................................................................. 1

INTRODUCTION ............................................................................................................. 2

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................. 5

    I.     Plaintiffs lack Article III standing................................................................................. 5

          A.    The RNC, Donald J. Trump for President 2024, Inc., and the Michigan Republican Party have not alleged—let alone established—any cognizable injury in fact.......... 6

          B.    Plaintiff Ryan Kidd has not alleged a cognizable injury in fact. ............................. 8

    II.    The Eleventh Amendment bars this Court from exercising jurisdiction over the State Defendants, and Rule 19(b) consequently requires dismissal of the entire action. ........... 9

    III.   The Complaint fails to state a claim upon which relief can be granted. .......................... 11

          A.    Count I fails to state a claim under Michigan law. ................................................. 11

          B.    Count II fails to state a claim under the National Voter Registration Act. .............. 11

          C.    Count III fails to state a claim under the Administrative Procedures Act. .............. 13

CONCLUSION................................................................................................................. 15

**STATEMENT OF INTEREST OF AMICUS CURIAE**

Vet Voice Foundation is a nonpartisan nonprofit organization organized under section 501(c)(3) of the Internal Revenue Code. Its mission is to empower veterans across the country to become civic leaders and policy advocates. Increasing voter turnout among veterans and active-duty military voters is central to Vet Voice's mission: by turning out such voters, Vet Voice builds its constituency's political power. To support its voter turnout work, Vet Voice has built a first-of-its-kind military voter file, comprised of veterans, activity-duty military, and their families, which includes over 357,000 Michigan voters. Vet Voice targets those voters through its communications to ensure they are registered, informed about the issues, and turn out to vote. Vet Voice plans to target approximately 70,000 Michigan voters as part of its 2024 mobilization effort.

Voter registration is fundamental to Vet Voice's work. It cannot effectively educate and turn out Michiganders who are not registered because registration is a prerequisite to voting in Michigan. And voter registration at Department of Veterans Affairs ("VA") offices is an invaluable tool for Vet Voice, its subscribers, and its wider constituency of military and veteran voters. Most veterans interact with the VA frequently, as do many active-duty servicemembers. Michigan's decision to offer voter registration at VA offices therefore gives veterans, their families, and many active-duty servicemembers an easy and accessible option for registering to vote or updating a voter registration. And that option is particularly important for the many veterans who have service-connected disabilities, which is 30 percent of all veterans and 46 percent of post-September 11 veterans. Such veterans may face physical or other barriers to registration but generally visit VA facilities frequently. Registering at VA offices therefore makes the franchise much more accessible for such veterans. Vet Voice has a direct interest in ensuring that the

1

challenged executive orders remain in place for the November election because they provide more opportunities for veterans and other voters to register to vote in Michigan.

**INTRODUCTION**

Through this lawsuit, the Republican National Committee ("RNC"), Donald J. Trump for President 2024, Inc., the Michigan Republican Party ("MRP"), and Ryan Kidd (together, "Plaintiffs"), seek to make it more difficult for veterans and small business owners to register to vote. Section 7 of the National Voter Registration Act directs states to designate various offices, including (with their agreement) Federal offices, as voter registration agencies at which voters can obtain voter registration forms, receive assistance with registration paperwork, and submit completed forms. 52 U.S.C. § 20506. Consistent with this directive, Michigan's Secretary of State entered into agreements with the VA and U.S. Small Business Administration ("SBA") to make it easier for Michiganders visiting VA and SBA offices to participate in the democratic process. These agreements do not in any way change the substantive requirements for registering to vote; they just make the registration process more accessible for veterans who have served their country and entrepreneurs who are the engine of its economy.

