UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REPUBLICAN NATIONAL COMMITTEE,
DONALD J. TRUMP FOR PRESIDENT
2024, INC., MICHIGAN REPUBLICAN
PARTY and RYAN KIDD

        Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as Governor of Michigan,
JOCELYN BENSON, in her official capacity
as Michigan Secretary of State, JONATHAN
BRATER, in his official capacity as Director
of the Michigan Bureau of Elections, U.S.
SMALL BUSINESS ADMINISTRATION,
ISABEL GUZMAN, in her official capacity
as Administrator of the Small Business
Administration, DEPARTMENT OF
VETERANS AFFAIRS, and DENIS
McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

        Defendants.
_____

No. 1:24-cv-00720

HON. PAUL L. MALONEY

**DEFENDANTS GOVERNOR
GRETCHEN WHITMER,
SECRETARY OF STATE
JOCELYN BENSON AND
DIRECTOR OF ELECTIONS
JONATHAN BRATER'S
RESPONSE IN OPPOSITION
TO MOTION FOR SUMMARY
JUDGMENT**

Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
Attorneys for Plaintiffs
100 Monroe Center, NW
Grand Rapids, Michigan 49503
616.774.8000
jkoch@shrr.com
dbroaddus@shrr.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants Whitmer,
Benson and Brater
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

_____/

**DEFENDANTS GOVERNOR GRETCHEN WHITMER, SECRETARY OF STATE JOCELYN BENSON AND DIRECTOR OF ELECTIONS JONATHAN BRATER'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for State Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: meingasth@michigan.gov
(P55439)

Dated: September 27, 2024

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................................i

Index of Authorities............................................................................................ii

Concise Statement of Issues Presented .........................................................iv

Introduction ........................................................................................................1

Statement of Facts .............................................................................................2

    A.    The National Voter Registration Act.........................................2

    B.    Implementation of the NVRA in Michigan was delayed. .......4

    C.    Michigan's Designation of voter registration agencies. ..........5

Standard of Review ..........................................................................................10

Argument ...........................................................................................................10

I.    The Eleventh Amendment prohibits this Court from granting Plaintiffs any relief under their state-law claim against the State Defendants. ...........10

II.    Plaintiffs lack standing to bring their state-law claim against the State Defendants. ...................................................................................................14

III.    Plaintiffs are not entitled to summary judgment on Count I of their complaint where the State Defendants did not violate Michigan law by designating additional VRAs. ...........................................................................19

    A.    The statute does not prohibit future designations of VRAs. ...............20

    B.    The Secretary of State did violate any statutes in negotiating agreements with the DVA and SBA. ....................................................23

Conclusion and Relief Requested .................................................................24

# INDEX OF AUTHORITIES

Page

**Cases**

*Association of Community Organizations for Reform Now (ACORN) v. Miller*,
   912 F. Supp. 976 (W.D. Mich. 1995) ........................................................... 4, 5

*Association of Community Organizations for Reform Now v. Miller*, 129 F.3d
   833 (6th Cir. 1997) ................................................................................... 5

*Comerica, Inc v. Dep't of Treasury*, 984 N.W.2d 1 (Mich. 2022) ................................ 21

*Daher v. Prime Healthcare Servs. Garden City, LLC,* No. 165377, 2024 WL
   3587935 (Mich. July 30, 2024) ..................................................................... 21

*Diaz v. Michigan Dept. of Corrs.*, 703 F.3d 956 (6th Cir. 2013) ................................. 11

*Donald J. Trump for President, Inc., v. Boockvar*, 493 F. Supp. 3d 331 (W.D.
   Pa. 2020) .............................................................................................. 18

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005). ..................................................... 12

*Ex Parte Young*, 209 U.S. 123 (1908) ................................................... 1, 11, 13

*Glennborough Homeowners Ass'n v. United States Postal Serv*, 21 F.4th 410
   (6th Cir. 2021) ........................................................................................ 18

*Kyle v. Oakland County*, ___ F. Supp. 3d ___, ___ (E.D. Mich. 2024); 2024 WL
   1259472 (Mar. 25, 2024) ............................................................................ 21

*Lance v. Coffman*, 549 U.S. 437 (2007) ............................................................. 17

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992) ......................................... 10, 14, 16

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) ................................................ 15

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ......................... 11, 12

*Republican Nat'l Comm. v. Burgess*, 2024 WL 3445254 (July 17, 2024, D.
   Nev. 2024) ............................................................................................. 19

*Shelby Advocates for Valid Elections v. Hargett,* 947 F.3d 977 (6th Cir. 2020) ........ 18

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) .................................................... 16

*Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) ........................... 11, 13

ii

*Voting for Am., Inc. v. Andrade*, 888 F. Supp 2d 816 (S.D. Tex., 2012) .................... 15

*White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472 (6th Cir.2010)............. 10

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) ............................................................... 16

