UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

REPUBLICAN NATIONAL COMMITTEE,
DONALD J. TRUMP FOR PRESIDENT 2024, INC.,
MICHIGAN REPUBLICAN PARTY, and RYAN
KIDD,

       Plaintiffs,

v

GRETCHEN WHITMER, in her official capacity as
Governor of Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of State; and
JONATHAN BRATER, in his official capacity as
Director of the Michigan Bureau of Elections, U.S.
SMALL BUSINESS ADMINISTRATION, ISABEL
GUZMAN, in her official capacity as Administrator
of the Small Business Administration,
DEPARTMENT OF VETERANS AFFAIRS, and,
DENIS McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

       Defendants.

CASE NO. 1:24−cv−00720−PLM−SJB

HON. PAUL L. MALONEY

### Plaintiffs' Response to Defendants SBA, VA, Administrator Guzman & Secretary McDonough's Motion to Dismiss

### ***Oral Argument Requested***

Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503-2802
616-774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

David A. Warrington (*Admission Pending*)
Gary Lawkowski
DHILLON LAW GROUP
Attorneys for Plaintiff Donald J. Trump for
President 2024, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## **Plaintiffs' Response to Defendants SBA, VA, Administrator Guzman & Secretary McDonough's Motion to Dismiss**

Plaintiffs, the Republican National Committee ("The RNC"), Donald J. Trump for President 2024, Inc. ("Trump Campaign"), the Michigan Republican Party ("MRP"), and Ryan Kidd ("Plaintiffs"), by and through their attorneys, Smith Haughey Rice & Roegge, for their response to the Motion to Dismiss filed by Defendants the U.S. Small Business Administration ("SBA"), its Administrator Isabel Guzman, the Department of Veterans Affairs ("VA"), and its Secretary Denis McDonough ( "Federal Defendants"), state:

For reasons further explained in the attached Brief, the Federal Defendants' Motion should be denied because Plaintiffs have alleged injury in fact sufficient to support standing under Article III (see ECF No. 26, PageID.282-283), Plaintiffs have stated a violation of the National Voter Registration Act of 1993 ("NVRA") by the Federal Defendants (see ECF No. 26, PageID.279-282), and Plaintiffs' claim against the State Defendants is not barred by the Eleventh Amendment (see ECF No. 26, PageID.283-285).

Date: October 18, 2024

By:  */s/ Jonathan B. Koch*
      Jonathan B. Koch (P80408)
      Drew W. Broaddus (P64658)
      SMITH HAUGHEY RICE & ROEGGE
      Attorneys for Plaintiffs
      100 Monroe Center NW
      Grand Rapids, MI 49503
      (616) 774-8000 / 616-774-2461 (fax)
      jkoch@shrr.com
      dbroaddus@shrr.com

By:  */s/ Gary Lawkowski*
      David A. Warrington (*Admission Pending*)
      Gary Lawkowski
      DHILLON LAW GROUP
      Attorneys for Plaintiff Donald J. Trump for President 2024, Inc.
      2121 Eisenhower Avenue, Suite 608
      Alexandria, VA 22314
      415-433-1700 / 415-520-6593 (fax)
      glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

REPUBLICAN NATIONAL COMMITTEE,
DONALD J. TRUMP FOR PRESIDENT 2024, INC.,
MICHIGAN REPUBLICAN PARTY, and RYAN
KIDD,

        Plaintiffs,

v

GRETCHEN WHITMER, in her official capacity as
Governor of Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of State; and
JONATHAN BRATER, in his official capacity as
Director of the Michigan Bureau of Elections, U.S.
SMALL BUSINESS ADMINISTRATION, ISABEL
GUZMAN, in her official capacity as Administrator
of the Small Business Administration,
DEPARTMENT OF VETERANS AFFAIRS, and,
DENIS McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

        Defendants.

CASE NO. 1:24−cv−00720−PLM−SJB

HON. PAUL L. MALONEY

## **Brief in Support of Plaintiffs' Response to Defendants SBA, VA, Administrator Guzman & Secretary McDonough's Motion to Dismiss**

**\*\*\*Oral Argument Requested\*\*\***

Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503-2802
616-774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

David A. Warrington (*Admission Pending*)
Gary Lawkowski
DHILLON LAW GROUP
Attorneys for Plaintiff Donald J. Trump for
President 2024, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

# **Table of Contents**

Index of Authorities ..............................................................................................................ii-vi

**Introduction** ...........................................................................................................................1

**Fed. R. Civ. P. 12(b) Standards** ..........................................................................................8

**Law and Argument** ...............................................................................................................9

      A.    Plaintiffs have standing ...........................................................................................9

      B.    Plaintiffs' Complaint states violations of federal law by the State Defendants ..................13

           1.    Legal architecture for designating VRAs under the NVRA ...................................13

           2.    Only the Legislature may designate VRAs in Michigan..........................................15

           3.    Michigan's Governor acted ultra vires when she attempted to designate the SBA and VA as VRAs ...................................................................................................19

           4.    The Secretary of State acted ultra vires when she attempted to designate the SBA and VA as VRAs ......................................................................................22

           5.    The State Defendants' non-compliance with Michigan law means the Federal Defendants are acting without lawful authority ...........................................24

      C.    The Eleventh Amendment does not bar Plaintiffs' claim for prospective, non-monetary relief against the State Defendants.  Therefore, the Federal Defendants' "lack of indispensable parties" argument fails ...............................................................................27

      D.    The Federal Defendant' arguments in response to Plaintiffs' Motion for Summary Judgment are unavailing.................................................................................................29

**Conclusion**..............................................................................................................................33

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## <u>Index of Authorities</u>

### <u>CASES</u>

*46th Circuit Trial Court v. Crawford Co,* 476 Mich. 131; 719 N.W.2d 553 (2006) ...................................21

*Arreola v. Godinez,* 546 F.3d 788 (7th Cir. 2008) ....................................................13

*Ass'n. of Cmty. Organizations for Reform Now v. Miller,* 129 F.3d 833 (6th Cir. 1997)...........................15

*Banzhaf v. Smith,* 588 F. Supp. 1489 (D.D.C. 1984) ....................................................13

*Bay Cnty. Democratic Party v. Land,* 347 F. Supp. 2d 404 (E.D. Mich. 2004) ...........................................11

*Becker v. FEC,* 230 F.3d 381 (1st Cir. 2000)...................................................11

*Chapman v. Nat'l Health Plans & Benefits Agency, LLC,* 619 F. Supp. 3d 788 (E.D. Mich. 2022) .............8

*Diamond v. Charles,* 476 U.S. 54; 106 S.Ct. 1697 (1986).....................................................12

*Donald J. Trump for President, Inc. v. Cegavske,* 488 F. Supp. 3d 993 (D. Nev. 2020)...........................11

*Ex parte Young,* 209 U.S. 123; 28 S.Ct. 441 (1908) .................................................. *passim*

*Fla. State Conf. of NAACP v. Lee,* 576 F. Supp. 3d 966 (N.D. Fla. 2021) ....................................12

*Foster v. Health Recovery Servs., Inc.,* 493 F. Supp. 3d 622 (S.D. Ohio 2020)...........................................8

*Gifford v. Small Bus. Admin.,* 626 F.2d 85 (9th Cir. 1980)..........................................................27

*Hansen v. Williamson*, 440 F. Supp. 2d 663 (E.D. Mich. 2006)......................................................24

*Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452 (6th Cir. 2020) ...........................................13

*Hill v. Snyder,* 878 F.3d 193 (6th Cir. 2017)..........................................................10

*Holliday v. Sec'y of State,* __ Mich. App. __; _ N.W.3d __ (2024) (Docket No. 372241) ...........................2

*In re Complaint of Rovas against SBC Michigan,* 482 Mich. 90; 754 N.W.2d 259 (2008) .......................21

*In re San Juan Dupont Plaza Hotel Fire Litig.,* 888 F.2d 940 (1st Cir. 1989) ...........................................29

*Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago,* 56 F.4th 437 (7th Cir. 2022 ...........................1

*Jennison v. Providence St. Vincent Med. Ctr.,* 174 Or. App. 219; 25 P.3d 358 (2001)..............................25

*Johns v. The Supreme Ct. of Ohio,* 753 F.2d 524 (6th Cir. 1985)...........................................................29

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

*Jud. Watch, Inc. v. Griswold,* 554 F. Supp. 3d 1091 (D. Colo. 2021) ..........................................28

*Kennedy v. Benson,* No. 24-12375, 2024 WL 4231578 (E.D. Mich. Sept. 18, 2024) ...............................2

*Lugo v. City of Troy, New York,* 114 F.4th 80 (2d Cir. 2024)......................................................32

*Mattera v. Baffert,* 100 F.4th 734 (6th Cir. 2024)................................................................9

*Mich Ambulatory Surgical Ctr. v. Farm Bureau Gen. Ins. Co.,* 334 Mich. App. 622;
     965 N.W.2d 650 (2020) ...................................................................................24

*Moore v. Harper,* 600 U.S. 1; 143 S. Ct. 20654 (2023)...........................................................15

*Mosley v. Kohl's Dept. Stores, Inc.,* 942 F.3d 752 (6th Cir. 2019) .............................................10

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.,* 981 F.3d 1360 (Fed. Cir. 2020).............27

*O'Halloran v. Sec'y of State,* __ Mich. __; _ N.W.3d __ (2024) (Docket No. 166424) ..............................1

*Owen v. I.C. Sys., Inc.,* 629 F.3d 1263 (11th Cir. 2011) .......................................................26

*Owens-Illinois, Inc. v. Meade,* 186 F.3d 435 (4th Cir. 1999) ..................................................27

*People v. Carruthers,* 301 Mich. App. 590; 837 N.W.2d 16 (2013) ..........................................16, 23

*People v. Dettenhaler,* 118 Mich. 595; 77 N.W. 450 (1898) .....................................................15

*People ex rel Sutherland v. Governor,* 29 Mich. 320 (1874)....................................................15

*Priorities USA v. Nessel,* 860 F. App'x 419 (6th Cir. 2021)...................................................12

*Promote the Vote v. Sec'y of State,* 333 Mich. App. 93; 958 N.W.2d 861 (2020)..............................15, 23

*Pub. Int. Legal Found. v. Benson,* No. 1:21-CV-929, 2024 WL 1128565 (W.D. Mich. Mar. 1, 2024) ........1

*Purcell v. Gonzalez,* 549 U.S. 1; 127 S. Ct. 5 (2006)..........................................................32

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.,*
     35 F.4th 1225 (10th Cir. 2022).........................................................................25

*Republican National Committee, et al. v. Benson, et al.,* unpublished opinion of the Michigan Court of
     Claims, issued June 12, 2024 (Docket No. 24-000041-MZ) ................................................13

*Richardson v. Jackson Cnty.,* 432 Mich. 377; 443 N.W.2d 105 (1989) ..........................................19

*Russell,* 784 F.3d at 1046 ...............................................................................27-28

*Salzer v. City of E. Lansing,* 263 Mich. 626; 249 N.W. 16 (1933) ..............................................19

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

*Schulz v. Williams,* 44 F.3d 48 (2d Cir. 1994) ............................................................11

*Simon Prop. Grp., Inc. v. Taubman Centers, Inc.,* 240 F. Supp. 2d 642 (E.D. Mich. 2003) ......................24

*Smith v. Boyle*, 144 F.3d 1060 (7th Cir. 1998) ...........................................................11

*Smith v. Spizzirri,* 601 U.S. 472; 144 S. Ct. 1173 (2024) ...............................................7

*Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.,* 615 F.3d 622 (6th Cir. 2010) .....16

*United States v. Abbott,* 110 F.4th 700 (5th Cir. 2024) ..................................................2

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635; 122 S.Ct. 1753 (2002)......................28

*Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816 (S.D. Tex. 2012) ..................................13

*Warth v. Seldin,* 422 U.S. 490; 95 S.Ct. 2197 (1975) ...................................................10

*Wilburn v. Kentucky*, 312 S.W.3d 321 (Ky. 2010) ........................................................13

## STATUTES

M.C.L. § 168.16 ........................................................................................6

M.C.L. § 168.493b ..................................................................................19, 24

M.C.L. § 168.493b(1) .................................................................................16

M.C.L. § 168.509m ....................................................................................29

M.C.L. § 168.509m(2)(a) ..............................................................................16

M.C.L. § 168.509m-509gg .............................................................................16

M.C.L. § 168.509n ............................................................................... *passim*

M.C.L. § 168.509u ............................................................................... *passim*

M.C.L. § 168.509u(1) .................................................................................17

M.C.L. § 168.509w .................................................................................7, 13

M.C.L. § 168.509w(1)-(2) ...........................................................................7, 18

M.C.L. § 168.509w(3) .................................................................................18

M.C.L. § 168.509w(4) .................................................................................18

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

5 U.S.C. § 551(13) ..................................................................................................28

5 U.S.C. § 701(b)(2) ..............................................................................................28

5 U.S.C. § 702 ........................................................................................................27

5 U.S.C. § 704 ..........................................................................................................3

5 U.S.C. § 706(2)(A) ................................................................................................5

5 U.S.C. § 706(2)(C) ................................................................................................5

15 U.S.C. 637(b) ....................................................................................................23

52 U.S.C. § 20501(b)(3) ........................................................................................14

52 U.S.C. §20502(4) ..............................................................................................14

52 U.S.C. § 20503(a) ........................................................................................ 25-27

52 U.S.C. § 20506 ............................................................................................14, 27

52 U.S.C. § 20506(a)(2) ...................................................................................14, 23

52 U.S.C. § 20506(a)(3)(A)-(B) ............................................................................14

52 U.S.C. § 20506(c)(2) .........................................................................................14

52 U.S.C. § 20507(a)(2) .........................................................................................15

52 U.S.C. § 20508 ..................................................................................................15

52 U.S.C. § 20509 ..................................................................................................15

52 U.S.C. § 20510(b)(1)-(2) .....................................................................................5

52 U.S.C. §30101(14) ...............................................................................................5

## **RULES**

Fed. R. Civ. P. 12(b) .................................................................................................8

Fed. R. Civ. P. 12(b)(1) ......................................................................................8, 10

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 8-10

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## MISCELLANEOUS

*Baby & Bathwater: Standing in Election Cases After 2020,* 126 Dick. L. Rev. 9, 68 (2021) ............ *passim*

Cooley, Constitutional Limitations (1886) ..................................................................................... 22

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

# Introduction[1]

In their Motion to Dismiss, the Federal Defendants essentially tell his Court – through their standing and immunity arguments – not to ask about how the "sausage is made."[2] Their argument boils down to this: because they are engaged in the noble endeavor of registering people to vote, there shouldn't be litigation over whether the Federal Defendants are duly authorized to engage in these activities. Respectfully, that makes no sense.

"If democracy requires broad and fair access to the franchise, it also requires broad and fair access to the courthouse."[3] The Federal Defendants' argument– like that of the State Defendants – hinges on an "unjustifiably strict view of standing" that conflates "standing doctrine with the merits" and appears to have arisen out of a post-2020 "zeal."[4] It's also an approach that this Court should reject – especially  in the context of this particular election.

