IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REPUBLICAN NATIONAL
COMMITTEE, et al.,

    *Plaintiffs*,

v.

GRETCHEN WHITMER, et al.,

    *Defendants*.

Case No. 1:24-cv-720-PLM-SJB

**FEDERAL DEFENDANTS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.   Plaintiffs Lack Article III Standing..................................................................... 1

     A.   Plaintiffs Fail to Allege Any Legally Cognizable Injury in Fact............................ 1

     B.   Plaintiffs' Proposed Amended Complaint Does Not Cure the Defects of
          Their Original Complaint......................................................................... 8

II.  Plaintiffs' Claims Against the Federal Defendants Fail on the Merits and Should
     Be Dismissed for Failure to State a Claim under Rule 12(b)(6)....................................... 11

     A.   Count II Fails to State a Claim under the NVRA .................................................. 11

     B.   Count III Fails to State a Claim under the APA .................................................... 12

III. If the State Defendants Are Dismissed, the Entire Action Should Be Dismissed
     under Rule 12(b)(7)............................................................................................ 13

CONCLUSION................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Wright*,
   468 U.S. 737 (1984) ................................................................................................ 6

*Am. First Legal Found. v. U.S. Dep't of Agric.*,
   No. 22-3029, 2023 WL 4581313 (D.D.C. July 18, 2023) ....................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 2, 4

*Ass'n of Am. Physicians & Surgeons v. FDA*,
   13 F.4th 531 (6th Cir. 2021) .................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 4

*Bragg v. W. Va. Coal Ass'n*,
   248 F.3d 275 (4th Cir. 2001) .................................................................................. 14

*Cockrel v. Shelby Cnty. Sch. Dist.*,
   270 F.3d 1036 (6th Cir. 2001) .................................................................................. 2

*Esurance Property & Cas. Ins. Co. v. Mich. Assigned Claims Plan*,
   968 N.W.2d 482 (Mich. 2021) ............................................................................... 12

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ........................................................................................ 3, 6, 7

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ................................................................................................ 5

*Lance v. Coffman*,
   549 U.S. 437 (2007) ................................................................................................ 6

*Mason v. Adams Cnty. Recorder*,
   901 F.3d 753 (6th Cir. 2018) .................................................................................... 6

*O'Rourke v. Dominion Voting Sys., Inc.*,
   No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022) ..................................... 5

*Pa. Voters All. v. Ctr. Cnty.*,
   496 F. Supp. 3d 861 (M.D. Pa. 2020) .................................................................... 10

*Passa v. City of Columbus*,
  123 F. App'x 694 (6th Cir. 2005) ............................................................................................ 8

*Republic of Phil. v. Pimentel*,
  553 U.S. 851 (2008) ................................................................................................................ 13

*Republican Nat'l Comm. v. Benson*,
  No. 1:24-cv-262, 2024 WL 4539309 (W.D. Mich. Oct. 22, 2024) ............................... 3, 4, 5, 8

*Reschenthaler v. Schmidt*,
  No. 1:24-cv-1671, 2024 WL 4608582 (M.D. Pa. Oct. 29, 2024) .......................................... 4, 6

*RNC v. Burgess*,
  No. 3:24-CV-00198-MMD-CLB, 2024 WL 3445254 (D. Nev. July 17, 2024) .................. 6, 10

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................................................................. 5

*Tenn. Conf. of the NAACP v. Lee*,
  105 F.4th 888 (6th Cir. 2024) ................................................................................................ 3, 4

*Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*,
  115 F.4th 480 (6th Cir. 2024) .................................................................................................. 2

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020) ................................................................................................ 5

**STATUTES**

52 U.S.C. § 20506(a) ...................................................................................................................... 13

52 U.S.C. § 20506(a)(2) .................................................................................................................. 12

52 U.S.C. § 20506(a)(4) .................................................................................................................. 10

52 U.S.C. § 20506(a)(5) .................................................................................................................. 10

52 U.S.C. § 20506(a)(6) .................................................................................................................. 10

52 U.S.C. § 20506(b) ................................................................................................................ 11, 12