Rather than celebrating Michigan's effort to encourage voter registration, Plaintiffs sued to stop it. But their meritless suit should be rejected. First, this Court lacks subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Plaintiffs lack standing to challenge the agreements between Michigan and the VA and SBA because the designation of voter registration agencies at those offices in no way injures them. Moreover, this Court lacks jurisdiction over Plaintiffs' Count I because the Eleventh Amendment bars it from considering Plaintiffs' state-law claim against the State Defendants. And if the State Defendants are dismissed from the case—and they must be under the Eleventh Amendment—then they cannot protect Michigan's interest in the designations of the SBA and the VA as voter registration agencies, and the entire action must therefore be

dismissed. Fed. R. Civ. P. 19; *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) (because "[a] case may not proceed when a required-entity sovereign is not amenable to suit," the entire action must be dismissed). Alternatively, even if this Court has jurisdiction, each of Plaintiffs' three claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

In 1993, Congress passed the National Voter Registration Act "to establish procedures that will increase the number of eligible citizens who register to vote." 52 U.S.C. § 20501. In enacting the NVRA, Congress recognized that "the right of citizens of the United States to vote is a fundamental right" and that "[i]t is the duty of the Federal, State, and local governments to promote the exercise of that right." *Id.* Section 7 of the NVRA, codified at 52 U.S.C. § 20506, expands opportunities for citizens to register to vote by directing states to designate "all offices in the State that provide public assistance" and "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities" as voter registration agencies. 52 U.S.C. § 20506. States also are directed to designate other offices, including "Federal and nongovernmental offices, with the agreement of such offices." *Id.* Federal entities in turn must, "to the greatest extent practicable, cooperate with the States in carrying out" these responsibilities. *Id.*

Voter registration agencies are required to offer certain services, including distribution of mail voter registration application forms; assistance in completing voter registration application forms; and acceptance (and subsequent transmittal to the appropriate official) of completed forms. *Id.* The individuals providing these services are strictly prohibited from partisan activities and from conditioning other services or benefits on either registering or not registering to vote. *Id.*

In early January 1995, shortly after Congress enacted the NVRA, the Michigan Legislature enacted a law providing that "[n]ot later than the thirtieth day after the effective date of this section,

the governor shall provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state." MCL § 168.509u.  The then-governor complied with this mandate, issuing an Executive Order designating several categories of offices, including "[a]ny other public office . . . which the Governor may from time-to-time designate by Executive Directive." Mich. Exec. Order No. 1995-1 ("EO 1995-1").[1]

Consistent with Section 7 of the NVRA, President Biden in 2021 directed federal agencies to partner with state officials to promote voter registration and voter participation, and specifically to agree to state requests to designate voter registration agencies. Compl. ¶¶ 60–61, PageID.12–13. In May 2022, Governor Whitmer determined that because Michigan had not updated its list of voter registration agencies since 1995 despite "myriad changes to public assistance programs and programs that provide services to persons with disabilities, as well as to the offices that accept applications for and administer these programs," the state would undertake a comprehensive review of which offices should be so designated. Mich. Exec. Directive 2022-4.[2]  That review ultimately led to voter registration agency agreements between the Michigan Department of State and the VA and SBA and their designation via Executive Directives 2023-6[3] and 2024-3.[4]

---

[1] *Available at* https://www.https://legislature.mi.gov/documents/1995-1996/executiveorder/htm/1995-EO-01.htm.
[2] *Available at* https://www.michigan.gov/whitmer/news/state-orders-and-directives/2022/05/01/executive-directive-2022-4.
[3] *Available at* https://www.michigan.gov/whitmer/news/state-orders-and-directives/2023/12/18/executive-directive-2023-6-expanding-voting-opportunities-updating-list-of-registration-agencies.
[4] *Available at* https://www.michigan.gov/whitmer/news/state-orders-and-directives/2024/06/20/executive-directive-2024-3-updating-michigans-list-of-voter-registration-agencies.