**Statutes**

52 U.S.C. § 20501............................................................................................... 1, 2

52 U.S.C. § 20506.............................................................................................. *passim*

52 U.S.C. § 20506(a)(4) ......................................................................................... 3

52 U.S.C. § 20506(a)(5)(A) .................................................................................. 19

52 U.S.C. § 20506(b) .............................................................................................. 3

52 U.S.C. § 20506(c)............................................................................................... 3

Mich. Comp. Laws § 168.1..................................................................................... 4

Mich. Comp. Laws § 168.31(1)(a) ....................................................................... 17

Mich. Comp. Laws § 168.31(1)(j) ........................................................................ 16

Mich. Comp. Laws § 168.492................................................................................ 17

Mich. Comp. Laws § 168.495................................................................................ 17

Mich. Comp. Laws § 168.497................................................................................ 17

Mich. Comp. Laws § 168.499................................................................................ 17

Mich. Comp. Laws § 168.509n(b) ...................................................................... 6, 23

Mich. Comp. Laws § 168.509u............................................................................ *passim*

Mich. Comp. Laws § 168.509u(1) ........................................................................ 20

**Rules**

Fed. R. Civ P. 10(c) ............................................................................... 10, 11, 14, 19

Fed. R. Civ. P. 56(a) .............................................................................................. 10

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.    Whether Plaintiffs' state-law claim against the State Defendants is
      barred by the Eleventh Amendment?

2.    Whether Plaintiffs have failed to allege an injury in fact sufficient to
      support standing under Article III?

3.    Whether Plaintiffs have failed to state a claim for a violation of the
      Michigan Election Law?

## INTRODUCTION

In an exercise of their authority under the National Voter Registration Act (NVRA) and Michigan law, the State Defendants designated the Department of Veterans Affairs and the Small Business Association to serve as voter registration agencies in Michigan.  52 U.S.C. § 20506; Mich. Comp. Laws § 168.509u.

The purpose of these agency designations is to help fulfill the NVRA's goal of increasing the number of Michigan citizens who register to vote in federal elections. 52 U.S.C. § 20501.  And in this case the citizens served by these designations are Michigan's veterans and its small business community.

But Plaintiffs Republican National Committee, Michigan Republican Party, and the campaign for Republican presidential nominee Donald Trump, oppose Michigan's efforts to provide services to its veterans and small business owners. They insist that Michigan's Governor and Secretary of State violated state law in designating these agencies under the NVRA.

Plaintiffs move for summary judgment, asking that this Court declare the designations unlawful and to enjoin the prior, as well as any future, designations. But Plaintiffs' claims are without merit and summary judgment must be denied for three reasons.

*First*, because Plaintiffs allege only a violation of *state* law against the State Defendants, the Eleventh Amendment bars bringing this claim in federal court. Further, Plaintiffs effort to invoke *Ex Parte Young* falls flat where their claim of a federal law violation is a mere ruse for obtaining jurisdiction.

1

*Second*, Plaintiffs, including the individual Plaintiff clerk, lack standing because they have not alleged an injury in fact that is concrete and particularized under any theory.  Moreover, at the summary judgment phase, Plaintiffs cannot simply rely on the allegations of injury in their complaint.  Rather, they must now come forward with evidence to support their injuries—yet they proffer none.

And *third*, Plaintiffs' statutory claim against the State Defendants lacks any merit.  The Michigan Election Law authorizes the Governor to designate executive departments, state agencies, or other offices to perform voter registration activities.  Mich. Comp. Laws § 168.509u.  Plaintiffs' argument that § 509u prohibits any future designations post 1995 is inconsistent with its plain language and the intent of the Michigan Legislature.

For these reasons, Plaintiffs' motion for summary judgment must be denied.

## STATEMENT OF FACTS

### A.    The National Voter Registration Act.

The NVRA, 52 U.S.C. § 20501, *et seq*., was enacted by Congress in 1993 "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," "to make it possible for Federal, State and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters for Federal office," "to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b).

Section 7 of the NVRA requires that states designate agencies to assist in voter registration, i.e., voter registration agencies (VRA):

> (1) Each State shall designate agencies for the registration of voters in elections for Federal office.
>
> (2) Each State shall designate as voter registration agencies--
>
> (A) all offices in the State that provide public assistance; and
>
> (B) all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities.
>
> (3)(A) In addition to voter registration agencies designated under paragraph (2), each State shall designate other offices within the State as voter registration agencies.

52 U.S.C. § 20506(a)(1)-(3).  The NVRA further provides that states may designate "[f]ederal and nongovernmental offices" as voter registration agencies "with the agreement of such offices."  52 U.S.C. § 20506(a)(3)(B)(ii).  And under the NVRA, "[a]ll departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out subsection (a), and all nongovernmental entities are encouraged to do so."  52 U.S.C. § 20506(b).  The NVRA also specifies that armed forces recruitment centers must serve as voter registration agencies.  52 U.S.C. § 20506(c).