In just the last few months, the State Defendants have (1) tried to significantly change Michigan election laws under the guise of a "manual,"[5] (2) sought to immediately enact administrative rules that would limit recounts, even though the enabling legislation won't take effect until months after the election,[6] (3) resisted, on mootness and standing grounds, litigation to clean up the voter rolls,[7] and (4) taken

---

[1] The Federal Defendants have combined their Motion to Dismiss with their Response to Plaintiffs' Motion for Summary Judgment.  ECF No. 32, PageID.343. This Brief thus also serves as Plaintiffs' summary judgment reply.

[2] "As Otto von Bismarck quipped, no one should see how laws or sausages are made." *Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago,* 56 F.4th 437, 455 (7th Cir. 2022) (Eastbrook, J., concurring).

[3] Mulroy, *Baby & Bathwater: Standing in Election Cases After 2020,* 126 Dick. L. Rev. 9, 68 (2021).

[4] *Id.* at 9, 13.

[5] *O'Halloran v. Sec'y of State,* __ Mich. __; _ N.W.3d __ (2024) (Docket No. 166424).

[6]  See  https://www.misenategop.com/runestad-pushes-back-against-efforts-to-change-state-election-rules-ahead-of-new-law-taking-effect/

[7] *Pub. Int. Legal Found. v. Benson,* No. 1:21-CV-929, 2024 WL 1128565, at *13 (W.D. Mich. Mar. 1, 2024), appeal pending, Sixth Circuit Docket No. 24-1255.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

extraordinary measures to keep certain Presidential candidates off[8] and certain candidates on the ballot[9] Moreover, all of this is happening in the midst of unprecedented "border crisis"[10] and the resulting concerns about ineligible persons casting votes. Against this backdrop, it is understandable why the Plaintiffs view the State Defendants' designation of certain federal agencies as new voter registration agencies ("VRAs") with a jaundiced eye. And the Federal Defendants are active participants in this unprecedented endeavor.

The Federal Defendants also try to shield themselves from any inquiry into the merits by invoking the State Defendants' supposed Eleventh Amendment immunity. But the Plaintiffs have properly pled and argued (in their Motion for Summary Judgment) the exception to Eleventh Amendment immunity set forth in *Ex parte Young,* 209 U.S. 123; 28 S.Ct. 441 (1908). And, Plaintiffs are not merely asking a federal court to enjoin the State Defendants from violating Michigan law. Rather, Plaintiffs have articulated why the State Defendants' ultra vires actions also represent ongoing violations of federal law. So, the Eleventh Amendment isn't a relevant defense.

Here's what actually matters: the National Voter Registration Act of 1993 ("NVRA") requires States to designate certain offices as VRAs and gives States the discretion to "designate other offices." However, the NVRA does not tell states *how* to make those designations.[11] That is left up to state law. So, whether an office has been properly designated as a VRA under the NVRA is a mixed question of state and federal law. And, under Michigan law, the authority to designate VRAs is held solely by the Legislature.[12]

Despite this, Michigan's Governor and Secretary of State took it upon themselves to go beyond the statutory framework provided by the Legislature and designate new VRAs. That's something no prior

---

[8] *Holliday v. Sec'y of State,* __ Mich. App. __; _ N.W.3d __ (2024) (Docket No. 372241).
[9] *Kennedy v. Benson,* No. 24-12375, 2024 WL 4231578, at *7 (E.D. Mich. Sept. 18, 2024).
[10] *United States v. Abbott,* 110 F.4th 700, 734 (5th Cir. 2024) (Ho, J., concurring in part).
[11] See ECF No. 26-2, PageID.302, Fed. Election Comm'n, Guide to Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples, at 1-5 (1994).
[12] See Const. 1963, art. 2, § 4(2).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Michigan executive branch official has attempted since 1995,[13] when then-Governor Engler acted under a specific grant of authority from the Legislature, which has long since expired.[14]

The designation of these new VRAs coincided with an Executive Order from President Biden that directed federal agencies to partner with state officials to promote voter registration and voter participation, and to agree to state requests to designate voter registration agencies.[15] This explains why the Federal Defendants[16] went along with it. But when the Michigan Governor and Secretary of State designated these new VRAs, they acted beyond their authority.  The Federal Defendants are acting pursuant to that invalid authority and for that reason, their actions directly the NVRA and the Administrative Procedures Act ("APA"), 5 U.S.C. § 704.

### Statement of Facts

In 1994, Congress enacted the NVRA, including the provisions allowing a "State" to designate VRAs. Shortly afterward, the Michigan legislature enacted MCL § 168.509u, which designated United States military recruiting offices as VRAs and gave the governor 30 days to prepare a list of additional "executive departments, state agencies, or other offices that will perform voter registration activities in this state."[17] And, less than 30 days later, then-Governor Engler issued Executive Order 1995-1 ("EO 1995-1"), designating various public-assistance offices as voter registration agencies and purporting to reserve the right to subsequently designate "[a]ny other public office … by Executive Directive."[18] For the next quarter century, no Michigan governor attempted to designate any additional offices as VRAs.

---

[13] See ECF No. 9-2, PageID.85, Vet Voice's proposed Motion to Dismiss.

[14] See M.C.L. § 168.509u(1); ECF No. 1, PageID.2, Complaint, ¶ 3.

[15] See ECF No. 9-2, PageID.85.

[16] The Department of Veterans Affairs ("VA") and its Secretary, and the U.S. Small Business Administration ("SBA") and its Administrator.

[17] See ECF No. 9, PageID.64, Vet Voice's Motion to Intervene.

[18] See *Id*., PageID.64-65.  See also ECF No. 26-3, PageID.304, EO 1995-1.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Then, in May 2022, Michigan Governor Gretchen Whitmer issued Executive Directive 2022-4 ("ED 2022-4"[19]), which noted that Michigan's list of designated voter registration agencies had not been updated since 1995 and sought recommendations for additional offices to be so designated.[20] In September 2023, the Michigan Secretary of State acted on those recommendations by entering into "an interagency agreement with the Department of Veterans Affairs to designate the Department, the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office as voter registration sites."[21] Then, in December 2023, Governor Whitmer issued Executive Directive 2023-6 ("ED 2023-6"), which among other offices, designated "the U.S. Department of Veterans Affairs" as a voter registration agency.[22] Finally, in June 2024, Governor Whitmer issued Executive Directive 2024-3 ("ED 2024-3"), which designated the SBA as a voter registration agency.[23]

Both federal agencies were designated "subject to the agreement" they had "signed with the State of Michigan."[24] With respect to the Department of Veterans affairs, this was a reference to the interagency agreement. With respect to the SBA, this was in reference to a Memorandum of Understanding ("MOU"[25]) and Memorandum of Agreement ("MOA") that the Michigan's Secretary of State entered into on March 18, 2024, with the U.S. Small Business Administration ("SBA"), purporting to designate SBA offices throughout the State of Michigan as VRAs.[26]

---

[19] ECF No. 26-4, PageID.306
[20] See ECF No. 9, PageID.65.
[21] ECF No. 26-5, PageID.309-311, VA News Press Release.
[22] ECF No. 26-6, PageID.313.
[23] ECF No. 26-7, PageID.316
[24] ECF No. 26-6, PageID.315, ¶ 5; ECF No. 26-7, PageID.317.
[25] The MOU is essentially an "agreement to agree" that lacks the binding power of a contract. See ECF No. 1, PageID.15, ¶ 74. The MOA, on the other hand, is a contractual document that formally establishes specific legal obligations running between the two.  See *Id.*  So Plaintiff's substantive argumentswill focus on the MOA.
[26] See ECF No. 1, PageID.3, Complaint, ¶ 7.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

But these actions ignored the plain language of M.C.L. § 168.509u. That statute only authorized the Governor to designate VRAs "[n]ot later than the thirtieth day after the effective date of [M.C.L. § 168.509u]." The Michigan Legislature did not authorize the Governor to unilaterally designate any VRAs after February 9, 1995.[27] The Michigan Legislature also has not granted the Secretary of State the authority to designate VRAs. Rather, M.C.L. § 168.509n makes the Michigan Secretary of State responsible only for (a) developing a mail registration form and making it available for distribution, (b) instructing "designated voter registration agencies and county, city, township, and village clerks about the voter registration procedures and requirements imposed by law," and (c) by June 15 "of each odd numbered year," submitting a "a report on the qualified voter file" to member of the relevant state senate and house committees.[28]

Plaintiffs therefore filed this suit citing, among other authorities, 52 U.S.C. § 20510(b)(1)-(2), 5 U.S.C. § 706(2)(A), (C), and *Ex parte Young*, 209 U.S. at 123.[29] Plaintiff, the Republican National Committee, is the national committee of the Republican Party, as defined by 52 U.S.C. §30101(14).[30] The RNC represents over 30 million registered Republicans in all 50 states, the District Columbia, and the U.S. territories.[31] It is comprised of 168 voting members representing state Republican Party organizations, including three members who are registered voters in Michigan.[32] The RNC works to elect Republican candidates to state and federal office.[33] In November 2024, its candidates will appear on the ballot in Michigan for numerous federal and state offices.[34]

---

[27] See ECF No. 1, PageID.3, Complaint, ¶ 4.
[28] See *Id*., ¶ 7.
[29] *Id*., PageID.3, 4, 20-21, ¶¶ 10-11, 106.
[30] *Id*., PageID.4, ¶ 14.
[31] *Id*., PageID.4, ¶ 15.
[32] *Id*.
[33] *Id*., PageID.4, ¶ 16.
[34] *Id*.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

The RNC has vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Michigan elections.[35] The RNC and Michigan GOP have strong interests in ensuring that their candidates compete for votes in a lawfully structured competitive environment.[36] The RNC brings this suit to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates.[37] Simply put, the RNC and its members are concerned that Defendants' failure to comply with Michigan statutes governing VRA designation undermines the integrity of elections by increasing the opportunity for individuals to register to vote even though they are ineligible to do so, and by sowing confusion regarding whether the agencies purporting to offer assistance in registering voters are doing so in accordance with applicable law.[38] The other plaintiffs have equally compelling interests in this litigation.

Plaintiff, Donald J. Trump for President 2024, Inc. ("Trump Campaign") is the principal committee for President Donald J. Trump's campaign.[39] The Trump Campaign has the same interests in this case as the RNC with respect to the candidacy of President Trump and seeks to vindicate those interests in the same ways.[40]

Plaintiff, the Michigan Republican Party ("MRP"), is a "major political party" as that term is defined by the Michigan Election Law, M.C.L. §§ 168.16.[41] It was formed for the general purposes of, among other things, promoting Republican values and assisting candidates who share those values with election or appointment to partisan federal, state, and local office.[42] Further, MRP works to ensure that elections in

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[35] ECF No. 1, PageID.5, ¶ 17.
[36] *Id.*
[37] *Id.*
[38] ECF No. 1, PageID.5, ¶ 18.
[39] *Id.*, ¶ 19.
[40] *Id.*, ¶ 20.
[41] *Id.*, ¶ 21.
[42] *Id.*

Michigan are conducted in a free, fair, and transparent manner, and works to protect the fundamental constitutional right to vote of its members and all Americans, and to promote their participation in the political process.[43] MRP brings this action on behalf of itself and its members.[44] As a result, Plaintiff MRP has a direct, personal, and substantial interest in this litigation to protect not only its own rights, but those of its candidates and members.[45]

Plaintiff Ryan Kidd is the elected clerk of Georgetown Township, and is responsible for administering elections, as well as processing voter registration applications for individuals who reside within his jurisdiction and ultimately registering those individuals to vote.[46] By statute, Mr. Kidd is responsible for processing voter registration applications received from government offices properly designated as VRAs under the NVRA and Michigan law.[47] M.C.L. § 168.509w(1)-(2) states that he "shall[48] do all of the following": "[v]alidate [an] application in the manner prescribed by the secretary of state," "[i]ssue a receipt to the applicant verifying the acceptance of the application," and "transmit the application … to the clerk of the county, city, or township where the applicant resides."

So, what is Mr. Kidd to do when confronted with applications from agencies that have never acted as VRAs before, and have not been authorized by the Michigan Legislature to do so? Mr. Kidd's interest arises out of the fact that Defendants' ongoing ultra vires acts have created confusion about which state and federal offices are properly designated as "designated voter registration agencies" in accordance with the NVRA and Michigan law.[49] As a result, Mr. Kidd seeks a declaration from this Court to guide his future

---

[43] *Id*.
[44] *Id*.
[45] ECF No. 1, PageID.5, ¶ 21.
[46] *Id*., PageID.6, ¶ 22.
[47] *Id*., citing M.C.L. § 168.509w.
[48] *Smith v. Spizzirri,* 601 U.S. 472, 476; 144 S. Ct. 1173 (2024) ("Shall" leaves "no place for the exercise of discretion…." (citation omitted)).
[49] ECF No. 6, PageID.5, ¶ 22.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

conduct and the performance of his duties, especially as it relates to processing voter registration applications submitted by government offices purporting to be designated VRAs.[50]

All Plaintiffs have alleged that, because Defendants have not complied with applicable Michigan law or the NVRA, they must deploy their time and resources to monitor Michigan elections for fraud and abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to follow the law.[51] The Federal Defendants now move to dismiss the suit because Plaintiffs supposedly can't establish standing or subject matter jurisdiction. But, for all the reasons discussed below, the Federal Defendants' motion should be denied.

### Fed. R. Civ. P. 12(b) Standards

Under Rule 12(b)(1), subject matter jurisdiction or standing may be challenged "through either a facial or factual attack."[52] "A facial attack tests the pleading's sufficiency, not the veracity of its allegations."[53] "Facial attacks require allegations to be taken as true and construed in the light most favorable to the non-moving party."[54] The Federal Defendants appear to be making a facial attack here,[55] as they do not refer to matters outside the pleadings.[56] "A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss."[57]

"A 12(b)(6) motion is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."[58] "The Court must construe the complaint in the light most

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[50] *Id.*
[51] ECF No. 6-7, PageID.5, ¶ 25.
[52] *Chapman v. Nat'l Health Plans & Benefits Agency, LLC,* 619 F. Supp. 3d 788, 791 (E.D. Mich. 2022).
[53] *Chapman,* 619 F. Supp. 3d at 791.
[54] *Id.*
[55] See ECF No. 32, PageID.354.
[56] See *Foster v,* 493 F. Supp. 3d at 629.
[57] *Id.*
[58] *Id.* (cleaned up).

favorable to the non-moving party." [59] The Complaint need only "state a claim to relief that is plausible on its face."[60] "A claim has facial plausibility when the well-pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[61]

## Law and Argument

### A.    Plaintiffs have standing.

"Getting standing right is particularly important in election cases."[62] "Because elections ensure democratic health, and because the political process is often not incentivized to fix electoral problems, judicial intervention is particularly necessary."[63] "In addition, election cases raise unique standing challenges, because the asserted harms are often diffused."[64] "[I]t is harder in election cases to identify parties that are uniquely and concretely harmed by violations of fair election principles than it is in the normal way we think of standing harms."[65] "Electoral violations by their nature cause widespread harm, making them paradoxically more important to litigate but simultaneously harder to clear the standing doctrine hurdle" of avoiding "generalized grievances."[66] "A too-strict application of standing rules could bar access to the courts to anyone other than incumbent officeholders and governmental bodies, who are predisposed to favor the status quo and thus be less vigilant in furthering electoral reform."[67]

An overly narrow view of standing like the one espoused by the Federal Defendants "threatens to create dangerous precedent which would improperly prevent full consideration of the merits of future

---

[59] *Id.*

[60] *Mattera v. Baffert,* 100 F.4th 734, 739 (6th Cir. 2024) (citation omitted).