52 U.S.C. § 20507(a)(1)(C) .............................................................................................................. 7

52 U.S.C. § 20507(a)(1)(D) .............................................................................................................. 7

**RULES**

Fed. R. Civ. P. 19(a)(1)(B)(i) .................................................................................................. 13

**REGULATIONS**

38 C.F.R. § 17.33(a)(4)(iv) ....................................................................................................... 9

**STATE STATUTES**

Mich. Comp. Laws § 168.509u ......................................................................................... 11, 12

**OTHER AUTHORITIES**

Steven J. Mulroy, *Baby & Bathwater: Standing in Election Cases After 2020*,
    126 Dick. L. Rev. 9 (2021) .................................................................................................. 4

VHA Directive 1060, *Voting Assistance for VA Inpatients and Residents*
    (updated Oct. 23, 2019), https://perma.cc/N2QN-86DH ............................................. 9

**INTRODUCTION**

Plaintiffs claim that the Federal Defendants—the U.S. Small Business Administration ("SBA") and the Department of Veterans Affairs ("VA")—violated the National Voter Registration Act of 1993 ("NVRA") and the Administrative Procedure Act ("APA") by being designated as voter registration agencies by the Governor of Michigan. The Federal Defendants' opening brief demonstrated that Plaintiffs have not adequately alleged any cognizable injury-in-fact under Article III, that their claims are meritless and predicated on erroneous interpretations of both the NVRA and State law, and that dismissal of the State Defendants would require dismissal of the entire action. Plaintiffs' response does not meaningfully engage with these arguments. Instead, Plaintiffs essentially argue that campaigns and political parties always have standing to ensure a lawfully structured competitive environment and that local elected clerks have standing if there is confusion whether the law was followed. Those assertions are incorrect. Article III requires Plaintiffs to allege facts sufficient to establish a plausible claim of injury. Because neither the organizations nor the clerk plaintiffs have plausibly explained how they are injured by the Governor's designation of the SBA and the VA as voter registration agencies, their Complaint should be dismissed for lack of subject-matter jurisdiction. But even if Plaintiffs had plausibly alleged any injury, they are wrong on the merits.

**ARGUMENT**

**I.      Plaintiffs Lack Article III Standing.**

    **A.      Plaintiffs Fail to Allege Any Legally Cognizable Injury in Fact.**

As an initial matter, Plaintiffs erroneously contend that the Federal Defendants misstated the relevant standard on a motion to dismiss. Plaintiffs assert (without citation) that because the Federal Defendants have not moved for summary judgment, they "cannot demand Rule 56 proofs of Plaintiffs' standing." ECF No. 44 at PageID.581 & n.71. But that misperceives the Federal

1

Defendants' arguments. The Federal Defendants did not argue that Plaintiffs' complaint should be *dismissed* for lack of evidence. Rather, the Federal Defendants argued that Plaintiffs' summary judgment motion should be denied because they presented no evidence of injury. *See* ECF No. 32 at PageID.15-16. For the Plaintiffs' summary judgment motion to succeed, they must "produce evidence that would conclusively support [their] right to a judgment." *Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 489 (6th Cir. 2024) (citation omitted). That means, for summary judgment purposes, Plaintiffs' burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (citation omitted). That they have failed to supply any record evidence *at all*, let alone unimpeachable proof, dooms their pre-answer request for summary judgment.

The Federal Defendants nowhere suggested that this standard applies to any motion to dismiss. To the contrary, the Federal Defendants correctly explained that "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" ECF No. 32 at PageID.354 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Notably, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should grant a defendant's motion to dismiss. *Id.* at 679.