Plaintiffs now seek to invalidate those agreements and so deprive veterans and small business owners of an easily accessible means for registering to vote. But their vehicle is fatally flawed: they have brought a *federal* lawsuit premised on claims that *Michigan* officials violated *Michigan* law when they designated the VA and SBA as voter registration agencies. For the reasons set forth herein, this suit must be dismissed.

## ARGUMENT

Plaintiffs' lawsuit is defective from beginning to end. First, Plaintiffs lack standing because they have not alleged or established any cognizable injury resulting from the actions they challenge. Second, Plaintiffs' Count I alleges a claim against state officials for violations of state law, but under the U.S. Constitution and settled Supreme Court precedent such claims cannot be adjudicated in federal court—and, under Rule 19, neither can the dependent claims against the Federal Defendants. Third, Count II alleges a claim under the NVRA against the VA, the SBA, and the leaders of those agencies, but nothing in the NVRA prohibits those agencies from acquiescing to Michigan's designations. Finally, Count III alleges that the agencies violated the Administrative Procedures Act by failing to explain how the designations satisfied the requirements of the NVRA, but the agencies in fact *did* provide such an explanation.

## I.  Plaintiffs lack Article III standing.

Plaintiffs' purported injuries do not satisfy the requirements for standing: they are abstract, generalized, remote, and entirely conjectural. Vet Voice joins the arguments made by Defendants in their motions to dismiss, ECF No. 22, PageID.207–217 and ECF No. 32, PageID.355–365, and offers additional reasons why this action should be dismissed in its entirety.

**A. The RNC, Donald J. Trump for President 2024, Inc., and the Michigan Republican Party have not alleged—let alone established—any cognizable injury in fact.**

Plaintiffs lack any right to enlist this Court in their anti-democratic effort to make it more difficult for veterans and others to register to vote. The organizational Plaintiffs are not injured in any way by Defendants' designation of VA and SBA offices as voter registration agencies. And their generalized interest in enforcing compliance with the law is not cognizable under Article III.

The U.S. Supreme Court recently confirmed in *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*Alliance*"), that a plaintiff organization may not invoke federal jurisdiction when, as here, its only purpose in doing so is to make it more difficult for others to obtain some benefit. In *Alliance*, "pro-life doctors and associations" sued the FDA under the Administrative Procedures Act but did not allege that the FDA was "requiring them to do or refrain from doing anything." *Id.* at 372–74. Rather, the plaintiffs wanted the FDA to make the drug mifepristone "more difficult for other doctors to prescribe and for pregnant women to obtain." *Id.* at 374. The Court explained that "a plaintiff's desire to make a drug less available *for others* does not establish standing to sue." *Id.* The same principle applies here. *Alliance* confirms that the organizational Plaintiffs lack standing: they do not allege that any Defendant is "requiring them to do or refrain from doing anything," and their desire to make voter registration "less available *for others*"—particularly veterans—"does not establish standing to sue." *Id.* at 372–74.

The organizational Plaintiffs attempt to cast their purported injuries in more favorable terms, but those attempts fail. For example, the RNC and MRP claim shared "interests in ensuring that they and their candidates compete for votes in a lawfully structured competitive environment." Compl. ¶ 17, PageID.5. But they do not allege a true competitive injury—they never claim (nor could they) that registration at VA or SBA offices somehow unfairly tilts the electoral playing field against them. *See, e.g.*, *Republican Nat'l Comm. v. Burgess*, No. 3:24-CV-00198-MMD-

CLB, 2024 WL 3445254, at *3 (D. Nev. July 17, 2024) ("[It] was not the mere illegality of the competitive environment but instead the resultant unfair disadvantage from that illegality which constituted an injury in fact."). The federal courts are not a "vehicle for the vindication of the value interests of concerned bystanders." *Allen v. Wright*, 468 U.S. 737, 756 (1984) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

The RNC and MRP also allege that Defendants' designation of voter registration agencies "undermines the integrity of elections by increasing the opportunity for individuals to register to vote even though they are ineligible to do so." Compl. ¶ 18, PageID.5. Yet Plaintiffs do not allege that *substantively ineligible* voters are registering at VA and SBA offices, nor do they allege that ineligible voters are more likely to register at VA and SBA offices than elsewhere. And to the extent that Plaintiffs' objection to the use of VA offices for voter registration is purely *procedural*, based on their theory that such offices have not properly been authorized to process registrations, that cannot constitute an injury in fact. *Alliance*, 602 U.S. at 381 ("[A] citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally.").