Designated VRAs must provide certain services, including distribution of mail voter registration applications, assistance to applicants in completing application forms unless the applicant refuses, and accepting completed applications for transmittal to the proper state election official.  52 U.S.C. § 20506(a)(4).  In offering these services, a VRA "shall not" "seek to influence an

applicant's political preference or party designation," "display any such political

preference or party allegiance," or "make any statement to an applicant or take any

action" that has the effect of "discourage[ing]" the applicant from registering to vote.

52 U.S.C § 20506(a)(5).

### B.      Implementation of the NVRA in Michigan was delayed.

The State of Michigan became subject to the requirements of the NVRA on

January 1, 1995.  *Association of Community Organizations for Reform Now*

*(ACORN) v. Miller*, 912 F. Supp. 976, 979 (W.D. Mich. 1995).  To come into

compliance with the voter registration requirements of the NVRA, the Michigan

Legislature enacted 1994 P.A. 441, which was signed by then Governor John Engler

on January 5, 1995.  *ACORN*, 912 F. Supp. at 980.  Public Act 441 amended the

Michigan Election Law, Mich. Comp. Laws § 168.1 *et seq*., to include § 509u, which

provides:

> (1) Not later than the thirtieth day after the effective date of this
> section, the governor shall provide a list to the secretary of state
> designating the executive departments, state agencies, or other offices
> that will perform voter registration activities in this state.
>
> (2) Pursuant to the national voter registration act of 1993, a
> recruitment office of the armed forces of the United States is a
> designated voter registration agency under this act.

Mich. Comp. Laws § 168.509u.  Although Public Act 441 took immediate effect,

Governor Engler issued Executive Order 1995-1[1] on January 10, 1995, declaring

---

[1] Available at https://www.legislature.mi.gov/documents/1995-
1996/executiveorder/htm/1995-EO-01.htm.

that the burdens imposed by the NVRA were unfunded mandates and that "agency registration [would] not begin until 'federal funds [were] made available to fully fund' the program." *ACORN*, 912 F. Supp. at 980.

Shortly thereafter, three federal lawsuits were filed against the Governor, the then Secretary of State and others variously alleging that Michigan was out of compliance with the NVRA.  *Id.*  These cases were consolidated, and in each the defendants based their lack of compliance on grounds that the NVRA was unconstitutional.  *Id.*  Ultimately, in December 1995 the district court rejected these arguments, and ordered that Michigan comply with the NVRA within 10 days of its order.  *Id.* at 988-89.  The defendants proposed that the State be given additional time to implement the voter registration agency requirements, which request was rejected, and Michigan was ordered to come into compliance in February 1996.  *Association of Community Organizations for Reform Now (ACORN) v. Miller*, 912 F. Supp. 989, 991 (W.D. Mich. 1996).

The defendants appealed to the Sixth Circuit Court of Appeals and that Court affirmed the district court in a November 3, 1997, opinion.  *Association of Community Organizations for Reform Now v. Miller*, 129 F.3d 833 (6th Cir. 1997).

### C.    Michigan's Designation of voter registration agencies.

Although Executive Order 1995-1 ordered agencies not to participate in voter registration efforts until federal funds were provided, Governor Engler ultimately designated VRAs as required by the NVRA and Mich. Comp. Laws § 168.509u. Executive Order 1995-1 provides:

2. Pursuant to Sections 7(a)(2)(A) and 7(a)(2)(B) of the NVRA, the following offices are hereby designated to accept applications for voter registration:

a. Michigan Department of Social Services local offices which accept applications and administer benefits for the Aid to Families with Dependent Children (AFDC), Medicaid, and Food Stamp programs.

b. County health department offices and other agencies which contract with the Department of Public Health which accept applications and administer benefits for the Women, Infants and Children program (WIC).

c. Local Michigan rehabilitation services offices.

d. Adult inpatient psychiatric hospitals operated by the Michigan Department of Mental Health.

e. Any other public office, whether or not specified by PL 103-31, which the Governor may from time to time designate by Executive Directive.[2]

The order further directed that the agencies "make vigorous efforts to prevent fraudulent voter registration."[3]  Under the Governor's designation, and after the court decisions, Michigan's VRAs began assisting with voter registration under the instruction of the Michigan Secretary of State.  *See* Mich. Comp. Laws § 168.509n(b) ("The secretary of state shall . . . Instruct designated voter registration agencies . . . about the voter registration procedures and requirements imposed by law.")

Although the language in Executive Order 1995-1 contemplates future designations of agencies, no additional designations (or redesignations) were made until 2023.  But before then, on March 7, 2021, President Joseph R. Biden issued Executive Order 14019, which directed federal departments and agencies to partner

---

[2] *Id.*

[3] *Id.*

6

with the states and "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation."[4] Executive Order 14019 also stated that each federal agency, "if requested by a State to be designated as a voter registration agency . . . shall, to the greatest extent practicable and consistent with applicable law, agree to such designation."[5]