[61] *Id.* (cleaned up).

[62] *Baby & Bathwater,* 126 Dick. L. Rev. at 10.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 14.

[66] *Id.*

[67] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

meritorious voting rights and election suits."[68] This has been a particular concern since 2020 when "many courts were too quick to rule that plaintiffs lacked standing."[69] Again, this Court should reject that approach.

Here, the Federal Defendants argue that Plaintiffs have no factual support for their standing arguments.[70] But for their Motion to Dismiss,[71] that isn't the relevant standard. Rather, in reviewing a facial attack to a complaint under Rule 12(b)(1) for lack of standing, this Court "must accept the allegations set forth in the complaint as true" while "drawing all inferences in favor of the plaintiff," just like when reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim.[72] The Court then "examines whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[73] "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[74]

Plaintiffs have pled cognizable injuries in that "all Plaintiffs must deploy their time and resources to monitor Michigan elections for fraud and abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to follow the law."[75] One "means of satisfying standing is an allegation that the challenged change in electoral or voting rules would require the plaintiff to raise and spend more resources to adapt to the change during the campaign."[76] Indeed, such "economic injury" is "a quintessential injury upon which to base standing."[77] Some courts refer to this as a

---

[68] *Baby & Bathwater,* 126 Dick. L. Rev. at 9-10.
[69] *Id.* at 9.
[70] ECF No. 32, PageID.358, 364.
[71] Although Plaintiffs moved for summary judgment, the all Defendnats moved to dismiss under Rule 12, not Rule 56. So, the Federal Defendants cannot demand Rule 56 proofs of Plaintiffs' standing.
[72] *Mosley v. Kohl's Dept. Stores, Inc.,* 942 F.3d 752, 756 (6th Cir. 2019) (citation omitted).
[73] *Hill v. Snyder,* 878 F.3d 193, 203 (6th Cir. 2017) (cleaned up).
[74] *Warth v. Seldin,* 422 U.S. 490, 501; 95 S.Ct. 2197 (1975).
[75] ECF No. 1, PageID.6-7, ¶ 25.
[76] *Baby & Bathwater,* 126 Dick. L. Rev. at 23.
[77] *Id.* (citation omitted).

separate theory of "organizational standing."[78] Either a candidate or political party can advance this standing theory.[79] Here, the Plaintiffs include both.

Plaintiffs have also pled cognizable injuries in that "[t]he RNC and Michigan GOP have strong interests in ensuring that they and their candidates compete for votes in a lawfully structured competitive environment."[80] Under a theory of "competitive standing," if the "allegedly illegal voting or electoral rules make the competitive environment worse for the candidate, then that is a sufficiently concrete, non-generalized harm to confer standing."[81] "The requisite injury arises from the candidate being forced to compete in an illegally structured campaign environment."[82] "This 'competitive standing' theory is broad," and courts "do not require substantial proof of the supposed competitive disadvantage…."[83] A "well-pled allegation is enough"; courts will not "second-guess" plausible assertions by a candidate "that the challenged electoral practice will affect their campaign strategy, allocation of resources, or perceived likelihood of campaign success."[84] "Nor is this theory limited to challenging a direct bar to a candidate's placement on the ballot."[85] "[A]ny credible claim that a challenged electoral practice will make it harder for the plaintiff to win the election will suffice."[86]

---

[78] *Baby & Bathwater,* 126 Dick. L. Rev. at 24, quoting *Donald J. Trump for President, Inc. v. Cegavske,* 488 F. Supp. 3d 993, 1001-02 (D. Nev. 2020).

[79] *Baby & Bathwater,* 126 Dick. L. Rev. at 25 (citations omitted).

[80] ECF No. 1, PageID.5, ¶ 17.

[81] *Baby & Bathwater,* 126 Dick. L. Rev. at 22.

[82] *Id.* (cleaned up),

[83] *Id.*, citing *Becker v. FEC,* 230 F.3d 381, 384 (1st Cir. 2000).

[84] *Baby & Bathwater,* 126 Dick. L. Rev. at 22, citing *Becker,* 230 F.3d at 384, 387 .

[85] *Baby & Bathwater,* 126 Dick. L. Rev. at 22.

[86] *Id.* at 22-23, citing *Tex. Democratic Party v. Benkiser,* 459 F.3d 582, 586-87 (5th Cir. 2006) (plaintiff established standing where plaintiff credibly claimed that opposing party's allegedly illegal candidate substitution would reduce chances of victory); *Smith v. Boyle,* 144 F.3d 1060, 1061-63 (7th Cir. 1998) (political party had standing to challenge state voting rules that allegedly disadvantaged its candidates); *Schulz v. Williams,* 44 F.3d 48, 53 (2d Cir. 1994) (political party had standing to challenge opposing candidate's position on the ballot where the opponent "could siphon votes" from that party's candidate); *Bay Cnty. Democratic Party v. Land,* 347 F. Supp. 2d 404, 423 (E.D. Mich. 2004) (party had standing to challenge voting rules "that could diminish its power").

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

The RNC and Michigan GOP also have  "associational standing."[87]  An organization may sue "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[88]  Again, Plaintiffs alleged that the "RNC *and its members* are concerned that Defendants' failure to comply with Michigan statutes governing VRA designation undermines the integrity of elections by increasing the opportunity for individuals to register to vote even though they are ineligible to do so, and by sowing confusion regarding whether the agencies purporting to offer assistance in registering voters are doing so in accordance with applicable law."[89]  The Michigan GOP also "brings this action on behalf of itself *and its members*…."[90] And, Plaintiffs seek prospective relief, which "weighs in favor of finding that associational standing exists."[91]

As explained in the Complaint, Mr. Kidd[92] has a "particularized" injury in that he the elected clerk of Georgetown Township.[93]  He is responsible for administering elections, as well as processing voter registration applications for individuals who reside within their respective jurisdictions and ultimately registering those individuals to vote.[94]  And, by statute, Mr. Kidd is responsible for processing voter registration applications received from government offices properly designated as VRAs under the NVRA and Michigan law. [95]  The State Defendants' ongoing ultra vires acts – which are the basis of the Federal

---

[87] *Fla. State Conf. of NAACP,* 576 F. Supp. 3d at 970.

[88] *Id*. (citation).

[89] ECF No. 1, PageID.5, ¶ 18.

[90] ECF No. 1, PageID.5, ¶ 21 (emphasis added).

[91] *Fla. State Conf. of NAACP,* 576 F. Supp. 3d at 970 (citation).

[92] Only one Plaintiffs needs to have standing. See *Diamond v. Charles,* 476 U.S. 54, 64; 106 S.Ct. 1697 (1986) (a party can ride "piggyback" on another party's standing). See also *Priorities USA v. Nessel,* 860 F. App'x 419, 421 (6th Cir. 2021).

[93] ECF No. 1, PageID.6, ¶ 22.

[94] *Id*.

[95] *Id*., citing M.C.L. § 168.509w.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Defendants alleged authority to act as VRAs – have created confusion about which state and federal offices are properly designated as "designated voter registration agencies" in accordance with the NVRA and Michigan law.[96] When a local official has "a designated role to play in the interpretation and enforcement of" state election law, they are "proper parties to any suit seeking to challenge its validity and enjoin its enforcement."[97] Mr. Kidd plays such a role as a local clerk. As Michigan's Court of Claims recently noted, it is difficult to "imagine anyone more in need of a ruling" on election-related matters "than a local clerk…."[98] "Indeed, if [he] does not have standing … then nobody has standing…."[99] And "if no one has standing to sue, there will be no accountability…."[100]

Finally, the Federal Defendants' "standing argument improperly conflates Article III's injury-in-fact requirement with the merits."[101] "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."[102] The Federal Defendants' position largely "begs the question"[103] by presupposing that Plaintiffs' "ultra vires" argument isn't valid.  It is, as explained below.

**B.**    **Plaintiffs Complaint states violations of federal law by the Federal Defendants.**

**1.**    **Legal architecture for designating VRAs under the NVRA.**

In 1993, Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). Section 7 of the NVRA, 52 U.S.C. § 20506(a)(2) requires that certain State agencies be

---

[96] *Id.*, ¶ 24.

[97] *Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012), rev'd on other grounds, 732 F.3d 382 (5th Cir. 2013).

[98] *Republican National Committee, et al. v. Benson, et al.,* (June 12, 2024, Docket No. 24-000041-MZ), p 5. See ECF No. 1, PageID.6, ¶ 23 n.4.

[99] *Id.*

[100] *Banzhaf v. Smith,* 588 F. Supp. 1489, 1495 (D.D.C. 1984).

[101] *Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452, 463 (6th Cir. 2020). See also *Arreola v. Godinez,* 546 F.3d 788, 794–95 (7th Cir. 2008) ("Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing.").

[102] *Warth,* 422 U.S. at 500.

[103] *Wilburn v. Kentucky*, 312 S.W.3d 321, 334 (Ky. 2010) (Noble, J., dissenting).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

designated as VRAs. Additionally, 52 U.S.C. § 20506(a)(3)(A)-(B) states that "each State" has authority to "designate other offices within the State as voter registration agencies," which "may include" various "State or local government offices" or "Federal and nongovernmental offices, with the agreement of such offices." The designation of a federal office as a VRA is entirely within a state's discretion, with one exception. "A recruitment office of the Armed Forces of the United States shall be considered to be a voter registration agency designated under subsection (a)(2) for all purposes of this chapter." 52 U.S.C. § 20506(c)(2). Thus, a particular office can only operate as a VRA under the NVRA if it has been so designated by the "State."

The NVRA defines the term "State" as "a State of the United States and the District of Columbia." 52 U.S.C. §20502(4). Throughout the statute, the NVRA distinguishes between a "State" and its "official[s] or "officer[s]." See 52 U.S.C. § 20506 (using both the term "State" and the phrase "State election official"); 52 U.S.C. §20507(a)(2) (using the phrase "State election official"); 52 U.S.C. §20508 (using the phrase "chief election officers of the States"). See also 52 U.S.C. § 20509 ("Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter."). How "each State" designates VRAs under the NVRA is a question of state law.[104] "The Act requires each State to designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities," but "it does not … specify how or even when this designation is to be made."[105] "Most States are likely to designate a responsible State official in their conforming legislation."[106] These provisions, when read together, plainly indicate that a designation is only proper under the NVRA if it is done in accordance with the law of "each State." An office that purports to operate as a VRA in the absence of such a designation thus operates without authorization under federal law.

---

[104] See ECF No. 26-2, PageID.302.
[105] *Id.* (cleaned up).
[106] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

### 2.    Only the Legislature may designate VRAs in Michigan.

Under Michigan's Constitution, "the legislative power of the State of Michigan is vested in a senate and a house of representatives."[107] Consistent with Michigan's state constitutional arrangement, "the Legislature has the constitutional authority under Const. 1963, art. 2, § 4(2) to enact laws to preserve the purity of elections, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting."[108] This is consistent with federal law; under the Elections Clause, state legislatures are the entities "assigned particular authority by the Federal Constitution."[109]

Under Michigan's Constitution, "[t]he executive power is vested in the governor."[110] But "[t]he governor has no power to make laws."[111] The governor only has the authority to it given by the Michigan Constitution or the Legislature.[112] "The apportionment of power, authority and duty to the governor, is either made by the people in the constitution, or by the Legislature in making laws under it."[113]

After Congress enacted the NVRA in 1993, the Michigan Legislature adopted laws to conform with the voter registration requirements of the NVRA.[114] "On January 5, 1995, Michigan enacted Public Act 441 of 1994 in order to conform its voter registration procedure to the requirements of the National Voter Registration Act."[115] Public Act 441 was codified as M.C.L. § 168.509m-509gg. The stated purpose of these statutes was to "increase the integrity of the voting process" and to apply technology and information gathered by state and local governments "in a matter that ensures that accurate and current records of

---

[107] Michigan Const. 1963, art. 4, § 1.
[108] *Promote the Vote v. Sec'y of State,* 333 Mich. App. 93, 123; 958 N.W.2d 861 (2020).
[109] *Moore v. Harper,* 600 U.S. 1, 27; 143 S. Ct. 20654 (2023).
[110] Michigan Const. 1963, art. 5, § 1.
[111] *People v. Dettenhaler,* 118 Mich. 595, 602; 77 N.W. 450 (1898).
[112] *People ex rel Sutherland v. Governor*, 29 Mich. 320, 328-329 (1874).
[113] *Id.*
[114] See *Ass'n. of Cmty. Organizations for Reform Now v. Miller,* 129 F.3d 833, 835 (6th Cir. 1997).
[115] *Miller,* 129 F.3d at 835.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

qualified voters are maintained."[116] The Legislature specifically defined "[d]esignated voter registration agency" as "an office designated under [M.C.L. § 168.509u] to perform voter registration activities in this state."[117] M.C.L. § 168.509u provides the only avenue by which a government office can be a "designated voter registration agency" under Michigan law and, by extension, properly designated to conduct voter registration activities in Michigan under the NVRA.

M.C.L. § 168.509u expressly designated "a recruitment office of the armed forces of the United States [as] a designated voter registration agency." It also authorized the Governor to "provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state."[118] However, that authority had to be exercised "[n]ot later than the thirtieth day after the effective date of [M.C.L. § 168.509u]." M.C.L. § 168.509u became effective January 10, 1995. Therefore, under the plain language of § 168.509u, the Michigan Legislature did not grant the Governor authority to designate any VRAs after February 9, 1995. It follows that the Governor of Michigan has lacked any statutory authority to designate additional VRAs since that date.

This conclusion is buttressed by the canon of statutory construction known as "*expressio unius est exclusio alterius,*" the "express mention of one thing in a statutory provision implies the exclusion of similar things."[119] So, M.C.L. § 168.509u's express mention of the Governor's authority to designate VRAs *through February 9, 1995* implies that no such authority existed *after* that date. Michigan's Legislature knows how to give open-ended authority to designate VRAs – in 2023 PA 263, it granted authority to designate *state* agencies as VRAs to the Secretary of State *effective June 30, 2025* (more on that below).[120]

---

[116] M.C.L. § 168.509m.
[117] M.C.L. § 168.509m(2)(a).
[118] M.C.L. § 168.509u(1).
[119] *People v. Carruthers,* 301 Mich. App. 590, 604; 837 N.W.2d 16 (2013). See also *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.,* 615 F.3d 622, 630 (6th Cir. 2010).
[120] M.C.L. § 168.493b(1).  And, because the Secretary's authority under that subpart will be limited to designating "state agencies," it wouldn't authorize the Secretary to designate *federal* agencies as VRAs.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Public Act 441 also included M.C.L. § 168.509n, which gives the Michigan Secretary of State specific responsibilities "for the coordination of the requirements imposed under this chapter, the National Voter Registration Act of 1993…." It authorizes the Michigan Secretary of State to do three things: (a) develop and disseminate a mail registration form, (b) give instruction to designated VRAs and clerks, and (c) report to the relevant "committees of the senate and house of representatives…."[121] It does not authorize the *designation* of additional VRAs; rather, it authorizes the Secretary to coordinate with *existing* VRAs.