Applying that standard, none of Plaintiffs' responses rehabilitate their deficient allegations of injury. First, Plaintiffs argue that their allegations of diverted resources are sufficient to plead Article III injury. They are not. *See* ECF No. 32 at PageID.360. There is no "categorical rule

2

allowing standing whenever 'an organization diverts its resources in response to a defendant's actions.'" *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 902 (6th Cir. 2024) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024)). Such a "theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided that they spend a single dollar opposing those policies." *All. for Hippocratic Med.*, 602 U.S. at 395. Thus, a plaintiff cannot establish standing "simply by expending money to gather information and advocate against the defendant's action." *Id.* Associations may not manufacture standing by alleging that the government's action "'caused' the associations to conduct their own studies" to "better inform their members and the public" about that action or "'forced' the associations to 'expend considerable time, energy, and resources' . . . engaging in public advocacy and public education." *Id.* at 394. Those allegations are insufficient even where the associations allege that the government's policy caused them "to spend 'considerable resources' to the detriment of other spending priorities." *Id.*

Those are precisely the kind of diversion-of-resources allegations Plaintiffs rely on here. *See* Compl. ¶¶ 25, 100, ECF No. 1 at PageID.6-7, 20. Just last week, a court in this district held that functionally identical allegations were insufficient to establish Article III injury. *Republican Nat'l Comm. v. Benson*, No. 1:24-cv-262, 2024 WL 4539309, at *10-12 (W.D. Mich. Oct. 22, 2024). There, the Republican National Committee ("RNC") argued that Michigan's alleged noncompliance with the NVRA caused it to "expend[] substantial time and resources investigating Defendants'" alleged noncompliance, "communicate[] with Michigan officials and concerned members about" that alleged noncompliance, and "research[] statements made by [Michigan] in their correspondence." *Id.* at *12. As here, the RNC alleged that were "it not for Defendants' failure to comply with [the NVRA], the RNC would have expended those resources on other

3

activities or would not have expended them at all." *Id.* The court concluded that such "allegations do not describe a personal stake in the outcome of a controversy as to warrant invocation of federal-court jurisdiction." *Id.*; *see* Order at 4, *Am. First Policy Inst. v. Biden*, No. 2:24-cv-152-Z (N.D. Tex. Sept. 15, 2024) (stating, in denying temporary restraining order, that "it is not clear . . . that committing additional resources in a political election is a cognizable standing injury anyway."). Plaintiffs' similar allegations here likewise do not establish Article III injury under a diversion-of-resources theory.

Second, the Complaint does not adequately allege any competitive injury. *See* ECF No. 32 at PageID.358. Plaintiffs' opposition to this argument relies exclusively on a 2021 law review article, the premise of which is to disagree with the federal court decisions resulting from the 2020 Presidential election. *See* ECF No. 44 at PageID.582; Steven J. Mulroy, *Baby & Bathwater: Standing in Election Cases After 2020*, 126 Dick. L. Rev. 9, 12-13 (2021). The article itself acknowledges that any allegations of "competitive disadvantage" must be "made with sufficient specificity to be 'plausible'" under the Supreme Court's decisions in *Iqbal* and *Twombly*. *Id.* at 22 & n.63 (citing *Iqbal*, 556 U.S. at 662 and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). That is precisely what the Federal Defendants argued in their opening brief. *See* ECF No. 32 at PageID.358-59 (arguing that Plaintiffs had not alleged "that they face an unfair disadvantage from the SBA and the VA being designated as voter registration agencies"). Yet Plaintiffs' response points to no allegation that would establish such a competitive disadvantage, and instead relies solely on the law review article and pre-*Iqbal* case law cited therein. ECF No. 44 at PageID.582 & nn.80-86. And as the Sixth Circuit has noted, after *Iqbal*, "general allegations" of harm like Plaintiffs offer here are insufficient to establish Article III injury. *Tenn. Conf. of the NAACP*, 105 F.4th at 903 (citation omitted); *see Reschenthaler v. Schmidt*, No. 1:24-cv-1671, 2024 WL

4608582, at *7 (M.D. Pa. Oct. 29, 2024) ("The hypothetical concerns the individual plaintiffs raise about the impact of [specific] votes in their individual elections are purely speculative, so their status as candidates, without more, gets them nowhere.").

Third, the RNC and the Michigan Republican Party have not properly pleaded the elements of associational standing. The elements of associational standing require the organization seeking to assert the rights of its members to show, among other things, that "its 'members would otherwise have standing to sue in their own right.'" *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 537 (6th Cir. 2021) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). "To satisfy this element, an organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base." *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)). It "must instead identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.* Neither the RNC nor the Michigan Republican Party have done that. Plaintiffs' response again merely asserts that the organizational plaintiffs have generic "members" on whose behalf they bring this action, but nowhere identify any specific member who has suffered injury. *See* ECF No. 44 at PageID.583.