Finally, the claim that Defendants' designations are "sowing confusion," Compl. ¶ 18, PageID.5, is hypothetical and conclusory. Plaintiffs do not identify any specific person who is allegedly confused by this issue. Nor is the status quo in fact confusing: VA and SBA offices are simply processing voter registrations just like other registration agencies in Michigan.[5] In sum, the

---

[5] The RNC and MRP purport to have standing on behalf of their members as well as in their own right. Compl. ¶¶ 17, 21, PageID.5. Although "it is common ground" that "organizations can assert the standing of their members," *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009), neither party committee makes the requisite allegations to do so here. In particular, to plead membership-based standing under *Summers*, an organization must allege that it has members and specifically articulate how they are injured by the challenged provision. Neither party committee satisfies that

RNC and MRP plainly lack an injury in fact. As for the Trump Campaign, Plaintiffs assert that it "has the same interests in this case as the RNC" without providing further specifics. *Id.* ¶ 20, PageID.5. Those interests fail to give rise to an injury in fact for all the same reasons.

### B. Plaintiff Ryan Kidd has not alleged a cognizable injury in fact.

The individual Plaintiff, the elected clerk of Georgetown Township, also lacks standing to sue in federal court. The case Plaintiffs rely on in their motion for summary judgment—*Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816 (S.D. Tex. 2012)—is inapposite. While the court in *Andrade* recognized that where election officials have "a designated role to play in the interpretation and enforcement of state election law," they are "proper parties to any suit seeking to challenge its validity and enjoin its enforcement," it did so in the context of determining whether election officials are proper *defendants* in an action challenging an election law. *See id.* at 827–833 (discussing arguments made by defendants Secretary of State and county tax assessor). The question there was whether the county election official had caused or could redress the plaintiffs' injury—not whether the election official had suffered an injury that would allow her to challenge an election law.

Moreover, while Michigan law requires the clerk to receive completed, processed voter registrations made at VA and SBA offices, the clerk substantially overstates his role in that process. *See* Compl. ¶ 22, PageID.6 Although he implies that he is responsible for substantively assessing whether such registrations are valid, *see id.*, he plainly lacks any such authority under the statute's unambiguous text. Rather, under Section 168.509w, the substantive validation of each voter registration application occurs at the "designated voter registration agency" itself. MCL

---

standard. *See* Compl. ¶¶ 15–24, PageID.4–6. The RNC alleges that it has only three members in Michigan, all of whom are already registered to vote. *Id.* ¶ 15, PageID.4. And the MRP does not even squarely allege that it has members—let alone provide any information about who these members are or what injury they might suffer. *Id.* ¶ 21, PageID.5.

§ 168.509w(1). A city or township clerk's only role under the statute is to receive the already-validated application when it is transmitted by the processing agency. *Id.* § 168.509w(2). Section 168.509w leaves him nothing to interpret or enforce. His only duty of any sort is a purely clerical and automatic one: to *receive* an already-validated application. Accordingly, he does not need "a declaration" to "guide his future conduct." Compl. ¶ 24, PageID.6. The clerk's interest in this case amounts to a request for an advisory opinion. As the Supreme Court "explained to President George Washington in 1793 . . . federal courts do not issue advisory opinions about the law—even when requested by the President." *Alliance*, 602 U.S. at 378–79.