In May 2022, Governor Whitmer issued Executive Directive 2022-4, which acknowledged the passage of time since Governor Engler's 1995 designation and stated that it was "time to review and update Michigan's list of voter registration agencies."[6]  (ECF No. 26-4, Plfs' MSJ Brf, PageID.206.)  She directed executive agencies to identify, among other things, which agencies could serve as VRAs, and requested that the Michigan Department of State (MDOS) examine the State's compliance with NVRA and make recommendations regarding designations of additional VRAs.  *Id.*

The following year, Governor Whitmer issued Executive Directive 2023-6,[7] and directed the following:

> 3. Pursuant to subsections 7(a)(2) and 7(a)(3)(B)(i) of the National Voter Registration Act, 52 U.S.C. § 20506(a)(2), (a)(3)(B)(i), the following state departments, agencies, and offices are designated as voter registration agencies:
>
> a. Michigan Department of Health and Human Services;
>
> b. Michigan Department of Military and Veterans Affairs;

---

[4] Available at Executive Order on Promoting Access to Voting | The White House.

[5] *Id.*

[6] Available at ED-20224-Voter-Registration-final.pdf (michigan.gov).

[7] Available at ED-20236-signed.pdf (michigan.gov).

c. Michigan Rehabilitation Services of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;

d. Bureau of Services for Blind Persons of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;

e. Wage and Hour Division of the Michigan Department of Labor and Economic Opportunity's Bureau of Employment Relations;

f. Michigan Worker's Disability Compensation Agency;

g. Workforce Development of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training; and

h. Michigan State Housing Development Authority.

(ECF No. 26-6, PageID.313.)  The Governor further directed that "[p]ursuant to subsection 7(a)(3)(b)(ii) of the NVRA, 52 U.S.C. § 20506(a)(3)(B)(ii), the U.S. Department of Veterans Affairs (DVA) is designated as a voter registration agency subject to the agreement it has signed with the State of Michigan." (*Id*.)  Under the agreement between the MDOS and the DVA, (ECF No. 22-2, Defs' MTD Brf, PageID.225, Ex A, DVA agreement), the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office were designated as voter registration sites.  (*Id*.)[8]

Following on her 2023 directive, in Executive Directive 2024-3,[9] the Governor made one additional designation:

Pursuant to subsection 7(a)(3)(B)(ii) of the NVRA, 52 U.S.C. § 20506(a)(3)(B)(ii), the U.S. Small Business Administration is

---

[8] *See also* [Three Michigan VA locations will pilot voter registration sites](#).

[9] Available at [ED-20243-signed.pdf (michigan.gov)](#).

designated as a voter registration agency subject to the agreement it
has signed with the Michigan Department of State.

(ECF No. 26-7, PageID.316.)  The agreement referenced by the Governor is reflected
in a March 18, 2024, memorandum of agreement between MDOS and the U.S.
Small Business Administration (SBA).  (ECF No. 22-3, PageID.234, Def's Ex B, SBA
agreement.)  The SBA announced the agreement on March 19, 2024,[10] and MDOS
followed with an announcement on March 20, 2024.[11]  Executive Directive 2024-3
was issued and signed by the Governor on June 20, 2024, with immediate effect.
(ECF No. 26-7, PageID.316.)

As noted in MDOS's announcement, MDOS agreed to "create a unique URL
for the SBA to use to drive online visitors to register to vote.  The SBA's Michigan
field office may also allow MDOS officials to conduct in-person voter registration at
the SBA's small business outreach events."[12]  The unique URL was created in April
2024, but at this time, it is unclear whether the SBA has taken any action under its
agreements.

---

[10] Available at SBA Administrator Guzman Announces Agency's First-Ever Voter
Registration Agreement with Michigan Department of State | U.S. Small Business
Administration.

[11] Available at Michigan Department of State, U.S. Small Business Administration
announce voter registration agreement.

[12] *Id.*  The State and the SBA executed a separate memorandum of understanding
reflecting the agreement to create the URL to be used for voter registration
purposes.  (ECF No. 22-4, PageID.245, Def's Ex C, SBA MOU.)

## STANDARD OF REVIEW

Summary judgment is only proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Thus, "[s]ummary judgment is [only] appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 475 (6th Cir.2010).  Plaintiffs bear the burden on each of their claims, including that this court has subject-matter jurisdiction. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).  And at the summary judgment stage, plaintiffs "can no longer rest on . . . mere allegations" of injury, "but must set forth by affidavit or other evidence specific facts" supporting their claims. *Lujan*, 504 U.S. at 561.

## ARGUMENT

I.  **The Eleventh Amendment prohibits this Court from granting Plaintiffs any relief under their state-law claim against the State Defendants.**

The State Defendants argued in their motion to dismiss that Plaintiffs' claims against them must be dismissed pursuant to the Eleventh Amendment. (ECF No. 22, State MTD Brf, PageID.188, 204-07.)  The State incorporates that brief and arguments herein.  Fed. R. Civ P. 10(c).  The federal Defendants also moved to dismiss and opposed Plaintiffs' motion for summary judgment based on the State Defendants' Eleventh Amendment immunity, (ECF No. 32, Fed Defs Brf,

PagedID.371-73), which arguments the State Defendants also incorporate herein. Fed. R. Civ P. 10(c).