When a voter registration application is "submitted in person at … a designated voter registration agency," the person processing the application shall "[v]alidate the application in the manner prescribed by the secretary of state" and "[i]ssue a receipt to the applicant verifying the acceptance of the application."[122] Then, within 7 days of receiving the application, "the designated voter registration agency … shall transmit the application … to the clerk of the county, city, or township where the applicant resides."[123] However, if the application is made 2-3 weeks before an election, the designated voter registration agency "shall transmit the application not later than 1 business day to the clerk of the county, city, or township where the applicant resides."[124] If the designated voter registration agency transmits "a completed application…to a county clerk," the Secretary of State "shall compensate the county clerk for the cost of forwarding the application to the proper city or township clerk of the applicant's residence from funds appropriated to the secretary of state for that purpose."[125] Thus, when an individual applies to register to vote at a designated voter registration agency, even if the application is initially sent to the applicable county clerk, it is the clerk of the city or township where that individual resides that will ultimately be responsible for processing the application and registering that individual to vote.

---

[121] M.C.L. § 168.509n.
[122] M.C.L. § 168.509w(1).
[123] M.C.L. § 168.509w(2).
[124] M.C.L. § 168.509w(3).
[125] M.C.L. § 168.509w(4).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

As noted above, in January 1995, M.C.L. § 168.509u authorized the then-Governor of Michigan to designate VRAs but required him to do so "not later than" February 6, 1995. In January 1995, Governor John Engler complied with that statutory directive by issuing EO 1995-1.[126] EO 1995-1 recognized that "the NVRA requires that additional state offices be designated as voter registration agencies for applicants and recipients of public assistance, to wit: Aid to Families with Dependent Children (AFDC), Medicaid, Food Stamps, and Women, Infant, Children (WIC)."[127] It also recognized that "NVRA further requires that state offices be designated as voter registration agencies that provide state-funded programs primarily engaged in providing services to persons with disabilities, to wit: Michigan rehabilitation services and psychiatric hospitals."[128]

Thus, "[p]ursuant to Sections 7 (a) (2) (A) and 7 (a) (2) (B) of the NVRA," Governor Engler specifically designated the following four offices "to accept applications for voter registration": (1) Michigan Department of Social Services local offices which accept applications and administer benefits for the Aid to Families with Dependent Children (AFDC), Medicaid, and Food Stamp programs; (2) County health department offices and other agencies which contract with the Department of Public Health which accept applications and administer benefits for the Women, Infants and Children program (WIC); (3) local Michigan rehabilitation services offices; and (4) adult inpatient psychiatric hospitals operated by the Michigan Department of Mental Health.[129] Additionally, Governor Engler purported to designate "[a]ny other public office…which the Governor may from time to time designate by Executive Directive."[130]

Since January 1995, the Legislature has not granted any further authority to the Michigan Governor to designate VRAs. Although Governor Engler claimed the ability to designate additional VRAs

---

[126] ECF No. 1, PageID.11, ¶ 53 n.7.
[127] See *Id*., ¶ 54.
[128] See *Id*.
[129] See *Id*., PageID.12, ¶ 55.
[130] See *Id*., ¶ 56.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

via Executive Directives, that purported authority has no basis in Michigan's Election Law. Further, Michigan law does not give executive directives the force and effect of law, as they are not subject to legislative review.[131] Moreover, the ongoing authority that Governor Engler purported to reserve in 1995 had no basis in the statute. Again, the statute only gave the governor a narrow window to designate VRAs, which expired almost thirty years ago. So, under Michigan's constitutional and statutory scheme, designating new VRAs would require a legislative act.[132]

### 3. Michigan's Governor acted ultra vires when she attempted to designate the SBA and VA as VRAs.

"[U]ltra vires activity [is] defined as activity *not* expressly or impliedly mandated or authorized by law."[133] Actions taken ultra vires are void.[134] Here, Governor Whitmer's attempts to designate the VA and the SBA were ultra vires. So they are legal nullities.

For almost three decades after EO 1995-1, there were no attempts to further designate any other agencies – state, federal, or local – as VRAs in Michigan.[135] But on May 1, 2022, Governor Whitmer issued Executive Directive 2022-4. In it, she recognized that "EO 1995-1 designated specific state offices as voter registration agencies pursuant to sections 7(a)(2)(A) and (B) of the NVRA" but that, "[s]ince 1995, there have been myriad changes to public assistance programs and programs that provide services to persons with disabilities, as well as to the offices that accept applications for and administer these programs."[136] "In light of these changes," Governor Whitmer concluded that "it is time to review and update Michigan's list of voter registration agencies."[137] Claiming authority "under sections 1 and 8 of Article 5 of the Michigan

---

[131] ECF No. 26-8, PageID.318, unpublished opinion of the Michigan Attorney General (No. 7224, February 20, 2009).

[132] See, for example, M.C.L. § 168.493b.

[133] *Richardson v. Jackson Cnty.,* 432 Mich. 377, 381; 443 N.W.2d 105 (1989) (emphasis in original).

[134] *Salzer v. City of E. Lansing,* 263 Mich. 626, 632; 249 N.W. 16 (1933).

[135] See ECF No. 9, PageID.65.

[136] See ECF No. 1, PageID.13, ¶ 62.

[137] *Id.*, ¶ 63.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Constitution of 1963," Governor Whitmer then directed, among other things, the Department of State to "review Michigan's compliance with the requirements of the NVRA, in particular, the requirement in section 7 that all state offices that provide either public assistance or state-funded programs primarily engaged in providing services to persons with disabilities are offering voter registration services."[138] Governor Whitmer claimed that "[t]o the extent that the Department of State recommends additional offices be designated as voter registration agencies to comply with the NVRA, [she] expect[ed] to take appropriate action expeditiously."[139] She also indicated a desire to take additional action "including but not limited to designating additional offices as voter registration agencies pursuant to section 7(a)(3) of the NVRA."[140]

This appears to have been inspired by Executive Order 14019, issued on March 7, 2021 by President Biden, which directed federal departments and agencies to "partner with State, local, Tribal, and territorial officials" and "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation."[141] Executive Order 14019 also stated that each federal agency, "if requested by a State to be designated as a voter registration agency pursuant to section 7(a)(3)(B)(ii) of the National Voter Registration Act, shall, to the greatest extent practicable and consistent with applicable law, agree to such designation."[142]

On December 18, 2023, Governor Whitmer issued Executive Directive 2023-6 which, among other things, designated several "state departments, agencies, and offices" as VRAs.[143] ED 2023-6 also purported to designate "the U.S. Department of Veterans Affairs" as a VRA "subject to the agreement it has signed with the State of Michigan."[144] For her alleged authority to make these designations, Governor Whitmer

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[138] *Id.*, ¶ 64.
[139] *Id.*, ¶ 65.
[140] *Id.*
[141] ECF No. 26-9, PageID.326.
[142] See ECF No. 1, PageID.12, ¶ 61.
[143] ECF No. 1, PageID.14, ¶ 68.
[144] ECF No. 1, PageID.15, ¶ 69.

relied on "Section 1 of Article 5 of the Michigan Constitution of 1963" and "Section 8 of Article 5 of the Michigan Constitution of 1963."[145] Then, in June 2024, Governor Whitmer issued Executive Directive 2024-3 ("ED 2024-3"),which designated the SBA as a voter registration agency.[146]

Here's the bottom line: Governor Whitmer's attempts to designate the SBA and VA as VRAs violates both Michigan law and the NVRA because they were improper exercises of legislative authority. Michigan Const. 1963, art. 3, § 2 states that "[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." The legislative power has been described as "the power 'to regulate public concerns, and to make law for the benefit and welfare of the state.'"[147] Or, put simply, "legislative power is the power to make laws."[148] In turn, the executive power is the power to enforce or effectuate the laws enacted by the Legislature or, in other words, the power to faithfully execute laws.[149] Thus, the governor lacks the authority to make laws or to assume powers conferred on the Legislature.[150]

The law-making function of our state government is vested in the Michigan Legislature. While the Governor of Michigan has the power to enforce the laws enacted by the Legislature, she lacks the authority to change or extend them. But designating new VRAs though Executive Directives attempts to do just that.

---

[145] See *Id.*, ¶ 70.  Section 1, Art. 5 of the Michigan Constitution vests executive power in the governor, while Section 8, Art. 5 gives the governor supervisory authority over executive departments to ensure "that the laws be faithfully executed."
[146] ECF No. 26-7, PageID.316-317.
[147] *46th Circuit Trial Court v. Crawford Co,* 476 Mich. 131, 141; 719 N.W.2d 553 (2006) (citation omtited).
[148] *In re Complaint of Rovas against SBC Michigan,* 482 Mich. 90, 98; 754 N.W.2d 259 (2008).
[149] Michigan Const. 1963, art. 5, § 8.
[150] 16A Am. Jur. 2d Constitutional Law § 246 ("The executive power is the power to execute the laws, that is, to carry them into effect, as distinguished from the authority to make the laws and the power to judge them.").

So, Governor Whitmer's purported designations of SBA and the VA as VRAs are ultra vires and void, and violate both Michigan law and, as shown below, the NVRA.

**4.    The Secretary of State acted ultra vires when she attempted to designate the SBA and VA as VRAs.**

In September 2023, the Michigan Secretary of State and the U.S. Department of Veterans Affairs announced the signing of an interagency agreement that purported to designate the Department, the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office as voter registration agencies and offices.[151] The Michigan Department of State's press release stated that "[t]he official designation of VA as a voter registration site will come through an executive order by Governor Whitmer in the coming weeks."[152] Then, on March 18, 2024, the Michigan Secretary of State entered into the aforementioned MOU and MOA with the SBA, purporting to designate the SBA's offices throughout Michigan as VRAs.

The MOA states in Part III that the "SBA enters into this MOA under the legal authority of section 8(b) of the Small Business Act, 15 U.S.C. 637(b), and pursuant to section 20506 of the NVRA [National Voter Registration Act] as referenced above in Part I." Part I cites See 52 USC § 20506(a)(2). But the Michigan Secretary of State's authority is not specifically mentioned. In Part II, entitled "Purpose," the MOA references "a 1994 state statute that directed the Governor to designate VRAs," and a 1995 Executive Order from Governor Engler that "allows the Governor to designate additional VRAs through an executive directive." The "Purpose" section of the MOA further claims that "Michigan law makes the Secretary of State 'responsible for the coordination of the requirements imposed under … the National Voter Registration Act of 1993.' These responsibilities include '[i]nstruct[ing] designated voter registration agencies and [local] clerks about the voter registration procedures and requirements imposed by law.'" But

---

[151] See ECF No. 1, PageID.14, ¶ 66.
[152] See *Id.*, ¶ 67 n. 11.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

as explained above, neither ED 2023-6, the MOU, nor the MOA were authorized by the Michigan Legislature. Moreover, under Michigan law, Executive *Directives* do not have the force and effect of law and are not subject to legislative review.

Consistent with Michigan's state constitutional arrangement, "the Legislature has the constitutional authority under Const. 1963, art. 2, § 4(2) to enact laws to preserve the purity of elections, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting."[153] Michigan's Legislature gave certain responsibilities over elections to the Secretary of State. Specifically, M.C.L. § 168.509n makes the Secretary of State responsible for (a) developing a mail registration form and making it available for distribution, (b) instructing "designated voter registration agencies and county, city, township, and village clerks about the voter registration procedures and requirements imposed by law," and (c) by June 15 "of each odd numbered year," submitting "a report on the qualified voter file" to a member of the relevant state senate and house committees. That's it – nothing about designating VRAs.

Here, the doctrine of "*expressio unius est exclusio alterius*" is again relevant – "the expression of one thing suggests the exclusion of all others…."[154] As noted above, "the express mention of one thing in a statutory provision implies the exclusion of similar things."[155] So, M.C.L. § 168.509n's expression of three specific responsibilities for the Michigan Secretary of State, that fall within the umbrella of "coordinat[ing]" the "requirements imposed under" Public Act 441, implies that any other responsibilities (such as designating VRAs) are excluded.

This is especially true because, while MCL § 168.509n authorizes the Secretary of State to instruct previously designated VRAs, the statute says nothing about the power to designate VRAs in the first place.

[153] *Promote the Vote v. Sec'y of State,* 333 Mich. App. 93, 123; 958 N.W.2d 861 (2020).
[154] *Carruthers,* 301 Mich. App. at 604.
[155] *Id.*

23

This conclusion is also supported by the "canon of construction" known as "*casus omissus pro omisso habendus est*" – nothing can be added to what the text of a statute states or reasonably implies.[156] Put another way, courts are prohibited "from supplying provisions omitted by the Legislature."[157]

The fact that Michigan's Legislature *has not* granted the Secretary of State the authority to designate VRAs is underscored by 2023 PA 263, which grants the Secretary of State this authority (but only as to a "state agency") *effective June 30, 2025,* see M.C.L. § 168.493b – reflecting the fact that such authority *does not currently exist.* In construing a statute, district courts must "presume that every word has some meaning and should avoid any construction that would render any part of the statute surplusage or nugatory."[158] "[E]ffect should be given to every phrase, clause and word."[159] Reading § 168.509n to give Michigan's Secretary of State the authority *now* to designate *federal* agencies as VRAs would fail to give meaning to § 168.493b, rendering it nugatory and redundant.

**5.    The State Defendants' non-compliance with Michigan law means the Federal Defendants are acting without lawful authority.**

The NVRA presupposes that States act in accordance with their own laws.[160] Moreover, if States don't "establish procedures"[161] to designate VRAs, they are not in compliance with the Act. The word "establish" has been defined as "[t]o set up on a secure or permanent basis; to found (a government, an institution; in modern use often, a house of business)," or "[t]o set up or bring about permanently (a state

---

[156] *Mich Ambulatory Surgical Ctr. v. Farm Bureau Gen. Ins. Co.,* 334 Mich. App. 622, 632; 965 N.W.2d 650 (2020).
[157] *Id.*
[158] *Hansen v. Williamson*, 440 F. Supp. 2d 663, 671 (E.D. Mich. 2006).
[159] *Simon Prop. Grp., Inc. v. Taubman Centers, Inc., 240 F. Supp. 2d 642, 647 (E.D. Mich. 2003)* (citation omitted).
[160] See 52 U.S.C. § 20503(a) ("each State shall establish procedures to register to vote … at a Federal, State, or nongovernmental office designated under [§ 20506]."
[161] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

24

of things).[162] And "the dictionary defines 'procedure' as a series of steps followed in a regular orderly definite way."[163] Other dictionary definitions of "procedure" include "a particular way of doing or of going about the accomplishment of something," a "particular course of action, a "particular step adopted for doing or accomplishing something," or a "traditional, customary, or otherwise established or accepted way of doing things."[164] So the State Defendants' failure to follow "established" State "procedures" in their attempts to designate SBA and VA as VRAs also violates the NVRA.