This is not simply a pleading failure because it is doubtful that any of the organizational Plaintiffs' members could establish Article III injury in their own right. As many courts have concluded, individual voters' subjective fear that their votes will be diluted by those of ineligible voters are "an insufficient basis for properly invoking federal-court jurisdiction." *Benson*, 2024 WL 4539309, at *9-10; *see also, e.g.*, *O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022 WL 1699425, at *2 (10th Cir. May 27, 2022); *Wood v. Raffensperger*, 981 F.3d 1307, 1314-15

5

(11th Cir. 2020); *RNC v. Burgess*, No. 3:24-CV-00198-MMD-CLB, 2024 WL 3445254, at *6 (D. Nev. July 17, 2024), *appeal filed*, No. 24-5071 (9th Cir. Aug. 19, 2024). Courts have likewise routinely rejected injury based on allegations that the mere failure to follow the law undermines the integrity of elections. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). Plaintiffs here offer nothing more than a "generally available grievance about government" and seek relief that tangibly benefits their members "no more directly" than "the public at large." *Id.*; *see Mason v. Adams Cnty. Recorder*, 901 F.3d 753, 757 (6th Cir. 2018). Those allegations are insufficient. *See Reschenthaler*, 2024 WL 4608582, at *7 ("As for the organizational plaintiff, PA Fair Elections, the group does not identify a single member who has been injured. But even if they had, their claim of 'vote dilution' would be wholly speculative and legally inadequate as well.").

Fourth, plaintiff Ryan Kidd's allegations of harm do not plausibly establish injury. Mr. Kidd's status as a local clerk does not automatically grant him standing to sue, and none of the Federal or State authorities Plaintiffs cite support their claim of Article III standing. *See* ECF No. 32 at PageID.362-64. Rather than responding to the Federal Defendants' arguments, Plaintiffs simply recite the same inapposite cases and rehash the same deficient allegations from the complaint. *See* ECF No. 44 at PageID.584. Again, Plaintiffs assert that the State Defendants' designations of the SBA and the VA as voter registration agencies have "created confusion about which state and federal offices are properly designated." *Id.* at PageID.578. But that is another way of saying that Plaintiffs object to Defendants' allegedly unlawful conduct. And as the Supreme Court has long instructed, the mere allegation that the law was not followed is insufficient to invoke Article III jurisdiction. *See All. for Hippocratic Med.*, 602 U.S. at 381; *Allen v. Wright*, 468 U.S. 737, 760 (1984). There is no exception to Article III for election cases and no doctrine of "clerk standing." Plaintiffs must still allege that any assertedly illegal government conduct

6

causes them a concrete and particularized injury to satisfy the "essential and unchanging . . . case-or-controversy requirement of Article III." *All. for Hippocratic Med.*, 602 U.S. at 380 (citation omitted).  At bottom, Plaintiffs' argument is based on the circular proposition that a plaintiff can establish Article III standing by alleging that a government official's failure to follow the law has caused confusion as to whether the law was properly followed.  That cannot be correct, as it would allow any individual plaintiff to evade Article III's case or controversy requirement merely by alleging confusion.  *See All. for Hippocratic Med.*, 602 U.S. at 381; *cf.* Mem. & Order 5, ECF No. 68, *Ashcroft v. Biden*, No. 4:24-cv-1062 (E.D. Mo. Oct. 30, 2024) (concluding that allegation that federal activity "will be confusing to local election officials and make the administration of elections more difficult and less uniform" was insufficient to establish standing for preliminary injunction).