Plaintiffs' citation to *Republican National Committee v. Benson*, No. 24-41 (Mich. Ct. Claims June 12, 2024), does not save the clerk's standing. *See* Compl. ¶ 23 & n.4, PageID.6. That case analyzed standing under Michigan state law, which, as of 2010, is a "limited, prudential doctrine" that is far less demanding than its federal counterpart. *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 487 Mich. 349, 372, 792 N.W.2d 686 (2010). In particular, under Michigan standing doctrine post–*Lansing Schools*, "a litigant has standing whenever there is a legal cause of action," and any litigant who meets the requirements of the declaratory judgments rule in MCR 2.605 also has standing "to seek a declaratory judgment." *Id. Republican National Committee* concerned a request for a declaratory judgment, slip op. at *5, so its application of Michigan's relaxed standing requirements does not, without more, support invoking this Court's jurisdiction.

## II.   The Eleventh Amendment bars this Court from exercising jurisdiction over the State Defendants, and Rule 19(b) consequently requires dismissal of the entire action.

This Court lacks jurisdiction to adjudicate a claim for injunctive relief against the State Defendants for the reasons discussed in Defendants' motion to dismiss, and therefore should dismiss this case in its entirety. Where a party has been dismissed for lack of subject matter jurisdiction but nonetheless "claims an interest relating to the subject of the action and is so situated

that disposing of the action" in their absence may "impair or impede" their "ability to protect the interest," the Court must determine whether the action can proceed in that party's absence. Fed. R. Civ. P. 19. Although Rule 19 does not always require dismissal, the Supreme Court has recognized that "where sovereign immunity is asserted . . . dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Republic of Philippines*, 553 U.S. at 867.

Here, Plaintiffs' sole substantive claim against the State Defendants is that Michigan officials failed to comply with Michigan law, but under the Eleventh Amendment this Court cannot exercise jurisdiction over State Defendants on that claim. *See* ECF No. 22, PageID.204–207; ECF No. 32, PageID.371–373. Plaintiffs argue in their motion for summary judgment that their claims fall within the *Ex parte Young* doctrine. ECF No. 26, PageID.283–284. But even they acknowledge that *Ex parte Young* requires "a continuing violation of federal law." *Id.* Count I does not allege a continuing violation of federal law; it is based entirely on an alleged "violation of Michigan law." ECF No. 1, PageID.16.  Any relief is therefore barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 117 (1984) ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself.").

The relief sought against the federal officials and agencies would have the effect of invalidating the state's designation of the SBA and the VA as voter registration agencies. Because Michigan cannot protect its interest in that designation without participating in the case, the State Defendants are required parties that cannot feasibly be joined. Fed. R. Civ. P. 19(b). And because "[a] case may not proceed when a required-entity sovereign is not amenable to suit," *Republic of Philippines*, 553 U.S. at 867, the entire action must be dismissed. Although full dismissal "when

the plaintiff has no alternative remedy may be a harsh result, courts do so when a necessary party cannot be joined because of sovereign immunity." *Webb v. City of Tempe*, No. CV-16-03136-PHX-DGC, 2017 WL 1233827, at *5 (D. Ariz. Apr. 4, 2017), *aff'd*, 703 F. App'x 539 (9th Cir. 2017).[6]

### III.    The Complaint fails to state a claim upon which relief can be granted.

#### A.   Count I fails to state a claim under Michigan law.

Vet Voice agrees that Plaintiffs' Count I fails to state a claim under Michigan law for the reasons articulated by Defendants. *See* ECF No. 22, PageID.217–221. While Plaintiffs assert in their motion for summary judgment that Executive Directives do not have the force of law, ECF No. 26, PageID.274, EO 1995-1 was not an Executive Directive; it was an Executive Order. And Executive Orders related to State functions have the force of law unless expressly disavowed by the Legislature. Mich. Const. art. V, § 2; *see In re Certified Questions from U.S. Dist. Ct., W. Dist. of Mich., S. Div.*, 506 Mich. 332, 343 n.6, 958 N.W.2d 1 (2020); *Whitmer v. Bd. of State Canvassers*, 508 Mich. 980, 966 N.W.2d 21, 22 (2021) (Welch, J., concurring). As a matter of Michigan law, therefore, EO 1995-1 allows governors to "designate by Executive Directive" "any other public office" "to accept applications for voter registration" as a Section 509(u) voter registration agency. That is exactly what Governor Whitmer did when she issued Executive Directives 2023-6 and 2024-3, rendering the voter registration agency designations made in those Directives valid as a matter of state law.