Plaintiffs predicted the State's arguments on that point and attempt to circumvent the Eleventh Amendment by invoking the *Ex Parte Young* doctrine. (ECF No. 26, Plfs' MSJ Brf, PageID.256, 283-85.)  But that doctrine does not apply where Plaintiffs allege that the State has violated state law, specifically Mich. Comp. Laws § 168.509u, and to seek to enjoin the State Defendants from acting pursuant to that statute.

The Eleventh Amendment generally prohibits suits against state officials when the state itself is the real party in interest.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). "[A] suit against state officials that is in fact a suit against the State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 102 (citing *Cory v. White*, 457 U.S. 85, 91 (1982)).  The Supreme Court recognized an exception to this general rule in *Ex Parte Young* for plaintiffs who seek prospective injunctive relief against individual state officials when sued in their official capacities.  *Diaz v. Michigan Dept. of Corrs.*, 703 F.3d 956, 964 (6th Cir. 2013); *see Ex Parte Young*, 209 U.S. 123, 158-59 (1908).

The Supreme Court has explained that *Ex Parte Young* applies "when a federal court commands a state official to do *nothing more than refrain from violating federal law.*" *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 248 (2011) (emphasis added).  *Ex Parte Young*'s exception to Eleventh Amendment immunity is driven by "the need to promote the supremacy of federal law."

*Pennhurst*, 465 U.S. at 105 (emphasis added).  That need is "wholly absent,

however, when a plaintiff alleges that a state official has violated *state* law."  *Id.* at

106.  Indeed, "it is difficult to think of a greater intrusion on state sovereignty than

when a federal court instructs state officials on how to conform their conduct to

state law."  *Id.*  As a result, *Ex Parte Young* is "inapplicable in a suit against state

officials on the basis of state law," *id.*, and "states' constitutional immunity from

suit prohibits *all* state-law claims filed against a [s]tate in federal court, whether

those claims are monetary or injunctive in nature." *Ernst v. Rising*, 427 F.3d 351,

368 (6th Cir. 2005).

Plaintiffs argue the exception applies because they are "alleging that [the

State Defendants] designations of VRAs violates the NVRA and Administrative

Procedures Act.  And Plaintiffs request prospective relief to end these continuing

violations."  (ECF No. 26, PageID.284-85.)  But that assertion is flatly contradicted

by the relief they seek, which is:

    A.    A declaratory judgment that the State Defendants have violated Michigan Const. 1963, art. 2, § 4(2), as well as MCL 168.509m and MCL 168.509u;

    B.    A preliminary and permanent injunction barring the State Defendants from designating any VRAs without express authorization from the Michigan Legislature;

    C.    An order declaring the designation of any VRAs under ED 2023-6, the 2022 Interagency Agreement, the 2023 MOU and MOA, and any future executive directives issued without legislative authorization are invalid;

(ECF No. 1, Compl, PageID.17-18, ¶¶ A, B, C.)  Plaintiff also entitle their claim

against the State Defendants as:

## COUNT I
## <u>VIOLATION OF MICHIGAN LAW BY STATE DEFENDANTS</u>

(*Id.*, PageID.16.)  Plaintiffs' argument that the State has violated the NVRA is a ruse where it is predicated on their claim that the State Defendants violated state law, Mich. Comp. Laws § 509u.  Indeed, no possible NVRA violation exists without this Court interpreting § 509u and declaring that the State Defendants have violated that state law.  And their request for injunctive relief is nothing more than a request to enjoin the State Defendants from enforcing or acting under § 509u.  Finally, Plaintiffs request that this Court declare the Governor's executive directives invalid is likewise premised on their claim that the State Defendants acted in violation of § 509u.

For *Ex Parte Young* to apply, Plaintiffs can only seek relief that requires the State Defendants to do "nothing more than refrain from violating federal law." *Va. Office for Prot. & Advoc.*, 563 U.S. at 248.  But here, Plaintiffs' requests for relief are all directed at having this Court command the State to refrain from violating state law.  They do not plead a claim against the State under the NVRA or seek any declaration that the State Defendants have violated NVRA.  That is easy to discern by looking at the claims pled against the federal Defendants, which specifically allege a violation of the NVRA, (ECF No. 1, PageID.18-20), and seek a declaration that the "SBA and VA are in violation of Section 7 of the NVRA."  (ECF No. 1, PageID.18-20.)  As a result, *Ex Parte Young* does not apply to excuse application of the Eleventh Amendment to bar Plaintiffs' claims against the State Defendants.

13

Indeed, if Plaintiffs were allowed to proceed on their theory of finding a federal-law violation through a state-law violation, it would defeat the purpose of Eleventh Amendment immunity.  And it would open the floodgates to federal suits premised on violations of state law simply on the basis that the state action has some relation to a federal program.  This Court should reject Plaintiffs' invitation to create such a loophole to the Eleventh Amendment.