There is nothing "established" about the Michigan Governor dusting off a 28-year-old Executive Order that none of her predecessors had ever invoked and relying upon it to designate federal agencies as VRAs via Executive Directives. Designating VRAs in this matter – particularly where all prior VRAs had been designated pursuant to specific statutory authority - is not part of any "series of steps followed in a regular orderly definite way." It is completely ad hoc. So is the Secretary of State's contract with the SBA— something which wasn't contemplated or authorized by either ED 1995-1 or M.C.L. § 168.509n. This appears to have been a practice invented out of whole cloth in response to President Biden's 2021 Executive Order, not an act taken as part of any "established procedure."

Again, under the NVRA, "each State *shall* establish procedures…."[165] Again, when used in a statute, the word "shall" creates "an obligation impervious to judicial discretion."[166] "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a *requirement*."[167] Indeed, the U.S. Supreme Court has noted that the use of "shall" leaves "no place for the exercise of discretion…."[168] This only leaves two

---

[162] *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.,* 35 F.4th 1225, 1242-1243 (10th Cir. 2022) (citation omitted).
[163] *Owen v. I.C. Sys., Inc.,* 629 F.3d 1263, 1272 (11th Cir. 2011) (cleaned up).
[164] *Jennison v. Providence St. Vincent Med. Ctr.,* 174 Or. App. 219, 225 n.9; 25 P.3d 358 (2001).
[165] 52 U.S.C. § 20503(a) (emphasis added).
[166] *Spizzirri,* 601 U.S. at 476 (cleaned up).
[167] *Id.* (citation omitted, emphasis added).
[168] *Id.* (citation omitted).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

possibilities. Either the designations of the SBA and VA violated the NVRA because they were not made pursuant to the procedures established by the Michigan Legislature. Or, if the ultra vires actions of the Governor and Secretary of State are allowed to stand, it would mean that Michigan has no "established procedures" for designating VRAs, which is still a violation § 20503(a).

These designations also violate the NVRA because § 20503(a) and § 20506 require "each *State*" to make the designations. The word "State" must read in light of the fact that when it enacted the NVRA, Congress was exercising its power under the Elections Clause.[169] The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State *by the Legislature thereof*…."[170] Thus, the Clause "imposes" on "state *legislatures* the 'duty' to prescribe rules governing federal elections."[171] It follows that, for purposes of the NVRA, "each *State*" means the legislature of each state, and not executive officers or officials. So, unless designated by the Legislature – or pursuant to a grant of authority from the Legislature – the designation has not been made by the "State" as required by the NVRA. Consequently, the State Defendants' attempt to designate SBA and VA as VRAs without any grant of authority from the Legislature means that the attempted designations violate both Michigan law and the NVRA.

Further, by acting pursuant to these ultra vires designations, the Federal Defendants are violating both the NVRA and the Administrative Procedures Act ("APA").[172] 5 U.S.C. § 702 states that a "person suffering legal wrong because of agency action … is entitled to judicial review," which may result in a "mandatory or injunctive decree…." The APA defines "agency action" as "the whole or a part of an agency

---

[169] *Miller,* 129 F.3d at 836.
[170] *Moore,* 600 U.S. at 10 (emphasis added).
[171] *Id.* (emphasis added).
[172] See ECF No. 1, PageID.20-21, ¶¶ 106-108.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[173] The SBA is an "agency" within the meaning of the APA.[174] So is the VA.[175] These agencies have "acted" through their agreements with the Michigan Secretary of State to acts as VRAs. Yet, by purporting to act as VRAs – despite not being designated by the "State" – the SBA and VA's conduct is "not in accordance with law" and "in excess of statutory … authority."[176]

**C.**    **The Eleventh Amendment does not bar Plaintiffs' claim for prospective, non-monetary relief against the State Defendants.  Therefore, the Federal Defendants' "lack of indispensable parties" argument fails.**

Although the Federal Defendants cannot invoke the Eleventh Amendment, the State Defendants have done so here. The Federal Defendants say that, because the State Defendants will win that argument, the claim against the Federal Defendants will subsequently fail due to do the Plaintiffs' inability to "join an indispensable party."[177] That's wrong. Dismissal of the State Defendants would not require dismissal of the entire suit because complete relief can be afforded without the State Defendants' presence (the Federal Defendants could still be enjoined from acting as unauthorized VRAs).[178] But the much bigger problem with the Federal Defendants' argument is that the State Defendants are not entitled to Eleventh Amendment immunity.[179]

The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[180] "A suit against a state official in his or

---

[173] 5 U.S.C. § 551(13). See also 5 U.S.C. § 701(b)(2) (noting that "agency action" means as defined by § 551).
[174] *Gifford v. Small Bus. Admin.,* 626 F.2d 85, 86 (9th Cir. 1980).
[175] *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.,* 981 F.3d 1360, 1376 (Fed. Cir. 2020).
[176] See ECF No. 1, PageID.21, ¶ 107.
[177] ECF No. 32, PageID.371.
[178] *Owens-Illinois, Inc. v. Meade,* 186 F.3d 435, 441 (4th Cir. 1999).
[179] ECF No. 36, PageID.423-424.
[180] U.S. Const. amend. XI. See also *Russell,* 784 F.3d at 1046.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

her official capacity is not a suit against the official but rather is a suit against the official's office."[181] Such a suit is "against the State itself" and the "Eleventh Amendment bars many such suits."[182] "However, there is an exception to States' sovereign immunity under the doctrine announced in *Ex parte Young*...."[183] A suit falls within this exception when it seeks "prospective relief to end a continuing violation of federal law."[184]

To determine whether a suit falls within the *Ex parte Young* doctrine, the Court conducts a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[185] This inquiry focuses on plaintiffs' allegations and "does not include an analysis of the merits of the claim[s]."[186] The only relevant inquiry under *Ex parte Young* is whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.[187]

So, for the *Ex parte Young* exception to apply, Plaintiffs need only show "that they are: (1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief."[188] The theory behind the exception is that, "even if the officials claim to be acting under valid state law because, if the officials' conduct constitutes an ongoing violation of federal law, the state cannot cloak their actions with state authority or state immunity."[189] "That is, when state officials are arguably violating federal law, the state is not the real party in interest because the state cannot 'authorize'

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[181] *Russell,* 784 F.3d at 1046 (cleaned up).
[182] *Id.* (cleaned up).
[183] *Id.* at 1047 (citation omitted).
[184] *Id.* (citation omitted).
[185] *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645; 122 S.Ct. 1753 (2002) (citation omitted).
[186] *Id.* at 646.
[187] *Id.*
[188] *Jud. Watch, Inc. v. Griswold,* 554 F. Supp. 3d 1091, 1100 (D. Colo. 2021) (citations omitted).
[189] *Id.* (cleaned up).

the officials to violate federal law."[190] "Thus, in allegedly violating federal law, the officials are stripped of their state authority and the Eleventh Amendment will not protect them from suit."[191]

That is precisely what the Plaintiffs have pled here. Plaintiffs have sued three state officials in their official capacities, citing *Ex parte Young*,[192] and alleging that their designations of VRAs violates the NVRA and Administrative Procedures Act. And Plaintiffs request prospective relief to end these continuing violations: "[a] declaratory judgment that the State Defendants have violated Michigan Const. 1963, art. 2, § 4(2), as well as MCL 168.509m and MCL 168.509u," a "permanent injunction barring the State Defendants from designating any VRAs without express authorization from the Michigan Legislature," and an "order declaring the designation of any VRAs under ED 2023-6, the 2022 Interagency Agreement, the 2023 MOU and MOA, and any future executive directives issued without legislative authorization are invalid…."[193] The Eleventh Amendment is chiefly concerned with whether "a judgment … will be satisfied out of the state treasury,"[194] something that is not sought in this case.

Plaintiffs acknowledge that *Ex parte Young* would not apply if they were asking this Court to order "state officials to conform their conduct to state law."[195] But Plaintiffs raise a violation of federal law,[196] as set forth below.

D.    **The Federal Defendant' arguments in response to Plaintiffs' Motion for Summary Judgment are unavailing.**

---

[190] *Id.* (cleaned up).

[191] *Id.* (citation omitted).

[192] ECF No. 1, PageID.4, ¶ 10.

[193] ECF No. 1, PageID.17-18.

[194] *In re San Juan Dupont Plaza Hotel Fire Litig.,* 888 F.2d 940, 942 (1st Cir. 1989).

[195] *Johns v. The Supreme Ct. of Ohio,* 753 F.2d 524, 526 (6th Cir. 1985) (citation omitted).

[196] See ECF No. 26, PageID.279-282.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

Plaintiffs' arguments for summary judgment, and in opposition to the Motions to Dismiss, largely overlap. Therefore, most (if not all) of the proceeding also serves as Plaintiffs Reply to the Federal Defendants' summary judgment response. However, a few points warrant further discussion.

The Federal Defendants claim that Plaintiffs have no injury because the VA and SBA are supposedly just "providing nonpartisan voter registration services that many Federal, State, and local offices also provide."[197] But that doesn't pass the smell test. All signs point to the Federal Defendants' purported designations as VRAs being calculated political maneuvers, designed to increase *Democrat* votes. As Rep. María Elvira Salazar (R-FL) explained in a June 2024 press release, "the House Committee on Small Business retrieved a video recording of an SBA Special Advisor alleging that SBA Administrator Isabel Guzman was indirectly campaigning for President Joe Biden."[198] "At the same time, SBA press releases also indicated Administrator Guzman traveled to several critical battleground states, including Michigan, and invited Democratic Members of Congress nearly 8 times more frequently than Republican Members."[199] "The Committee also released maps that overlay former SBA events, census data, Michigan Department of State data, and publicly reported information of Democrat-targeted voter blocs."[200] An investigation by the House Small Business Committee also found "that 22 out of 25 SBA outreach events from January to April have taken place in counties with the highest population of Democratic National Committee (DNC) target demographics."[201] Again, this is something that the SBA has never done before,[202]

---

[197] ECF No. 32, PageID.350

[198] <https://salazar.house.gov/media/press-releases/salazar-exposes-sbas-voter-registration-scheme-michigan-2024-elections> (accessed October 2, 2024).

[199] *Id*.

[200] *Id*.

[201] *Id*. See also <https://www.congress.gov/event/118th-congress/house-event/LC73100/text> (accessed October 2, 2024) (statement by Rep. Celeste Maloy (R-UT).

[202] <https://www.sba.gov/article/2024/03/19/sba-administrator-guzman-announces-agencys-first-ever-voter-registration-agreement-michigan> (accessed October 2, 2024).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

and they are doing it in response to President Biden's Executive Order 14019,[203] and in conjunction with Michigan's Democratic Governor and Secretary of State.

The VA has likewise never been involved in voter registration prior to its recent collaboration with Michigan's Democratic Governor and Secretary of State – a step also taken in response to President Biden's Executive Order 14019.[204] "For VA's entire existence, it has never operated as a voter registration agency, until this executive order."[205] As noted in a recent House Committee on Veterans' Affairs press release, "in 2008 California asked V.A. to become a voter registration agency. Then V.A. Secretary James Peake declined California's request because becoming a voter registration agency would … diminish the agency's ability to fulfill its mission of providing medical care and benefits to veterans…."[206]

"If this was not concerning enough, the Biden-Harris Administration, which planned and executed all aspects of the executive order, refuses to share the strategic plans that V.A., and every other agency, submitted to the Biden-Harris administration."[207] Committee Chairman Mike Bost (R-IL) "question[ed] why Michigan is VA's focus despite [Michigan] having the 4th highest percentage of registered voters as a share of the voter population in the 2022 election."[208] "Michigan is of course a crucial swing state in the 2024 election," but the VA "isn't doing voter registration in all of Michigan."[209] Rather, Rep. Bost explained that the "VA is only registering voters in Saginaw and Detroit at facilities that cater to veterans living in the swing counties that have historically determined whether Michigan will go red or blue on November 5th."[210] The VA "is not focused on registering veterans to vote in … in northern Michigan, or the west side of the

---

[203] *Id.*
[204] See ECF No. 34, Vet Voice's Amicus Brief, PageID.385.
[205] <https://veterans.house.gov/news/documentsingle.aspx?DocumentID=6540> (accessed October 2, 2024).
[206] *Id.*
[207] *Id.*
[208] *Id.*
[209] *Id.*
[210] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

state outside Grand Rapids."[211]  The comments of Rep. Salazar & Rep. Bost illustrate that Plaintiffs' injuries are far more than speculative. Plaintiffs are not requesting an advisory opinion as the Federal Defendants suggest. Rather, Defendants' actions are putting the Trump Campaign and the Republican Party at a distinct competitive disadvantage.

The Federal Defendants also argue that "[a]ny injunctive relief directed at [their] voter registration services" would risk "creating serious voter confusion."[212] However, it is the State and Federal Defendants who have recently altered the status quo by trying to give the VA and SBA roles in voter registration that they never had for the first 30 years of the NVRA. As Plaintiffs explained previously, a Judgement in their favor would make registering to vote *no harder for veterans than it was for the 93 years* between the VA's formation and the Governor's ultra vires Executive Directive[213] VA was never a VRA prior to December 18, 2023, so the idea a significant number of veterans are relying on it to register is unsupported and illogical.[214] The same is true of the SBA, which had nothing to do with voter registration in the 71 years between its creation in 1953 and the Michigan Governor's June 2024 Executive Directive.  So, the Federal Defendants' reference to *Purcell v. Gonzalez*, 549 U.S. 1; 127 S. Ct. 5 (2006) is misplaced.

Finally, the Federal Defendants' arguments seem to confuse the various motions that are before this Court.  For example, the Federal Defendants assert that "mere allegations" of injury are "insufficient to carry [Plaintiffs] past summary judgment."[215] But no Defendant has moved for summary judgment; both groups of Defendants have filed Motions to Dismiss.  The fact that Plaintiffs have moved for summary judgment does not alter their rebuttal burden relative to the Motions to Dismiss.[216]

---

[211] *Id.*
[212] ECF No. 32, PageID.375.
[213] ECF No. 18, Plaintiffs' Response to Vet Voice's Motion to Intervene, PageID.164.
[214] ECF No. 18, PageID.168.
[215] ECF No. 32, PageID.365.
[216] See *Lugo v. City of Troy, New York*, 114 F.4th 80, 89 (2d Cir. 2024).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

**Conclusion**

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."[217] The unlawful actions of the State Defendants – and the Federal Defendants' cooperation with them – undermine that confidence. The State Defendants lacked authority to designate the VA or SBA as VRAs, and their attempt to do so—and the Federal Defendants' decision to act as VRAs—represents a continuing violation of Michigan law *and the NVRA*.