Plaintiffs rhetorically ask, "what is Mr. Kidd to do when confronted with applications" from voter registration agencies recently designated by the State Defendants?  ECF No. 44 at PageID.578.  Regardless of whether the agencies were properly designated, Mr. Kidd must accept and process eligible applicants in any case.  52 U.S.C. § 20507(a)(1)(C)-(D) (requiring processing of registration forms accepted at voter registration agencies and registration forms received "in any other case").  Plaintiffs never explain, however, why Mr. Kidd would be harmed by processing those registration applications as he would process application from any other voter registration agency whose designation he does not contest.  Indeed, Plaintiffs never explain how Mr. Kidd would in practice be aware that a particular application was transmitted with the assistance of a Federal office.  *See id.* at PageID.588.  For that reason, Plaintiffs' allegations fail to establish any injury.

7

### B. Plaintiffs' Proposed Amended Complaint Does Not Cure the Defects of Their Original Complaint.

Perhaps recognizing that their original pleading does not contain sufficient allegations to establish any injury, Plaintiffs seek leave to submit a proposed First Amendment Complaint to bolster their claim of injury. *See* ECF No. 44 at PageID.606-33. Leave to amend should be denied. Even accepting Plaintiffs' minimal new allegations as true, however, they do not remedy the defects of the original complaint.

As to organizational standing, Plaintiffs propose to add allegations that the RNC and the Michigan Republican Party have "made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Michigan in past election cycles, and [are] doing so again in 2024." ECF No. 44 at PageID.609, 611, ¶¶ 17, 25. "These allegations merely describe activities in which [those parties] normally engage[]"; they do not support the conclusion that any resources have been diverted. *Benson*, 2024 WL 4539309, at *11.

Similarly, Plaintiffs propose to add allegations supporting competitor standing, but they do not allege that they suffer any plausible disadvantage from the Federal Defendants' availability to register voters on a nonpartisan basis. Notably, Plaintiffs' proposed allegations are simply quotations from the public statements of two Republican Members of Congress.[1] Those statements, however, do not establish any partisan competitive harm from any federal agency serving as a voter registration agency. As to the SBA, the Plaintiffs merely state that (1) an SBA employee was secretly recorded saying that the SBA Administrator was "indirectly campaigning

---

[1] While public records are eligible for judicial notice, the "use of such documents is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

8

for President Joe Biden"; (2) the SBA Administrator travelled to "battleground states" and more frequently invited Democratic Members of Congress; and (3) the SBA hosted many events in counties that had some perceived political relevance.  *See* ECF No. 44 at PageID.629-30, ¶¶ 122-25.  The Federal Defendants would dispute those allegations.  But even accepting them as true for purposes of a motion to dismiss, they have nothing to do with the SBA offering nonpartisan voter registration services to eligible voters.  Other than the implication that the SBA acted with improper motives—which, again, the SBA would dispute—Plaintiffs still fail to connect the SBA's activities as a voter registration agency to any competitive disadvantage.

The same is true of Plaintiffs' proposed allegations against the VA.  Plaintiffs seek to allege (1) that the VA has "never been involved in voter registration prior to its" designation as a voter registration agency; (2) that a prior VA Secretary turned down a State's request to designate it as a voter registration agency based on the view that doing so would "diminish the agency's ability to fulfill its mission"; (3) that the VA has withheld a strategic plan in response to a Freedom of Information Act ("FOIA") request; and (4) that the VA provides voter registration services at facilities in Saginaw and Detroit.  ECF No. 44 at PageID.630-31, ¶¶ 126-31.  Again, none of that supports any claim to partisan disadvantage.  The first allegation is flatly incorrect, as the VA has a longstanding policy to assist inpatients and residents in exercising their right to vote.  *See* 38 C.F.R. § 17.33(a)(4)(iv); VHA Directive 1060, *Voting Assistance for VA Inpatients and Residents* (updated Oct. 23, 2019), https://perma.cc/N2QN-86DH.  In any event, the fact that the VA had previously declined to serve as a voter registration agency does not suggest that doing so now creates a partisan disadvantage, particularly where the prior declination was unrelated to partisan considerations.  Nor does the VA's withholding of a document in response to a FOIA request—a withholding that has been upheld as proper by a district court—indicate partisan disadvantage.  *See*

9

*Am. First Legal Found. v. U.S. Dep't of Agric.*, No. 22-3029, 2023 WL 4581313, at *7 (D.D.C. July 18, 2023), *appeal filed*, No. 23-5173 (D.C. Cir. July 31, 2023).