#### B.   Count II fails to state a claim under the National Voter Registration Act.

Plaintiffs have not alleged an actionable violation of the NVRA by the Federal Defendants, a defect which provides a separate basis to dismiss Count II. No provision of the NVRA imposes

---

[6] Plaintiffs may attempt to overcome sovereign immunity in state court.

any relevant substantive duties on the VA or its secretary, or on the SBA or its administrator. Those Defendants therefore cannot have violated the NVRA.

Instead of alleging that the Federal Defendants have violated any specific provision of the NVRA, the pivotal allegation in Count II is that "the SBA and VA have violated, and unless enjoined, will continue to violate *the election laws of the State of Michigan* related to the designation of VRAs." Compl. ¶ 96, PageID.19 (emphasis added). But this does not state a claim under the NVRA. The provision most directly implicated here, Section 7, imposes obligations on *states* to designate voter registration agencies. 52 U.S.C. § 20506. It mentions federal agencies only twice. First, subsection (a)(3)(B)(ii) indicates that states may designate "federal and nongovernmental offices" as voter registration agencies "with the agreement of such offices." *Id.* Second, subsection (b) indicates that all "departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out subsection (a)." *Id.* Neither of these provisions could anchor Plaintiffs' NVRA claim. The first imposes no substantive obligation on federal agencies at all—it merely indicates that a *state* must obtain a federal agency's agreement to designate its offices as voter registration agencies. The second provision, at most, imposes an obligation on a federal agency to "cooperate" in good faith and to the extent "practicable" with a state's desire to designate that agency as a voter registration agency. But Plaintiffs do not allege that either agency has failed to cooperate with the state in carrying out subsection (a). Instead, they argue that the agencies cannot operate as designated voter registration agencies because they were not properly designated under state law. But nothing in the NVRA *prohibits* agencies from operating as voter registration agencies unless a state has followed a particular state-law designation procedure. There is therefore no plausible claim that either agency has violated the NVRA.

Other provisions of the NVRA confirm that its substantive requirements generally apply to the states and not to the federal government. For example, NVRA Section 11 requires each "State" to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. The NVRA imposes no such requirement on the federal government or any federal agency. And NVRA Section 4 provides a carveout for states that satisfy certain criteria from the NVRA's coverage, exempting them from suit. *Id.* § 20503. Again, these provisions do not mention the federal government, federal agencies, or any federal official. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Here, the particular language of the NVRA and design of the statute as a whole are all in accord: the NVRA imposes duties on states and state officials and authorizes suits against them—not against federal agencies or their officials.[7]

In sum, Count II should be dismissed for failure to state a claim. Plaintiffs have not pleaded a plausible claim for relief against the federal officials under the NVRA—both because they fail to allege any specific substantive violation of the NVRA on the part of the Federal Defendants and because the NVRA imposes no remotely relevant substantive duty on those Defendants.