For these reasons, Plaintiffs are not entitled to summary judgment on Count I of the complaint against the State Defendants.  Rather, the State is entitled to dismissal of those claims.  (ECF No. 22.)

## II.   Plaintiffs lack standing to bring their state-law claim against the State Defendants.

The State Defendants argued in their motion to dismiss that Plaintiffs' claims against them must be dismissed for lack of standing.  (ECF No. 22, State MTD Brf, PageID.188, 207-15.)  The State incorporates that brief and arguments herein.  Fed. R. Civ P. 10(c).  The federal Defendants also moved to dismiss and opposed Plaintiffs' motion for summary judgment based on lack of standing, (ECF No. 32, PageID.355-364), which arguments the State Defendants also incorporate herein, where relevant.  Fed. R. Civ P. 10(c).

Plaintiffs' request for *summary judgment* on the issue of their standing against the State Defendants fails from the very start: they offer no evidence whatsoever of their standing.  At the summary judgment phase, Plaintiffs cannot rely on allegations of injury.  *Lujan*, 504 U.S. at 561.  By failing to offer any

evidence of their standing, they cannot obtain summary judgment on that issue.
*McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016) ("mere allegations" are
"insufficient to carry [Plaintiffs] past summary judgment.") (citation omitted).

Even if their standing allegations could support a summary judgment motion
(it cannot), Plaintiffs' allegations do not support their standing theories.  Plaintiffs'
summary judgment motion offers no argument in support of their standing except
as to Plaintiff Kidd, a local township clerk.  Citing a Texas case, they argue that
"[w]hen a local official has 'a designated role to play in the interpretation and
enforcement of' state election law, they are 'proper parties to any suit seeking to
challenge its validity and enjoin its enforcement.'"  (*Id.*, PageID.282) (quoting
*Voting for Am., Inc. v. Andrade*, 888 F. Supp 2d 816, 833 (S.D. Tex., 2012), rev'd on
other grounds, 732 F.3d 382 (5th Cir. 2013)).  Plaintiffs argue Kidd has a
particularized injury because he is responsible for processing voter registration
applications in his jurisdiction and thus responsible for registering applicants to
vote.  (*Id.*, PageID.282-83.)  They assert the State Defendants' alleged ultra vires
acts "have created confusion about which state and federal offices are properly
designated as 'designated voter registration agencies' in accordance with the NVRA
and Michigan law."  (*Id.*, PageID.283).  As a result, Plaintiffs claim, "Mr. Kidd needs
a declaration from this Court to guide his future conduct and the performance of his
duties, especially as it relates to processing voter registration applications
submitted by government offices purporting to be designated VRAs in advance of
the 2024 election."  (*Id.*)

To have standing, a plaintiff must "clearly ... alleg[e] facts demonstrating" that: (1) they suffered an injury-in-fact; (2) such injury is "fairly traceable to the challenged conduct" of a named-defendant; and (3) such injury is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547-48 (2016) (internal quotations omitted). These elements are "not mere pleading requirements," but an "indispensable part of plaintiff's case[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992).

The State Defendants do not disagree that Plaintiff Kidd has a role to play as a clerk in processing voter registration applications. But to have standing, Kidd's "confusion"-based injury must be actual, not speculative or hypothetical, and it must also be plausible. He does not meet either requirement.

Nowhere in the complaint does Kidd allege that he has received any voter registration applications from a VRA designated by the Governor in Executive Order 2023-6, Executive Order 2024-3, or from any other pre-existing VRA, like armed service recruitment centers, that caused "confusion" on his part. Nor does he allege that he will imminently receive any such applications. Perhaps more importantly, Plaintiff Kidd does not explain why he might be "confused" as to how to process an application from a VRA, which follows essentially the same process as any other voter registration application. Indeed, all clerks who are responsible for conducting elections must undergo comprehensive training. Mich. Comp. Laws § 168.31(1)(j)-(l). And importantly, Clerk Kidd identifies no duty or legal authority to reject or refuse to process a voter registration application based on who transmitted

16

it or how it was transmitted (because there is none).  Rather, clerks' authority in this context is limited to reviewing the application to determine whether the applicant has properly completed the form and is qualified to register as an elector. Mich. Comp. Laws §§ 168.499, 168.497, 168.495, 168.492.  (*See also* Defs' Ex D, Election Officials' Manual, Chapter 2: Voter Registration, February 2024) (discussing process and procedures related to voter registration).[13]

Further, Secretary Benson has supervisory control over clerks, Mich. Comp. Laws § 168.21, and authority to advise and direct clerks in the performance of their duties, Mich. Comp. Laws § 168.31(1)(a)-(b).  In addition to providing training on voter registration, the Secretary's Bureau of Elections has published specific instructions for clerks in processing voter registration applications, which discusses applications received from VRAs.  (Defs' Ex D, Election Officials' Manual, Chapter 2: Voter Registration, February 2024.)  If Plaintiff Kidd has questions as to how to process an application received from a VRA he can contact the Bureau of Elections for assistance.