Plaintiffs therefore ask this Court to deny the Federal Defendants' Motion to Dismiss, grant Plaintiffs' Motion for Summary Judgment, and grant the relief requested in Plaintiffs' Complaint. To the extent this Court is inclined to grant any relief to the Federal Defendants, Plaintiffs request leave to file an amended complaint.[218]

Date: October 18, 2024    By:    */s/ Jonathan B. Koch*
                                  Jonathan B. Koch (P80408)
                                  Drew W. Broaddus (P64658)
                                  SMITH HAUGHEY RICE & ROEGGE
                                  Attorneys for Plaintiffs
                                  100 Monroe Center NW
                                  Grand Rapids, MI 49503
                                  (616) 774-8000 / 616-774-2461 (fax)

                          By:    */s/ Gary Lawkowski*
                                  David A. Warrington (*Admission Pending*)
                                  Gary Lawkowski
                                  DHILLON LAW GROUP
                                  Attorneys for Plaintiff Donald J. Trump for
                                  President 2024, Inc.
                                  2121 Eisenhower Avenue, Suite 608
                                  Alexandria, VA 22314
                                  415-433-1700 / 415-520-6593 (fax)

---

[217] *Purcell,* 549 U.S. at 4.
[218] **Ex. 1**, Proposed Amended Complaint. This proposed amended complaint also serves as the proposed amended pleading in the event this Court is inclined to grant the *State Defendants'* dispositive motion in part or in whole.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

REPUBLICAN NATIONAL COMMITTEE,
DONALD J. TRUMP FOR PRESIDENT 2024, INC.,
MICHIGAN REPUBLICAN PARTY, RYAN KIDD,
and CINDY BERRY,

        Plaintiffs,

v

GRETCHEN WHITMER, in her official capacity as
Governor of Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of State; and
JONATHAN BRATER, in his official capacity as
Director of the Michigan Bureau of Elections, U.S.
SMALL BUSINESS ADMINISTRATION, ISABEL
GUZMAN, in her official capacity as Administrator
of the Small Business Administration,
DEPARTMENT OF VETERANS AFFAIRS, and,
DENIS McDONOUGH, in his official capacity as
Secretary of Veterans Affairs,

        Defendants.

CASE NO. 1:24-cv-00720

HON. PAUL L. MALONEY

MAG. JUDGE SALLY J. BERENS

**<u>FIRST AMENDED COMPLAINT</u>**

---

Jonathan B. Koch (P80408)
Drew W. Broaddus (P64658)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiffs
100 Monroe Center NW
Grand Rapids, MI 49503-2802
616-774-8000 / 616-774-2461 (fax)
jkoch@shrr.com
dbroaddus@shrr.com

David A. Warrington (*Admission Pending*)
Gary Lawkowski
DHILLON LAW GROUP
Attorneys for Plaintiff Donald J. Trump for
President 2024, Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
415-433-1700 / 415-520-6593 (fax)
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## FIRST AMENDED COMPLAINT

Plaintiffs, the Republican National Committee ("The RNC"), Donald J. Trump for President 2024, Inc. ("Trump Campaign"), the Michigan Republican Party ("MRP"), Ryan Kidd and Cindy Berry ("Clerk Plaintiffs"), by and through their attorneys, Smith Haughey Rice & Roegge, bring this action under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20506, as well as various Michigan laws (including Const. 1963, art. 2, § 4(2), M.C.L. § 168.509u, and M.C.L. § 168.509n), against Defendants for declaratory and injunctive relief. Plaintiffs allege as follows:

## INTRODUCTION

1.      Section 7 of the NVRA authorizes "[e]ach State" to designate "agencies for the registration of voters in elections for Federal office." 52 U.S.C. §20506(a)(1). Although the statute requires that certain State offices be so designated, it also gives "each State" the discretion to "designate other offices" as "voter registration agencies" ("VRAs"). 52 U.S.C. § 20506(a)(2)-(3).

2.      Under Michigan law, the authority to make such designations is held solely by the Legislature. See Const. 1963, art. 2, § 4(2) ("The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.").

3.      The Michigan Legislature exercised this authority when it enacted M.C.L. § 168.509u, which designated "a recruitment office of the armed forces of the United States [as] a designated voter registration agency." It also authorized the Governor to "provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state." M.C.L. § 168.509u(1). However, that authority had to be exercised "[n]ot later than the thirtieth day after the effective date of [M.C.L. § 168.509u]."

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

4.      M.C.L. § 168.509u became effective January 10, 1995. Under its plain language, the Michigan Legislature did not authorize the Governor to unilaterally designate any VRAs after February 9, 1995.

5.      Despite the absence of such authority, Michigan Governor Gretchen Whitmer issued Executive Directive 2023-6 ("ED 2023-6") on December 18, 2023, purporting to designate several State and Federal agencies as VRAs, including the Defendant Department of Veterans Affairs ("VA").[1]

6.      The Michigan Legislature also has not granted the Secretary of State the authority to designate VRAs. See M.C.L. § 168.509n (Secretary of State is responsible for (a) developing a mail registration form and making it available for distribution, (b) instructing "designated voter registration agencies and county, city, township, and village clerks about the voter registration procedures and requirements imposed by law," and (c) by June 15 "of each odd numbered year," submitting a "a report on the qualified voter file" to member of the relevant state senate and house committees).

7.      Despite lacking such authority, Michigan's Secretary of State entered into a Memorandum of Understanding ("MOU")[2] and Memorandum of Agreement ("MOA")[3] on March 18, 2024, with the U.S. Small Business Administration ("SBA"), purporting to designate SBA offices throughout the State of Michigan as VRAs.

8.      Because the Governor and Secretary of State lack authority to make unilateral designations of new VRAs, their designations of VA and SBA offices as VRAs are *ultra vires* and unlawful under Michigan law.

9.      Moreover, because these unauthorized actions do not represent lawful designations by the State of Michigan for purposes of Section 7 of the NVRA, the designated VA and SBA offices are not lawfully operating as VRAs under federal law.

---

[1] See ECF No. 1, PageID.3, n. 1.
[2] ECF No. 22-4, PageID.245.
[3] ECF No. 22-3, PageID.234.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

## PARTIES, JURISDICTION, AND VENUE

10.     The Court has subject-matter jurisdiction because this case alleges violations of the NVRA. See 28 U.S.C. §1331; *Ex parte Young*, 209 U.S. 123; 28 S.Ct. 441 (1908).

11.     The NVRA authorizes a "person who is aggrieved by a violation of this chapter" to "bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(1)-(2).

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claims per 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," and "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties").

13.     Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District and because some Defendants "reside" here. 28 U.S.C. §1391.

14.     Plaintiff, the Republican National Committee ("RNC"), is the national committee of the Republican Party, as defined by 52 U.S.C. §30101(14), with its principal place of business at 310 First Street S.E., Washington, DC 20003.

15.     The RNC represents over 30 million registered Republicans in all 50 states, the District Columbia, and the U.S. territories. It is comprised of 168 voting members representing state Republican Party organizations, including three members who are registered voters in Michigan.

16.     The RNC works to elect Republican candidates to state and federal office. In November 2024, its candidates will appear on the ballot in Michigan for numerous federal and state offices.

17.     The RNC made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Michigan in past election cycles, and is doing so again in 2024.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1

18.     The RNC has vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Michigan elections and elsewhere. The RNC and Michigan GOP have strong interests in ensuring that they and their candidates compete for votes in a lawfully structured competitive environment. The RNC brings this suit to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates.

19.     The RNC and its members are concerned that Defendants' failure to comply with Michigan statutes governing VRA designation undermines the integrity of elections by increasing the opportunity for individuals to register to vote even though they are ineligible to do so, and by sowing confusion regarding whether the agencies purporting to offer assistance in registering voters are doing so in accordance with applicable law.

20.     Both as representatives of their candidates and their voters, and as organizations in their own right, the MRP and RNC each have a substantial interest in getting Republican candidates elected to office – an interest that is unique and separate from any held by the public at large. That includes ensuring that Republicans can seek office in a fair, competitive environment where state and federal law is enforced.

21.     The MRP and RNC also spend significant resources to preserve voter confidence and turnout. These efforts are harmed when voters see the Defendants collaborate to register voters in disproportionately Democratic areas of Michigan though agencies have, in the first 30 years of the NVRA's existence, never previously had any role in voter registration.

22.     Plaintiff, Donald J. Trump for President 2024, Inc. ("Trump Campaign") is the principal committee for President Donald J. Trump's campaign with its headquarters in West Palm Beach, FL.

23.     The Trump Campaign has the same interests in this case as the RNC with respect to the candidacy of President Trump and seeks to vindicate those interests in the same ways.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

24.    Plaintiff, the Michigan Republican Party ("MRP"), is a "major political party" as that term is defined by the Michigan Election Law. See MCL 168.16. Formed for the general purposes of, among other things, promoting Republican values and assisting candidates who share those values with election or appointment to partisan federal, state, and local office, MRP maintains headquarters at 520 Seymour Street, Lansing, Michigan 48912. Further, MRP works to ensure that elections in Michigan are conducted in a free, fair, and transparent manner, and works to protect the fundamental constitutional right to vote of its members and all Americans, and to promote their participation in the political process.

25.    MRP works to further its purpose by, *inter alia*, devoting substantial resources toward educating, mobilizing, assisting, and turning out voters in Michigan. To that end, MRP has made significant contributions and expenditures in support of Republican candidates up and down the ballot in Michigan in past election cycles, and is doing so again in 2024.

26.    MRP brings this action on behalf of itself and its members. As a result, Plaintiff MRP has a direct, personal, and substantial interest in this litigation to protect not only its own rights, but those of its candidates and members.

27.    Ryan Kidd is the elected clerk of Georgetown Township. Mr. Kidd is an elected local clerk who is responsible for administering elections, as well as processing voter registration applications for individuals who reside within their respective jurisdictions and ultimately registering those individuals to vote. Further by statute, Mr. Kidd is responsible for processing voter registration applications received from government offices properly designated as VRAs under the NVRA and Michigan law. See M.C.L. § 168.509w. When a local official has "a designated role to play in the interpretation and enforcement of" state election law, they are "proper parties to any suit seeking to challenge its validity and enjoin its enforcement." *Voting for Am., Inc. v. Andrade,* 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012), rev'd on other grounds, 732 F.3d 382 (5th Cir. 2013).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1

28.     Cindy Berry is the elected clerk of Chesterfield Township. Like Mr. Kidd, Ms. Berry is also an elected local clerk who is responsible for administering elections, as well as processing voter registration applications for individuals who reside within their respective jurisdictions and ultimately registering those individuals to vote. Further by statute, Ms. Berry is responsible for processing voter registration applications received from government offices properly designated as VRAs under the NVRA and Michigan law. See M.C.L. § 168.509w.

29.     M.C.L. § 168.509w(1)-(2) states that Mr. Kidd and Ms. Berry, the Clerk Plaintiffs, "shall[4] do all of the following":  "[v]alidate [an] application in the manner prescribed by the secretary of state," "[i]ssue a receipt to the applicant verifying the acceptance of the application," and "transmit the application … to the clerk of the county, city, or township where the applicant resides." So, what are the Clerk Plaintiffs to do when confronted with applications from agencies that have never acted as VRAs before, and have not been authorized by the Michigan Legislature to act as such?

30.     As Michigan's Court of Claims recently noted, it is difficult to "imagine anyone more in need of a ruling" on election-related matters "than a local clerk…."[5]  "Indeed, if she does not have standing … then nobody has standing…."[6]

31.     Defendants' ongoing ultra vires acts, which are beyond the scope of the authority granted to the Defendants by M.C.L. § 168.509u, and M.C.L. §168.509n, have created confusion about which state and federal offices are properly designated as "designated voter registration agencies" in accordance with the NVRA and Michigan law. Thus, the Clerk Plaintiffs need a declaration from the courts to guide their future conduct and the performance of his duties, especially as it relates to processing voter registration applications submitted by government offices purporting to be designated VRAs.

---

[4] When used in a statute, the word "shall" creates "an obligation impervious to judicial discretion." *Smith v. Spizzirri*, 601 U.S. 472, 476; 144 S. Ct. 1173 (2024) (cleaned up). "Shall" leaves "no place for the exercise of discretion…." *Id.* (citation omitted).

[5] See ECF No. 26, PageID.282, n. 125.

[6] Id.

SHRR\6261415.v1

32.    Plaintiff Berry is also a registered voter that cast a ballot for the February 2024 presidential primary election through Michigan's early voting process, voted by absentee ballot in the August 6, 2024, primary election, and intends to vote by absentee ballot in future elections. Clerk Berry has a direct, personal, and substantial interest in ensuring that her vote counts and is not diluted.

33.    Because Defendants have not complied with applicable Michigan law or the NVRA, all Plaintiffs must deploy their time and resources to monitor Michigan elections for fraud and abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to follow the law.

34.    Defendant Gretchen Whitmer is the Governor of Michigan. She is the chief executive officer for the State of Michigan with the duty to execute and enforce the laws as written, not as she wishes them to be. Governor Whitmer is sued in her official capacity.

35.    Defendant Jocelyn Benson is the Michigan Secretary of State. She is the chief election official for the State of Michigan. The Secretary of State is the chief election officer of the state and has supervisory control over local election officials in the performance of their election duties. Secretary Benson is sued in her official capacity.

36.    Defendant Jonathan Brater is the Director of Elections. As such, he is vested with the powers and performs the duties of the Secretary of State under her supervision, with respect to the supervision and administration of the election laws. Director Brater is sued in his official capacity.

37.    Defendant SBA is a federal agency of the United States within the meaning of U.S.C. § 552(f)(1) whose mission statement is to "help[] Americans start, grow, and build resilient businesses." About SBA; Organization, *found at* https://www.sba.gov/aboutsba/organization (last visited October 8, 2024).

38.    Defendant SBA is, upon information and belief, acting as a VRA in the State of Michigan pursuant to the MOU and MOA that the Michigan Secretary of State entered into ultra vires.

SHRR\6261415.v1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

39.     Defendant Isabella Guzman is the Administrator of the SBA and is sued in her official capacity.

40.     Defendant VA is a department of the executive branch of the U.S. government with headquarters at 810 Vermont Ave NW, Washington, DC 20421. It is an agency within the meaning of 5 U.S.C. § 552(f).

41.     Defendant VA is, upon information and belief, acting as a VRA in the State of Michigan pursuant to the ED 2023-6 that the Michigan Governor issued ultra vires. Defendant Denis McDonough is the Secretary of the VA and is sued in his official capacity.

## **BACKGROUND**

42.     In 1993, Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3).

43.     Section 7 of the NVRA, 52 U.S.C. §20506(a)(2) requires that certain State agencies be designated as VRAs. Additionally, 52 U.S.C. §20506(a)(3)(A)-(B) states that "each State" has authority to "designate other offices within the State as voter registration agencies," which "may include" various "State or local government offices" or "Federal and nongovernmental offices, with the agreement of such offices."

44.     The designation of a federal office as a VRA is entirely within a state's discretion, with one exception. "A recruitment office of the Armed Forces of the United States shall be considered to be a voter registration agency designated under subsection (a)(2) for all purposes of this chapter." 52 U.S.C. §20506(c)(2).

45.     The NVRA defines the term "State" as "a State of the United States and the District of Columbia." 52 U.S.C. §20502(4). Throughout the statute, the NVRA distinguishes between a "State" and its "official[s] or "officer[s]." *See* 52 U.S.C. §20506 (using both the term "State" and the phrase "State election official"); 52 U.S.C. §20507(a)(2) (using the phrase "State election official"); 52 U.S.C. §20508 (using the phrase "chief election officers of the States"); *see also* 52 U.S.C. §20509 ("Each State shall

designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter.").

46.    How "each State" designates VRAs under the NVRA is a question of state law.[7]

47.    Under Michigan's Constitution, "the legislative power of the State of Michigan is vested in a senate and a house of representatives." Michigan Const. 1963, art. 4, § 1. Consistent with Michigan's state constitutional arrangement, "the Legislature has the constitutional authority under Const. 1963, art. 2, § 4(2) to enact laws to preserve the purity of elections, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting." *Promote the Vote v. Sec'y of State,* 333 Mich. App. 93, 123; 958 N.W.2d 861 (2020).