That leaves Plaintiffs' new allegation that there is some partisan disadvantage from the VA offering voter registration services in certain locations. But Plaintiffs fail to allege that the eligible voters actually using those services place them at a political disadvantage. The NVRA requires voter registration services to be provided to all eligible comers on a nonpartisan basis. 52 U.S.C. § 20506(a)(4)-(6). The Court cannot assume that the persons interacting with the VA are biased against Plaintiffs or their candidates. *See Burgess*, 2024 WL 3445254, at *2 (recognizing that voters' "choices will be informed by a cacophony of influences from political parties, candidates, voter advocacy groups, media outlets, friends, family, neighbors, and countless others" (citation omitted)); *Pa. Voters All. v. Ctr. Cnty.*, 496 F. Supp. 3d 861, 870 (M.D. Pa. 2020) ("The implication that increased voter turnout is inherently beneficial to progressive candidates is dubious at best.").

The Proposed Amended Complaint does not cure the defects of Plaintiffs' other standing theories, either. Plaintiffs' new allegations do not identify any member of the RNC or Michigan Republican Party who has allegedly been harmed, and therefore do not meet the elements of associational standing. *See* ECF No. 44 at PageID.609-11, ¶¶ 14-26. The Proposed Amended Complaint adds an additional township clerk, Cindy Berry, ECF No. 44 at PageID.612, ¶ 28, but her standing as an elected clerk fails for the same reasons as Mr. Kidd's. Plaintiffs' additional allegation that Ms. Berry is "a registered voter" and therefore has an "interest in ensuring that her vote counts and is not diluted," *Id.* at PageID.613, ¶ 32, is one that has been uniformly rejected as supporting standing in election cases, *see supra* at 5-6.

**II.     Plaintiffs' Claims Against the Federal Defendants Fail on the Merits and Should Be Dismissed for Failure to State a Claim under Rule 12(b)(6).**

**A.     Count II Fails to State a Claim under the NVRA**

The Federal Defendants explained in their opening brief the many legal defects with Plaintiffs' NVRA claim. *See* ECF No. 32 at PageID.365-69. The NVRA expressly authorizes Federal agencies to operate as voter registration agencies and directs that they "shall, to the greatest extent practicable, cooperate with the States in" doing so. 52 U.S.C. § 20506(b). So the SBA and the VA cooperating with the State Defendants to serve as voter registration agencies cannot plausibly be contrary to the NVRA. Any claim that the State Defendants violated State law in making the designations is not attributable to the Federal Defendants. The NVRA does not prescribe how States are to make those designations, and so however the State elects to make those designations cannot violate the NVRA. In any case, Governor Whitmer designated the SBA and the VA pursuant to authority granted by Michigan's legislature, as both the Federal Defendants and the State Defendants have explained, ECF No. 32 at PageID.368; ECF No. 22 at Page ID.217-21; ECF No. 40 at PageID.533-36; *see* Mich. Comp. Laws § 168.509u.

Nothing in Plaintiffs' opposition compels a different result. Plaintiffs agree that the NVRA "does not specify how" States must make their designations. ECF No. 44 at PageID.585 (cleaned up). Therefore, it is unclear how the Federal Defendants could violate the NVRA by accepting an apparently valid designation. Yet although Plaintiffs spend many pages explaining their strained reading of Michigan law to support their theory that the State Defendants violated State law, they never explain how the Federal Defendants could have violated the NVRA when they did not make the challenged designations. *See Id.* at PageID.597-98. Plaintiffs' reliance on the negative-implication canon also fails because the portion of Michigan law they cite as impliedly limiting the Governor's designation authority does not "express[ly] mention" any time-limited grant of

11

authority. *Id.* at PageID.587 (citation omitted); *see* Mich. Comp. Laws § 168.509u. Rather, that provision merely placed a deadline on the Governor to provide initial designations. *See* ECF No. ECF No. 22 at Page ID.217-21. In any case, the negative-implication canon "has force only when the items expressed are members of an associated group or series," which is not the case here. *Esurance Property & Cas. Ins. Co. v. Mich. Assigned Claims Plan*, 968 N.W.2d 482, 507 n.10 (Mich. 2021) (citation omitted).