### C. Count III fails to state a claim under the Administrative Procedures Act.

Plaintiffs' argument that the SBA's and VA's agreements to act as voter registration agencies were "not in accordance with law" and "in excess of statutory authority" fails. *See* ECF No. 32, PageID.369–371 (Federal Defendants arguing the same). To the contrary, both agencies

---

[7] Other than the command that federal agencies cooperate with States with respect to VRA designations, the only exception is § 20508, which requires the Election Assistance Commission to develop a mail registration form and to provide information to Congress and to the States.

are authorized to enter into agreements with state governments to facilitate voter registration—and indeed are strongly encouraged to do so. 52 U.S.C. § 20506(b). The NVRA does not provide any substantive criteria for deciding whether to cooperate with a state's designation beyond whether doing so is "practicable." In particular, the NVRA does not in any way suggest that an agency, before agreeing to cooperate with a designation, must independently assess whether a state is complying with its own laws related to such designation.

Instead, the NVRA directs states to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. Plaintiffs acknowledge that Secretary Benson is Michigan's "chief election official." Compl. ¶ 27, PageID.7. They also identify Secretary Benson as the official who entered into the agreements with both the VA, *id.* ¶ 66, PageID.14, and the SBA, *id.* ¶ 73, PageID.15. According to the Complaint itself, therefore, the SBA and VA entered into agreements with the election official responsible for coordinating Michigan's responsibilities under the NVRA pursuant to Section 20506(a). That is neither in excess of their statutory authority nor in violation of law; it fully complies with the NVRA.

Plaintiffs also claim that the agencies' agreements were arbitrary and capricious solely "because the agencies did not adequately explain how their purported designations as VRAs satisfied the requirements of Section 7 of the NVRA." Compl. ¶ 108, PageID.21. But the agreements incorporated into the Complaint provide such an explanation. For example, the Memorandum of Agreement between the Michigan Department of State and the SBA ("SBA MOA")[8] explains that "[i]n 1995, then-Governor Engler signed an Executive Order (EO)

---

[8] *Available at* https://static.foxnews.com/foxnews.com/content/uploads/2024/05/REDACTED-03-MOA-NVRA-Designated-Federal-Agency-Final-Version.pdf.

designating several State agencies as VRAs," and that the order "also allows the Governor to designate additional VRAs through an executive directive." SBA MOA at 1. The MOA also explains that the NVRA requires each state to designate a chief election official, and that "Michigan law makes the Secretary of State responsible for the coordination of the requirements imposed under [the NVRA]." *Id.* (cleaned up). The VA further explained that it was implementing Executive Order 14019, which requires agencies to agree to voter registration agency designations requested by states.[9] Plaintiffs may not *agree* with these explanations, but they cannot plausibly argue that the agencies did not adequately explain their designations.

**CONCLUSION**

For the foregoing reasons, Vet Voice respectfully requests that the Court grant Defendants' motion to dismiss the entire action with prejudice and deny Plaintiffs' motion for summary judgment.

---

[9] *See Three Michigan VA locations will pilot voter registration sites*, Mich. Dep't of State (Sept. 19, 2023) https://www.michigan.gov/sos/resources/news/2023/09/19/three-michigan-va-locations-will-pilot-voter-registration-sites.

Dated: September 27, 2024

Respectfully submitted,

/s/ *Sarah S. Prescott*
Sarah S. Prescott (P70510)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
105 East Main Street
Northville, Michigan 48167
(248) 679-8711
sprescott@spplawyers.com

Aria C. Branch
Justin Baxenberg
Melinda K. Johnson
Samuel T. Ward-Packard
ELIAS LAW GROUP LLP
250 Massachusetts Ave, NW, Suite 400
Washington, DC 20001
(202) 968-4490
abranch@elias.law
jbaxenberg@elias.law
mjohnson@elias.law
swardpackard@elias.law

*Counsel for Proposed Intervenor-Defendant*
*Vet Voice Foundation*

16

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with LCivR 7.2(b)(i)'s word limit. From the Statement of Interest of Amicus Curiae through Conclusion, this brief contains 4689 words as measured by Microsoft Word.

/s/ *Sarah S. Prescott*
Sarah S. Prescott

**CERTIFICATE OF SERVICE**

I certify that on this September 27, 2024, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

/s/ *Sarah S. Prescott*
Sarah S. Prescott

17