It seems the true source of Kidd's purported injury is his belief the Governor's designation of additional VRAs was unlawful.  But without more, his allegation is simply an "undifferentiated, generalized grievance about the conduct of government" that fails to show he has suffered a particular harm for purposes of standing. *See*, *e.g*, *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (a

---

[13] *See* Election Officials' Manual, Chapter 2: Voter Registration, February 2024, pp 19-20,  available at Election Officials' Manual, Chapter 2: Voter Registration (michigan.gov).

plaintiff who is "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large ... does not state an Article III case or controversy.").

Because Plaintiff Kidd fails to set forth a concrete, particularized injury he lacks standing to bring his claims.

The RNC, MRP, and Trump campaign also lack standing for the reasons stated in the State Defendants' motion to dismiss.  (ECF No. 22, PageID.208-15.) Plaintiffs do not even offer any argument in their brief to suggest otherwise; they simply point to their complaint.  (ECF No. 26, PageID.283.)  But their complaint offers no reason to believe those Plaintiffs have standing.  Their hypothetical fears of unlawful voting are entirely speculative: they offer no reason to believe that having federal agencies register voters—something the NVRA explicitly calls for— will somehow result in unlawful voting.  And to the extent they have decided to spend money in response to those wholly speculative concerns, that does not give rise to Article III standing.  *See Lance,* 549 U.S. at 439; *Glennborough Homeowners Ass'n v. United States Postal Serv*, 21 F.4th 410, 415 (6th Cir. 2021) (psychic injuries do not support standing); *Shelby Advocates for Valid Elections v. Hargett,* 947 F.3d 977, 982 (6th Cir. 2020) (plaintiffs cannot spend their way into standing); *Donald J. Trump for President, Inc., v. Boockvar*, 493 F. Supp. 3d 331, 406 (W.D. Pa. 2020) (invoking "the possibility and potential for voter fraud" based only on "hypotheticals, rather than actual events," is insufficient to support standing).

Likewise, their assertions that they are injured by the designations of the VRAs because the agreements somehow place them at a competitive disadvantage in the electoral process are without merit.  They offer no reason to believe that would be the case: the agencies' voter registration activities are available to any qualified person in Michigan, and the agreements expressly prohibit any political favoritism.  (ECF No. 22-2, PageID.225, Def's Ex A, sections VI, VII, X; ECF No. 22-3, PageID.234, Def's Ex B, sections VI, VII, X.)  *See also* 52 U.S.C. § 20506(a)(5)(A)-(C).  As a result, Plaintiffs have not pled a competitive injury. *See, e.g.*, *Republican Nat'l Comm. v. Burgess*, 2024 WL 3445254 at *2 (July 17, 2024, D. Nev. 2024).  Like Plaintiff Kidd, the organizational Plaintiffs lack standing to pursue their claims.

In sum, Plaintiffs are not entitled to summary judgment on Count I of the complaint against the State Defendants.  Rather, the State is entitled to dismissal of those claims.  (ECF No. 22.)

**III.   Plaintiffs are not entitled to summary judgment on Count I of their complaint where the State Defendants did not violate Michigan law by designating additional VRAs.**

Finally, even if Plaintiffs could avoid dismissal under the Eleventh Amendment or for lack of standing, their claim that the State Defendants violated Mich. Comp. Laws § 168.509u is without merit.  The State Defendants addressed this issue in their motion to dismiss, (ECF No. 22, State MTD Brf, PageID.188, 217-21), which the State incorporates herein.  Fed. R. Civ P. 10(c).

### A.    The statute does not prohibit future designations of VRAs.

Plaintiffs spend a number of pages arguing, and include numerous allegations, that the State Defendants have acted ultra vires in designating the DVA and SBA as VRAs and coordinating their voter registration activities. But these allegations are all based on their faulty interpretation of Michigan law, specifically, Mich. Comp. Laws § 168.509u(1), which provides:

> Not later than the thirtieth day after the effective date of this section, the governor shall provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state. [Emphasis added.]

Plaintiffs argue the "[n]ot later than" language has prohibited Michigan Governors, including Governor Whitmer, from designating VRAs since February 9, 1995—the thirtieth day after the act's January 10, 1995, effective date. (ECF No. 26, PageID.271.) Plaintiffs' argument in support of this theory spans two paragraphs:

> M.C.L. § 168.509u . . . authorized the Governor to "provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state." However, that authority had to be exercised "[n]ot later than the thirtieth day after the effective date of [M.C.L. § 168.509u]." M.C.L. § 168.509u became effective January 10, 1995. *Therefore, under the plain language of § 168.509u, the Michigan Legislature did not grant the Governor authority to designate any VRAs after February 9, 1995.* It follows that the Governor of Michigan has lacked any statutory authority to designate additional VRAs since that date.
>
> This conclusion is buttressed by the canon of statutory construction known as "*expressio unius est exclusio alterius,*" the "express mention of one thing in a statutory provision implies the exclusion of similar things." So, M.C.L. § 168.509u's express mention of the Governor's authority to designate VRAs *through February 9, 1995* implies that no such authority existed *after* that date. Michigan's Legislature knows how to give open-ended authority to designate VRAs – in 2023 PA 263,

it granted authority to designate *state* agencies as VRAs to the
Secretary of State *effective June 30, 2025* (more on that below).