48.    "The executive power is vested in the governor." Michigan Const. 1963, art. 5, § 1. But "[t]he governor has no power to make laws." *People v. Dettenhaler*, 118 Mich. 595, 602; 77 N.W. 450 (1898). And the governor only has the authority to it given by the Michigan Constitution or the Legislature. *People ex rel Sutherland v. Governor*, 29 Mich. 320, 328-329 (1874) ("The apportionment of power, authority and duty to the governor, is either made by the people in the constitution, or by the Legislature in making laws under it.").

49.    After Congress enacted the NVRA in 1993, the Michigan Legislature adopted laws to conform with the voter registration requirements of the NVRA. See *Ass'n. of Cmty. Organizations for Reform Now v. Miller,* 129 F.3d 833, 835 (6th Cir. 1997) ("On January 5, 1995, Michigan enacted Public Act 441 of 1994 in order to conform its voter registration procedure to the requirements of the National Voter Registration Act."). Public Act 441 was codified as M.C.L. § 168.509m-509gg.

---

[7] See ECF No. 26-2, PageID.302, Fed. Election Comm'n, Guide to Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples, at 1-5 (1994).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

10

50.    The stated purpose of these statutes is to "increase the integrity of the voting process" and to apply technology and information gathered by state and local governments "in a matter that ensures that accurate and current records of qualified voters are maintained." M.C.L. § 168.509m.

51.    The Legislature specifically defined "[d]esignated voter registration agency" as "an office designated under [M.C.L. § 168.509u] to perform voter registration activities in this state." M.C.L. § 168.509m(2)(a).

52.    M.C.L. § 168.508u provides the only avenue by which a government office can be a "designated voter registration agency" under Michigan law and, by extension, properly designated to conduct voter registration activities in Michigan under the NVRA.

53.    M.C.L. § 168.509u expressly designated "a recruitment office of the armed forces of the United States [as] a designated voter registration agency." It also authorized the Governor to "provide a list to the secretary of state designating the executive departments, state agencies, or other offices that will perform voter registration activities in this state." M.C.L. § 168.509u(1). However, that authority had to be exercised "Not later than the thirtieth day after the effective date of [M.C.L. § 168.509u]."

54.    M.C.L. § 168.509u became effective January 10, 1995. Therefore, the Michigan Legislature did not grant the Governor authority to designate any VRAs after February 9, 1995.

55.    Public Act 441 also included M.C.L. § 168.509n, which gives the Michigan Secretary of State specific responsibilities "for the coordination of the requirements imposed under this chapter, the National Voter Registration Act of 1993…."  It authorizes the Michigan Secretary of State to do three things: (a) develop and disseminate a mail registration form, (b) give instruction to designated VRAs and clerks, and (c) report to the relevant "committees of the senate and house of representatives…."  It does not authorize the designation of VRAs.

56.     When a voter registration application is "submitted in person at … a designated voter registration agency," the person processing the application shall "[v]alidate the application in the manner prescribed by the secretary of state" and "[i]ssue a receipt to the applicant verifying the acceptance of the application." M.C.L. § 168.509w(1).

57.     Then, within 7 days of receiving the application, "the designated voter registration agency … shall transmit the application … to the clerk of the county, city, or township where the applicant resides." M.C.L. § 168.509w(2). However, if the application is made 2-3 weeks before an election, the designated voter registration agency "shall transmit the application not later than 1 business day to the clerk of the county, city, or township where the applicant resides." M.C.L. § 168.509w(3).

58.     If the designated voter registration agency transmits "a completed application…to a county clerk," the Secretary of State "shall compensate the county clerk for the cost of forwarding the application to the proper city or township clerk of the applicant's residence from funds appropriated to the secretary of state for that purpose."

59.     Thus, when an individual applies to register to vote at a designated voter registration agency, even if the application is initially sent to the applicable county clerk, it is the clerk of the city or township where that individual resides that will ultimately be responsible for processing the application and registering that individual to vote.

60.     As noted above, in January 1995, M.C.L. § 168.509u authorized the then-Governor of Michigan to designate VRAs but required him to do so "not later than" February 6, 1995.

61.     In January 1995, Governor John Engler complied with that statutory directive by issuing Executive Order 1995-1 ("EO 1995-1").[8]

62.     EO 1995-1 recognized that "the NVRA requires that additional state offices be designated as voter registration agencies for applicants and recipients of public assistance, to wit: Aid to Families with

---

[8] ECF No. 26-3, PageID.304.

SHRR\6261415.v1

Dependent Children (AFDC), Medicaid, Food Stamps, and Women, Infant, Children (WIC)." It also recognized that "NVRA further requires that state offices be designated as voter registration agencies that provide state-funded programs primarily engaged in providing services to persons with disabilities, to wit: Michigan rehabilitation services and psychiatric hospitals."

63.     Thus, "[p]ursuant to Sections 7 (a) (2) (A) and 7 (a) (2) (B) of the NVRA," Governor Engler specifically designated the following offices "to accept applications for voter registration":

    a.     Michigan Department of Social Services local offices which accept applications and administer benefits for the Aid to Families with Dependent Children (AFDC), Medicaid, and Food Stamp programs;

    b.     County health department offices and other agencies which contract with the Department of Public Health which accept applications and administer benefits for the Women, Infants and Children program (WIC);

    c.     Local Michigan rehabilitation services offices;

    d.     Adult inpatient psychiatric hospitals operated by the Michigan Department of Mental Health.

64.     Additionally, Governor Engler purported to designate "[a]ny other public office…which the Governor may from time to time designate by Executive Directive."

65.     Under Michigan law, Executive *Directives* do not have the force and effect of law and are not subject to Legislative review.  See Unpublished opinion of the Michigan Attorney General (No. 7224, February 20, 2009).[9]

66.     Since January 1995, the Legislature has not granted any further authority to the Michigan Governor to designate VRAs.

67.     For almost three decades, there were no attempts to further designate any other agencies—state, federal, or local—as VRAs in Michigan.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

---

[9] ECF No. 26-8, PageID.318.

68.　　On March 7, 2021, President Joseph R. Biden Jr. issued Executive Order 14019, which directed federal departments and agencies to "partner with State, local, Tribal, and territorial officials" and "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation."[10]

69.　　Executive Order 14019 also stated that each federal agency, "if requested by a State to be designated as a voter registration agency pursuant to section 7(a)(3)(B)(ii) of the National Voter Registration Act, shall, to the greatest extent practicable and consistent with applicable law, agree to such designation."

70.　　On May 1, 2022, Governor Whitmer issued Executive Directive 2022-4.[11] In it, she recognized that "EO 1995-1 designated specific state offices as voter registration agencies pursuant to sections 7(a)(2)(A) and (B) of the NVRA" but that, "[s]ince 1995, there have been myriad changes to public assistance programs and programs that provide services to persons with disabilities, as well as to the offices that accept applications for and administer these programs."

71.　　"In light of these changes," Governor Whitmer concluded that "it is time to review and update Michigan's list of voter registration agencies."

72.　　Thus, claiming authority "under sections 1 and 8 of Article 5 of the Michigan Constitution of 1963," Governor Whitmer directed, among other things, the Department of State to "review Michigan's compliance with the requirements of the NVRA, in particular, the requirement in section 7 that all state offices that provide either public assistance or state-funded programs primarily engaged in providing services to persons with disabilities are offering voter registration services."

73.　　Governor Whitmer stated that "[t]o the extent that the Department of State recommends additional offices be designated as voter registration agencies to comply with the NVRA, [she] expect[ed]

[10] ECF No. 26-9, PageID.326.
[11] ECF No. 26-4, PageID.306.

SHRR\6261415.v1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

to take appropriate action expeditiously." She also indicated a desire to take additional action "including but not limited to designating additional offices as voter registration agencies pursuant to section 7(a)(3) of the NVRA."

74.    In September 2023, the Michigan Secretary of State and the U.S. Department of Veterans Affairs announced the signing of an interagency agreement that purported to designate the Department, the Saginaw VA Medical Center, the Detroit VA Medical Center, and the Detroit Regional Office as voter registration agencies and offices.

75.    The Michigan Department of State's press release stated that "[t]he official designation of VA as a voter registration site will come through an executive order by Governor Whitmer in the coming weeks."[12]

76.    Three months later, on December 18, 2023, Governor Whitmer issued Executive Directive 2023-6 which, among other things, designated "the following state departments, agencies, and offices" as VRAs:[13]

    a.    Michigan Department of Health and Human Services;

    b.    Michigan Department of Military and Veterans Affairs;

    c.    Michigan Rehabilitation Services of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;

    d.    Bureau of Services for Blind Persons of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training;

    e.    Wage and Hour Division of the Michigan Department of Labor and Economic Opportunity's Bureau of Employment Relations;

    f.    Michigan Worker's Disability Compensation Agency;

    g.    Workforce Development of the Michigan Department of Labor and Economic Opportunity's Office of Employment and Training; and

    h.    Michigan State Housing Development Authority.

---

[12] ECF No. 26-5, PageID.309.
[13] ECF No. 26-6, PageID.313.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

15

77.     ED 2023-6 also purported to designate "the U.S. Department of Veterans Affairs" as a VRA "subject to the agreement it has signed with the State of Michigan."

78.     For her alleged authority to make these designations, Governor Whitmer relied on "Section 1 of Article 5 of the Michigan Constitution of 1963" and "Section 8 of Article 5 of the Michigan Constitution of 1963."

79.     Section 1, Art. 5 of the Michigan Constitution states that "the executive power is vested in the governor."

80.     Section 8, Art. 5 of the Michigan Constitution states that the governor has supervisory authority over "[e]ach principal department" and "shall take care that the laws be faithfully executed."

81.     On March 18, 2024, the Michigan Secretary of State entered into the aforementioned MOU[14] and MOA[15] with the SBA, purporting to designate the SBA's offices throughout Michigan as VRAs.

82.     The MOU is essentially an "agreement to agree" or statement of common cause, but lacks the binding power of a contract. The apparent purpose of the MOU is to acknowledge a formal, ongoing, and strategic relationship between the Michigan Secretary of State and the SBA.  The MOA, on the other hand, is a contractual document that formally establishes specific legal obligations running between the two.

83.     The MOA states in Part III that the "SBA enters into this MOA under the legal authority of section 8(b) of the Small Business Act, 15 U.S.C. 637(b), and pursuant to section 20506 of the NVRA [National Voter Registration Act] as referenced above in Part I."  Part I cites See 52 USC § 20506(a)(2).

84.     But the Michigan Secretary of State's authority is not specifically mentioned.  In Part II, entitled "Purpose," the MOA references "a 1994 state statute that directed the Governor to designate VRAs," and a 1995 Executive Order from Governor Engler that "allows the Governor to designate

---

[14] ECF No. 22-4, PageID.245.
[15] ECF No. 22-3, PageID.234.

SHRR\6261415.v1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

additional VRAs through an executive directive." The "Purpose" section of the MOA further claims that "Michigan law makes the Secretary of State 'responsible for the coordination of the requirements imposed under … the National Voter Registration Act of 1993.' These responsibilities include '[i]nstruct[ing] designated voter registration agencies and [local] clerks about the voter registration procedures and requirements imposed by law.'"

85.    The MOU and MOA prompted a Congressional Investigation as well as a Freedom of Information Act suit, which is ongoing. See *Heritage Foundation v. SBA,* Case 1:24-cv-01363-CJN (D.D.C.).

86.    Neither ED 2023-6, the MOU, nor the MOA were authorized by the Michigan Legislature. Moreover, under Michigan law, Executive *Directives* do not have the force and effect of law and are not subject to Legislative review.

**COUNT I**
**<u>VIOLATION OF MICHIGAN LAW BY STATE DEFENDANTS</u>**

87.    Plaintiffs reallege each of the prior allegations in this complaint.

88.    Defendants Gretchen Whitmer, Jocelyn Benson, and Jonathan Brater ("State Defendants") have failed to comply with the Michigan Constitution and the Michigan Election Law by treating federal agencies as "designated voter registration agenc[ies]" under MCL 168.509m even though they have not been so "designated" in accordance with the Michigan Election Law, including MCL 168.509u.

89.    On an ongoing and systemic basis, the State Defendants have violated, and unless enjoined, will continue to violate the election laws of the State of Michigan related to the designation of VRAs.

90.    The State Defendants' failure to comply with the VRA-designation requirements embodied in the laws of the State of Michigan injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates by undermining confidence in the integrity of the electoral process and discouraging participation in the democratic process, which will harm the electoral prospects of Republican candidates.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1

91.     The State Defendants' failure to comply with the VRA-designation requirements embodied in the laws of the State of Michigan injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates, who have a right to vote and compete in lawfully structured elections that comply with the procedures and protections required by Michigan election law.

92.     The State Defendants' failure to comply with the VRA-designation requirements embodied in the laws of the State of Michigan injures the Clerk Plaintiffs by burdening the fulfillment of their federal and state statutory duties, including by creating confusion regarding whether the federal agencies claiming to act as VRAs has been properly designated as such in accordance with the NVRA and related Michigan statutory law.

93.     The State Defendants' violations of Michigan's Election Law have caused economic, financial, and political injury to the Plaintiffs, including by forcing them to allocate additional resources and misallocate their scarce resources in ways they otherwise would not have

94.     The State Defendants' unprecedented steps of designating the SBA and VA as VRAs must also be viewed in the larger context of the 2024 election cycle. In just the last few months the State Defendants have (1) tried to significantly change Michigan election laws under the guise of a "manual,"[16] (2) sought to immediately enact administrative rules that would limit recounts, even though the enabling legislation won't take effect until months after the election,[17] (3) resisted, on mootness and standing grounds, litigation to clean up the voter rolls,[18] and (4) taken extraordinary measures to keep certain Presidential candidates off[19] and certain candidates on the ballot[20] And all of this is happening in the midst

---

[16] *O'Halloran v. Sec'y of State,* __ Mich. __; _ N.W.3d __ (2024) (Docket No. 166424).

[17] See https://www.misenategop.com/runestad-pushes-back-against-efforts-to-change-state-election-rules-ahead-of-new-law-taking-effect/

[18] *Pub. Int. Legal Found. v. Benson,* No. 1:21-CV-929, 2024 WL 1128565, at *13 (W.D. Mich. Mar. 1, 2024), appeal pending, Sixth Circuit Docket No. 24-1255.

[19] *Holliday v. Sec'y of State,* __ Mich. App. __; _ N.W.3d __ (2024) (Docket No. 372241).

[20] *Kennedy v. Benson,* No. 24-12375, 2024 WL 4231578, at *7 (E.D. Mich. Sept. 18, 2024).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1

of unprecedented "border crisis"[21] and the resulting concerns about ineligible persons casting votes. And the Federal Defendants are active participants in this unprecedented endeavor.

95.     Thus, there is an actual case and controversy between Plaintiffs and the State Defendants.

96.     Plaintiffs will continue to suffer irreparable injuries as a direct result of the State Defendants' violation of Michigan law until Defendants are enjoined from violating the law.