Plaintiffs also argue that Michigan's designations violate the NVRA's requirement that States "establish" certain voter registration "procedures" because recent Governors had not amended the State's list of voter registration agencies. *See* ECF No. 44 at 596-97. There is no dispute, however, that the designation procedures the State Defendants used here have been established since 1995, when the Michigan legislature enacted Mich. Comp. Laws § 168.509u and Governor Engler made the first round of designations. Compl. ¶¶ 41, 52-56, ECF No. 1 at PageID.9, 11-12. It is Plaintiffs' interpretation that could place Michigan law in conflict with the NVRA, as their entire theory is that State law has no mechanism for Michigan to comply with its continuing obligation to designate mandatory State agencies. *See* 52 U.S.C. § 20506(a)(2). Plaintiffs' supposition that there are only two possible outcomes of the State Defendants' designation—that the designations violate the NVRA because they are either unauthorized or the State has no established procedures, ECF No. 44 at PageID.597—ignores an obvious third possibility: that Michigan's Governor has ongoing authority to designate voter registration agency designations.

### B. Count III Fails to State a Claim under the APA

Plaintiffs also fail to state a claim under the APA. Again, the NVRA expressly authorizes Federal agencies to serve as voter registration agencies and, in fact, encourages them to do so. 52 U.S.C. § 20506(b). As the Federal Defendants have explained, even assuming the State

12

Defendants violated State law in making the designations, the Federal Defendants' authority to enter the agreements means that their conduct was not contrary to law under the APA. *See, e.g.*, ECF No. 32 at PageID.367 & n.3. Plaintiffs fail to respond to the Federal Defendants' argument that the parties' authority to enter into the agreements at issue in this case was adequately explained. *See id.* at PageID.371. All parties' authority to enter those agreements is apparent from the face of those documents, *id.*, and in any event Plaintiffs concede that Federal Defendants have "explain[ed] why [they] went along with it," ECF No. 44 at PageID.574.

### III.     If the State Defendants Are Dismissed, the Entire Action Should Be Dismissed under Rule 12(b)(7).

Plaintiffs assert without explanation that there is no joinder problem because the Court could enjoin the Federal Defendants from serving as voter registration agencies even if the State Defendants are dismissed. ECF No. 44 at PageID.598. Respectfully, that is not the correct standard. The State Defendants are required parties not because the Court needs their presence to grant complete relief but because they have "an interest relating to the subject of the action" and because their absence will "impair or impede [their] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). The State Defendants unquestionably have an interest in defending their designations and authority, making them required parties here. Because the State Defendants' interest is "not frivolous, dismissal of the action must be ordered" if the Plaintiffs' State-law claims are barred by sovereign immunity. *Republic of Phil. v. Pimentel*, 553 U.S. 851, 867 (2008).

Plaintiffs nevertheless contend that they are really asserting a *Federal* claim against the State Defendants pursuant to the NVRA and seek leave to amend. This argument fails on the merits. While the NVRA requires "[e]ach State" to designate voter registration agencies, it is agnostic about the procedures a State may use to make those designations. 52 U.S.C. § 20506(a). As such, Plaintiffs' claims against the State Defendants remain an assertion that State officials

13

violated State law, not the NVRA. *See Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 297 (4th Cir. 2001) ("[P]articularly in the absence of an explicit incorporation of State law into federal law, States retain a unique interest in the enforcement of their own law against their own officers." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Dismiss should be granted.

DATED: November 1, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/ *Jacob S. Siler*
JACOB S. SILER
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-4556
Facsimile: (202) 616-8460
Email: jacob.s.siler@usdoj.gov

*Counsel for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with LCivR 7.2(c) because it contains 4,266 words as measured by Microsoft Word, excluding the portions of the document that are not to be included in the word court under that rule.

/s/*Jacob S. Siler*
Jacob S. Siler