[ECF No. 26, PageID.271 (emphasis added).]  Plaintiffs' interpretation of §
509u is not a reasonable construction of the statute.

Michigan courts have not interpreted this statute, "so this Court must apply
Michigan principles of statutory interpretation to predict how they would do so in
the first instance." *Kyle v. Oakland County*, ___ F. Supp. 3d ___, ___ (E.D. Mich.
2024); 2024 WL 1259472 *16 (Mar. 25, 2024).

In Michigan, "[w]hen interpreting a statute, [the court's] purpose is to
ascertain and effectuate the legislative intent at the time it passed the act." *Daher
v. Prime Healthcare Servs. Garden City, LLC,* No. 165377, 2024 WL 3587935, at *4
(Mich. July 30, 2024).  As explained in the State Defendants motion to dismiss, the
circumstances surrounding the enactment of § 509u and Public Act 441 support a
construction that it set only a date by which by which then Governor Engler was to
make an *initial* designation of VRAs.  (ECF No. 22, PageID.217-21.)  It neither
plainly nor expressly precludes subsequent gubernatorial designations.  Indeed,
then Governor Engler understood the statute to permit future designations as
evidenced by the language in Executive Order 1995-1.

Plaintiffs reference to the doctrine of *expressio unius est exclusio alterius* is
unavailing.  The Michigan Supreme Court has explained that "[u]nder [the
negative-implication] canon of statutory construction, the express mention of one
thing implies the exclusion of other similar things."  *Comerica, Inc v Dep't of
Treasury*, 984 N.W.2d 1, 7 (Mich. 2022).  But the canon "does not apply without a

strong enough association between the specified and unspecified items." *Id.* Here, again looking at the context—as courts applying this canon must, *id.*—there is not a strong enough association between the requirement to act by a date certain, "no later than the thirtieth day," and the supposed prohibition of action after that date. So, there is "no contextual or circumstantial predicate for invoking the negative-implication canon[.]" *Id.* at 8 (defendant "offers no reason to think that the Legislature meant to regulate all the ways that credits could be transferred so that when the Legislature said only 'assign' it was impliedly prohibiting other forms of transfer").

The fact that recent Governors have declined to make additional designations does not require a different construction. The decisions not to do so could easily reflect continued philosophical disagreement with the federal mandate to so or the belief that the original designations remained adequate.

Further, as the State Defendants argued previously, Plaintiffs construction would create a conflict between Michigan law and the NVRA and render Michigan noncompliant with the NVRA. (ECF No. 22, PageID.219-21.)

Because the statute does not prohibit future designations of VRAs, Governor Whitmer, through Executive Directives 2023-6 and 2024-3, lawfully designated additional voter registration agencies, including the DVA and the SBA. Plaintiffs statutory challenge is without merit.

**B.     The Secretary of State did violate any statutes in negotiating agreements with the DVA and SBA.**

Plaintiffs argue in their brief that the Secretary acted "ultra vires" when she "designated" the DVA and SBA as VRAs.  (ECF No. 26, PageID.277-79.)  But this argument is premised on Plaintiffs' argument that § 509u prohibited Governor Whitmer's designations of the DVA and SBA as VRAs, which, as explained above, is without merit.

The Michigan Department of State (MDOS) entered into the agreements with the DVA and SBA to coordinate their voter registration activities as expressly contemplated by 52 U.S.C. § 20506(a)(3)(B)(ii).  The Secretary's negotiation of such agreements was also consistent with her responsibility under the Michigan Election Law to coordinate the requirements of the NVRA, and to instruct VRAs about registration procedures and requirements.  Mich. Comp. Laws § 168.509n(b).

The agreement with the DVA was signed September 14, 2023.  (ECF No. 22-2, PageID.225, 232, Def's Ex A.)  And the Governor issued Executive Directive 2023-6 on December 18, 2023, designating the DVA as a voter registration agency.  (ECF No. 26-6, PageID.313-15.)  MDOS's agreement with the SBA was signed March 18, 2024.  (ECF No. 22-3, PageID.234-42, Def's Ex B.)  The Governor issued Executive Directive 2024-13 officially designating the SBA as a VRA on June 20, 2024.  (ECF No. 26-6, PageID.316-17.)

Because these agreements were entered into consistent with Michigan law and the NVRA, Plaintiffs arguments to the contrary are without merit.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants Governor Gretchen Whitmer, Secretary of

State Jocelyn Benson and Director of Elections Jonathan Brater respectfully

request that this Honorable Court deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for State Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
(P55439)

Dated:  September 27, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I electronically filed the foregoing
paper with the Clerk of the Court using the ECF system which will send notification
of such filing of the foregoing document as well as via US Mail to all non-ECF
participants.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
P55439