97.     Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants and provide the following relief:

A.     A declaratory judgment that the State Defendants have violated Michigan Const. 1963, art. 2, § 4(2), as well as MCL 168.509m and MCL 168.509u;

B.     A preliminary and permanent injunction barring the State Defendants from designating any VRAs without express authorization from the Michigan Legislature;

C.     An order declaring the designation of any VRAs under ED 2023-6, the 2022 Interagency Agreement, the 2023 MOU and MOA, and any future executive directives issued without legislative authorization are invalid;

D.     Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and

E.     All other further relief that Plaintiffs may be entitled to.

## COUNT II
## VIOLATION OF THE NVRA BY THE STATE DEFENDANTS

98.     The NVRA presupposes that States act in accordance with their own laws.[22]

99.     Moreover, if States don't "establish procedures"[23] to designate VRAs, they are not in compliance with the Act.

---

[21] *United States v. Abbott,* 110 F.4th 700, 734 (5th Cir. 2024) (Ho, J., concurring in part).
[22] See 52 U.S.C. § 20503(a) ("each State shall establish procedures to register to vote … at a Federal, State, or nongovernmental office designated under [§ 20506]."
[23] *Id.*

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1

100.    The word "establish" has been defined as "[t]o set up on a secure or permanent basis; to found (a government, an institution; in modern use often, a house of business)," or "[t]o set up or bring about permanently (a state of things)."[24]

101.    And "the dictionary defines 'procedure' as a series of steps followed in a regular orderly definite way."[25] Other dictionary definitions of "procedure" include "a particular way of doing or of going about the accomplishment of something," a "particular course of action, a "particular step adopted for doing or accomplishing something," or a "traditional, customary, or otherwise established or accepted way of doing things."[26]

102.    So the State Defendants' failure to follow "established" State "procedures," in their attempts to designate Small Business Administration ("SBA") and Department of Veterans Affairs ("VA") as VRAs, also violates the NVRA.

103.    There is nothing "established" about the Michigan Governor dusting off a 28-year-old Executive Order that none of her predecessors had ever invoked and relying upon it to designate federal agencies as VRAs via Executive Directives. Designating VRAs in this matter – particularly where all prior VRAs had been designated pursuant to specific statutory authority - is not part of any "series of steps followed in a regular orderly definite way." It is completely ad hoc.

104.    So is the Secretary of State's contract with the SBA - something which wasn't contemplated or authorized by either ED 1995-1 or M.C.L. § 168.509n. This appears to have been a practice invented out of whole cloth in response to President Biden's 2021 Executive Order, not an act taken as part of any "established procedure."

---

[24] *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.,* 35 F.4th 1225, 1242-1243 (10th Cir. 2022) (citation omitted).
[25] *Owen v. I.C. Sys., Inc.,* 629 F.3d 1263, 1272 (11th Cir. 2011) (cleaned up).
[26] *Jennison v. Providence St. Vincent Med. Ctr.,* 174 Or. App. 219, 225 n.9; 25 P.3d 358 (2001).

SHRR\6261415.v1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

105.    Again, under the NVRA, "each State *shall* establish procedures…."[27] When used in a statute, the word "shall" creates "an obligation impervious to judicial discretion."[28] "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."[29] Indeed, the use of "shall" leaves "no place for the exercise of discretion…."[30]

106.    This only leaves two possibilities. Either the designations of the SBA and VA violated the NVRA because they were not made pursuant to the procedures established by the Michigan Legislature. Or, if the ultra vires actions of the Governor and Secretary of State are allowed to stand, it would mean that Michigan has no "established procedures" for designating VRAs, which is still a violation § 20503(a).

107.    These designations also violate the NVRA because § 20503(a) and § 20506 require "each *State*" to make the designations. The word "State" must read in light of the fact that when it enacted the NVRA, Congress was exercising its power under the Elections Clause.[31] The Elections Clause "imposes" on "state *legislatures* the 'duty' to prescribe rules governing federal elections."[32]

108.    It follows that, for purposes of the NVRA, "each *State*" means the legislature of each state, and not executive officers or officials. So, unless designated by the Legislature – or pursuant to a grant of authority from the Legislature – the designation has not been made by the "State" as required by the NVRA. Consequently, the State Defendants' attempt to designate SBA and VA as VRAs without any grant of authority from the Legislature means that the attempted designations violate both Michigan law *and the NVRA.*

---

[27] 52 U.S.C. § 20503(a) (emphasis added).
[28] *Smith v. Spizzirri,* 601 U.S. 472, 476; 144 S. Ct. 1173 (2024) (cleaned up).
[29] *Id.* (citation omitted).
[30] *Id.* (citation omitted).
[31] *Miller,* 129 F.3d at 836.
[32] *Moore,* 600 U.S. at 10 (emphasis added).

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

**COUNT III**
**VIOLATION OF NVRA BY THE SBA & VA**

109.    Plaintiffs reallege each of the prior allegations in this complaint.

110.    To help address voter fraud and ensure compliance with federal election law, the NVRA includes a private right of action. 52 U.S.C. §20510(b).

111.    A plaintiff may sue without pre-suit notice when "the violation occurred within 30 days before the date of an election for Federal office…." 52 U.S.C. §20510(b)(3). Thus, a "plaintiff can satisfy the NVRA's notice provision by plausibly alleging that an ongoing, systematic violation is occurring at the time the notice is sent or, if no notice is sent, when the complaint is filed within 30 days of a federal election." See *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1044 (9th Cir. 2015); *Valdez v. Squier,* 676 F.3d 935, 939 (10th Cir.2012) (upholding the grant of summary judgment for a plaintiff who alleged that a state's policy caused "ongoing violations" of the NVRA).

112.    "Election" is defined at 52 U.S.C. §20502(1) by reference to 52 U.S.C. §30101(1), which defines "election" as:  "(A) a general, special, primary, or runoff election; (B) a convention or caucus of a political party which has authority to nominate a candidate; (C) a primary election held for the selection of delegates to a national nominating convention of a political party; and (D) a primary election held for the expression of a preference for the nomination of individuals for election to the office of President."

113.    By statute, Michigan holds its general primary election for all partisan offices "on the Tuesday after the first Monday in August before every general November election." M.C.L. § 168.534. In 2024, Michigan will be holding its partisan primary election on August 6, 2024, during which registered voters will cast their ballots for a variety of state, local, and federal candidates, including candidates for the offices of United States Senator and United States Representative.

114.    This Complaint is being filed within 30 days of Michigan's August 6, 2024 primary election.

115.    The ultra vires designations of VRAs under ED 2023-6, the MOU, and the MOA are systematic and ongoing and will continue to occur within 30 days before Michigan's August 6, 2024

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1

primary. See *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1044 (9th Cir. 2015); *Scott v. Schedler,* 771 F.3d 831, 834, 840 (5th Cir. 2014) (leaving "intact the district court's determination that the NAACP has complied with the notice requirement" by alleging "systematic and ongoing violations of several provisions of Section 7 of the NVRA"); *Jud. Watch, Inc. v. Griswold,* 554 F. Supp. 3d 1091, 1106 (D. Colo. 2021.

116.    On an ongoing and systemic basis, the SBA and VA have violated, and unless enjoined, will continue to violate the election laws of the State of Michigan related to the designation of VRAs.

117.    The SBA and VA's continued operation as VRAs – where their designations do not meet the VRA-designation requirements embodied in the laws of the State of Michigan - injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates by undermining confidence in the integrity of the electoral process and discouraging participation in the democratic process, which will harm the electoral prospects of Republican candidates.

118.    The SBA and VA's continued operation as VRAs – where their designations do not meet the VRA-designation requirements embodied in the laws of the State of Michigan – injures the Trump Campaign, the RNC, and MRP as well as their members, voters, and candidates, who have a right to vote and compete in lawfully structured elections that comply with the procedures and protections required by the NVRA and Michigan election law.

119.    The SBA and VA's continued operation as VRAs – where their designations do not meet the VRA-designation requirements embodied in the laws of the State of Michigan – injures the Clerk Plaintiffs by burdening the fulfillment of their federal and state statutory duties, including by creating confusion regarding whether the federal agencies claiming to act as VRAs have been properly designated as such in accordance with the NVRA and related Michigan statutory law.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

120.    The SBA and VA's continued unlawful operation as VRAs have caused economic, financial, and political injury to the Plaintiffs, including by forcing them to allocate additional resources and misallocate their scarce resources in ways they otherwise would not have.

121.    Plaintiffs  have suffered concrete, tangible injuries as there is considerable evidence in the public record that the designating the SVB and VA as VRAs was a calculated political maneuver, designed to increase *Democrat* votes.

122.    For example, Rep. María Elvira Salazar (R-FL) explained in a June 2024 press release, "the House Committee on Small Business retrieved a video recording of an SBA Special Advisor alleging that SBA Administrator Isabel Guzman was indirectly campaigning for President Joe Biden."[33]

123.    "At the same time, SBA press releases also indicated Administrator Guzman traveled to several critical battleground states, including Michigan, and invited Democratic Members of Congress nearly 8 times more frequently than Republican Members."[34]

124.    "The Committee also released maps that overlay former SBA events, census data, Michigan Department of State data, and publicly reported information of Democrat-targeted voter blocs."[35]

125.    An investigation by the House Small Business Committee also found "that 22 out of 25 SBA outreach events from January to April have taken place in counties with the highest population of Democratic National Committee (DNC) target demographics."[36] Again, this is something that the SBA has

---

[33]<https://salazar.house.gov/media/press-releases/salazar-exposes-sbas-voter-registration-scheme-michigan-2024-elections> (accessed October 2, 2024).

[34] Id.

[35] Id.

[36] Id. See also <https://www.congress.gov/event/118th-congress/house-event/LC73100/text> (accessed October 2, 2024) (statement by Rep. Celeste Maloy (R-UT), "[t]hey are registering voters, not nationwide but in swing states and specifically in very blue parts of those swing  states.").

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

never done before,[37] and they are doing it in response to President Biden's Executive Order 14019,[38] and in conjunction with Michigan's Democratic Governor and Secretary of State.

126.    The VA has likewise never been involved in voter registration prior to its recent collaboration with Michigan's Democratic Governor and Secretary of State – a step also taken in response to President Biden's Executive Order 14019.

127.    "For VA's entire existence, it has never operated as a voter registration agency, until this executive order."[39] As noted in a recent House Committee on Veterans' Affairs press release, "in 2008 California asked V.A. to become a voter registration agency. Then V.A. Secretary James Peake declined California's request because becoming a voter registration agency would … diminish the agency's ability to fulfill its mission of providing medical care and benefits to veterans…."[40]

128.    "If this was not concerning enough, the Biden-Harris Administration, which planned and executed all aspects of the executive order, refuses to share the strategic plans that V.A., and every other agency, submitted to the Biden-Harris administration."[41]

129.    Committee Chairman Mike Bost (R-IL) "question[ed] why Michigan is VA's focus despite [Michigan] having the 4th highest percentage of registered voters as a share of the voter population in the 2022 election."[42] "Michigan is of course a crucial swing state in the 2024 election," but the VA "isn't doing voter registration in all of Michigan."[43]

---

[37] <https://www.sba.gov/article/2024/03/19/sba-administrator-guzman-announces-agencys-first-ever-voter-registration-agreement-michigan> (accessed October 2, 2024).

[38] Id.  A court may take judicial notice of congressional testimony and House Committee reports. See *Dingle v. Bioport Corp.,* 388 F.3d 209, 211 (6th Cir. 2004).  And a "court that is ruling on a" motion to dismiss "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003).

[39] <https://veterans.house.gov/news/documentsingle.aspx?DocumentID=6540> (accessed October 2, 2024).

[40] Id.

[41] Id.

[42] Id.

[43] Id.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

25

130.    Rather, Rep. Bost explained that the "VA is only registering voters in Saginaw and Detroit at facilities that cater to veterans living in the swing counties that have historically determined whether Michigan will go red or blue on November 5th."[44]  The VA "is not focused on registering veterans to vote in … in northern Michigan, or the west side of the state outside Grand Rapids."[45]

131.    The comments of Rep. Salazar & Rep. Bost illustrate that Plaintiffs' injuries are not speculative; Plaintiffs have "organizational standing"/resource allocation, "competitive standing," "associational standing" - as well as the Clerk Plaintiffs' "particularized" injury in their capacity as the elected clerks of Georgetown and Chesterfield Township

132.    There is an actual case and controversy between Plaintiffs and the SBA and VA.

133.    Plaintiffs will continue to suffer irreparable injuries as a direct result of the SBA and VA's continued operation as VRAs.

134.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against the SBA and VA and provide the following relief:

A.    A declaratory judgment that the SBA and VA are in violation of Section 7 of the NVRA;

B.    A preliminary and permanent injunction barring the SBA and VA from operating as VRAs without express authorization from the Michigan Legislature;

C.    An order declaring the designation of the SBA and VA as VRAs under ED 2023-6, the MOA, and MOU, and any future executive directives issued without legislative authorization is invalid;

D.    Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and

E.    All other further relief that Plaintiffs may be entitled to.

---

[44] Id.
[45] Id.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1

## COUNT IV
## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT ("APA"), 5 U.S.C. § 704 BY THE SBA AND VA

135.    Plaintiffs reallege each of the prior allegations in this complaint.

136.    There is an actual case and controversy between Plaintiffs and the SBA and VA.

137.    The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). Agency action is arbitrary and capricious if it is not the product of reasoned decision making. This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of the problem before it.

138.    Because they were not properly designated as VRAs under Michigan law, the SBA's and VA's agreements to act as VRAs under Section 7 of the NVRA were "not in accordance with law" and "in excess of statutory … authority."

139.    The SBA's and VA's agreements to act as VRAs were also arbitrary and capricious because the agencies did not adequately explain how their purported designations as VRAs satisfied the requirements of Section 7 of the NVRA.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against the SBA and VA and provide the following relief:

A.    A declaratory judgment that the SBA and VA are in violation of the APA;

B.    A preliminary and permanent injunction barring the SBA and VA from operating as VRAs without express authorization from the Michigan Legislature;

C.    An order declaring the designation of the SBA and VA as VRAs under ED 2023-6, the MOA, and MOU, and any future executive directives issued without legislative authorization is invalid;

D.    Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and

E.    All other further relief that Plaintiffs may be entitled to.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

27

Date: October 18, 2024

By:  */s/ Jonathan B. Koch*
     Jonathan B. Koch (P80408)
     Drew W. Broaddus (P64658)
     SMITH HAUGHEY RICE & ROEGGE
     Attorneys for Plaintiffs
     100 Monroe Center NW
     Grand Rapids, MI 49503
     (616) 774-8000 / 616-774-2461 (fax)
     jkoch@shrr.com
     dbroaddus@shrr.com

By:  */s/ Gary Lawkowski*
     David A. Warrington (*Admission Pending*)
     Gary Lawkowski
     DHILLON LAW GROUP
     Attorneys for Plaintiff Donald J. Trump for
     President 2024, Inc.
     2121 Eisenhower Avenue, Suite 608
     Alexandria, VA 22314
     415-433-1700 / 415-520-6593 (fax)
     dwarrington@dhillonlaw.com
     glawkowski@dhillonlaw.com

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\6261415.v1